UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A. JOHNSON; and BOB'S LITTLE SPORT SHOP, INC., a New Jersey Corporation<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>JON S. CORZINE, Governor of the State of New Jersey; ANNE MILGRAM, Attorney General of the State of New Jersey; COLONEL RICK FUENTES, Superintendent, Division of New Jersey State Police; WASHINGTON TOWNSHIP (Morris County); and XYZ MUNICIPALITIES 1-565;<br><br>　　　　　Defendants. | Civil Action No.:<br>10-cv-271 (JAP)(TJB)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**RETURN DATE: MARCH 15, 2010** |

_____

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65

_____

FARER FERSKO,
a Professional Association
600 South Avenue
P.O. Box 580
Westfield, NJ  07091-0580
(908) 789-8550
Attorneys for Plaintiffs
Association of New Jersey Rifle
and Pistol Clubs, Inc., Scott
L. Bach, Karre A. Johnson,
Bob's Little Sport Shop, Inc.

On the Brief:
Daniel L. Schmutter, Esq.

**TABLE OF CONTENTS**

Table of Citations........................................... ii

Preliminary Statement......................................... 1

Factual and Legal Background................................. 2

Legal Argument ............................................. 12

      PLAINTIFFS ARE ENTITLED TO PRELIMINARY
      INJUNCTIVE RELIEF ENJOINING THE ENFORCEMENT
      OF THE ONE GUN LAW.......................................12

      A.   Plaintiffs Have a Reasonable Likelihood
          of Success on the Merits........................... 14

          1.   The One Gun Law is Preempted by
               15 U.S.C. §5001(g)(ii)........................ 16

          2.   The One Gun Law cannot be saved
               by a narrowing construction or
               by severing invalid clauses.................. 21

               a.   The One Gun Law cannot be saved
                    by a narrowing construction.............. 22

               b.   Partial invalidation cannot save
                    the One Gun Law.......................... 26

          3.   Failure of the State Police to
               implement procedures for Collectors
               and Competitors to apply for the
               Exemptions violates the Due Process
               Clause of the Fourteenth Amendment to
               the United States Constitution and
               Article 1, Section 1 of the New Jersey
               Constitution as well as New Jersey's
               Fundamental Fairness Doctrine................. 29

          4.   Restriction by municipal police
               departments of the number of handgun
               purchase permits individuals may apply
               for is a direct violation of N.J.A.C.
               13:54-1.4(h)................................... 33

      B.    Plaintiffs Will Suffer Irreparable Harm if
            Injunctive Relief is Denied........................ 34

      C.    The Constitutional Harm from Denying the
            Injunction is not Outweighed by Any Harm to
            Defendants......................................... 36

      D.    The Public Interest Favors Injunctive Relief....... 40

Conclusion............................................... 40

**TABLE OF CITATIONS**

**FEDERAL CASES CITED**

A.A. v New Jersey, 176 F. Supp. 2d 274 (D.N.J. 2001).......... 38

Abu-Jamal v. Price, 154 F.3d 128 (3d. Cir. 1998)............. 35

ACLU v. Reno, 217 F.3d 162 (3d Cir 2000) vacated on other
  grounds, 535 U.S. 564 (2002) .......................... 22, 38

Northland Family Planning Clinic, Inc. v. Cox, 487 F.3d 323
  (6th Cir. 2007) cert. denied sub nom. Standing Together to
  Oppose Partial-Birth-Abortion v. Northland Family Planning
  Clinic, Inc., 128 S. Ct. 872 (2008), and cert. denied
  sub nom. Cox v. Northland Family Planning Clinic, Inc.
  128 S. Ct. 873 (2008) ...................................... 23

ACLU of Nevada v. Heller, 378 F.3d 979 (9th Cir. 2004) ........ 23

Alexandre v Cortes, 140 F.3d 406 (2d Cir. 1998).............. 30

Almendarez-Torres v. United States, 523 U.S. 224 (1998)....... 22

American Meat Institute v. Barnett,
  64 F. Supp. 2d 906 (D.S.D. 1999) ........................... 23

American Telephone and Telegraph Co. v. Winback and Conserve
  Program, Inc., 42 F.3d 1421 (3d Cir. 1994) cert. denied sub
  nom. Winback and Conserve Program, Inc. v. American Tel.
  and Tel. Co., 514 U.S. 1103 (1995) ........................ 12

Bank One v. Guttau, 190 F.3d 844 (8th Cir. 1999) ............. 37

Board of Regents of State Colleges v. Roth,
  408 U.S. 564 (1972) ........................................ 29

Boos v. Barry, 485 U.S. 312 (1988).......................... 22

Brockett v. Spokane Arcades, Inc., 472 U.S. 491 (1985)........ 26

Citizens for Responsible Government State Political
  Action Comm. v. Davidson, 236 F.3d 1174 (10th Cir. 2000) ... 21,
  26, 28

Coalition of New Jersey Sportsmen v. Florio,
  744 F. Supp. 602 (D.N.J. 1990) .......................... passim

iv

Conchatta Inc. v. Miller, 458 F.3d 258 (3d Cir. 2006), cert. denied, 549 U.S. 1246 (2007) ............................ 22, 25

Council of Alternative Political Parties v. Hooks, 121 F.3d 876 (3d Cir. 1997) ................................. 12

Cox v. Northland Family Planning Clinic, Inc. 128 S. Ct. 873 (2008) ................................................... 23

Dombrowski v. Pfeister, 380 U.S. 479 (1965).................. 35

ECRI v. McGraw-Hill, Inc., 809 F.2d 223 (3d Cir. 1987)....... 34

Elrod v. Burns, 427 U.S. 347 (1976).......................... 34

Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100 (3d Cir. 1988) ................................. 13

Hamar Theatres, Inc. v. Cryan, 365 F. Supp. 1312 (D.N.J. 1973) order modified on other grounds, 390 F. Supp. 510 (D.N.J. 1974), judgment vacated on other grounds, 419 U.S. 1085 (1974) ............................ 28

Hohe v. Casey, 868 F.2d 69 (3d Cir. 1989).................... 35

Humphries v. Country of Los Angeles, 554 F.3d 1170 (9th Cir. 2009) ...................................................... 30

K.J. ex rel. Lowry v. Division of Youth and Family Services, 363 F. Supp. 2d 728 (D.N.J. 2005)....... 30

Karlin v. Foust, 188 F.3d 446 (7th Cir. 1999)................ 23

Lysaght v. State of New Jersey, 837 F. Supp. 646 (D.N.J. 1993) ........................... 35

New York State Motor Truck Association, Inc. v. City of New York, 654 F. Supp. 1521 (S.D.N.Y. 1987), aff'd, 833 F.2d 420 (2d Cir. 1987) ................. 19, 20, 21

Old Coach Dev. Corp. v. Tanzman, 881 F.2d 1227 (3d Cir. 1989) ............................... 26

Phelps v. Hamilton, 59 F.3d 1058 (10th Cir. 1995)............ 23

Planned Parenthood of Central New Jersey v. Farmer, 220 F.3d 127 (3d Cir. 2000) ............................ 23, 25

Randall v. Sorrell, 548 U.S. 230 (2006)....................... 28

Silkwood v. Kerr-McGee Corp., 464 U.S. 238 (1984)............. 15

Standing Together to Oppose Partial-Birth-Abortion v.
  Northland Family Planning Clinic, Inc.,
  128 S. Ct. 872 (2008) ...................................... 23

