UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A. JOHNSON; and BOB'S LITTLE SPORT SHOP, INC., a New Jersey Corporation, : | CIVIL ACTION No. 10-cv-271-JAP-TJB : On Plaintiffs' Motion for a Preliminary Injunction Pursuant to Fed.R.Civ.P. 65 |
|     Plaintiffs, : | |
|             v. : | Before: Honorable Joel A. Pisano, U.S.D.J. |
| JON S. CORZINE, Governor of the State of New Jersey; ANNE MILGRAM, Attorney General of the State of New Jersey; COLONEL RICK FUENTES, Superintendent, Division of New Jersey State Police; WASHINGTON TOWNSHIP (Morris County); and XYZ MUNICIPALITIES 1-565; : | Return Date: March 15, 2010 |
|     Defendants. : | |

_____

**BRIEF ON BEHALF OF THE GOVERNOR OF THE STATE OF NEW JERSEY, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND THE SUPERINTENDENT OF THE NEW JERSEY DIVISION OF STATE POLICE, DEFENDANTS IN THIS ACTION, IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for the State Defendants-
    Respondents (the Governor of the
    State of New Jersey, the Attorney
    General of the State of New Jersey,
    and the Superintendent of the New
    Jersey Division of State Police)
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

LARRY R. ETZWEILER
larry.etzweiler@law.dol.lps.state.nj.us
Senior Deputy Attorney General, Division of Law
(609) 633-7786
    On the Brief

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE MATTER INVOLVED . . . . . . . . . . . . . . 3

    I.   New Jersey's "One Handgun Per Month" Law . . . . . . . 4

    II. Plaintiffs' Complaint and Demand for
       Preliminary Injunctive Relief.. . . . . . . . . . . 7

        A.   Alleged Preemption by 15 <u>U.S.C.</u> §
            5001(g)(ii) - Counts One and Two.. . . . . . . . 9

        B.   Alleged Tardiness in Effecting Exemption
            Forms - Counts Three, Four, Five, and
            Six . . . . . . . . . . . . . . . . . . . . . . 12

        C.   Applying for More than One Permit in a
            Single Application - Counts Seven and
            Eight . . . . . . . . . . . . . . . . . . . . . 14

LEGAL ARGUMENT

    PLAINTIFFS ARE ENTITLED TO NONE OF THE PRELIMINARY
    INJUNCTIVE RELIEF THAT THEY SEEK . . . . . . . . . . . 19

        A.   Plaintiffs Cannot Demonstrate a
            Likelihood of Success on the Merits . . . . . . 20

            1.   Plaintiffs Have No
                Likelihood of Success
                with Respect to Counts
                One and Two.. . . . . . . . . . . . . . . 21

            2.   Plaintiffs Have No
                Likelihood of Success
                with Respect to Counts
                Three, Four, Five, and
                Six.. . . . . . . . . . . . . . . . . . . 25

            3.   Plaintiffs Have No
                Likelihood of Success
                with Respect to Counts
                Seven and Eight.. . . . . . . . . . . . . 27

**TABLE OF CONTENTS** (continued)

PAGE

        4.    Plaintiffs Have No Likelihood of Success with Respect to Any of Their State-Law Claims . . . . . . . . . 28

   B.  Plaintiffs Will Suffer No Irreparable Injury If the Preliminary Injunction That They Request Is Denied . . . . . . . . . . . 29

   C.  Granting Preliminary Relief Will Result in Greater Harm to Other Interested Parties, Including the General Public; and Likewise, the Public Interest Surely Does Not Favor Preliminary Relief.. . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 33

**TABLE OF AUTHORITIES**

CASES

Application of Marvin, 53 N.J. 147 (1969).. . . . . . . . . . 1, 31

Berk v. HMC Int'l, Inc., 2007 U.S. Dist. LEXIS 29999
(D.N.J. Apr. 23, 2007) . . . . . . . . . . . . . . . . . . 19

Borough of W. Mifflin v. Lancaster, 45 F.3d 780
    (3d Cir. 1995) . . . . . . . . . . . . . . . . . . 28

Coalition of New Jersey Sportsmen v. Florio,
    744 F. Supp. 602 (D.N.J. 1990).. . . . . . . . . 22, 23, 30

Fort Valley Harvestore Inc. v. A.O. Smith
    Harvestore Products, Inc., 545 F.2d 1096
    (7th Cir. 1976). . . . . . . . . . . . . . . . . . 19

GTE Corp. v. Williams, 731 F.2d 676 (10th Cir. 1984). . . . . 19

Intel Corp. v. ULSI Sys. Technology,
    995 F.2d 1566 (Fed. Cir. 1993).. . . . . . . . . . . . 19

Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700
    (3d Cir. 2004).. . . . . . . . . . . . . . . . . . 20, 29

PAGE

CASES (continued)

Pennhurst State School & Hospital v. Halderman,
    465 U.S. 89 (1983).. . . . . . . . . . . . 3, 24, 28, 29, 32

State v. Mieles, 199 N.J. Super. 29 (App. Div.),
    certif. denied, 101 N.J. 265 (1985). . . . . . . . . . 10

