UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ASSOCIATION OF NEW JERSEY RIFLE AND : 
PISTOL CLUBS, INC., a New Jersey Not : 
for Profit Corporation; SCOTT L. BACH; : 
KAARE A. JOHNSON; and BOB'S LITTLE : 
SPORT SHOP, INC., a New Jersey : CIVIL ACTION No. 10-cv-
Corporation, : 271-JAP-TJB

    Plaintiffs, : On Motion for Dismissal
                     : of Complaint Pursuant to
      v. : Fed.R.Civ.P. 12(b)(1) and
                     : Fed.R.Civ.P. 12(b)(6)

JON S. CORZINE, Governor of the State :
of New Jersey; ANNE MILGRAM, Attorney : Return Date:
General of the State of New Jersey; : April 5, 2010
COLONEL RICK FUENTES, Superintendent, :
Division of New Jersey State Police; :
WASHINGTON TOWNSHIP (Morris County); :
and XYZ MUNICIPALITIES 1-565; :

    Defendants. :

_____

**BRIEF ON BEHALF OF THE GOVERNOR OF THE STATE OF NEW JERSEY, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND THE SUPERINTENDENT OF THE NEW JERSEY DIVISION OF STATE POLICE, DEFENDANTS IN THIS ACTION, IN SUPPORT OF THEIR MOTION SEEKING DISMISSAL OF COMPLAINT**

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants-Movants (the
    Governor of the State of New Jersey,
    the Attorney General of the State of
    New Jersey, and the Superintendent
    of the New Jersey Division of State
    Police)
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

LARRY R. ETZWEILER
larry.etzweiler@law.dol.lps.state.nj.us
Senior Deputy Attorney General, Division of Law
(609) 633-7786
    On the Brief

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE MATTER INVOLVED . . . . . . . . . . . . . . . 1

    I.   Introduction . . . . . . . . . . . . . . . . . . . . . 1

    II.  New Jersey's "One Handgun Per Month" Law . . . . . . . 2

    II.  Plaintiffs' Complaint.. . . . . . . . . . . . . . . . . 6

          A.   Alleged Preemption by 15 U.S.C. §
              5001(g)(ii) - Counts One and Two. . . . . . . . . 7

          B.   Alleged Tardiness in Effecting Exemption
              Forms - Counts Three, Four, Five, and
              Six . . . . . . . . . . . . . . . . . . . . . . . 8

          C.   Applying for More than One Permit in a
              Single Application - Counts Seven and
              Eight . . . . . . . . . . . . . . . . . . . . . 10

LEGAL ARGUMENT

    POINT I

    COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE 15 U.S.C. §
    5001(g)(ii) DOES NOT PREEMPT ANY PART OF THE ONE HANDGUN
    PER MONTH LAW; IN ANY EVENT, THIS COURT MAY NOT ON THE
    BASIS OF COUNTS ONE AND TWO COMPLETELY ENJOIN ENFORCEMENT
    OF THE ONE HANDGUN PER MONTH LAW . . . . . . . . . . . 13

          A.   The Provisions of 15 U.S.C. § 5001(g)(ii)
              Do Not Preempt the One Handgun Per Month
              Law . . . . . . . . . . . . . . . . . . . . . . 14

          B.   This Court May Not on the Basis of Counts
              One and Two Completely Enjoin Enforcement
              of the One Handgun per Month Law . . . . . . . 21

    POINT II

    COUNTS THREE, FOUR, FIVE, AND SIX MUST BE DISMISSED
    BECAUSE NEW JERSEY LAW DOES NOT REQUIRE THE
    SUPERINTENDENT TO PROMULGATE WITH THE RAPIDITY THAT
    PLAINTIFFS DEMAND THE FORMS EFFECTING THE c. 186, § 2,
    SUPERINTENDENT-CONFERRED SET OF EXEMPTIONS; AND BECAUSE
    THIS ISSUE RAISES AT MOST STATE-LAW CLAIMS AND AFFORDS NO
    BASIS FOR FEDERAL-COURT INTERVENTION . . . . . . . . . . 24

**TABLE OF CONTENTS** (continued)

PAGE

A.   New Jersey Law Affords the Superintendent a Reasonable Quantum of Time in Which to Promulgate Forms Effecting the c. 186, § 2, Superintendent-Conferred Set of Exemptions . . . . . . . . . . . . . . . . . . . 25

B.   Even If the Division Failed to Comply with State-Law Requirements for Promptness in Form Promulgation, That Failure Does Not Violate Due Process.. . . . . . . . . . . . . . . 30

POINT III

COUNTS SEVEN AND EIGHT MUST BE DISMISSED BECAUSE THE QUESTION WHETHER STATE LAW ALLOWS AN APPLICANT IN A SINGLE APPLICATION TO APPLY FOR MORE THAN ONE PERMIT TO PURCHASE RAISES AT MOST A STATE-LAW CLAIM AND DOES NOT RAISE A FEDERAL CLAIM UPON WHICH RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . 32

POINT V

THIS COURT SHOULD DECLINE TO EXERCISE PENDENT JURISDICTION OVER ALL STATE-LAW CLAIMS.. . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 36

**TABLE OF AUTHORITIES**

CASES

Alvin v. Suzuki, 227 F.3d 107 (3d Cir. 2000). . . . . . . . . 31

Application of Marvin, 53 N.J. 147 (1969).. . . . . . . . . . . 3

Arizonans for Official English v. Ariz., 520 U.S. 43 (1997). . . . . . . . . . . . . . . . . . . . 11

Bello v. Walker, 840 F.2d 1124 (3d Cir.), cert. denied, 488 U.S. 851 (1988).. . . . . . . . . . . . . . . . . . . 31

Borough of W. Mifflin v. Lancaster, 45 F.3d 780 (3d Cir. 1995). . . . . . . . . . . . . . . . 2, 34

Cipollone v. Liggett Group, 505 U.S. 504 (1992).. . . . . . 15, 16

- ii -

CASES (continued)

PAGE

City of New York v. Job-Lot Pushcart,
88 N.Y. 2d 103 (1996) . . . . . . . . . . . . . . . 16, 20

Coalition of New Jersey Sportsmen v. Florio,
744 F. Supp. 602  (D.N.J. 1990).. . . . . . . . . . 17, 18, 21

Dorchy v. Kansas, 264 U.S. 286 (1924).. . . . . . . . . . 23

Desi's Pizza Inc. v. City of Wilkes-Barre,
321 F.3d 411 (3d Cir. 2003).. . . . . . . . . . . . . . 30

Diaz-Fonseca v. Puerto Rico,
451 F.3d 13 (1st Cir. 2006).. . . . . . . . . . . . . . 34

Evanston Insurance Co. v. Merin,
598 F. Supp. 1290 (D.N.J. 1984).. . . . . . . . . . . . 35

Everett v. Schramm, 587 F. Supp. 228 (D. Del. 1984),
aff'd, 772 F.2d 1114 (3d Cir. 1985).. . . . . . . . . . 35

Flipping v. Reilly, 129 S. Ct. 1316 (2009). . . . . . . . 31

Hospital Center at Orange v. Guhl,
331 N.J. Super. 322 (App. Div. 2000). . . . . . . . . . 31

Levine v. County of Westchester,
828 F. Supp. 238 (S.D.N.Y. 1993), aff'd,
22 F.3d 1090 (2d Cir. 1994).. . . . . . . . . . . . . . 35

MSA Realty Corp. v. Illinois,
990 F.2d 288 (7th Cir. 1993). . . . . . . . . . . . . . 35

New Jersey State Chamber of Commerce v. New Jersey
Election Law Enforcement Comm'n, 82 N.J. 57 (1980). . . . . 22