Stenberg v. Carhart, 530 U.S. 914 (2000).................... 22

Sypniewski v. Warren Hills Regional Bd. of Educ.,
  307 F.3d 243 (3d Cir. 2002), cert. denied,
  538 U.S. 1033 (2003) ...................................... 23

Temple Univ. v. White, 941 F.2d 201 (3d Cir. 1991), cert.
  denied, 502 U.S. 1032 (1992) .............................. 12

United States v Florida, 585 F. Supp. 807
  (N.D. Fla. 1984) ...................................... 20, 21

Vermont Right to Life Comm. v. Sorrell, 221 F.3d 376 (2d Cir.
  2000) ..................................................... 23

Video Software Dealers Ass'n v. Webster, 968 F.2d 684
  (8th Cir. 1992)............................................ 23

Virginia Society for Human Life, Inc. v. Caldwell,
  152 F.3d 268 (4th Cir. 1998)............................... 23

Virginia v. American Booksellers Ass'n, 484 U.S. 383 (1988)... 23

**STATE CASES CITED**

Communications Workers of America v. Florio, 130 N.J. 439
  1992) ..................................................... 27

Doe v Poritz, 142 N.J. 1 (1995)............................. 31

In re Kimber Petroleum Corporation, 110 N.J. 69 (1988)....... 30

New Jersey State Firemen's Mutual Benevolent Ass'n v. North
  Hudson Regional Fire & Rescue, 340 N.J. Super. 577(App. Div.
  2001), certif. denied sub nom. State Fireman's Mut. Benev.
  Ass'n. v. North Hudson Regional Fire & Rescue,
  170 N.J. 88 (2001)  ....................................... 27

St. James v. Department of Environmental Protection and
  Energy, 275 N.J. Super. 342, 646 A.2d 447 (App. Div. 1994) .. 23

State Fireman's Mut. Benev. Ass'n. v. North Hudson
  Regional Fire & Rescue, 170 N.J. 88 (2001) .................. 27

State v. Mieles, 199 N.J. Super. 29 (App. Div. 1985), certif.
  denied, 101 N.J. 265 (1985) ................................. 16

State v. Rackis, 333 N.J. Super. 332 (App. Div. 2000). 17, 18, 19

**FEDERAL STATUTES**

15 U.S.C. §5001......................................... passim

42 U.S.C. §1983............................................. 14

49 U.S.C. §2311............................................. 20

**STATE STATUTES AND REGULATIONS**

N.J.A.C. 13:54-1........................................ 14, 33

N.J.S. 2C:39-1 ............................... 15, 16, 24, 25, 27

N.J.S. 2C:39-10(a)(1).......................................35

N.J.S. 2C:58-2........................................ 1, 4, 36

N.J.S. 2C:58-3....................................... 1, 4, 5,36

N.J.S. 10:6-2.............................................. 14

**RULES**

Fed. R. Civ. P. 65........................................ 12

## PRELIMINARY STATEMENT

Plaintiffs ask the Court to enjoin the enforcement of New Jersey's amendments to N.J.S. 2C:58-2 and 2C:58-3. These amendments unlawfully restrict handgun sales to one every 30 days ("One Gun Law") in violation of an explicit federal preemption contained in 15 U.S.C. $5001(g)(ii)$. Federal law explicitly prevents states from prohibiting the sale of certain firearms (B-B, pellet and air guns), yet this is precisely what the One Gun Law does, because under pre-existing New Jersey law, such firearms are included in the definition of handguns. The flaw is fatal to the One Gun Law and can only be corrected by the legislature.

The conflict with federal law arises as a result of New Jersey's basic definitions of "firearm" and "handgun," which were formulated decades ago and underlie all of New Jersey's broad gun control laws. Because they are not part of the new One Gun Law itself, the flaw cannot be corrected through judicial construction, and the One Gun Law must fall. Only the New Jersey Legislature can avoid this direct conflict with federal law by writing a new statute that is not in conflict with federal law.

The New Jersey legislature made this same error in 1990, and the Honorable Garrett E. Brown, Jr. struck down a portion of

1

a gun law as preempted by 15 U.S.C. §5001(g)(ii) in <u>Coalition of New Jersey Sportsmen v. Florio</u>, 744 F. Supp. 602 (D.N.J. 1990). This time, the legislature's error cannot be fixed by the Court, and the entire statute must fall.

Enforcement of the One Gun Law should be enjoined for two additional reasons. First, the One Gun Law contains extremely limited exemptions for collectors, competitors and inheritance ("Collectors and Competitors"), yet the State Police have provided no procedure or mechanism to qualify for such exemptions, even though the One Gun Law explicitly requires the State Police to do so. Accordingly, Collectors and Competitors are unable to engage in lawful transactions of more than one handgun per month, even though the New Jersey legislature explicitly intended that they be permitted to do so. This violates their due process rights.

Second, certain New Jersey municipalities are restricting the issuance of <u>permits</u> to purchase handguns to one per month even though New Jersey law provides that an applicant may apply for more than one at a time.

<p align="center">**<u>FACTUAL AND LEGAL BACKGROUND</u>**</p>

<p align="center">**<u>Background of New Jersey Handgun Permitting Law</u>**</p>

This lawsuit concerns New Jersey's recently enacted One Gun Law. The relevant facts are more fully set forth in the

<p align="center">2</p>

accompanying certifications.

For many years, prior to enactment of the One Gun Law, New Jersey has had and still continues to have one of the most comprehensive and restrictive handgun permitting schemes in the nation.  Before someone may purchase handguns in New Jersey, a purchaser must first obtain from his or her local police department a separate Permit to Purchase a Handgun ("Handgun Purchase Permit") for each handgun purchased, after undergoing extensive state and federal background checks, and after providing comprehensive personal information, employment information, fingerprints and two references.

This lengthy and complex process requires law enforcement to research the applicant's criminal background and mental health background, process fingerprints, interact with references, and perform other investigative functions to assure that the applicant is not disqualified.  This process frequently takes months (sometimes 6 months or longer), and applications can be and often are denied.  Permits expire in 90 days, subject to one possible discretionary extension of another 90 days.

After the months-long investigation period, the applicant must also undergo a separate federal electronic criminal background check ("NICS" or "Brady Check") at point of purchase, and the seller must collect and retain all details of the sale

3

on state and federal forms and in an official logbook.  Copies are sent to State and local police and retained by the seller.

These requirements have been in effect for years and remain in effect after the passage of the One Gun Law.

## The One Gun Law

On or about August 6, 2009, Governor Corzine signed into law the One Gun Law which prohibits the delivery or purchase of more than one handgun within a 30 day period, even though Handgun Purchase Permits have already been issued pursuant to New Jersey law following months-long background investigations. [1]

The One Gun Law amended N.J.S. 2C:58-2(a) to provide:

(7) A dealer shall not knowingly deliver more than one handgun to any person within any 30-day period.

The One Gun Law amended N.J.S. 2C:58-3(i) to provide:

Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period . . .

This language puts the One Gun Law squarely in fatal conflict with federal law, which expressly preempts the prohibition of a certain class of firearms (B-B, pellet and air

---

[1]   Though not directly relevant to this matter's disposition, advocates of the One Gun Law claimed that the legislation would address illegal gun trafficking by making it more difficult for criminals to buy handguns in bulk. Opponents argued that traffickers already circumvent New Jersey's strict permitting process, and, therefore, the law would have no impact on illegal gun trafficking.  The first state to enact such a law in 1975,

guns).   This is a conflict so deeply embedded in decades old New Jersey gun statutes, it can only be remedied by the legislature.