United States v. Lambert, 695 F.2d 536 (11th Cir. 1983).. . . . 19

Yakus v. United States, 321 U.S. 414 (1944).. . . . . . . . . 19


UNITED STATES STATUTES

15 U.S.C. § 5001(g)(ii).. . . . . . . . 2, 3, 6, 9-11, 21-24, 30

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . 8


NEW JERSEY STATUTES

N.J.S.A. 1:3-1 . . . . . . . . . . . . . . . . . . . . . 5, 25

N.J.S.A. 10:6-1 . . . . . . . . . . . . . . . . . . . . . . 8

N.J.S.A. 2C:58-2(a)(3). . . . . . . . . . . . . . . . . . . 7

N.J.S.A. 2C:58-2(a)(7) . . . . . . . . . . . . . . . . . . . 4

N.J.S.A. 2C:58-2(a)(7)(a) . . . . . . . . . . . . . . . . . 4

N.J.S.A. 2C:58-2(a)(7)(b) . . . . . . . . . . . . . . . . . 4

N.J.S.A. 2C:58-3(i) . . . . . . . . . . . . . . . . . . 4-6, 26

N.J.S.A. 2C:58-3(i)(1) . . . . . . . . . . . . . . . . . . . 4

N.J.S.A. 2C:58-3(i)(2) . . . . . . . . . . . . . . . . . . . 4

N.J.S.A. 2C:58-3.4 . . . . . . . . . . . . . . . . . . . 6, 25

N.J.S.A. 2C:58-3.4(a) . . . . . . . . . . . . . . . . . . . 6

N.J.S.A. 2C:58-3.4(a)(1) . . . . . . . . . . . . . . . . . . 7

N.J.S.A. 2C:58-3.4(a)(2) . . . . . . . . . . . . . . . . 7, 12

PAGE

### NEW JERSEY STATUTES (continued)

N.J.S.A. 2C:58-3.4(b) . . . . . . . . . . . . . . . . . . . . 7

N.J.S.A. 2C:58-3.4(d) . . . . . . . . . . . . . . . . . . . . 25


### NEW JERSEY SESSION LAWS

2009 N.J. Laws c. 104 . . . . . . . . . . . . . . . . . . 4, 7

2009 N.J. Laws c. 168 . . . . . . . . . . . . . . . . . 4, 5, 7

2009 N.J. Laws c. 186 . . . . . . . . . . 4-7, 12, 13, 25, 26, 30


### FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P. 12(b)(1) . . . . . . . . . . . . . . . . . . . 20

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . 20

Fed.R.Civ.P. 65 . . . . . . . . . . . . cover page to this brief


### NEW JERSEY ADMINISTRATIVE REGULATIONS

N.J.A.C. 13:54-1.4(h) . . . . . . . . . . . . . . . . . . . 15


### OTHER SOURCES CITED

Governor's Firearms Advisory Task Force,
    Initial Report, November 12, 2009. . . . . . . . . 2, 10, 32

**PRELIMINARY STATEMENT**

The State defendants (the Governor and Attorney General of New Jersey and the Superintendent of the New Jersey Division of State Police) submit this brief in opposition to plaintiffs' February 3, 2010, motion for a preliminary injunction. This brief refers to and incorporates arguments from our February 24, 2010, brief in support of our motion to dismiss plaintiffs' complaint. A copy of the February 24, 2010, brief is submitted with these papers (and is designated on PACER as an exhibit).

Plaintiffs, who wish to purchase or sell handguns, seek a preliminary injunction enjoining New Jersey's so-called "One Handgun Per Month Law" that is now part of New Jersey's Gun Control Law. Their challenge, if successful, would diminish public safety; and the challenge is completely lacking in merit.

As to the former, a government's foremost function is to ensure the safety of its citizenry, and New Jersey's Gun Control Law fulfills this function by "seek[ing] to prevent criminal and other unfit elements from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences." Application of Marvin, 53 N.J. 147, 150 (1969). The One Handgun Per Month Law, which provides (with exceptions) that no person may purchase more than one handgun in any thirty (30) day period, is an important part of the Gun Control Law that was designed to combat a particularly lethal way by which criminal and other unfit elements acquire weapons. The One Handgun

Per Month Law was intended to deter and does deter "straw purchases" of multiple handguns for the purpose of selling them to criminals and others unable lawfully to obtain them because of a criminal record or other disqualifying circumstances.  Governor's Firearms Advisory Task Force, Initial Report, November 12, 2009, p. 6.  The injunction that plaintiffs seek would deprive the public of the security that the One Handgun Per Month confers.

Additionally, plaintiffs' challenge lacks merit.  As developed herein, plaintiffs' primary attack upon the One Handgun Per Month Law is that it allegedly prohibits the sale of certain B-B handguns and other non-traditional handguns that the Federal Toy Gun Law designates (despite their design as devices that can be fired by the use of a single hand) as "traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure," 15 U.S.C. § 5001(g)(ii), and as to which Congress has provided that "no State shall . . . prohibit the sale (other than the sale to minors) of" these devices.  Id. (emphasis added).  Plaintiffs have no likelihood of success on the merits of this argument because New Jersey's law does not prohibit the sale of these non-traditional handguns; it merely limits the timing of sales of handguns to one per month.  And even if plaintiffs' argument had merit, it would afford no basis for completely enjoining enforcement of the law; it would afford at most a basis

for barring the law's application to the 15 U.S.C. § 5001(g)(ii) devices.

Plaintiffs also attack the alleged tardiness of the Division of State Police in promulgating procedures and forms to implement exemptions from the One Handgun Per Month Law that require prior approval by the Superintendent; and they attack as well the refusal of some municipalities to process, in any thirty (30) day period, more than one application for a permit to purchase a handgun or any application for more than one permit to purchase.  Plaintiffs have no likelihood of success on the merits because these alleged violations of State law do not state viable federal claims and state at most State-law claims; because these arguments, too, even if they had merit, would afford no basis for completely enjoining enforcement of the law; and because plaintiffs' invitation to this Court to resolve the State-law claims is an invitation to violate the State's Eleventh Amendment sovereignty as construed in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1983), depriving federal courts of jurisdiction over equitable and declaratory State-law claims brought against State officials.

<u>**STATEMENT OF THE MATTER INVOLVED**</u>

As noted, plaintiffs challenge and seek preliminary injunctive relief against that part of New Jersey's Gun Control Law called the One Handgun Per Month Law.  Plaintiffs attack both the provisions and implementation of the One Handgun Per Month Law.  This matter

involves the provisions of this very recent law, how it has been implemented to date, its alleged impact upon plaintiffs' interests, and the components of plaintiffs' demand for preliminary injunctive relief.

## I.   New Jersey's "One Handgun Per Month Law"

New Jersey's "One Handgun Per Month Law" is actually a compilation of three separate enactments: 2009 N.J. Laws c. 104 (approved August 6, 2010, to take effect on January 1, 2010), c. 168 (approved January 3, 2010, to take effect immediately), and c. 186 (approved January 12, 2010, to take effect immediately).  The first, c. 104 - the initial enactment - limits handgun purchases to one handgun per person in any thirty (30) day period.  See N.J.S.A. 2C:58-3(i) as amended by c. 104, § 2 (except as otherwise provided "no more than one handgun shall be purchased within any 30-day period"); see also N.J.S.A. 2C:58-2(a)(7) as amended by c. 104, § 1 ("[a] dealer shall not knowingly deliver more than one handgun to any person within any 30-day period" unless the person enjoys an exemption).  This initial enactment provided exemptions only for law-enforcement officers, for collectors of curios and relics, and for purchases and other transfers by and among licensed firearms dealers.  N.J.S.A. 2C:58-2(a)(7)(a), (b), as amended by c. 104, § 1; N.J.S.A. 2C:58-3(i)(1), (2), as amended by c. 104, § 2.