New York State Motor Truck Asso. v. City of New York,
654 F. Supp. 1521 (S.D.N.Y. 1987), aff'd,
833 F.2d 436 (2d Cir. 1987).. . . . . . . . . . . . . . 19

Nicholas v. Pennsylvania State Univ.,
227 F.3d 133 (3d Cir. 2000).. . . . . . . . . . . . . . 30

Pennhurst State School & Hospital v. Halderman,
465 U.S. 89 (1983). . . . . . . . . . . . 2, 21, 23, 24, 32-35

CASES (continued)

PAGE

Reilly v. City of Atlantic City,
532 F.3d 216 (3d Cir. 2008).. . . . . . . . . . . . . . 31

Rice v. Santa Fe Elevator Corp.,
331 U.S. 218 (1947).. . . . . . . . . . . . . . . . . . . 16

Richmond Boro Gun Club v. City of New York,
896 F. Supp. 276 (E.D.N.Y. 1995), aff'd,
97 F.3d 681 (2d Cir. 1996). . . . . . . . . . . . . . . . 30

Right to Choose v. Byrne, 91 N.J. 287 (1982). . . . . . . . 22

S. Union Co. v. Lynch,
321 F. Supp. 2d 328 (D.R.I. 2004).. . . . . . . . . . . . 35

Slaughter-House Cases, 83 U.S. [16 Wall.] 36 (1873).. . . . 33

Spoklie v. Montana, 411 F.3d 1051 (9th Cir. 2005).. . . . . 35

State v. DeSantis, 65 N.J. 462 (1974).. . . . . . . . . . . 22

State v. Gerald, 113 N.J. 40 (1988).. . . . . . . . . . . . 22

State v. Mieles, 199 N.J. Super. 29 (App. Div.),
certif. denied, 101 N.J. 265 (1985) . . . . . . . . . 7, 8, 13

State v. Miller, 83 N.J. 402 (1980).. . . . . . . . . . . . 22

State v. Rackis,
333 N.J. Super. 332 (App. Div. 2000). . . . . . . . . 15-18, 21

Town Tobacconsit v. Kimmelman, 94 N.J. 85 (1983). . . . . . 22

United States v. Florida,
585 F. Supp. 807 (N.D. Fla. 1984).. . . . . . . . . . . 19, 20

Wisconsin Pub. Intervenor v. Mortier,
501 U.S. 597 (1991).. . . . . . . . . . . . . . . . 15, 16, 19

FEDERAL STATUTES

15 U.S.C. § 5001. . . . . . . . . . . . . . . . . . . . 16, 20

15 U.S.C. § 5001(g)(ii).. . . . . . . . 1, 2, 7, 8, 13-18, 20-23

FEDERAL STATUTES (continued)

                                                            <u>PAGE</u>

42 <u>U.S.C.</u> § 1983. . . . . . . . . . . . . . . . . . . . . . 7

                        STATE STATUTES

<u>N.J.S.A.</u> 1:3-1. . . . . . . . . . . . . . . . . . . . . 27-29

<u>N.J.S.A.</u> 10:6-1. . . . . . . . . . . . . . . . . . . . . . 7

<u>N.J.S.A.</u> 2C:58-2(a)(3) . . . . . . . . . . . . . . . . . . 5

<u>N.J.S.A.</u> 2C:58-2(a)(7) . . . . . . . . . . . . . . . . . . 3

<u>N.J.S.A.</u> 2C:58-2(a)(7)(a). . . . . . . . . . . . . . . . . 4

<u>N.J.S.A.</u> 2C:58-2(a)(7)(b). . . . . . . . . . . . . . . . . 4

<u>N.J.S.A.</u> 2C:58-3(i). . . . . . . . . . . . . . . . 3, 4, 26

<u>N.J.S.A.</u> 2C:58-3(i)(1). . . . . . . . . . . . . . . . . . 4

<u>N.J.S.A.</u> 2C:58-3(i)(2). . . . . . . . . . . . . . . . . . 4

<u>N.J.S.A.</u> 2C:58-3(i)(4). . . . . . . . . . . . . . . . . . 26

<u>N.J.S.A.</u> 2C:58-3(i)(5). . . . . . . . . . . . . . . . . . 27

<u>N.J.S.A.</u> 2C:58-3(i)(6). . . . . . . . . . . . . . . . . . 27

<u>N.J.S.A.</u> 2C:58-3.4. . . . . . . . . . . . . . . . 4, 5, 29

<u>N.J.S.A.</u> 2C:58-3.4(a). . . . . . . . . . . . . . . . 5, 29

<u>N.J.S.A.</u> 2C:58-3.4(a)(1). . . . . . . . . . . . . . . . . 5

<u>N.J.S.A.</u> 2C:58-3.4(a)(2). . . . . . . . . . . . . . . . . 5

<u>N.J.S.A.</u> 2C:58-3.4(a)(3). . . . . . . . . . . . . . . . . 5

<u>N.J.S.A.</u> 2C:58-3.4(b). . . . . . . . . . . . . . . . . . 5

<u>N.J.S.A.</u> 2C:58-3.4(d). . . . . . . . . . . . . . . . . . 29

STATE SESSION LAWS

                                                                    PAGE

2009 <u>N.J. Laws</u> <u>c.</u> 104.. . . . . . . . . . . . . . . 3, 4, 6

2009 <u>N.J. Laws</u> <u>c.</u> 168.. . . . . . . . . . . . 3, 4, 6, 26, 27

2009 <u>N.J. Laws</u> <u>c.</u> 186.. . . . . . . . . . 3-6, 8, 9 24-29, 31

REGULATIONS

<u>N.J.A.C.</u> 13:54-1.4(h).. . . . . . . . . . . . . . . . . 10

OTHER SOURCES CITED

Governor's Firearms Advisory Task Force,
<u>Initial Report</u> issued November 12, 2009.. . . . . . . . . . . 3

## <u>STATEMENT OF THE MATTER INVOLVED</u>

The State defendants (the Governor of New Jersey, the Attorney General of New Jersey, and the Superintendent of the New Jersey Division of State Police) submit this brief in support of their motion to dismiss plaintiffs' complaint. These defendants' response to plaintiffs' motion seeking a preliminary injunction, filed on February 3, 2010, will be submitted at a later date.

## I.   **Introduction**

Plaintiffs, who wish to purchase or sell handguns, challenge New Jersey's so-called "One Handgun Per Month Law" that is now part of New Jersey's Gun Control Law and that provides that no person may purchase more than one handgun in any thirty (30) day period. The law has multiple exceptions, some of which require prior approval of the Superintendent of the Division of State Police.

As developed herein, plaintiffs' primary attack upon the One Handgun Per Month Law is that it allegedly "prohibit[s]" the sale of certain B-B handguns and other non-traditional handguns that the Federal Toy Gun Law designates (despite their design as devices that can be fired by the use of a single hand) as

> traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure
>
> [15 <u>U.S.C.</u> § 5001(g)(ii)]

and as to which Congress has provided that "no State shall . . . <u>prohibit</u> the sale (other than the sale to minors) of" these devices. <u>Id.</u> (emphasis added). This 15 <u>U.S.C.</u> § 5001(g)(ii)

preemption argument fails because New Jersey's law does not prohibit the sale of non-traditional handguns; it merely limits the timing of sales of handguns to one per month. The law is a regulation, rather than a prohibition. Congress did not intend to preempt State regulation of B-B handguns and other devices enumerated in the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii).