On June 26, 2009, after passage of the One Gun Law by the legislature, but prior to signature by the Governor, the Governor issued Executive Order 145, creating a nine-member Firearms Advisory Task Force (the "Task Force") allegedly "to ensure that lawful firearms collectors and competitive and recreational firearms users are not adversely affected by the [One Gun Law]."   (See Executive Order 145, attached to the Certification of Scott L. Bach ("Bach Cert.") as Exhibit A.)

The membership of the Task Force included State Police Lieutenant Colonel Christopher Andreychak as designee for Defendant Superintendent of State Police Colonel Rick Fuentes. (See excerpt from Task Force Initial Report, Bach Cert., Ex. B.)

Pursuant to the recommendations of the Task Force, on or about January 12, 2010, Governor Corzine signed amendments creating limited exemptions to the One Gun Law (the "Exemptions").   The Exemptions, set forth in section 4 of Senate Bill S3104 (not yet codified), provide as follows:

> 4.(New section)
> a. The superintendent may grant an exemption from the restriction on the purchase of handguns set forth in subsection i. of N.J.S.2C:58-3 if the applicant demonstrates to the satisfaction of the superintendent that the applicant's request meets one of the

---

South Carolina, repealed the law after 29 years of experience.

following conditions:

(1)  The  application  is  to  purchase  multiple handguns  from  a  person  who  obtained  the  handguns through   inheritance   or   intestacy   **[the "Inheritance Exemption"]**;

(2) The applicant is a collector of handguns and has  a  need  to  purchase  or  otherwise  receive multiple  handguns  in  the  same  transaction  or within  a  30-day  period  in  furtherance  of  the applicant's  collecting  activities.  As  used  in this paragraph, "need" shall include, but not be limited  to,  situations  where  there  is  a reasonable   likelihood   that   the   additional handguns  sought  to  be  purchased  would  not  be readily available after the 30-day period, that it would not be feasible or practical to purchase the handguns separately, or that prohibiting the purchase of more than one handgun within a 30-day period would have a materially adverse impact on the  applicant's  ability  to  enhance  his  collection . . . **[the "Collector Exemption"]**; or

(3)  The  applicant  participates  in  sanctioned handgun   shooting   competitions   and   needs   to purchase  or  otherwise  receive  multiple  handguns in  a  single  transaction  or  within  a  30-day period,   and   the   need   is   related   to   the applicant's   competitive   shooting   activities, including  use  in  or  training  for  sanctioned competitions **[the "Competitor Exemption"]**.

b. The  applicant  shall  certify,  on  a  form  prescribed by  the  superintendent,  the  specific  exemption  sought and the particular handguns to be purchased . . . .

d.   Notwithstanding   the   provisions   of   the "Administrative   Procedure   Act,"   P.L.1968,   c.410 (C.52:14B-1 et seq.), the superintendent may adopt, immediately   upon   filing   with   the   Office   of Administrative  Law,  such  temporary  regulations  as  the superintendent   deems   necessary   to   implement   the provisions  of  P.L.  ,  c.  (C.  )  (pending  before  the Legislature as this bill). . . .

6

Section 5 of Senate Bill S3104, provides as follows:

> 5. This act shall take effect immediately; provided however, the Superintendent of State Police may take any anticipatory administrative action prior to the effective date necessary for its timely implementation.

To obtain any of the Exemptions, a person must apply to the Superintendent of the State Police (the "Superintendent"). Although the Superintendent's designee sat on the Task Force for many months prior to the One Gun Law's effective date, and despite S3104's call for "timely implementation" of the Exemptions and authorization of "anticipatory administrative action," there does not appear to be any established procedure for applicants to apply for and obtain any of the Exemptions.

Thus, qualified individuals cannot take advantage of the Exemptions even though the Legislature intended that they do so.

### Plaintiffs' Attempts to Comply with the One Gun Law

Plaintiff Scott L. Bach ("Bach") is an attorney and President of Plaintiff Association of New Jersey Rifle and Pistol Clubs ("Association").

The Association represents the interests of hundreds of thousands of target shooters, hunters, competitors, and other law abiding firearms owners. Among the Association's purposes is aiding such persons and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase and possess firearms.

7

Bach is an avid firearms collector.  Among other things, he would like to add to his collection a matched set of pistols. Typically, the value of a matched set is in owning the pieces together, so they are unlikely to be sold individually.

Without the Exemptions, people like Bach, who have no involvement in the criminal activities that were the One Gun Law's target, cannot pursue many lawful collection activities.

In January, Bach applied for three Handgun Purchase Permits.  He then telephoned the State Police Firearms Unit to ask how to apply for the Exemptions and was directed to Lieutenant David Schlueter, who said there was no procedure in place and that he did not know when there would be a procedure.

The Lieutenant did not even know that the Exemptions were signed into law several days earlier.  He said he had received no information about the amendments or their content, could not take any action until he had that information, and suggested that Bach contact his legislator.  He also claimed that all this was done "without our knowledge," even though the Superintendent's designee sat on the Task Force for many months prior to the One Gun Law's effective date and participated in formulating the recommendations that resulted in the Exemptions.

The State Police were completely unprepared for the implementation of the Exemptions, despite the legislature's

8

express call in S3104 for "timely implementation" and authorization of "anticipatory administrative action." The honest persons whom the legislature intended to exempt now have no procedure or prescribed method to invoke the Exemptions.

Also, when Bach submitted his application for three Handgun Purchase Permits, his local Police Department initially advised that he could only obtain one <u>permit</u> per month (as opposed to one <u>handgun</u> per month), which could translate into one handgun every four or five months or longer due to permitting delays -- well beyond the intended statutory limitation.

In fact, pre-existing New Jersey law specifically allows application for multiple permits.[2]  However, the State Police appear to have provided no advance guidance to local police agencies on this issue.  With 566 municipalities in New Jersey, this is a recipe for inconsistency and chaos.  Given their Task Force participation, the State Police should have been well prepared for enactment of the One Gun Law and the Exemptions.

The Association has received multiple complaints from its members regarding rationing of permits to one per month and the lack of any procedure for invoking the statutory Exemptions.

---

[2] As a practical matter, a non-exempt individual can receive six permits at once and use all six lawfully under the One Gun Law; used at the rate of one per month, the first three can be used prior to their 90-day expiration date, and the second three can be extended for the one additional 90-day term.

9

New Jerseyans are entitled to the correct and prompt implementation of new laws. This law was signed nearly five months before the effective date of January 1, 2010.

Several accompanying witness certifications further illustrate the problems with the One Gun Law and the absence of implementation guidelines.

• Plaintiff Kaare A. Johnson ("Johnson") is a retired middle school teacher and World War II veteran residing in Washington Township, Morris County.

• Jonathan Friedman, M.D. is an oral and maxillofacial surgeon and a former New York State Trooper living in Mendham.

• Steven Yagiello ("Yagiello") is a crew supervisor for the New Jersey Division of Fish and Wildlife and a resident of Little Egg Harbor Township.

• Richard Gajda ("Gajda") is a firearms collector, instructor and competitive shooter who lives in Clinton Township.

• Daniel Strachman is a financial consultant, author, former adjunct professor at New York University School of Continuing Education, a resident of Fanwood, and he volunteers with the Fanwood Rescue Squad.

Johnson is a collector of vintage Colt revolvers, but he cannot properly do so without the Collector Exemption because these valuable revolvers become available randomly and may show up more than one at a time.