The second and third enactments, c. 168 and c. 186, provide additional exemptions from the law.  As explained in our February

- 4 -

24, 2010, brief (DDE #10-3 at pp. 33 to 35 (internal pp. 26 to 28)[1], the statutory language of c. 186, § 2, clashes in form although not in substance with the language of c. 168, § 2; as a consequence of which New Jersey law requires implementation of the harmonizing procedures of N.J.S.A. 1:3-1 (discussed in DDE #10-3 at pp. 34 to 35 (internal pp. 27 to 28)) before the clashing parts may officially be codified as part of the New Jersey Statutes.  As of the date this brief is being written, that harmonization has not yet occurred, and references to the clashing language must therefore be cited by session-law citation, rather than by citation to the New Jersey Statutes.

The exemptions effected by c. 168 and c. 186 include transfers from any person to a licenced dealer; purchases and other transfers by and among licensed dealers and registered manufacturers; and situations in which a purchaser returns his or her handgun to a dealer in exchange for another handgun.  None of these exemptions requires prior approval by the Superintendent, and none is directly at issue in this litigation (except insofar as all of the exemptions help to rebut plaintiffs' claim that the One Handgun Per

---

[1]     "DDE" stands for the "District [Court] Docket Entry." This abbreviation comports with the abbreviations recently recommended by the Clerk of the United States Court of Appeals for the Third Circuit.  See Order Options for Filing Appendix dated March 17, 2009, p. 1, Option B, ¶ 1 (last sentence), available at http://www.ca3.uscourts.gov/ORDER_OPTIONS_FOR_FILING_APPENDIX.pdf (last visited February 19, 2010).

Month Law effects a "prohibit[ion]" on the sale of the 15 U.S.C. § 5001(g)(ii) devices that New Jersey law classifies as a handgun).

Very much at issue in this litigation is the last set of exemptions provided by c. 186, § 2, which amends N.J.S.A. 2C:58-3(i) by adding an exemption for

> any transaction where the superintendent [of the Division of State Police] issues an exemption from the prohibition in this subsection pursuant to the provisions of N.J.S.A. 2C:58-3.4.

Because this addition to N.J.S.A. 2C:58-3(i) has not yet been officially codified, this brief, like our February 24, 2010, brief, hereinafter refers to this set of exemptions -- which is only part of the exemptions effected by c. 186, but which is the only set of exemptions for which the superintendent must give prior approval -- as the "c. 186, § 2, superintendent-conferred set of exemptions."

The provisions of c. 186, § 4, creating a new section, have officially been codified as N.J.S.A. 2C:58-3.4, and serve to implement the c. 186, § 2, superintendent-conferred set of exemptions. These § 4 provisions enumerate several sets of circumstances not otherwise covered in the law and under which a person may apply to the superintendent for and obtain an exemption; and they grant the superintendent authority to prescribe procedures and forms for doing so. See N.J.S.A. 2C:58-3.4(a) ("The superintendent may grant an exemption from the restriction on the purchase of handguns . . . if the applicant demonstrates to the

satisfaction of the superintendent that the applicant's request" falls within one of the enumerated circumstances); N.J.S.A. 2C:58-3.4(b) ("The applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased."). The circumstances for which the superintendent may confer exemptions include: purchases of multiple handguns from a person who acquired them by inheritance or intestacy, N.J.S.A. 2C:58-3.4(a)(1); purchases by collectors needing multiple handguns in furtherance of collecting activities, N.J.S.A. 2C:58-3.4(a)(2); and purchases by competitors in handgun shooting competitions needing to acquire multiple handguns for competitive purposes, N.J.S.A. 2C:58-2(a)(3).

## II. Plaintiffs' Complaint and Demand for Preliminary Injunctive Relief

As noted, the original version of the One Handgun Per Month Law was approved on August 6, 2010, to take effect on January 1, 2010. 2009 N.J. Laws c. 104, § 3. The amendment effecting the c. 168 exemptions was approved on January 3, 2010, to take effect immediately. 2009 N.J. Laws c. 168, § 3. And the amendment effecting the c. 186 exemptions, including the c. 186, § 2, superintendent-conferred set of exemptions, was approved on January 12, 2010, to take effect immediately. 2009 N.J. Laws c. 186, § 5.

Five days later, on Sunday, January 17, 2010, plaintiffs filed their complaint. (DDE #1). The four plaintiffs are a rifle-and-pistol club (the Association of New Jersey Rifle and Pistol Clubs,

- 7 -

hereinafter Association); the president of the club, Scott L. Bach, who wishes to purchase handguns; a gun shop federally and State-licensed as a retail dealer of firearms (Bob's Little Sport Shop, hereinafter Bob's); and another person, Kaare A. Johnson, who also wishes to purchase handguns.  (Complaint ¶¶ 5 to 8, DDE #1 at pp. 2 to 3; ¶¶ 44 and 45, DDE #1 at p. 14; ¶¶ 53 to 55, DDE #1 at p. 16; ¶¶ 68, 69, DDE #1 at p. 19).  Named as defendants were the Governor and Attorney General of New Jersey and the Superintendent of the New Jersey Division of State Police (the State defendants) as well as codefendant Washington Township (Morris County) and 565 municipalities fictitiously designated as "XYZ Municipalities 1-565."  Each of the eight counts in plaintiffs' complaint relies upon 42 U.S.C. § 1983 as a basis for obtaining the relief requested; and in addition, counts one, three, five, and seven rely upon the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.

On February 3, 2010, plaintiffs filed this motion seeking preliminary injunctive relief, together with supporting certifications and a brief.  (DDE #5-main (motion), #5-1 (brief), #5-2 (certification of plaintiff Scott L. Bach), #5-3 (Exhibit A appended to Bach certification, see Bach certification ¶ 11, DDE #5-2 at pp. 5 to 6), #5-4 (Exhibit B appended to Bach certification, see Bach certification ¶ 12, DDE #5-2 at p. 6), #5-5 (certification of plaintiff Kaare A. Johnson), #5-6 (Exhibit A appended to Johnson certification, see Johnson certification ¶ 9,

- 8 -

DDE #5-5 at p. 3), #5-7 (Exhibit B appended to Johnson certification, see Johnson certification ¶ 10, DDE #5-5 at pp. 3 to 4), #5-8 (certification of non-party Jonathon Friedman, M.D.), #5-9 (certification of non-party Steven Yagiello), #5-10 (certification of non-party Daniel Strachman), #5-11 (certification of non-party Richard Gajda), #5-12 (certification of non-party Robert Viden, see note 2 infra), #5-13 (text of proposed Order)).   Plaintiffs' February 3, 2010, brief in support of preliminary injunctive relief (DDE #5-1) was supplanted by a corrected brief (DDE #6) that they filed the next day, February 4, 2010.   This brief responds to plaintiffs' February 4, 2010, brief (DDE #6).