Additionally, plaintiffs challenge the alleged tardiness of the Division of State Police in promulgating forms to implement the exemptions that require prior approval by the Superintendent; and they challenge as well the refusal of some municipalities to process, in any thirty (30) day period, more than one application for a permit to purchase a handgun or any application for more than one permit to purchase. These challenges raise only State-law claims that plaintiffs attempt, unsuccessfully, to raise as federal claims. This Court should decline to exercise pendent jurisdiction because when the federal claims fail, the state claims should go to state court, Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995), and because the Eleventh Amendment as construed in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1983) deprives this court of jurisdiction over equitable and declaratory State-law claims brought against State officials.

## II.  New Jersey's "One Handgun Per Month Law"

New Jersey's Gun Control Law is an exercise of the State's police powers that "seeks to prevent criminal and other unfit

- 2 -

elements from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences." Application of Marvin, 53 N.J. 147, 150 (1969). The One Handgun Per Month Law, enacted as part of the Gun Control Law,

> primarily was intended to deter "straw purchases" of multiple handguns, that is, purchases of handguns by persons for the purpose of selling or transferring the handguns to others who would not lawfully be able to obtain them because of a prior criminal record or other disqualifying circumstances.
>
> [Governor's Firearms Advisory Task Force, Initial Report issued November 12, 2009, p. 6.]

New Jersey's current version of the "One Handgun Per Month Law" is actually a compilation of three separate enactments: 2009 N.J. Laws c. 104 (approved August 6, 2010), c. 168 (approved January 3, 2010), and c. 186 (approved January 12, 2010). The first, c. 104 - the initial enactment - limits handgun purchases to one handgun per person in any thirty (30) day period. See N.J.S.A. 2C:58-3(i) as amended by c. 104, § 2 (except as otherwise provided "no more than one handgun shall be purchased within any 30-day period"); see also N.J.S.A. 2C:58-2(a)(7) as amended by c. 104, § 1 ("[a] dealer shall not knowingly deliver more than one handgun to any person within any 30-day period" unless the person enjoys an exemption). This initial enactment provided exemptions only for law-enforcement officers, for collectors of curios and relics, and

- 3 -

for purchases and other transfers by and among licensed firearms dealers.  N.J.S.A. 2C:58-2(a)(7)(a), (b), as amended by c. 104, § 1; N.J.S.A. 2C:58-3(i)(1), (2), as amended by c. 104, § 2.

The second and third enactments, c. 168 and c. 186, provide additional exemptions from the law.  As explained infra, citation to the New Jersey Statutes codifying these exemptions is problematic because, as of this date, there is not yet an official codification.  The exemptions effected by c. 168 and c. 186 include transfers from any person to a licenced dealer; purchases and other transfers by and among licensed dealers and registered manufacturers; and situations in which a purchaser returns his or her handgun to a dealer in exchange for another handgun.

At issue in this litigation is the last set of exemptions provided by c. 186, § 2, which amends N.J.S.A.  2C:58-3(i) by adding an exemption for

> any transaction where the superintendent [of the Division of State Police] issues an exemption from the prohibition in this subsection pursuant to the provisions of N.J.S.A. 2C:58-3.4.

Again, as explained infra, this addition to N.J.S.A.  2C:58-3(i) has not yet been officially codified.  Therefore, this brief will hereinafter refer to this set of exemptions (which is only part of the exemptions effected by c. 186, but which is the only set of exemptions for which the superintendent must give prior approval) as the "c. 186, § 2, superintendent-conferred set of exemptions."

- 4 -

The provisions of c. 186, § 4, creating a new section, have been codified as N.J.S.A. 2C:58-3.4, and serve to implement the c. 186, § 2, superintendent-conferred set of exemptions. These provisions enumerate several sets of circumstances not otherwise covered in the law and under which a person may apply to the superintendent for and obtain an exemption; and they grant the superintendent authority to prescribe forms for doing so. See N.J.S.A. 2C:58-3.4(a) ("The superintendent may grant an exemption from the restriction on the purchase of handguns . . . if the applicant demonstrates to the satisfaction of the superintendent that the applicant's request" falls within one of the enumerated circumstances); N.J.S.A. 2C:58-3.4(b) ("The applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased."). The circumstances warranting exemptions include: purchases of multiple handguns from a person who acquired them by inheritance or intestacy, N.J.S.A. 2C:58-3.4(a)(1); purchases by collectors needing multiple handguns in furtherance of collecting activities, N.J.S.A. 2C:58-3.4(a)(2); and purchases by competitors in handgun shooting competitions needing to acquire multiple handguns for competitive purposes, N.J.S.A. 2C:58-2(a)(3).

## III. Plaintiffs' Complaint

As noted, the original version of the One Handgun Per Month Law was approved on August 6, 2010, to take effect on January 1, 2010.  2009 N.J. Laws c. 104, § 3.  The amendment effecting the c. 168 exemptions was approved on January 3, 2010, to take effect immediately.   2009 N.J. Laws c. 168, § 3.  And the amendment effecting the c. 186 exemptions, including the c. 186, § 2, superintendent-conferred set of exemptions, was approved on January 12, 2010, to take effect immediately.  2009 N.J. Laws c. 186, § 5. Five days later, on Sunday, January 17, 2010, plaintiffs filed their complaint.

The four plaintiffs are a rifle-and-pistol club (the Association of New Jersey Rifle and Pistol Clubs, hereinafter Association); the president of the club, Scott L. Bach, who wishes to purchase handguns; a gun shop federally and State-licensed as a retail dealer of firearms (Bob's Little Sport Shop, hereinafter Bob's); and another person, Kaare A. Johnson. who also wishes to purchase handguns.  (Complaint ¶¶ 5 to 8, DDE # 1 at pp. 2 to 3; ¶¶ 44 and 45, DDE #1 at p. 14; ¶¶ 53 to 55, DDE # 1 at p. 16; ¶¶ 68, 69, DDE #1 at p. 19).[1]  Each of the eight counts in plaintiffs'

---

[1]     "DDE" stands for the "District [Court] Docket Entry." This abbreviation comports with the abbreviations recently recommended by the Clerk of the United States Court of Appeals for the Third Circuit.  See Order Options for Filing Appendix dated March 17, 2009, p. 1, Option B, ¶ 1 (last sentence), available at http://www.ca3.uscourts.gov/ORDER_OPTIONS_FOR_FILING_APPENDIX.pdf (last visited February 19, 2010).

complaint relies upon 42 U.S.C. § 1983 as a basis for obtaining the relief requested; and in addition, counts one, three, five, and seven rely upon the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. Plaintiffs' complaint is three-fold, and each part is separately summarized in subparts A, B, and C immediately following.

### A. Alleged Preemption by 15 U.S.C. § 5001(g)(ii) - Counts One and Two

As to counts one and two, plaintiffs allege, and the State defendants agree, that the One Handgun Per Month Law governs the sale and purchase of certain B-B and air-powered handguns and other devices that New Jersey law designates as "handguns" but that the Federal Toy Gun Law designates (despite their design as devices that can be fired by the use of a single hand) as

> traditional B-B, paint ball, or pellet-firing air guns that expel a projectile through the force of air pressure.

[15 U.S.C. § 5001(g)(ii).]

The Legislature's decision to regulate the possession and sale of these non-traditional handguns in the Gun Control Law, and hence in the One Handgun Per Month Law, is patent: these devices, although not traditional handguns, still can cause serious injury, State v. Mieles, 199 N.J. Super. 29, 37 (App. Div.), certif. denied, 101 N.J. 265 (1985), and

> from the viewpoint of the victim caught in the stress of a robbery the threat of a BB pistol is likely to seem equal to the threat from a

- 7 -

> traditional firearm.  Indeed we do not think the victim will discern the difference.

[Id. at 38.]

The Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii), provides that "no State shall . . . prohibit the sale (other than the sale to minors) of" these non-traditional handguns.  (Emphasis added.) Plaintiffs contend that, in limiting (with multiple exceptions) the sale of these non-traditional handguns to one per person per thirty (30) day period, New Jersey has in effect "prohibit[ed]" the sale of these non-traditional handguns in contravention of congressional preemption.