As an avid collector and a competitor, Gajda is similarly impacted by the lack of any means to apply for the Exemptions, since he routinely applies for and uses multiple Handgun Purchase Permits.

10

Johnson, Gajda and the others have all experienced first hand the chaos surrounding implementation of the One Gun Law. Each of them was told by his local police department when applying for multiple Handgun Purchase Permits that he could only receive one. Several were told that they could not even apply for a second permit until after the first permit was used. Because the application process takes months, that could mean two or three guns per year rather than one gun per 30 days.

In some instances, the local police called the State Police and learned they were mistaken. However, Johnson and Yagiello were actually refused the additional permits. While Washington Township ultimately corrected its error, this was not until Washington was named as a Defendant in this lawsuit.

Plaintiff Bob's Little Sport Shop, Inc. ("Bob's"), a federally and State licensed retail firearms dealer in Glassboro, New Jersey, has encountered the same issues. Many of Bob's customers are confused about how the One Gun Law works, yet neither the Attorney General nor the State Police have issued any guidance to retailers regarding the new law. (See Certification of Robert Viden)

Collectors often wish to purchase matched pistol sets or collections sold in lots and they now cannot do so, even if they qualify for one of the Exemptions. Competitors often engage in

11

multi-gun event categories which require the competitor to have a set of handguns in several specified calibers, which usually are purchased together.  They cannot do this because there is no established procedure to apply for the Competitor Exemption.

<u>**LEGAL ARGUMENT**</u>

**PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF ENJOINING THE ENFORCEMENT OF THE ONE GUN LAW**

An application for a preliminary injunction is governed by Fed. R. Civ. P. 65 and requires that the movant establish: (1) a reasonable likelihood that the movant will prevail on the merits at final hearing; (2) the movant will suffer irreparable harm if the injunction is not granted; (3) the non-movant will not suffer even greater harm if the relief is granted; and (4) public interest favors such relief.[3]  <u>Council of Alternative Political Parties v. Hooks</u>, 121 F.3d 876 (3d Cir. 1997); <u>American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc.</u>, 42 F.3d 1421 (3d Cir. 1994), <u>cert. denied sub nom. Winback and Conserve Program, Inc. v. American Tel. and Tel. Co.</u>, 514 U.S. 1103 (1995); <u>Frank's GMC Truck Center, Inc.</u>

---

[3] The Court should not require a bond.  The Third Circuit has recognized an exception to the bond requirement in noncommercial cases where, as here, there is virtually no risk of monetary harm to the defendant and where the movant is seeking injunctive relief "to enforce important federal rights or 'public interests.'"  <u>Temple Univ. v. White</u>, 941 F.2d 201, 219-20 (3d Cir. 1991), <u>cert. denied</u>, 502 U.S. 1032 (1992).

v. General Motors Corp., 847 F. 2d 100 (3d Cir. 1988).

Plaintiffs are entitled to a preliminary injunction enjoining the enforcement of the One Gun Law for three reasons. First, the One Gun Law directly conflicts with 15 U.S.C. §5001(g)(ii) which preempts the ability of states to prohibit a particular class of firearms which the One Gun Law attempts to prohibit. This conflict cannot be remedied by judicial construction but can only be fixed by the legislature. Thus, the One Gun Law is preempted and should be enjoined.

Second, though the One Gun Law directs the State Police to provide a procedure for Collectors and Competitors to apply for and receive certain limited Exemptions, the State Police have not provided any such procedure, and Collectors and Competitors are accordingly subjected to statutory restrictions the legislature intended that they be exempt from. Collectors and Competitors are therefore being deprived of their liberty and property without due process of law in violation of the Fourteenth Amendment to the United States Constitution, Article 1, Section 1 of the New Jersey Constitution and New Jersey's Fundamental Fairness Doctrine.

Third, the State Police appear to have provided no guidance to municipalities in the implementation of the One Gun Law. As a result, numerous municipalities are misinterpreting the One

13

Gun Law to restrict not just the purchase of handguns to one per 30 days but also the issuance of Handgun Purchase Permits (which already frequently take many months to obtain) to one every 30 days, in direct violation of N.J.A.C. 13:54-1.4(h).

### A. Plaintiffs Have a Reasonable Likelihood of Success on the Merits.

Plaintiffs have a reasonable likelihood of success on the merits of their claims.  None of the claims rely on disputed issues of fact.  Rather, they turn directly on the manner in which the One Gun Law conflicts with federal law and the manner in which it is being implemented.

42 U.S.C. §1983 provides for injunctive relief to redress rights violations under the Constitution and laws of the United States.  Similarly, N.J.S. 10:6-2(c), the New Jersey analog of section 1983, provides for injunctive relief to redress rights violations under the Constitution and laws of the United States and of New Jersey.

Because the One Gun Law and the manner in which it has been implemented violate the United States and New Jersey Constitutions and federal and state law, Plaintiffs are entitled to injunctive relief.

### 1. The One Gun Law is Preempted by 15 U.S.C. §5001(g)(ii)

State law may be preempted by federal law in two ways. First, if Congress evidences an intent to occupy a field, any state law within that field is preempted ("Field Preemption"). Silkwood v Kerr-McGee Corp., 464 U.S. 238, 248 (1984).

Alternatively, even where Congress has not manifested such an intent, state law is still preempted to the extent it actually conflicts with federal law or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress ("Conflict Preemption"). Id.

Here, the One Gun Law directly conflicts with federal law and is therefore preempted. The key operative provisions of the One Gun Law are as follows:

> A dealer shall not knowingly deliver more than one handgun to any person within any 30-day period.

N.J.S. 2C:58-2(a)(7).

> Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period . . . [Emphasis supplied.]

N.J.S. 2C:58-2(a).

### B-B and Pellet-Firing Air Guns are "Handguns" Under New Jersey Law

Under longstanding New Jersey law, the term "handgun" is defined as follows in N.J.S. 2C:39-1(k):

15

"Handgun" means any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand.

Under longstanding New Jersey law, the term "firearm" is defined as follows in N.J.S. 2C:39-1(f):

"Firearm" means any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.  [Emphasis added.]

In Coalition of New Jersey Sportsmen v. Florio, 744 F. Supp. 602, 605 (D.N.J. 1990), the District Court held that under New Jersey law, B-B guns and pellet-firing air guns plainly fall within the definition of "firearm." See also State v. Mieles, 199 N.J. Super. 29, 36-37 (App. Div. 1985), certif. denied, 101 N.J. 265 (1985) (" . . . we hold that the [B-B] gun in this case was a firearm within N.J.S.A. 2C:39-1(f)").

Accordingly, any B-B gun or pellet-firing air gun "designed or manufactured to be fired by the use of a single hand" is a type of handgun under New Jersey law.  In Mieles, the Appellate

16

Division upheld a conviction for "unlawful possession of a handgun" where the defendant was found in possession of a "spring action BB pistol." Id. at 31, 36-37.  The court held:

> Inasmuch as a spring action BB pistol is literally a handgun it follows that in an appropriate case an applicant may obtain a permit under N.J.S.A. 2C:39-5(b) to carry one. . . .  Thus we reject defendant's statutory construction that the BB pistol was not a handgun or firearm.

Id. at 39.   See also State v. Rackis, 333 N.J. Super. 332, 336, 345 (App. Div. 2000) (upholding indictment for possession of handgun without permit and possession of handgun by convicted felon where defendant was in possession of "Crosman BB pistol").