Plaintiffs' complaint as well as their motion seeking preliminary injunctive relief is three-fold; and each of subparts A, B, and C, immediately following, separately summarizes each part of the three-part complaint, and summarizes as well the preliminary injunctive relief that plaintiffs seek on the basis of the allegations in that part.

## A.   Alleged Preemption by 15 U.S.C. § 5001(g)(ii) - Counts One and Two

As to counts one and two, plaintiffs allege, and the State defendants agree, that the One Handgun Per Month Law governs the sale and purchase of certain B-B and air-powered handguns and other devices that New Jersey law designates as "handguns" but that the Federal Toy Gun Law designates, despite their design as devices that can be fired by the use of a single hand, as

- 9 -

> traditional B-B, paint ball, or pellet-firing
> air guns that expel a projectile through the
> force of air pressure.

[15 U.S.C. § 5001(g)(ii).]

The Legislature's reason for regulating the possession and sale of these non-traditional handguns in the Gun Control Law, and hence in the One Handgun Per Month Law, is patent: these devices, although not traditional handguns, can still cause serious injury, State v. Mieles, 199 N.J. Super. 29, 37 (App. Div.), certif. denied, 101 N.J. 265 (1985), and

> from the viewpoint of the victim caught in the
> stress of a robbery the threat of a BB pistol
> is likely to seem equal to the threat from a
> traditional firearm.  Indeed we do not think
> the victim will discern the difference.

[Id. at 38.]

And these devices, although not traditional handguns, can also proliferate by unlawful "straw purchases." The Legislature's decision to include these non-traditional handguns with the traditional handguns regulated by the One Handgun Per Month Law thus advances the law's primary purpose which, as noted, is

> to deter "straw purchases" of multiple
> handguns, that is, purchases of handguns by
> persons for the purpose of selling or
> transferring the handguns to others who would
> not lawfully be able to obtain them because of
> a prior criminal record or other disqualifying
> circumstances.

[Governor's Firearms Advisory Task Force,
Initial Report, supra p. 6.]

- 10 -

The Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii), provides that "no State shall . . . prohibit the sale (other than the sale to minors) of" these non-traditional handguns. (Emphasis added.) Plaintiffs contend that, in limiting (with multiple exceptions) the sale of these non-traditional handguns to one per person per thirty (30) day period, New Jersey has in effect "prohibit[ed]" the sale of these non-traditional handguns in contravention of congressional preemption.

Plaintiffs Bach and Johnson, as well as members of plaintiff Association, desire to purchase, within a thirty (30) day period, more than one handgun, including one or more of these non-traditional handguns; and plaintiff Bob's wishes to sell them. (Complaint count one ¶¶ 43, 44, 45, 46, DDE #1 at pp. 14 to 15). Plaintiffs' complaint seeks injunctive relief (count one) and declaratory relief (count two) to mandate compliance with their interpretation of 15 U.S.C. § 5001(g)(ii). (Complaint count one ¶ 48, count two ¶ 50, DDE #1 at p. 15).

On the basis of the alleged 15 U.S.C. § 5001(g)(ii) preemption, plaintiffs' motion for preliminary injunctive relief seeks not merely a preliminary injunction enjoining the enforcement of the One Handgun Per Month Law as applied to the 15 U.S.C. § 5001(g)(ii) devices, but seeks instead a preliminary injunction completely enjoining enforcement of the One Handgun Per Month Law as applied to all handguns. (Proposed text of Order ¶ 2, DDE #5-13

- 11 -

at pp. 2 to 3).  Plaintiffs' February 4, 2010, brief argues that
the law "cannot be saved through a narrowing construction or
severance" (DDE #6 at p. 28 (internal p. 21)), and that on this
basis enjoinment of the entire law, rather than just a portion
thereof, is the appropriate relief.

**B.   Alleged Tardiness in Effecting Exemption Forms - Counts
      Three, Four, Five, and Six**

In counts three, four, five, and six, plaintiff Bach and
members of plaintiff Association allege that they should and want
to qualify for one or more of the exemptions contained within the
c. 186, § 2, superintendent-conferred set of exemptions.
(Complaint ¶¶ 52, 54, DDE #1 at p. 16).  However, plaintiffs
allege, and the State defendants agree, that at the time of the
filing of their complaint and of their motion for a preliminary
injunction (and also now, as this brief is being drafted) the
Division of State Police had not (and has not yet) promulgated the
procedures and forms by which would-be exemptees may apply for
these exemptions.  In support of their claim (which, however, these
defendants do not dispute) that the forms are not yet promulgated,
plaintiffs submitted the certification dated January 31, 2010, of
non-party Richard Gajda, who stated that he is a collector of
handguns and would be entitled to the collectors' exemption
(N.J.S.A. 2C:58-3.4(a)(2)) but is unable to apply for it because

- 12 -

there is no method for doing so.  (Gajda certification ¶¶ 1 to 4, 7, 8, DDE #5-11 at pp. 1 to 3).[2]

In plaintiffs' view, their (temporary) inability to apply for and to obtain these exemptions contravenes State law; but in plaintiffs' view, the situation is even worse.  Plaintiffs contend that the Division's alleged tardiness in publishing the forms effects a violation not only of the One Handgun Per Month Law, but also of their Fourteenth Amendment due-process rights (complaint count three ¶ 58, DDE #1 at p. 17) and their rights conferred by the corresponding provisions of the New Jersey Constitution. (Complaint count five ¶ 63, DDE #1 at p. 18).  Plaintiffs therefore seek "preliminary and permanent injunctive relief" (complaint count three ¶ 59, DDE #1 at p. 17; count five ¶ 63, DDE #1 at p. 18); and

---

[2]     In the certification in support of plaintiffs' motion for a preliminary injunction filed on February 3, 1010, by Robert Viden, not a party to this suit but the owner of plaintiff Bob's, Viden certifies that Bob's has lost business because its customers want but are unable to apply for and to obtain any of the exemptions contained within the c. 186, § 2, superintendent-conferred set of exemptions. (DDE #5-12).   Unlike this certification, plaintiffs' complaint does not allege that plaintiff Bob's is harmed by the alleged tardiness of the Division of State Police in promulgating and publishing exemption forms.  Plaintiffs can therefore be faulted for submitting certifications allegedly supporting relief  on bases that their complaint does not allege. Because plaintiffs might seek to amend their complaint to include these new allegations on behalf of Bob's, we shall construe the complaint as including non-party Viden's allegations on behalf of plaintiff Bob's.   The Legal Argument _infra_ demonstrates that plaintiffs' complaint and certifications, even as supplemented by the Viden certification on behalf of plaintiff Bob's, fail to support preliminary injunctive relief because, among other reasons, the complaint continues to fail to state a claim upon which relief can be granted.