Plaintiffs Bach and Johnson, as well as members of plaintiff Association, desire to purchase, within a thirty (30) day period, more than one handgun, including one or more of these non-traditional handguns; and plaintiff Bob's wishes to sell them. (Complaint count one ¶¶ 43, 44, 45, 46, DDE #1 at pp. 14 to 15). Plaintiffs seek injunctive relief (count one) and declaratory relief (count two) to mandate compliance with their interpretation of 15 U.S.C. § 5001(g)(ii).  (Complaint count one ¶ 48, count two ¶ 50, DDE #1 at p. 15).

## B.  Alleged Tardiness in Effecting Exemption Forms - Counts Three, Four, Five, and Six

In counts three, four, five, and six, plaintiff Bach and members of plaintiff Association allege that they want to qualify for one or more of the exemptions contained within the c. 186, § 2,

superintendent-conferred set of exemptions. (Complaint ¶¶ 52, 54, DDE #1 at p. 16). However, plaintiffs allege, and the State defendants agree, that at the time of the filing of their complaint and of their motion for a preliminary injunction (and also now, as this brief is being drafted) the Division of State Police had not (and has not yet) promulgated the forms by which would-be exemptees may apply for these exemptions.[2]

In plaintiffs' view, their (temporary) inability to apply for and to obtain these exemptions contravenes State law; but in plaintiffs' view, the situation is even worse. Plaintiffs contend that the Division's alleged tardiness in publishing the forms effects a violation not only of the One Handgun Per Month Law, but also of their Fourteenth Amendment due-process rights (complaint count three ¶ 58, DDE #1 at p. 17) and their rights conferred by the corresponding provisions of the New Jersey Constitution.

---

[2]      In a certification filed on February 3, 1010, in support of plaintiffs' motion for a preliminary injunction, one Robert Viden, not a party to this suit but the owner of plaintiff Bob's, certified that Bob's has lost business because its customers want but are unable to apply for and to obtain any of the exemptions contained within the c. 186, § 2, superintendent-conferred set of exemptions. (DDE # 5-12). Unlike this certification, plaintiffs' complaint does not allege that plaintiff Bob's is harmed by the alleged tardiness of the Division of State Police in promulgating and publishing exemption forms. But to ward off plaintiffs' later motion to amend the complaint to include these allegations, we shall construe the complaint as including non-party Viden's allegations on behalf of plaintiff Bob's. The Legal Argument _infra_ demonstrates that plaintiffs' complaint, even as supplemented by the Viden certification on behalf of plaintiff Bob's, fails to state a claim.

(Complaint count five ¶ 63, DDE #1 at p. 18).  Plaintiffs therefore seek "preliminary and permanent injunctive relief" (complaint count three ¶ 59, DDE #1 at p. 17; count five ¶ 63, DDE #1 at p. 18); and "declaratory relief holding that the One Handgun [Per Month] Law [both] violates the Due Process Clause of Amendment XIV of the United States Constitution" (complaint count four ¶ 61, DDE #1 at p. 17) and violates as well "the Due Process Clause of Article 1, ¶ 1 of the New Jersey Constitution, as well as [New Jersey's] Fundamental Fairness Doctrine."  (Complaint count six ¶ 65, DDE #1 at p. 18).

### C.  Applying for More than One Permit in a Single Application - Counts Seven and Eight

In counts seven and eight, plaintiffs contend that the One Handgun Per Month Law did not revise pre-existing State law as administratively codified in <u>N.J.A.C.</u> 13:54-1.4(h) pursuant to which an applicant may apply for and obtain in a single application more than one permit to purchase a handgun.  And plaintiff Johnson wants to apply in a single application for more than one permit to purchase.  (Complaint ¶ 68, DDE #1 at p. 19).  However, the Chief of Police of codefendant Washington Township, allegedly acting upon the advice of the Division of State Police, informed Johnson that the Township would process, in a single thirty (30) day period, only one application for a single permit to purchase and no application for more than one permit to purchase.  (Complaint ¶ 70, DDE #1 at p. 19).  Members of plaintiff Association as well as

other persons have been similarly constrained in their applications submitted to other municipalities. (Complaint ¶¶ 73 and 74, DDE #1 at p. 20).

Papers filed on February 3, 2010, in support of their application for a preliminary injunction further elaborate upon plaintiffs' allegations in counts seven and eight.[3]  Plaintiff Johnson certified that in correspondence dated January 25, 2010, codefendant Washington Township revised its position and informed Johnson that, in a single application, Johnson could apply for more than one permit to carry.  (DDE # 5-5 ¶ 10 at pp. 3 to 4; DDE # 5-7).  Similarly, Rockaway Township first denied and then, upon the advice of the New Jersey Division of State Police, allowed plaintiff Bach to apply in a single application for more than one permit to carry.  (DDE # 5-2 ¶¶ 27, 28 at p. 12).

Like plaintiffs Bach and Johnson, non-parties Daniel Strachman of Fanwood, New Jersey, and Jonathon Friedman, M.D., of Mendham, New Jersey, certified that they were initially denied the right, and later granted the right to apply, in a single application, for more than one permit to purchase; and Strachman certified that he

---

[3]     These papers were not filed as part of the complaint.  We nevertheless bring them to this Court's attention because they arguably pertain to mootness, the non-existence of which this Court is obligated to determine before addressing the merits, even if no party contends that the matter is moot.  Arizonans for Official English v. Ariz., 520 U.S. 43, 68 (1997)("It is the duty of counsel to bring to the federal tribunal's attention, without delay, facts that may raise a question of mootness.").

- 11 -

was informed that the Mendham Police Department's change in position derived from more recent advice provided by the Division of State Police. (DDE #5-8; DDE # 5-10 & ¶ 5 on p. 3). On the other hand, each of non-parties Richard Gajda of Clinton Township, New Jersey, and Steven Yagiello of Egg Harbor Township, New Jersey, certified that he was denied the right to apply, in a single application, for more than one permit to purchase; and as of the date of the certifications, neither municipality had revised its position on that issue. (DDE # 5-9; DDE # 5-10). Moreover, plaintiff Bach certified that plaintiff Association has received "multiple complaints" from its members about this issue. (DDE # 5-2 ¶ 32 at p. 13).

As noted, plaintiffs argue that the constraint upon their right, in a single application, to apply for more than one permit to purchase violates New Jersey's Gun Control Law, even with the One Handgun Per Month Law incorporated as part thereof. But in plaintiffs' view, the situation is even worse. Plaintiffs contend that these constraints effect a deprivation of "substantive rights, privileges, and/or immunities secured by the Constitution and/or laws of the State of New Jersey." (Complaint ¶ 74, DDE #1 at p. 20). Plaintiffs therefore seek appropriate injunctive and declaratory relief. (Complaint count seven ¶ 75, DDE #1 at p. 20; count eight ¶ 77, DDE #1 at p. 21).

**LEGAL ARGUMENT**

**POINT I**

**COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE 15 U.S.C. § 5001(g)(ii) DOES NOT PREEMPT ANY PART OF THE ONE HANDGUN PER MONTH LAW; IN ANY EVENT, THIS COURT MAY NOT ON THE BASIS OF COUNTS ONE AND TWO COMPLETELY ENJOIN ENFORCEMENT OF THE ONE HANDGUN PER MONTH LAW.**

Plaintiffs allege, and the State defendants agree, that the One Handgun Per Month Law, part of New Jersey's Gun Control Law, governs the sale and purchase of non-traditional handguns including B-B handguns that are among the devices enumerated in the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii). The Legislature chose to regulate these devices in the Gun Control Law because they, too, can cause serious injury; and because, unregulated, they would fall into the hands of robbers and other criminals who often use them as effectively as traditional handguns. State v. Mieles, supra, 199 N.J. Super. at 37, 38.