Accordingly, it is well settled in New Jersey that a B-B or pellet-firing air pistol is a handgun.  Because the One Gun Law applies to all handguns without distinction, the One Gun Law prohibits the sale of a B-B or pellet-firing air pistol within 30 days of the sale of another handgun.

**State Laws Prohibiting the Sale of B-B and Pellet-Firing Air Pistols are Expressly Preempted by Federal Law**

15 U.S.C. §5001(g)(ii) provides as follows:

(g) Preemption of State or local laws or ordinances; exceptions

The provisions of this section shall supersede any provision of State or local laws or ordinances which provide for markings or identification inconsistent with provisions of this section provided that no State shall-- . . .

17

(ii) <u>prohibit the sale (other than prohibiting the sale to minors) of traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure</u>. [Emphasis supplied.]

New Jersey's One Gun Law applies to all handguns, including B-B and pellet-firing air guns, and therefore, the One Gun Law is subject to the restrictions of 15 U.S.C. §5001(g)(ii).

### The One Gun Law is a Prohibition on the Sale of B-B and Pellet-Firing Air Guns

The One Gun Law is a prohibition on the sale of B-B and pellet-firing air guns, prohibiting their sale 29 days out of every 30, and 352 days out of every calendar year – more than 96% of the time.

In <u>Coalition of New Jersey Sportsmen</u>, the District Court held that New Jersey's assault firearm law prohibited the sale of B-B and pellet-firing air guns and was therefore preempted by 15 U.S.C. §5001(g)(ii).  Though the Court found that the law did not constitute an outright prohibition, since it provided for a permitting and registration process, 744 F. Supp. at 608, the Court nonetheless held that the law constituted a <u>de facto</u> prohibition and thus was preempted.  <u>Id</u>.  Accordingly, the Court granted the plaintiffs preliminary injunctive relief, enjoining enforcement of the offending statute.  <u>Id</u>. at 609.

In <u>Rackis</u>, the Appellate Division undertook a similar analysis of 15 U.S.C. §5001(g)(ii) in the context of two New

Jersey statutes which criminalize (1) possession of a handgun without a permit and (2) possession of a handgun by a convicted felon. The Appellate Division, however, found that there was no preemption because, unlike here, the New Jersey statutes in question in Rackis only governed possession and did not impact the sale or purchase of handguns. 333 N.J. Super. at 344. The court noted:

> Congress has neither explicitly nor implicitly prohibited states from regulating the use and possession of BB guns. [Emphasis supplied.]

Id. The District Court's holding in Coalition of New Jersey Sportsmen, that a state law need not constitute an outright and complete ban on the sale of B-B or pellet-firing air guns to run afoul of 15 U.S.C. §5001(g)(ii), is consistent with case law from other districts.

In New York State Motor Truck Association, Inc. v. City of New York, 654 F. Supp. 1521 (S.D.N.Y. 1987), aff'd, 833 F.2d 430 (2d Cir. 1987), the court found that a New York City regulation imposing time of day restrictions on the use by tandem tractor-trailers of portions of the National System of Interstate and Defense Highways ("Interstate Highway System") passing through New York City was preempted by federal law.

The plaintiff challenged the regulation as preempted under the Surface Transportation Assistance Act ("STAA"), 49 U.S.C.

19

§2311(c), which provided:

> No State shall prohibit commercial motor vehicle combinations consisting of a truck tractor and two trailing units on any segment of the National System of Interstate and Defense Highways . . . .

The court held that a partial prohibition, such as a time of day restriction, was a prohibition, though the prohibition was not total, and was therefore preempted by the STAA:

> Enforcement of regulations limiting use of the Interstates to certain hours of the day necessarily prohibits use during the other hours of the day.

Id. at 1535. See also U.S. v Florida, 585 F. Supp. 807, 809-10 (N.D. Fla. 1984)(Florida statute with day and hour restrictions for trucks was "prohibition" in conflict with STAA).

Here, as in the cases cited above, the One Gun Law is not an outright, total prohibition, but it is prohibition nevertheless. As in New York State Motor Truck Association and United State v Florida, a prohibition at certain times and on certain days is enough to conflict with the federal law.

Under the One Gun Law, once a person purchases a single handgun, that person is absolutely prohibited from purchasing a B-B or pellet handgun for the next 29 days. In fact, a person who purchases a handgun once every 30 days in a calendar year would be prohibited from purchasing a B-B or pellet handgun 352 days out of the year -- more than 96% of the time!

A 96% prohibition is fundamentally and directly in conflict

20

with 15 U.S.C. §5001(g)(ii).  The prohibition contained in the One Gun Law far exceeds those found to be preempted in <u>New York State Motor Truck Association</u> and <u>United State v Florida</u>.

Because the One Gun Law prohibits the sale of B-B and pellet-firing air handguns, it is preempted by federal law, and injunctive relief should be granted.

### 2. The One Gun Law cannot be saved by a narrowing construction or by severing invalid clauses

Because the conflict between the One Gun Law and federal law is inherent in the underlying definitions that New Jersey has employed for decades throughout its gun control statutes, the One Gun Law cannot be saved through a narrowing construction or severance.

> Courts employ two mechanisms to preserve unconstitutional statutes from wholesale invalidation. . . . First, if a statute is readily susceptible to a narrowing construction that will remedy the constitutional infirmity, the statute will be upheld. . . . If the language is not readily susceptible to a narrowing construction, but the unconstitutional language is severable from the remainder of the statute, 'that which is constitutional may stand while that which is unconstitutional will be rejected.'

<u>Citizens for Responsible Government State Political Action Comm. v. Davidson</u>, 236 F.3d 1174, 1194 (10th Cir. 2000) (citations omitted).  <u>Accord ACLU v. Reno</u>, 217 F.3d 162, 177 (3d

21

Cir. 2000), <u>vacated on other grounds</u>, 535 U.S. 564 (2002).

As shown below, neither option is available in this case. And, accordingly, the One Gun Law must be struck down in its entirety.

<div align="center">

**a. The One Gun Law cannot be saved<br>by a narrowing construction**
</div>

It is well settled that federal courts are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." <u>Stenberg v. Carhart</u>, 530 U.S. 914, 944 (2000) (quoting <u>Boos v. Barry</u>, 485 U.S. 312, 330 (1988)). The statute must be "genuinely susceptible" to two interpretations. <u>Id</u>. at 945 (quoting <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 237-239 (1998)). As the Third Circuit noted recently, "[i]f a statute is 'readily susceptible' to a limiting interpretation that would make it constitutional, the statute must be upheld, but <u>'we will not rewrite a state law to conform it to constitutional requirements</u>.'" (Emphasis added.) <u>Conchatta Inc. v. Miller</u>, 458 F.3d 258, 263 (3d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1246 (2007) (quoting <u>Virginia v. American Booksellers Ass'n</u>, 484 U.S. 383,

<div align="center">22</div>

397 (1988)).[4]   The federal courts' reluctance to rewrite state laws stems, in part, from federalism concerns.[5]