"declaratory relief holding that the One Handgun [Per Month] Law [both] violates the Due Process Clause of Amendment XIV of the United States Constitution" (complaint count four ¶ 61, DDE #1 at p. 17) and violates as well "the Due Process Clause of Article 1, ¶ 1 of the New Jersey Constitution, as well as [New Jersey's] Fundamental Fairness Doctrine." (Complaint count six ¶ 65, DDE #1 at p. 18).

Plaintiffs' motion for preliminary injunctive relief does not seek a preliminary injunction compelling the State defendants to promulgate forms or otherwise to process and to accept or reject their applications for exemptions. Instead, it seeks a preliminary injunction completely enjoining enforcement of the One Handgun Per Month Law as applied to all handguns, whether the applicant does or does not enjoy an exemption. (Proposed text of Order ¶ 2, DDE #5-13 at pp. 2 to 3). Plaintiffs' February 4, 2010, brief explains plaintiffs' rationale for this far-sweeping form of relief:

> Since the absence of a procedure to vindicate a liberty or property interest is a core due process violation, enforcement of the One Gun Law in the absence of a procedure to apply for and obtain the Exemptions is a violation of the Fourteenth Amendment and the New Jersey Constitution and should be enjoined.

> [DDE #6 at p. 39 (internal p. 32).]

### C. Applying for More than One Permit in a Single Application - Counts Seven and Eight

In counts seven and eight, plaintiffs contend that the One Handgun Per Month Law did not revise pre-existing State law as

- 14 -

administratively codified in N.J.A.C. 13:54-1.4(h) pursuant to which an applicant may apply for and obtain in a single application more than one permit to purchase a handgun. And plaintiff Johnson wants to apply in a single application for more than one permit to purchase. (Complaint ¶ 68, DDE #1 at p. 19). However, in correspondence dated January 8, 2010, the Chief of Police of codefendant Washington Township informed Johnson that as of January 1, 2010, the Division of State Police was permitting, in a single thirty (30) day period, only one application for a single permit to purchase and no application for more than one permit to purchase. (Complaint ¶ 70, DDE #1 at p. 19; Johnson certification ¶¶8, 9, DDE #5-5 at p. 3; DDE #5-6). Members of plaintiff Association as well as other persons have been similarly constrained in their applications submitted to other municipalities. (Complaint ¶¶ 73 and 74, DDE #1 at p. 20).

The papers filed on February 3, 2010, in support of their application for a preliminary injunction further elaborate upon plaintiffs' allegations in counts seven and eight. Plaintiff Johnson certified that in correspondence dated January 25, 2010, codefendant Washington Township revised its position and informed Johnson that, in a single application, Johnson could apply for more than one permit to carry. (Johnson certification ¶ 10, DDE #5-5 at pp. 3 to 4; DDE #5-7). Similarly, Rockaway Township first denied and then, upon the advice of the New Jersey Division of State

Police, allowed plaintiff Bach to apply in a single application for more than one permit to carry.  (Bach certification ¶¶ 27, 28, DDE #5-2 at p. 12).

Like plaintiffs Bach and Johnson, non-parties Daniel Strachman of Fanwood, New Jersey, and Jonathon Friedman, M.D., of Mendham, New Jersey, certified that they were initially denied the right, and later granted the right to apply, in a single application, for more than one permit to purchase; and Strachman certified that he was informed that the Mendham Police Department's change in position derived from more recent advice provided by the Division of State Police.  (Friedman certification ¶¶ 2, 3, 4, DDE #5-8 at p. 2; Strachman certification ¶ 2, 3, 4, 5, DDE #5-10 at p. 2 to 3).  On the other hand, each of non-parties Richard Gajda of Clinton Township, New Jersey, and Steven Yagiello of Egg Harbor Township, New Jersey, certified that he was denied the right to apply, in a single application, for more than one permit to purchase; and as of the date of the certifications, neither municipality had revised its position on that issue.  (Yagiello certification ¶¶ 2 to 8, DDE #5-9 at pp. 2 to 3; Gajda certification ¶¶ 4, 5, DDE #5-11 at pp. 2).  Moreover, plaintiff Bach certified that plaintiff Association has received "multiple complaints" from its members about this issue.  (DDE #5-2 ¶ 32 at p. 13).

- 16 -

As noted, plaintiffs argue that the constraint upon their right, in a single application, to apply for more than one permit to purchase violates New Jersey's Gun Control Law, even with the One Handgun Per Month Law incorporated as part thereof. But in plaintiffs' view, the situation is even worse. Plaintiffs contend that these constraints effect a deprivation of "substantive rights, privileges, and/or immunities secured by the Constitution and/or laws of the State of New Jersey." (Complaint ¶ 74, DDE #1 at p. 20). Plaintiffs' complaint therefore seeks appropriate injunctive and declaratory relief. (Complaint count seven ¶ 75, DDE #1 at p. 20; count eight ¶ 77, DDE #1 at p. 21).

The text of plaintiffs' proposed Order (DDE #5-13) specifies the components of the preliminary injunctive relief that they seek on the basis of counts seven and eight. Plaintiffs seek preliminarily to enjoin the State defendants and the municipalities from

> restricting the number of permits to purchase a handgun a person may apply for and receive at one time as long as such person is qualified to receive one (1) permit to purchase a handgun.
>
> [text of proposed Order ¶ 3, DDE #5-13 at p. 3; see also id. ¶ 5 at pp. 3 to 4.]

It is not clear whether this injunctive relief would permit questioning an otherwise qualified applicant who applies for multiple permits to purchase whether every permit would be executed for a lawful purpose.

- 17 -

Additionally, plaintiffs seek to compel the State defendants to

> issue a guidance document and/or notification to all police departments within the State of New Jersey responsible for issuing permits to purchase a handgun stating that persons who qualify to receive a permit to purchase a handgun are not limited in the number of permits to purchase a handgun they may apply for and receive at one time.
>
> [text of proposed Order ¶ 4, DDE #5-13 at p. 3.]