Plaintiffs argue that New Jersey's regulation of these non-traditional handguns is so burdensome as to constitute an actual "prohibit[ion]" of the sale of these devices, and that on that account the regulation contravenes the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii), barring States from "prohibit[ing]" their sale. This contention is without merit. In any event, this claim affords no basis for complete enjoinment of the One Handgun Per Month Law and affords at most a basis for enjoining the law's

application to the non-traditional handguns that are among the devices enumerated in the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii).

### A. The Provisions of 15 U.S.C. § 5001(g)(ii) Do Not Preempt the One Handgun Per Month Law.

From a common-sense perspective, plaintiffs' contention that the One Handgun Per Month Law amounts to an actual "prohibit[ion]" of the sale of non-traditional handguns that are among the devices enumerated in the Federal Toy Gun Law, 15 U.S.C. § 5001(g)(ii), faces at least three difficulties. First, plaintiffs can buy a handgun immediately so long as they have a permit to purchase. They can buy only one handgun, but they can buy a handgun today, including any non-traditional handgun that is among the devices enumerated in 15 U.S.C. § 5001(g)(ii). Therefore, there should be no valid argument that the statute acts as a "prohibit[ion]."

Second, the One Handgun Per Month Law seeks only to regulate the timing of the purchases. Thus, the law does not ban the sale of handguns, or even limit the absolute number of handguns that a person may purchase, but merely limits how often a handgun may be purchased.

Third, as noted, the law contains a number of exemptions, some of them quite broad. Hence, there are many instances in which a person may lawfully purchase more than one handgun at a time, including non-traditional handguns that are among the devices enumerated in 15 U.S.C. § 5001(g)(ii).

- 14 -

In view of these circumstances, as a practical matter New Jersey law does not "prohibit" the sale of handguns, regardless of whether the handguns in question are traditional handguns or non-traditional handguns among the devices enumerated in 15 U.S.C. § 5001(g)(ii). And as legal matter "[t]here is a fundamental difference between prohibition . . . and regulation . . ." State v. Rackis, 333 N.J. Super. 332, 337 (App. Div. 2000)(construing the preemptive scope of 15 U.S.C. § 5001(g)(ii)). Congress did not intend to preempt the field so as to ban laws such as the One Handgun Per Month Law that regulate but do not actually prohibit the sale of the non-traditional handguns among the 15 U.S.C. § 5001(g)(ii) devices.

Preemption "in the first instance turns on congressional intent." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991). And when, as in this case, Congress has enacted "a provision defining the pre-emptive reach of a statute," the enactment "implies that matters beyond that reach are not pre-empted." Cipollone v. Liggett Group, 505 U.S. 504, 517 (1992). Although 15 U.S.C. § 5001(g)(ii) bars State laws that "prohibit" the sale of the enumerated devices, the Cipollone analysis supports State laws that regulate but do not go so far as to effect an outright prohibition.

Furthermore, a determination of the scope of preemption must

> start with the assumption that the historic
> police powers of the States were not to be

- 15 -

> superseded by the Federal Act unless that was
> the clear and manifest purpose of Congress.
>
> [Wisconsin Pub. Intervenor, supra, 501 U.S. at
> 605 (quoting Rice v. Santa Fe Elevator Corp.,
> 331 U.S. 218, 230 (1947).]

This rule of construction applies equally well to express preemptive provisions such as 15 U.S.C. § 5001(g)(ii)); they too must be "construe[d] . . . in light of the presumption against the preemption of state police power regulations." Cipollone, supra, 505 U.S. at 518. The One Handgun Per Month Law effects state police power regulations significantly "involving public safety," State v. Rackis, supra, 333 N.J. Super. at 340, and on that account enjoys the presumption against preemption.

Adhering to these principles, the Court of Appeals of New York has rejected the contention that "the essential purpose of the Federal Toy Gun Law [15 U.S.C. § 5001] is to promote a 'uniform system of national regulation,'" City of New York v. Job-Lot Pushcart, 88 N.Y.2d 163, 169 (1996), and has instead sanctioned local regulation that does not directly conflict with the terms of the federal statute. The court determined that "Congress did not enact [15 U.S.C. § 5001] to supplant all State and local measures." Id. at 541. The Court upheld the City's regulations requiring toy guns to have markings and identifications other than those specifically required by the Federal Toy Gun Law. Id. at 165.

Likewise, in State v. Rackis, supra, the Appellate Division of the Superior Court of New Jersey held with respect to non-

traditional handguns that are among the devices enumerated in 15 U.S.C. § 5001(g)(ii), that Congress did not preempt the regulation of the these devices which is effected by the handgun-permitting requirements of New Jersey's Gun Control law, and which both requires purchasers to obtain a permit to purchase if the device is classified as a "handgun" under New Jersey law and prevents certain persons having been convicted of crimes from obtaining the requisite permits. Rackis, supra, 333 N.J. Super. at 341. The court held that "[n]othing in these requirements constitutes a prohibition against the sale" of the congressionally-enumerated devices. This same reasoning applies as well to the One Handgun Per Month Law.

Plaintiffs' brief in support of their motion for a preliminary injunction (DDE # 6 at pp. 25 to 26 (internal pp. 18 to 19)) argues that Coalition of New Jersey Sportsmen v. Florio, 744 F. Supp. 602 (D.N.J. 1990) supports their preemption arguments. But in that opinion, the Honorable Garrett E. Brown, Jr., did not hold that the Federal Toy Gun Law prohibits State regulation of the devices enumerated in 15 U.S.C. § 5001(g)(ii). The Coalition opinion was carefully limited to holding that New Jersey may not prohibit their sale, and that a "de facto prohibition" is nevertheless a prohibition. Coalition, supra, 744 F. Supp. at 608. The court granted relief only because the Assaults-Weapons amendments to New Jersey's Gun Control law effected a "de facto prohibition." Id.

- 17 -

The one-handgun-per-month rule is much less onerous than the significant limitations enacted in the Assault-Weapons amendments to the Gun Control Law. The <u>Coalition</u> court made a thorough analysis of the Assault-Weapons amendments and concluded that, as a practical matter, requirements for obtaining a license to possess and carry assault firearms "are so substantial" that they completely banned the sale of the assault weapons that were among the devices enumerated in 15 <u>U.S.C.</u> § 5001(g)(ii). <u>Coalition</u>, <u>supra</u>, 744 <u>F. Supp.</u> at 608. By virtue of <u>Coalition</u>, New Jersey no longer requires a license to possess and carry assault firearms as a condition for purchasing and possessing devices enumerated in 15 <u>U.S.C.</u> § 5001(g)(ii).

The Appellate Division in <u>Rackis</u> properly distinguished <u>Coalition</u> on the basis that the requirements for obtaining a permit to purchase a handgun, unlike the requirements for obtaining a license to possess and carry assault firearms, are not sufficiently onerous to constitute a <u>de facto</u> prohibition. <u>Rackis</u>, <u>supra</u>, 333 <u>N.J. Super.</u> at 339 (<u>Coalition</u>'s ruling "does not effect [sic] the significantly less onerous requirements of obtaining a handgun permit"). Likewise, regulating the frequency of purchase of handguns (with multiple exemptions) also does not constitute "a <u>de facto</u> prohibition."