_____

[4] See also Sypniewski v. Warren Hills Regional Bd. of Educ., 307 F.3d 243, 259 (3d Cir. 2002), cert. denied, 538 U.S. 1033 (2003); Planned Parenthood of Central New Jersey v. Farmer, 220 F.3d 127, 135-136 (3d Cir. 2000).  Accord Northland Family Planning Clinic, Inc. v. Cox, 487 F.3d 323, 333 (6th Cir. 2007), cert. denied sub nom. Standing Together to Oppose Partial-Birth-Abortion v. Northland Family Planning Clinic, Inc., 128 S. Ct. 872 (2008), and cert. denied sub nom. Cox v. Northland Family Planning Clinic, Inc. 128 S. Ct. 873 (2008); ACLU of Nevada v. Heller, 378 F.3d 979, 986 (9th Cir. 2004), Vermont Right to Life Comm. v. Sorrell, 221 F.3d 376, 386 (2d Cir. 2000); Karlin v. Foust, 188 F.3d 446, 474 (7th Cir. 1999) ("[W]hile a federal court may construe a state statute in a manner that saves it against constitutional attack if the statute is 'readily susceptible' to the construction, the court cannot 'slice and dice a state law to "save" it; we must apply the Constitution to the law the state enacted and not attribute to the state a law we could have written to avoid the problem.'") (citation omitted); Phelps v. Hamilton, 59 F.3d 1058, 1070 (10th Cir. 1995) ("The federal courts do not have the power to narrow a state law by disregarding plain language in the statute just to preserve it from constitutional attack."); Virginia Society for Human Life, Inc. v. Caldwell, 152 F.3d 268, 270 (4th Cir. 1998); Video Software Dealers Ass'n v. Webster, 968 F.2d 684, 691 (8th Cir. 1992) ("It is not our function to rewrite the statute to cure all its constitutional infirmities").

[5] See, e.g., American Meat Institute v. Barnett, 64 F.Supp.2d 906, 917 (D.S.D. 1999).  Even without these concerns, however, courts strive to avoid usurping the legislative function.  See, e.g., St. James v. Department of Environmental Protection and Energy, 275 N.J. Super. 342, 350, 646 A.2d 447, 451 (App. Div. 1994) ("We will not graft a whole regulatory section into the statute to permit its application in a constitutionally acceptable manner.  It is not the function of the court to legislate.  It is the court's duty to interpret, and in so doing, to give effect to the language employed by the legislative body in order to properly effectuate the legislative design. . . . When construing a statute, the court should not write additional qualifications omitted by the Legislature.")(emphasis added).

23

Because the conflict at issue is embedded in pre-existing state law, and not in the new statute itself, the One Gun Law is not "readily susceptible" to a narrowing construction to save it from invalidation.  As shown above, the state may not prohibit the sale of B-B guns or pellet-firing air guns because such a prohibition is preempted by federal law.  Thus, the One Gun Law could be saved only if it were "readily susceptible" to a construction that excludes B-B guns and pellet-firing air guns from the ambit of the law.  This cannot be accomplished without rewriting the statute, a task uniquely within the province of the legislature that Courts are not permitted to undertake.

The plain language of the One Gun Law applies broadly to "handguns," a term defined separately and independently decades ago in N.J.S. 2C:39-1.  The only way to "cure" the One Gun Law from its constitutional and statutory infirmity would be to add language to that law expressly excluding B-B guns and pellet-firing air guns, or alternatively, to redefine the term "handgun" or "firearm" in N.J.S. 2C:39-1 to exclude B-B guns and pellet-firing air guns.  Neither option is available to a court.

The first option would necessitate adding an express exception to the One Gun Law -- in addition to the three deliberately crafted exceptions that were added to the law following a public hearing and months of consideration by the

24

Task Force.

The second option would require an amendment of New Jersey's longstanding definition of "handgun" or "firearm" in N.J.S. § 2C:39-1 to exclude B-B guns and pellet-firing air handguns.

Neither option – rewriting the One Gun Law, or rewriting the underlying definition of "handgun" or "firearm" in N.J.S. 2C:39-1 – is appropriate in this case.

The definitions of "handgun" and "firearm" in N.J.S. 2C:39-1 have not been challenged in this lawsuit and are thus not before this Court.  Moreover, the revisions to the definition of "handgun" or "firearm" in N.J.S. 2C:39-1 that would be needed to cure the infirmities in the One Gun Law would have sweeping and unintended impacts on the many other aspects of New Jersey's firearm laws that currently apply to the purchase, permitting, possession and use of handguns and other firearms, and whose validity is not challenged here.

Most important, as noted above, courts may not "rewrite a state law to conform it to constitutional requirements."  See, e.g., Conchatta, 458 F.3d at 263; Planned Parenthood, 220 F.3d at 136.  It is the job of the state legislature, not the federal courts, to rewrite these statutes if it so chooses.

> To rewrite the statutes in this manner would exceed
> the power and function of the court, and would fail to

25

> bind state prosecutors, leaving the citizens of [the
> State] vulnerable to prosecutions under the actual
> language of the statute.... 'Accordingly, we decline
> [the State's] invitation to give the statute[s] a
> construction more restrictive than that provided by
> [their] plain language.'... As written, [the
> statutes] are not susceptible of a narrowing
> construction.

Citizens for Responsible Government, 236 F.3d at 1194-95
(citations omitted).

The One Gun Law, similarly, is not susceptible of a
narrowing construction and must fall in its entirety.

### b. Partial invalidation cannot save
### the One Gun Law

The option of simply "snipping out" an offending provision,
rather than rewriting the law, is also unavailable in this case
because the offending provision is not contained in the One Gun
Law itself, but rather is embedded in the longstanding
independent statutory definitions the One Gun Law employs.

In determining whether a partial invalidation of a state
statute is appropriate, federal courts look to state law.  See
Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 506 (1985); Old
Coach Dev. Corp. v. Tanzman, 881 F.2d 1227, 1234 (3d Cir. 1989);
Citizens for Responsible Government, 236 F.3d at 1195.

Under New Jersey law, a court does have power to declare a
portion of a statute unconstitutional while leaving the
remainder of the law intact.  N.J.S. 1:1-10.  But "[s]uch

26

judicial surgery is to be applied with caution . . . ." <u>New Jersey State Firemen's Mutual Benevolent Ass'n v. North Hudson Regional Fire & Rescue</u>, 340 N.J. Super. 577, 595 (App. Div. 2001), <u>certif. denied sub nom.</u> <u>State Fireman's Mut. Benev. Ass'n. v. North Hudson Regional Fire & Rescue</u>, 170 N.J. 88 (2001) (quoting <u>Communications Workers of America v. Florio</u>, 130 N.J. 439, 465 1992)).

Here, there is no language within the One Gun Law itself that can be deleted to cure its constitutional infirmities. The only language that even theoretically could be excised as a remedy does not even appear in the One Gun Law, but rather is found in the second sentence of the decades-old, separate and independent definition of "firearm" in N.J.S. 2C:39-1, which brings B-B pistols and pellet-firing air pistols within the scope of the definition.

Because the definition of "firearm" applies not only to the One Gun Law but to all laws in Chapters 39 and 58 of the New Jersey Code of Criminal Justice, such radical "judicial surgery" would sweep far too broadly by suddenly rewriting all the laws in Chapters 39 and 58 to make them no longer applicable to B-B and pellet-firing air guns – laws whose constitutionality is not under challenge in this case.

27

Such wholesale disruption of New Jersey's firearms laws surely would not be intended by the State Legislature, and would compromise "the integrity and coherence" of New Jersey's entire regulatory scheme.  See Citizens for Responsible Government, 236 F.3d at 1196.  Cf.  Hamar Theatres, Inc. v. Cryan, 365 F.Supp. 1312, 1324 n.18 (D.N.J. 1973), order modified on other grounds, 390 F. Supp. 510 (D.N.J. 1974), judgment vacated on other grounds, 419 U.S. 1085 (1974) (in holding definition of "obscenity" in state's obscenity law to be unconstitutional, court declines to save the statute by severing the invalid provision because "[s]hould the definition . . . be found unconstitutional, the operative sections of the statute depending upon that definition will also fall.").