Plaintiffs' February 4, 2010, brief explains plaintiffs' rationale as to why this injunctive compulsion is necessary:

> the State Police appear to have done nothing to proactively dispel . . . misconceptions among 566 municipal police departments [concerning how the One Handgun Per Month Law should be implemented], opting instead to simply field isolated telephone calls that they happen to receive from individual municipalities. New Jerseyans should not have to educate their own police departments as to the law – especially when the State Police have provided no statewide guidance.
>
> [DDE #6 at pp. 40 to 41 (internal pp. 33 to 34).]

However, plaintiffs' February 4, 2010, brief does not clarify whether they rely upon State or federal law in support of their claim that this injunctive relief demanding "a guidance document and/or notification " is appropriate.

**LEGAL ARGUMENT**

**PLAINTIFFS ARE ENTITLED TO NONE OF THE PRELIMINARY INJUNCTIVE RELIEF THAT THEY SEEK.**

A preliminary injunction is a "drastic and extraordinary remedy" and an exercise of judicial discretion "that is not to be routinely granted." Berk v. HMC Int'l, Inc., 2007 U.S. Dist. LEXIS 29999, *17 (D.N.J. Apr. 23, 2007) (quoting Intel Corp. v. ULSI Sys. Technology, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). It is not a matter of right, even though irreparable injury may otherwise result. Yakus v. United States, 321 U.S. 414, 440 (1944). It is the exception rather than the rule, GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984), and the party seeking this relief must clearly carry the burden of persuasion as to all the prerequisites. United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983). Granting a preliminary injunction is the exercise of an extremely far reaching power, one not to be indulged in except in a case clearly warranting it. Fort Valley Harvestore Inc. v. A.O. Smith Harvestore Products, Inc., 545 F.2d 1096, 1097 (7th Cir. 1976).

The standards that must be met before a preliminary injunction will be issued call for careful consideration of four factors. This extraordinary relief is appropriate only when the applicant demonstrates each of the following: (1) a likelihood of success on the merits; (2) that he or she will suffer irreparable harm if preliminary injunction is denied; (3) that granting the preliminary relief will not result in greater harm to other interested parties,

including the general public; and (4) that the public interest favors this relief. <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 <u>F.</u>3d 700, 708 (3d Cir. 2004). Plaintiffs have not demonstrated any one of the foregoing prerequisites, but their application is fundamentally flawed in its failure to establish a likelihood of success on the merits <u>and</u> in the significant harm that would befall the public were this Court to grant the relief that they seek.

### A. Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits.

The State defendants' February 24, 2010, brief in support of their motion to dismiss plaintiffs' complaint (DDE #10-3) demonstrates that plaintiffs' claims are so weak that they are appropriately subject to <u>Fed.R.Civ.P.</u> 12(b)(1) and <u>Fed.R.Civ.P.</u> 12(b)(6) dismissal. Hence, this February 24, 2010, brief also establishes plaintiffs' failure, in this motion, to show a likelihood of success on the merits. Indeed, these defendants' February 24, 2010, brief was largely a rebuttal of the merits portion of plaintiffs' February 4, 2010, brief supporting preliminary injunctive relief; and in several instances these defendants' February 24, 2010, brief explicitly alluded to and refuted the arguments advanced in plaintiffs' February 4, 2010, brief. (<u>E.g.</u>, DDE #10-3 at p. 24 (internal p. 17); p. 25 (internal p. 18); p. 26 (internal p. 19); p. 29 (internal p. 22) p. 28 (internal p. 21); p. 38 (internal p. 31)). We respectfully direct this Court's attention to the February 24, 2010, brief,

supplemented by the following summary of the arguments advanced
therein and supplemented as well by additional arguments
specifically addressing the impropriety of some of plaintiffs'
claims for preliminary injunctive relief.

**1.  Plaintiffs Have No Likelihood of
Success with Respect to Counts One
and Two.**

The February 24, 2010, brief demonstrates in Point I, subpoint
A, that, as to counts one and two, 15 U.S.C. § 5001(g)(ii) does not
preempt the One Handgun per Month Law because the One Handgun per
Month Law does not "prohibit" the sale of the 15 U.S.C. §
5001(g)(ii) non-traditional handguns.  Plaintiffs may buy a handgun
immediately, including any non-traditional handgun that is among
the devices enumerated in 15 U.S.C. § 5001(g)(ii), so long as they
have a permit to purchase.  The law does not ban the sale of
handguns, or even limit the absolute number of handguns that a
person may purchase, but merely limits how often a handgun may be
purchased.  Moreover, the law contains a number of exemptions, some
of them quite broad.  Hence, there are many instances in which a
person may lawfully purchase more than one handgun at a time,
including non-traditional handguns that are among the devices
enumerated in 15 U.S.C. § 5001(g)(ii).   (DDE #10-3 at p. 21
(internal p. 14)).

The February 24, 2010, brief also demonstrates in Point I,
subpoint A, that plaintiffs' reliance (e.g., DDE #6 at pp. 23 to 26

- 21 -

(internal pp. 16 to 19) upon <u>Coalition of New Jersey Sportsmen v.</u>
<u>Florio</u>, 744 <u>F. Supp.</u> 602 (D.N.J. 1990), is misplaced because
<u>Coalition</u> did not hold that the Federal Toy Gun Law prohibits State
regulation of the 15 <u>U.S.C.</u> § 5001(g)(ii) devices but held only
that New Jersey may not "prohibit" their sale, and that a "<u>de facto</u>
prohibition" is nevertheless a prohibition.  <u>Coalition</u>, <u>supra</u>, 744
<u>F. Supp.</u> at 608.  The court granted relief only because the
Assaults-Weapons amendments to New Jersey's Gun Control Law imposed
such onerous conditions upon obtaining the necessary license to
possess and carry assault firearms that they effected a "<u>de facto</u>
prohibition" upon the sale of 15 <u>U.S.C.</u> § 5001(g)(ii) devices that
New Jersey law classified as "assault weapons."  <u>Id.</u>  The one-
handgun-per-month rule is much less onerous than the significant
limitations enacted in the Assault-Weapons amendments to the Gun
Control Law that were at issue in <u>Coalition</u> and as to which (and
only as to which) the <u>Coalition</u> court afforded injunctive relief.
(DDE #10-3 at pp. 24 to 25 (internal pp. 17 to 18)).