Plaintiffs' brief in support of their motion for a preliminary injunction (DDE # 6 at pp. 26 to 27 (internal pp. 19 to 20)) also

argues that the opinions in <u>New York State Motor Truck Asso. v. City of New York</u>, 654 <u>F. Supp.</u> 1521 (S.D.N.Y. 1987), <u>aff'd</u>, 833 <u>F.</u>2d 436 (2d Cir. 1987), and in <u>United States v. Florida</u>, 585 <u>F. Supp.</u> 807 (N.D. Fla. 1984), support their preemption argument.  In both cases, courts held that federal statutes "prohibit[ing]" States from barring certain vehicles upon certain highways preempted State or local laws purporting to effect limited time-of-operation restrictions upon these vehicles.  Plaintiffs argue that the lesson to be drawn from these opinions is that a restriction that is "not an outright, total prohibition . . . is prohibition nevertheless."  (DDE #6 at p. 27 (internal p. 20)).  Plaintiffs' simplistic analysis overlooks that preemption "in the first instance turns on congressional intent."   <u>Wisconsin Pub. Intervenor</u>, <u>supra</u>, 501 <u>U.S.</u> at 604.

The court in <u>New York State Motor Truck Asso.</u> went through a painstaking analysis of congressional intent and concluded that the intent of the federal legislation

> was to relieve commercial trucking operators
> of the burden inherent in planning and
> operating a multistate haul by [the
> congressionally-enumerated vehicles] through
> states with conflicting regulations of tandem
> operations.

> [654 <u>F. Supp.</u> at 1536.]

The court noted that

> [i]f New York, New Jersey and Connecticut were
> each to adopt a so-called use restriction
> geared to a time of day, and these

- 19 -

> restrictions were not perfectly synchronized,
> they could in fact make this region totally
> impassable to [the congressionally-designated
> traffic].
>
> [Id. (brackets in original deleted).]

In precisely similar vein, the court in United States v. Florida
observed that if each State could effect time-of-operation
restrictions such as those which Florida wished to impose, then the

> potential disruption of the network would make
> planning by commercial trucking firms
> virtually impossible.
>
> [585 F. Supp. at 810.]

In other words, both courts discerned congressional intent
supporting a uniform system of national regulation that would not
allow one State to infringe upon traffic in adjoining States.  The
situation in this case, however, is different; and, as noted, the
Court of Appeals of New York has rejected the contention that "the
essential purpose of [15 U.S.C. § 5001] is to promote a 'uniform
system of national regulation.'"  City of New York v. Job-Lot
Pushcart, supra, 88 N.Y.2d at 169.  Defendants commend the
reasoning of that court.  Under that reasoning, 15 U.S.C. §
5001(g)(ii), which does not mandate a uniform system and instead
allows local variation that does not directly contravene its
provisions, does not preempt New Jersey's One Handgun Per Month
Law.

- 20 -

**B.  This Court May Not on the Basis of Counts One and Two Completely Enjoin Enforcement of the One Handgun per Month Law.**

This Point assumes <u>arguendo</u> that this Court has determined that the Federal Toy Gun Law preempts New Jersey's One Handgun Per Month Law.  The question then arises what relief this Court should afford.  Plaintiffs' brief in support of their motion for a preliminary injunction (DDE # 6 at pp. 28 to 36 (internal pp. 21 to 28)) strenuously argues that in this event, this Court should provide the relief (and plaintiffs' complaint requests the relief) of a complete enjoinment of the One Month Per Gun law, rather than the limited relief of its enjoinment only with respect to the very few non-traditional handguns that are among the devices enumerated in 15 <u>U.S.C.</u> § 5001(g)(ii).  This excessive relief that plaintiffs request is barred by common sense, precedent, State law, and <u>Pennhurst</u>.

The relief is barred by common sense because, as the proverb goes, there is no reason to throw the baby out with the bathwater.  The relief is barred by precedent because in <u>Coalition</u>, <u>supra</u>, Judge Brown in striking down New Jersey's Assault-Weapons amendments as applied to those assault weapons that are among the devices enumerated in 15 <u>U.S.C.</u> § 5001(g)(ii) did not strike down the entirety of the amendments but enjoined their enforcement only with respect to those assault weapons.  <u>See</u> <u>Rackis</u>, <u>supra</u>, 333 <u>N.J.</u>

- 21 -

Super. at 339 (noting the limited relief that Judge Brown afforded the Coalition plaintiffs).

The relief is barred by New Jersey law. As plaintiffs agree (see DDE #6 at p. 33 (internal p. 20)), and as demonstrated infra, the issue is controlled by New Jersey law. As a general principle, it is the duty and obligation of the New Jersey judiciary to "excise [the] constitutional defect" [State v. Gerald, 113 N.J. 40, 91 (1988)] in order "restore the statute to health." Town Tobacconsit v. Kimmelman, 94 N.J. 85, 104 (1983). See, e.g., New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 75 (1980); State v. DeSantis, 65 N.J. 462, 473 (1974) (engrafting the United States Supreme Court definition of "obscenity" onto New Jersey's criminal law dealing with obscenity). New Jersey courts will not endeavor to fix an unconstitutional statute if the fix encroaches too much on the legislative domain, State v. Miller, 83 N.J. 402, 414 (1980), but it is unlikely that the appropriate fix in this case would fall into this category. A fix can be effected without untoward encroachment by completely barring the law's application to the very few non-traditional handguns that are among the devices enumerated in 15 U.S.C. § 5001(g)(ii) and by letting the law otherwise stand. The issue of whether and how to fix is one of legislative intent, see, e.g., Right to Choose v. Byrne, 91 N.J. 287, 311 (1982), and the New Jersey legislature would prefer that

the few non-traditional handguns that are among the devices enumerated in 15 U.S.C. § 5001(g)(ii) receive their full measure of preemption due, but that the One Handgun Per Month Law otherwise retain its full force and effect as applied to traditional handguns.

The relief is barred by Pennhurst because, as noted, the question whether a state statute's unconstitutional provisions can be severed from its constitutional provisions, or whether it must, instead, be struck in its entirety, is, first and foremost, a state-law question to be resolved by the state courts:

> A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad. . . . Whether [the remaining statute] is so interwoven with the [part] held invalid that the [remainder] cannot stand alone, is a question of interpretation and of legislative intent. . . .
>
> The task of determining the intention of the state legislature in this respect, like the usual function of interpreting a state statute, rests primarily upon the state court. Its decision as to the severability of a provision is conclusive upon this [federal] Court. . .
>
> [Dorchy v. Kansas, 264 U.S. 286, 289-290 (1924); emphasis added].

In enjoining state officials from enforcing any part of the One Handgun Per Month Law simply because it goes too far in regulating the sale of non-traditional handguns that are among the devices enumerated in 15 U.S.C. § 5001(g)(ii), or in declaring that on this

ground state official should not enforce any part thereof, this Court would be "instruct[ing] state officials on how to conform their conduct to state law," Pennhurst, supra, 465 U.S. at 106, namely the State law of statutory severance. As further developed infra, Point IV, this type of instruction the Eleventh Amendment forbids by federal courts and reserves to State-court fora.

### POINT II

**COUNTS THREE, FOUR, FIVE, AND SIX MUST BE DISMISSED BECAUSE NEW JERSEY LAW DOES NOT REQUIRE THE SUPERINTENDENT TO PROMULGATE WITH THE RAPIDITY THAT PLAINTIFFS DEMAND THE FORMS EFFECTING THE c. 186, § 2, SUPERINTENDENT-CONFERRED SET OF EXEMPTIONS; AND BECAUSE THIS ISSUE RAISES AT MOST STATE-LAW CLAIMS AND AFFORDS NO BASIS FOR FEDERAL-COURT INTERVENTION.**

The amendment effecting the c. 186, § 2, superintendent-conferred set of exemptions was approved on January 12, 2010, to take effect immediately. 2009 N.J. Laws c. 186, § 5. Five days later, on Sunday, January 17, 2010, plaintiffs filed their complaint. In counts three, four, five, and six, plaintiffs faulted the Superintendent for having failed, during this five-day hiatus, to have promulgated the forms effecting the c. 186, § 2, superintendent-conferred set of exemptions. But New Jersey law did not require the Superintendent to respond as rapidly as plaintiffs demand. And even if New Jersey law does require this rapid response, the Superintendent's failure to have acted with the

- 24 -

necessary rapidity constitutes a violation at most of State and not federal law.