Faced with similar challenges, the United States Supreme Court has not hesitated to invalidate an unconstitutional law:

> [W]e do not believe it possible to sever some of the Act's . . . provisions from others that might remain fully operative . . . . To sever provisions to avoid constitutional objection here would require us to write words into the statute . . . or to leave gaping loopholes . . . or to foresee which of many different possible ways the legislature might respond to the constitutional objections we have found.  Given these difficulties, we believe the [State] Legislature would have intended us to set aside the [offending statutory provisions], leaving the legislature free to rewrite those provisions in light of the constitutional difficulties we have identified.

Randall v. Sorrell, 548 U.S. 230, 262 (2006) (emphasis added).

28

The same principles apply to the instant case.  The One Gun Law cannot be cured, either by a narrowing construction or by severing an unconstitutional provision from the statute.  The Plaintiffs' prayer for relief enjoining the enforcement of the One Gun Law should accordingly be granted.

**3. Failure of the State Police to implement procedures for Collectors and Competitors to apply for the Exemptions violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 1 of the New Jersey Constitution as well as New Jersey's Fundamental Fairness Doctrine**

It is well settled that the liberty and property interests implicated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution are broadly understood and applied:

> . . . the Court has fully and finally rejected the wooden distinction between "rights" and "privileges" that once seemed to govern the applicability of procedural due process rights.  The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.  By the same token, the Court has required due process protection for deprivations of liberty beyond the sort of formal constraints imposed by the criminal process.

Board. of Regents v. Roth, 408 U.S. 564, 571-72 (1972).

Due process concerns are directly implicated where a person is deprived of a liberty or property interest without a procedure available to vindicate that interest.  See, e.g.,

29

Humphries v Country of Los Angeles, 554 F.3d 1170, 1199-1201
(9th Cir. 2009)(child abuse registry violated due process where
no procedure existed for expungement of erroneously included
name from list); Alexandre v Cortes, 140 F.3d 406, 413 (2d Cir.
1998)(due process violated where there was no procedure for
arrestee to contest city's handing over vehicle to lienholder),

New Jersey courts apply the same due process analysis under
Article 1, Section 1 of the New Jersey Constitution as federal
courts under the United States Constitution.  K.J. ex rel. Lowry
v. Division of Youth and Family Services, 363 F. Supp. 2d 728
(D.N.J. 2005).

However, the New Jersey Constitution provides extra
protection from arbitrary state action by virtue of the
Fundamental Fairness Doctrine:

> . . . the doctrine of fundamental fairness, which
> has roots in the New Jersey Constitution and in New
> Jersey common law, has been applied to grant persons
> procedural protections that may exceed those offered
> by the due process clause of the federal
> constitution.

In re Kimber Petroleum Corporation, 110 N.J. 69 (1988).

The New Jersey Supreme Court has explained it as follows:

> New Jersey's doctrine of fundamental fairness "serves
> to protect citizens generally against unjust and
> arbitrary governmental action, and specifically
> against governmental procedures that tend to operate
> arbitrarily. [It] serves, depending on the context, as
> an augmentation of existing constitutional protections

30

or as an independent source of protection against state action." [Emphasis in original.]

Doe v Poritz, 142 N.J. 1 (1995).

The manner in which the One Gun Law has been implemented (i.e., the absence of regulatory procedures and guidelines) violates both Due Process and Fundamental Fairness. The New Jersey legislature has explicitly provided narrow Exemptions for Collectors and Competitors, yet there is no established procedure or mechanism by which such individuals can apply for and receive such Exemptions.

S3104 expressly directs the State Police to adopt such procedures and provides for the State Police to do so immediately via temporary regulations:

> b. The applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased. . . .
>
> d. Notwithstanding the provisions of the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), the superintendent may adopt, immediately upon filing with the Office of Administrative Law, such temporary regulations as the superintendent deems necessary to implement the provisions of P.L. , c. (C. ) (pending before the Legislature as this bill).

Section 5 of S3104 even authorizes advance action by the State Police, prior to the effective date of the law, to timely implement the Exemptions:

31

> 5. This act shall take effect immediately; provided however, the Superintendent of State Police may take any anticipatory administrative action prior to the effective date necessary for its timely implementation.

Yet, the State Police were and remain wholly unprepared to implement the Exemptions, as evidenced from the January 14, 2010 conversation between Plaintiff Bach and State Police Lieutenant David Schlueter of the Firearms Unit.  Lieutenant Schlueter did not know S3104 had been signed, did not even have a copy of the text of the law and had no idea when he would receive it or when a form might be prepared for an individual to apply for an Exemption – all this notwithstanding that State Police Lieutenant Colonel Christopher Andreychek was the Superintendent's designee on the Task Force and was directly involved in the development of the Exemptions over many months. (See Bach Cert. ¶¶ 22-26.)

Because of the inaction of the State Police, Collectors and Competitors are being denied a right that the legislature has expressly provided them in the One Gun Law.  Since the absence of a procedure to vindicate a liberty or property interest is a core due process violation, enforcement of the One Gun Law in the absence of a procedure to apply for and obtain the Exemptions is a violation of the Fourteenth Amendment and the New Jersey Constitution and should be enjoined.

32

**4. Restriction by municipal police departments of the number of Handgun Purchase Permits individuals may apply for is a direct violation of N.J.A.C. 13:54-1.4(h)**

N.J.A.C. 13:54-1.4(h) provides as follows:

Applicants for a permit to purchase a handgun may apply for more than one permit per application. The number of permits requested, and each permit number shall be entered in the spaces provided on the application.

Thus, New Jersey law expressly provides that an applicant may apply for more than one Handgun Purchase Permit at a time. Yet, as illustrated in the certifications submitted herewith, since the enactment of the One Gun Law, there has been massive confusion and inconsistency among municipal police departments regarding the law's impact on the permitting process. Applicants are being told either that they may not receive more than one <u>permit</u> per month, or, worse, that they may not even begin the application process for a second permit until the first permit is not only issued, but actually used (potentially three to six months following issuance). The latter approach is especially egregious to Collectors and Competitors, because it could turn the one gun a month law into a two or three guns a year law due to the months-long delays frequently experienced in the permitting process.

Neither of these approaches is consistent with prior or current law, yet the State Police appear to have done nothing to

33

proactively dispel these misconceptions among 566 municipal police departments, opting instead to simply field isolated telephone calls that they happen to receive from individual municipalities.  New Jerseyans should not have to educate their own police departments as to the law – especially when the State Police have provided no statewide guidance.

To the extent that municipal police departments are in direct violation of N.J.A.C. 13:54-1.4(h), injunctive relief is warranted enjoining them from restricting the number of Handgun Purchase Permits that may be applied for and issued.

In view of the foregoing, Plaintiffs have demonstrated more than a reasonable likelihood of success on the merits and injunctive relief should be granted.

### B. Plaintiffs Will Suffer Irreparable Harm if Injunctive Relief is Denied

It is well settled that to show irreparable harm, a movant need only show that the harm is of a peculiar nature, so that compensation in money cannot atone for it ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987).