Likewise, the February 24, 2010, brief also demonstrates in
Point I, subpoint A, that plaintiffs' reliance upon federal court
decisions striking down State and local laws imposing time-of-
operation limitations upon certain vehicular traffic operating upon
certain highways because these limitations contravened federal
statutes prohibiting States from "prohibit[ing]" the traffic upon
these highways is inapposite because Congress intended that there

be a uniform system of national regulation that would not allow one State to infringe upon traffic in adjoining States. (DDE #10-3 at p. 27 (internal p. 20)). The preemptive scope of a preemptive statute such as 15 U.S.C. § 5001(g)(ii) is determined by congressional intent; and unlike the federal statutes preempting State and local regulation of vehicular traffic that were at issue in the cases upon which plaintiffs rely, the Federal Toy Gun Law was not intended to impose a uniform system of national regulation; rather, Congress intended to allow local regulation (such as the regulation effected by the One Handgun Per Month Law) that does not amount to an outright "prohibit[ion]" of the 15 U.S.C. § 5001(g)(ii) devices. (DDE #10-3 at pp. 25 to 27 (internal pp. 18 to 20)).

The February 24, 2010, brief demonstrates in Point I, subpoint B, that even if the Federal Toy Gun Law does preempt New Jersey's One Handgun Per Month Law insofar as the One Handgun Per Month Law regulates the sale of the non-traditional handguns that are among the 15 U.S.C. § 5001(g)(ii) devices, that preemption affords no basis for enjoining enforcement of the entire One Handgun Per Month Law even as applied to traditional handguns, and affords a basis for enjoining at most the Law's application to the non-traditional handguns that are among the 15 U.S.C. § 5001(g)(ii) devices. This limited form of relief is supported both by common sense and also by the Coalition opinion, which did not strike down the entirety of

the Assault-Weapons provisions of New Jersey's Gun Control Law even as applied to traditional assault weapons and enjoined enforcement of the Assault-Weapons provisions of New Jersey's Gun Control Law only as applied to non-traditional assault weapons that are among the 15 U.S.C. § 5001(g)(ii) devices.  (DDE 10-3 at pp. 28 to 29 (internal pp. 21 to 22)).

Moreover, the February 24, 2010, brief also demonstrates in Point I, subpoint B, that the question whether the One Handgun Per Month Law should be struck down in its entirety, or struck down only as applied to the non-traditional handguns that are among the 15 U.S.C. § 5001(g)(ii) devices, is a State-law, rather than a federal question, and turns upon what the intent of the New Jersey Legislature would be if it were foreclosed from applying the One Handgun Per Month Law to the non-traditional handguns that are among the 15 U.S.C. § 5001(g)(ii) devices.  Thus, plaintiffs' claim that the Law must be struck in its entirety, rather than only as applied to the non-traditional handguns that are among the 15 U.S.C. § 5001(g)(ii) devices, is a State-law claim, rather than a federal-law claim.  Not only have plaintiffs misconstrued State law in advancing this claim, but also they have come to the wrong court in pursuit of State-law relief against these State officials.  The State's Eleventh Amendment sovereign immunity as construed in Pennhurst prohibits this Court from "instruct[ing] state officials on how to conform their conduct to state law."  Pennhurst, supra,

465 U.S. at 106.   (DDE #10-3 at pp. 28 to 31 (internal pp. 21 to 24)).

        **2.   Plaintiffs Have No Likelihood of Success with Respect to Counts Three, Four, Five, and Six.**

The February 24, 2010, brief demonstrates in Point II, subpoint A, that, contrary to plaintiffs' claims in counts three, four, five, and six, New Jersey law affords the Superintendent a reasonable quantum of time in which to promulgate procedures and forms effecting the c. 186, § 2, superintendent-conferred set of exemptions.   Section 5 of c. 186 directs the Superintendent to effect the "timely implementation" of these exemptions but does not define with specificity what "timely implementation" means.   The meaning of the phrase "timely implementation" is informed by, among other matters, (1) the precatory, rather than mandatory, language employed in c. 186, § 5, and employed as well in N.J.S.A. 2C:58-3.4, serving to implement the c. 186, § 2, superintendent-conferred set of exemptions (e.g., "the superintendent may [not must] adopt . . . temporary regulations" on an emergent basis to implement the law, N.J.S.A. 2C:58-3.4(d)); (2) the fact that c. 186 afforded the Division of State Police no "lead time" to prepare for the implementation of the exemptions; and (3) the Legislature's utilization of the time-consuming N.J.S.A. 1:3-1 process to effect an official codification of the c. 186, § 2, superintendent-conferred set of exemptions, without which the Superintendent is

hard-pressed to promulgate forms citing to whatever sub-subsection of <u>N.J.S.A.</u> 2C:58-3(i) at which the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions will be codified.  (DDE #10-3 at pp. 32 to 37 (internal pp. 25 to 30)).

More to the point, the February 24, 2010 brief demonstrates in Point II, subpoint B, that counts three, four, five, and six belong in State court.  Even if the Superintendent failed to comply with State-law requirements for promptness, that fact would not raise a due-process claim as to which relief could be granted.  There is no violation of substantive due process because plaintiffs' interest in the promptness with which the Superintendent implements the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions is not the type of very significant interest that is the only type of interest protected by substantive due process; and because, in any event, the Superintendent's tardiness cannot fairly be said to "shock the contemporary conscience."  (DDE #10-3 at p. 37 (internal p. 30)).  And there is no violation of procedural due process because plaintiffs' access to New Jersey courts, where they can raise their State-law claim that the Superintendent is tardy, affords plaintiffs an adequate procedure for vindicating their State-law tardiness claims.  (DDE #10-3 at p. 38 (internal p. 31)).

### 3. Plaintiffs Have No Likelihood of Success with Respect to Counts Seven and Eight.

The February 24, 2010, brief demonstrates in Point III that the due-process analysis *supra* is equally applicable to counts seven and eight.  The refusal of some municipalities to allow some applicants to apply in any thirty (30) day period and in a single application for more than one permit to purchase or to submit more than one application in any thirty (30) day period does not "shock the contemporary conscience" even if the Division of State Police is any way responsible for their conduct, and for that reason alone (as well as for many other reasons) does not raise a viable substantive due process claim.  There is no violation of procedural due process  because New Jersey courts are open and able to correct the alleged violations of State law.  Moreover, there is no violation of the Fourteenth Amendment's privileges or immunities clause because the alleged right at issue is not the type of fundamental right that the clause protects.  (DDE #10-3 at pp. 39 to 40 (internal pp. 32 to 33)).