**A. New Jersey Law Affords the Superintendent a Reasonable Quantum of Time in Which to Promulgate Forms Effecting the c. 186, § 2, Superintendent-Conferred Set of Exemptions.**

There are two circumstances that retard the promulgation of the forms effecting the c. 186, § 2, superintendent-conferred set of exemptions. First, § 5 of c. 186 (approved January 12, 2010) provides that

> [t]his act shall take effect immediately; provided however, the Superintendent of State Police may take any anticipatory administrative action prior to the effective date necessary for its timely implementation.

Although § 5 thus acknowledged the Superintendent's need to take preliminary "administrative action[s]" prior to implementation and afforded the Superintendent authority to take "anticipatory administrative action" prior to the January 12, 2010, effective date; in fact this "anticipatory" authority did not exist until January 12, 2010, when c. 187 was approved. The Division of State Police may not act on the basis of authority conferred by a statute not yet enacted by the Legislature and not yet signed by the Governor. In other words, the Division had no "lead time" to prepare for implementation of the c. 186, § 2, superintendent-conferred set of exemptions despite the "anticipatory" authority that § 5 attempted to confer.

- 25 -

Second, the statutory language of c. 186, § 2, clashes in form (although not in substance) with the language of § 2 of c. 168, approved January 3, 2010 (nine days before the approval of c. 186). Among other problems, both c. 168, § 2, and c. 186, § 2, added new exemptions (in addition to and other than the c. 186, § 2, superintendent-conferred set of exemptions) in new sub-subsections of N.J.S.A. 2C:58-3(i) that each purported to codify as sub-subsection 4 (i.e., as N.J.S.A. 2C:58-3(i)(4)). The problem is that they are different exemptions. Obviously, N.J.S.A. 2C:58-3(i) cannot have two differing sub-subsections 4.[4]

LexisNexis, in its database publication of N.J.S.A. 2C:58-3(i), has resolved this problem by retaining the codification of c. 168, but changing the codification of c. 186. Thus LexisNexis places the first exemption effected by c. 186, § 2, after the c. 168 exemptions, but renumbers it as sub-subsection 5; and it places the aforementioned c. 186, § 2, superintendent-conferred set of exemptions thereafter, but renumbers this set of exemptions as sub-subsection 6. In other words, according to LexisNexis (as of the

---

[4]     Additionally, c. 168, § 2, added a new rule of construction following the entire list of N.J.S.A. 2C:58-3(i) exemptions that states:

> The provisions of this subsection shall not be construed to afford or authorize any other exemption from the regulatory provisions governing firearms set forth in chapter 39 and chapter 58 of Title 2C of the New Jersey Statutes.

However, c. 186 neglected to add this rule of construction.

date when this brief is being drafted), the c. 186, § 2, superintendent-conferred set of exemptions should be codified as N.J.S.A. 2C:58-3(i)(6) rather than as N.J.S.A. 2C:58-3(i)(5), which is how L. 186, § 2, would have codified them (but for its clash with c. 168, § 2).[5]

The codification of LexisNexis, however, is not official. The New Jersey legislature established the official procedure to be followed when more-or-less simultaneously enacted statutes clash in this manner:

> The Office of Legislative Services, through its Legislative Counsel, is . . . authorized to correct errors caused when two or more amendments to the same section of law are enacted, at the same or different sessions of the Legislature, but such amendments inadvertently omit provisions of, and fail to refer to, one another. Only amendments that may be put into simultaneous operation may be reconciled. Corrections shall be concurred in by the Attorney General and, thereafter, the office shall prepare the law for printing.
>
> [N.J.S.A. 1:3-1.]

To date (i.e., as of the date upon which this brief is being drafted), the Office of Legislative Services has not submitted to the Attorney General its N.J.S.A. 1:3-1 proposal for harmonizing the clash between c. 168 and c. 186, and the Attorney General has

---

[5]     Additionally, LexisNexis places the aforementioned rule of construction quoted in note 4 supra after the c. 168 exemptions but before the c. 186 exemptions.  It can be argued that this rule of construction should apply to all of the exemptions and should, therefore, follow all of the exemptions in the statutory text.

not "concurred" in that proposal.  Thus, the c. 186, § 2, superintendent-conferred set of exemptions does not yet have an official statutory codification.  Any forms that the Superintendent might create in order to implement those exemptions would either have to omit reference to the codification or guess what it will be and, like LexisNexis, hope that it has guessed correctly.  In this respect, plaintiff Bach stated in his February 2, 2010, certification in support of a preliminary injunction that the chief of the Division's Firearms Unit advised that "until he received the final version of the law, there was nothing he could do."  (DDE #5-2 ¶ 24 at p. 11).  And as of this date, the chief has not yet received the final version of the law.

Both the absence of "lead time" and the Legislature's decision to employ the N.J.S.A. 1:3-1 process for resolving statutory clashes rebut plaintiffs' contention that the Division of State Police had no time -- and support our contention that the Division had (and still has) a reasonable quantum of time -- in which to promulgate the forms effecting the c. 186, § 2, superintendent-conferred set of exemptions.  This result is supported as well by statutory language.

Although c. 186, § 5, uses the term "timely implementation" in reference to implementation of all of the exemptions provided by c. 186 (including the c. 186, § 2, superintendent-conferred set of exemptions), the term "timely" is not defined.  Moreover, the

language of § 5 is precatory rather than mandatory. Section 5 does not provide that the superintendent <u>must</u> take anticipatory administrative action, but provides instead that "the Superintendent of State Police <u>may</u> take . . . anticipatory administrative action" prior to the effective date so as to effect "timely implementation."

Likewise, <u>N.J.S.A.</u> 2C:58-3.4, serving to implement the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions, also employs similar precatory language.      <u>See</u> <u>N.J.S.A.</u> 2C:58-3.4(a)(The superintendent <u>may</u> grant an exemption . . ." (emphasis added)); <u>N.J.S.A.</u> 2C:58-3.4(d)("the superintendent <u>may</u> adopt . . . such temporary regulations as the superintendent deems necessary to implement" the <u>c.</u> 186 exemptions including the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions.).  While it may be unlikely that New Jersey courts would construe this precatory language to mean that the superintendent has discretion <u>never</u> to implement the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions; nevertheless, plaintiffs would be hard-pressed, in view of this precatory language and in view as well of the absence of lead time and the Legislature's decision to use the <u>N.J.S.A.</u> 1:3-1 process for codifying the relevant statutory provisions, to persuade a State court that the Division was or is tardy in its implementation.

And State court is the appropriate forum to resolve whether the Division is tardy.  As argued _infra_, plaintiffs' efforts to transmogrify the State-law timeliness issue into a federal claim are unavailing.  Even if Counts Three, Four, Five, and Six raise valid State-law claims, they do not raise a federal claim upon which relief can be granted and afford no basis for federal-court intervention.

### B. Even If the Division Failed to Comply with State-Law Requirements for Promptness in Form Promulgation, That Failure Does Not Violate Due Process.