Further, in the case of the deprivation of constitutional rights, a movant satisfies the irreparable harm requirement if he can show that he is inhibited from exercising his constitutional rights due to a threat of prosecution. Elrod v. Burns, 427 U.S. 347, 348 (1976); Dombrowski v. Pfeister, 380

34

U.S. 479, 490 (1965); Abu-Jamal v. Price, 154 F.3d 128, 136 (3d. Cir. 1998); Hohe v. Casey, 868 F.2d 69, 73 (3d Cir. 1989), cert. denied, 493 U.S. 848 (1989); Lysaght v. State of New Jersey, 837 F. Supp. 646, 653-54 (D.N.J. 1993); Coalition of New Jersey Sportsmen v. Florio, 744 F. Supp. at 608.

In Lysaght, the court held that the state's threat of prosecution produced a chilling effect on the exercise of First Amendment rights and therefore constituted "'direct penalization' of plaintiffs' First Amendment rights…" 837 F. Supp. 646, 653-54 (D.N.J. 1993).

Further, in Coalition of New Jersey Sportsmen, the District Court granted plaintiffs' application for a preliminary injunction because plaintiffs "demonstrated the possibility of irreparable injury, because owners of such firearms . . . face the threat of prosecution." 744 F. Supp. at 608.

Here the irreparable harm is patent. The constitutional injury arises from both preemption (the One Gun Law representing a direct violation of the Supremacy Clause) and the Due Process violations arising from the failures of the State Police to enact implementing guidelines and procedures.

As with the statute at issue in Coalition of New Jersey Sportsmen, violation of the One Gun Law carries severe criminal penalties. Specifically, N.J.S. 2C:39-10(a)(1) provides in

35

pertinent part: " . . . any person who knowingly violates the regulatory provisions relating to . . . retailing of firearms (section 2C:58-2), permits to purchase certain firearms (section 2C:58-3) . . . is guilty of a crime of the fourth degree."

Plaintiffs Bach and Johnson and members of the Association seek to purchase more than one handgun within a 30-day period, including, but not limited to, B-B and pellet-firing air handguns.  Although these plaintiffs have applied for Handgun Purchase Permits, they face prosecution if they attempt to purchase more than one handgun within a 30-day period.

Similarly, Bob's seeks to sell handguns to purchasers such as Bach, Johnson and members of the Association but faces prosecution if he sells more than one handgun to a purchaser within a 30-day period.  This threat of prosecution focuses the irreparable constitutional injury squarely on these Plaintiffs.

Moreover, the inability of Collectors and Competitors to apply for the Exemptions cannot be remedied by monetary relief, nor can the municipalities' unlawful permit rationing.

Each of these constitutes irreparable harm, and therefore injunctive relief should be granted.

## C.  The Constitutional Harm from Denying the Injunction is not Outweighed by Any Harm to Defendants

Where, as here, the offending statute is preempted outright

36

by federal law, balancing of harm is not a factor on a motion for a preliminary injunction.  In <u>Bank One v. Guttau</u>, 190 F.3d 844, 847-48 (8th Cir. 1999) the court of appeals explained:

> . . . the balance-of-harm and public-interest factors need not be taken into account in a situation such as the present case.  If Bank One proves that [the statute is preempted by federal law] and that it will suffer irreparable harm . . . then the question of harm to the State and the matter of public interest drop from the case, for Bank One will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provision of state law.

Nevertheless, even if applied by the Court, the weighing of harm favors the granting of injunctive relief.  As shown above, there are severe constitutional injuries that will continue to inure to Plaintiffs if injunctive relief is denied.  The One Gun Law is fundamentally unconstitutional in that it violates the Supremacy Clause by directly conflicting with federal law.

Further, the manner of implementing the One Gun Law violates the Due Process rights of Collectors and Competitors and is therefore also unconstitutional on that basis as well.

However, granting preliminary injunctive relief will not work any significant harm to Defendants, since the legislature can rewrite the One Gun Law to pass constitutional muster.  As the Third Circuit has held, "neither the Government nor the public generally can claim an interest in the enforcement of an

unconstitutional law." <u>ACLU v Reno</u>, 217 F.3d 162 (3d. Cir. 2000). Defendants cannot be heard to offer any alleged public safety purpose of the One Gun Law to weigh against the constitutional injuries being suffered by Plaintiffs. In the balancing of harm, even a law with an alleged public safety purpose cannot outweigh the paramount requirement of constitutionality.[6] <u>See</u> <u>A.A. v New Jersey</u>, 176 F. Supp. 2d 274, 307 (D.N.J. 2001)(Constitutional rights take precedence even over the State's public safety interest in sex offender registry).

Even assuming <u>arguendo</u> that there were some harm to Defendants that might result from an injunction, the legislature can fix the statute to eliminate its constitutional deficiencies. Thus any claimed harm would be temporary at most.

Further, it is entirely within the control of the State Police to determine how quickly they cure the Due Process infirmities of the One Gun Law. The law not only authorized the

---

[6] Defendants may attempt to make a record of how beneficial they believe the One Gun Law might be which Plaintiffs could readily refute. However, such an exercise is entirely misplaced where a statute is found likely to be unconstitutional. Here the balancing prong could not even be reached without such a finding. As noted above, opponents of the One Gun Law argued that the law's alleged public safety benefit is entirely illusory —— a conclusion that may find support in South Carolina's decision to repeal its one gun a month law after 29 years. But the Court need not and should not accept any such invitation, should Defendants offer it, as such an inquiry has

State Police to address this issue immediately, but also authorized the implementation of anticipatory measures many months prior to the law's effective date. Thus, any concern that an injunction might somehow work great harm to the state interest can be immediately remedied by the State Police by immediately enacting procedures to enable Collectors and Competitors to apply for the Exemptions, eliminating that particular Due Process harm.

As to enjoining the rationing of permits, there simply can be no harm from issuance of that aspect of the injunction sought. The One Gun Law does not even address the subject of permit rationing, but pre-existing law on the subject does, and is dispositive of the issue (permit rationing is not authorized, as noted above), so no harm can result from enjoining further permit rationing. Even where multiple permits are issued, the One Gun Law still limits the number of handguns that can be purchased within a 30 day period, which was the only intent of the law in the first instance. Thus, Defendants cannot complain of harm. Therefore, since the constitutional harm from denying the injunction is not outweighed by any harm to Defendants, Plaintiff's motion should be granted.

---

no bearing on the constitutional infirmity of the law.

**D. The Public Interest Favors Injunctive Relief**

As the Court stated in Coalition of New Jersey Sportsmen, "the public interest is served in ensuring that congressional regulation of interstate commerce supersedes conflicting and contradictory state regulations." 744 F. Supp. at 608. Thus, the public has a strong interest in preventing constitutional violations and violations of law.

Here, there is direct preemption of the One Gun Law by federal law. There is also patent violation of the Fourteenth Amendment and the New Jersey Constitution. And some municipal police departments are directly violating law and regulation by rationing permits. Such violations directly implicate the public interest and therefore injunctive relief should be granted.

## CONCLUSION

Because of the severe constitutional infirmities in the One Gun Law and the clear deprivations of Plaintiffs constitutional and statutory rights, Plaintiffs respectfully request that the Court grant their application for preliminary injunctive relief.

<div style="margin-left:40%">

FARER FERSKO,
A Professional Association
Attorneys for Plaintiffs

By: /s/ Daniel L. Schmutter
       Daniel L. Schmutter

</div>

Dated: February 4, 2010

<div style="text-align:center">40</div>