Plaintiffs are particularly unlikely to succeed on the merits of their claim that they are entitled to injunctive relief, preliminary or otherwise, compelling State officials to issue a guidance document or notification to all police departments advising these departments of plaintiffs' construction of State law.  Plaintiffs' February 4, 2010, brief does not argue that

federal law affords them a right to this relief, and it is apparent that this claim must be based upon State law (the contours of which they also fail to articulate).  But the <u>Pennhurst</u> doctrine deprives this Court of jurisdiction to "instruct state officials on how to conform their conduct to state law." <u>Pennhurst</u>, <u>supra</u>, 465 <u>U.S.</u> at 106.

### 4.   Plaintiffs Have No Likelihood of Success with Respect to Any of Their State-Law Claims.

Plaintiffs' complaint explicitly alleges multiple State-law claims, including their claims that defendants' conduct has violated provisions of the New Jersey Constitution including "the Due Process Clause of Article 1, ¶ 1 of the New Jersey Constitution, as well as [New Jersey's] Fundamental Fairness Doctrine." (Complaint count six ¶ 65, DDE #1 at p. 18).  In fact most parts of plaintiffs' complaint (counts three, four, five, six, seven, and eight) raise only State-law claims because the federal claims, in addition to not being viable, represent only plaintiffs' unsuccessful attempt to transmogrify State-law claims into federal claims.  The February 24, 2010, brief demonstrates in Point IV that plaintiffs have no likelihood of success on the merits of these State-law claims because the federal claims lack merit and, more important, because plaintiffs are not in State court.  "Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  <u>Borough of W. Mifflin v.</u>

Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).  This comity principle, deferring to State courts on State-law claims when the federal interest has subsided, takes on independent constitutional significance when, as in this case, the defendants are State officials.  The State-law relief that plaintiffs seek from these State officials would violate the Eleventh Amendment to the United States Constitution as construed in Pennhurst.  (DDE #10-3 at pp. 40 to 42 (internal pp. 33 to 35)).

In sum, plaintiffs have no likelihood of success on their federal or on their State-law claims.  That fact alone suffices to defeat plaintiffs' motion for preliminary injunctive relief because plaintiffs, in order to obtain this relief, must demonstrate each and every one of the four preliminary-injunction factors.  E.g., Kos Pharms., Inc. v. Andrx Corp., supra, 369 F.3d at 708.

**B.    Plaintiffs Will Suffer No Irreparable Injury If the Preliminary Injunction That They Request Is Denied.**

Plaintiffs' contention that they will suffer irreparable harm if the preliminary injunction that they request is denied is premised upon the two-prong argument that "the harm is of a peculiar nature, so that compensation in money cannot atone for it" and that "a movant satisfies the irreparable harm requirement if he can show that he is inhibited from exercising his constitutional rights due to a threat of prosecution."  (DDE #6 at p. 41 (internal p. 34)).  But the above argument demonstrates that plaintiffs have

no "constitutional rights" in the relief that they seek, and therefore the above argument serves as well to demonstrate that plaintiffs will suffer no harm - and certainly no irreparable harm - if the preliminary injunction they request is denied.

Even if plaintiffs' "constitutional" arguments had merit, the result would be no different. As to counts one and two of plaintiffs' complaint, plaintiffs are entitled to, at most, an injunction enjoining enforcement of the One Handgun Per Month Law as applied to the non-traditional handguns that are among the 15 U.S.C. § 5001(g)(ii) devices. And unlike the situation in Coalition, plaintiffs are not subjected to a "de facto prohibition" against their purchase of these devices; rather, they are subjected at most to constraints upon the frequency with which plaintiffs may purchase them. Plaintiffs will not suffer "irreparable injury" if made to wait until this Court determines with finality that their 15 U.S.C. § 5001(g)(ii) preemption argument has some merit.

Likewise, as to counts three, four, five, and six, plaintiffs' obligation to wait until the Superintendent promulgates forms and procedures necessary to effect the c. 186, § 2, superintendent-conferred set of exemptions does not cause irreparable harm. Even without injunctive relief, those forms and procedures will enjoy timely implementation; plaintiffs need patience, rather than injunctive relief.

And, with respect to counts seven and eight, plaintiffs' own certifications demonstrate that their concerns about their alleged right to apply in any thirty (30) day period for a permit to purchase more than one handgun or for more than one permit to purchase a handgun are being addressed and dissipated as municipalities become more familiar with the One Handgun Per Month Law. Moreover, any "irreparable harm" allegedly resulting from municipal or State Police practices in this respect can promptly be corrected by the State courts, which are the fora in which plaintiffs should have raised this State-law claim.

**C. Granting Preliminary Relief Will Result in Greater Harm to Other Interested Parties, Including the General Public; and Likewise, the Public Interest Surely Does Not Favor Preliminary Relief.**

The public interest is never advanced by the enjoinment of a legislative enactment whose constitutionality is sound. And this principle is all the more valid when, as in this case, the constitutionally-sound legislative enactments were designed to protect the public from the harm of the illegal use of handguns by persons who are prohibited from purchasing them. As noted, New Jersey's Gun Control Law was designed to protect the public by "prevent[ing] criminal and other unfit elements from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences." <u>Application of Marvin</u>, <u>supra</u>, 53 <u>N.J.</u> at 150. And, as also noted, the One Handgun

- 31 -

Per Month Law is an important part of the Gun Control Law that was specifically designed to prevent criminal and other unfit elements form acquiring handguns by combating "straw purchases" used as a means for conveying handguns to criminals and other unfit persons. Governor's Firearms Advisory Task Force, Initial Report, supra, p. 6. The public-safety goals of the One Handgun Per Month Law would be thwarted to the detriment of the public interest by the preliminary injunction that plaintiffs seek.

In affording injunctive relief on the basis of State-law claims, the preliminary injunction would also cause significant harm to New Jersey's sovereignty, and would negatively impact upon the comity interests that informed the United States Supreme Court's interpretation of the Eleventh Amendment in Pennhurst. The Court reasoned that

> it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.

[Pennhurst, supra, 465 U.S. at 106.]

This very "great[] intrusion" is a significant harm to the public interest that is not warranted by plaintiffs' complaint or by the certifications and arguments advanced in plaintiffs' motion for preliminary injunctive relief.

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiffs' motion seeking a preliminary injunction.


                              Respectfully submitted,

                              PAULA T. DOW
                              ATTORNEY GENERAL OF NEW JERSEY
                              ATTORNEY FOR THE STATE DEFENDANTS


                              BY:    /s/ Larry R. Etzweiler
                                   Larry R. Etzweiler
                                   Senior Deputy Attorney General

Dated: March 1, 2010

- 33 -