As noted, plaintiffs' complaint raises the promptness claims as due-process claims, but the complaint does not specify whether procedural or substantive due process is at issue.  But clearly substantive due process is not at issue.  "[V]iolations of state law generally do not give rise to substantive due process claims," _Richmond Boro Gun Club v. City of New York_, 896 _F. Supp._ 276 (E.D.N.Y. 1995), _aff'd_, 97 _F._3d 681 (2d Cir. 1996), and in any event do so only when the government's behavior is so egregious and so outrageous that it may fairly be said to "shock the contemporary conscience," _and_ the behavior deprives the plaintiff of an interest that is so significant that the Fourteenth Amendment's substantive due process protection apply.  _Desi's Pizza Inc. v. City of Wilkes-Barre_, 321 _F._3d 411, 426-27 (3d Cir. 2003); _Nicholas v. Pennsylvania State Univ._, 227 _F._3d 133, 139 n.1, 140 (3d Cir. 2000)(opinion by Alito, then C.J.).  Plaintiffs' entitlement - if

- 30 -

they have it - to the very prompt promulgation of exemption forms is not the type of significant interest protected by substantive due process, and in any event the allegations of tardiness, even if true, cannot fairly be said to shock the contemporary conscience.

Moreover, plaintiffs' brief in support of their motion for a preliminary injunction clarifies that their complaint rests upon procedural due process. (DDE # 6 at p. 36 (internal p. 29)("Due process concerns are directly implicated where a person is deprived of a liberty or property interest without a procedure available to vindicate that interest."). In that brief, plaintiffs argue that New Jersey law does not afford them "a procedure to apply for and obtain the Exemptions" contained within the c. 186, § 2, superintendent-conferred set of exemptions. This claim is wrong.

New Jersey courts are open and able to correct the alleged tardiness of administrative agencies. Indeed "the Appellate Division [of the Superior Court] has exclusive jurisdiction to consider a claim of state administrative agency inaction." Hospital Center at Orange v. Guhl, 331 N.J. Super. 322, 329 (App. Div. 2000)(emphasis added). Because plaintiffs may obtain relief in the State courts, their procedural due process claims lack merit and do not state federal claims upon which relief can be granted. Reilly v. City of Atlantic City, 532 F.3d 216, 235-36 (3d Cir. 2008), cert. denied sub nom. Flipping v. Reilly, 129 S. Ct. 1316 (2009); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); Bello v.

- 31 -

Walker, 840 F.2d 1124, 1127-28 (3d Cir.), cert. denied, 488 U.S. 851 (1988). Hence counts three, four, five, and six must be dismissed insofar as they purport to state a federal claim. And as argued infra, Point IV, the Pennhurst doctrine, among others, forecloses resolution of the State-law claims.

### POINT III

**COUNTS SEVEN AND EIGHT MUST BE DISMISSED BECAUSE THE QUESTION WHETHER STATE LAW ALLOWS AN APPLICANT IN A SINGLE APPLICATION TO APPLY FOR MORE THAN ONE PERMIT TO PURCHASE RAISES AT MOST A STATE-LAW CLAIM AND DOES NOT RAISE A FEDERAL CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The Point II analysis, supra, is equally applicable to this Point III. The refusal of some municipalities, whether or not prompted by the Division of State Police, to allow some applicants to apply in a thirty (30) day period and in a single application for more than one permit to purchase does not "shock the contemporary conscience," and for that reason alone (as well as for many other reasons) does not raise a substantive due process issue. There is no violation of procedural due process because New Jersey courts are open and able to correct the municipal action if it violates State law.

Moreover, if plaintiffs are arguing (as their complaint seems to contend) that this issue raises a claim under the Fourteenth Amendment's privileges or immunities clause, they are surely

mistaken.   The   privileges   and   immunities   guaranteed   by   the Fourteenth Amendment are

> those   privileges   and   immunities   which   are fundamental;   which   belong   of   right   to   the citizens   of   all   free   governments,   and   which have at all times been enjoyed by citizens of the several States which compose this Union, from   the   time   of   their   becoming   free, independent,   and   sovereign.     What   these fundamental   principles   are,   it   would   be   more tedious than difficult to enumerate.  They may all,   however,   be   comprehended   under   the following   general   heads:   protection   by   the government,   with   the   right   to   acquire   and possess property of every kind, and to pursue and   obtain   happiness   and   safety,   subject, nevertheless,   to   such   restraints   as   the government may prescribe for the general good of the whole.
>
> [Slaughter-House Cases, 83 U.S. [16 Wall.] 36, 76 (1873)].

The alleged right, in a single application, to apply for more than one permit does not fit the bill.

Again, counts seven and eight raise only claims under State law and no viable federal claim.  And again, as argued infra, the Pennhurst doctrine deprives this Court of jurisdiction to effect a resolution of these State-law claims that would be binding upon these State defendants.  This Court must dismiss all claims.

## POINT IV

### THIS COURT SHOULD DECLINE TO EXERCISE PENDENT JURISDICTION OVER ALL STATE-LAW CLAIMS.

All of plaintiffs' federal claims lack merit and must be dismissed for failure to state a claim.  And the State-law claims

should be dismissed as well. "Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). This comity principle, deferring to State courts on State-law questions when the federal interest has subsided, takes on constitutional significance when, as in this case, the defendants are State officials.

Indeed, the State-law relief that plaintiffs seek violates the Eleventh Amendment to the United States Constitution. In Pennhurst, supra, the United States Supreme Court construed the jurisdictional limitations of the Eleventh Amendment so as to answer in the negative "the question whether a federal court may award injunctive relief against state officials on the basis of state law." Id. at 91. The Court reasoned that

> it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.

[Id. at 106.]

And although Pennhurst itself dealt only with a claim for equitable (injunctive) relief, lower courts are unanimous that the Pennhurst doctrine applies as well to declaratory relief and deprives a federal court of jurisdiction to award injunctive or declaratory judgments against state officials on the basis of state law. E.g., Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 42-43 (1st Cir. 2006)(a declaration of state law "plainly runs afoul of

- 34 -

Pennhurst"); <u>Spoklie v. Montana</u>, 411 <u>F.</u>3d 1051, 1060 (9th Cir. 2005)(<u>Pennhurst</u> bars "declaratory and injunctive relief . . . to vindicate an asserted right under state rather than federal law"); <u>MSA Realty Corp. v. Illinois</u>, 990 <u>F.</u>2d 288, 295 (7th Cir. 1993)("declaratory relief should not be awarded where the eleventh amendment bars an award of . . . injunctive relief"); <u>S. Union Co. v. Lynch</u>, 321 <u>F. Supp.</u> 2d 328, 332-34 (D.R.I. 2004)(collecting and discussing authorities); <u>Evanston Insurance Co. v. Merin</u>, 598 <u>F. Supp.</u> 1290, 1311 (D.N.J. 1984); <u>Levine v. County of Westchester</u>, 828 <u>F. Supp.</u> 238, 243 (S.D.N.Y. 1993), <u>aff'd</u>, 22 F.3d 1090 (2d Cir. 1994); <u>Everett v. Schramm</u>, 587 <u>F. Supp.</u> 228, 235 & n.11 (D. Del. 1984), <u>aff'd</u>, 772 <u>F.</u>2d 1114 (3d Cir. 1985). Because the relief that plaintiffs seek runs afoul of the jurisdictional limitations imposed by the Eleventh Amendment as construed in <u>Pennhurst</u>, their complaint must be dismissed.

**CONCLUSION**

For the foregoing reasons, this Court must dismiss plaintiffs' complaint as against these defendants. None of plaintiffs' federal claims has merit and all should be dismissed for failure to state a claim. And this Court lacks jurisdiction, and in any event should decline to exercise jurisdiction, to resolve the complaint's State-law claims.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
ATTORNEY FOR THE STATE DEFENDANTS


BY:     /s/ Larry R. Etzweiler
        Larry R. Etzweiler
        Senior Deputy Attorney General

Dated: February 24, 2010