UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| ASSOCIATION Of NEW JERSEY RIFLE AND PISTOL CLUBS, INC., a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A. JOHNSON; VINCENT FURIO; STEVEN YAGIELLO and BOB'S LITTLE SPORT SHOP, INC., a New Jersey Corporation, | : : : : : : : | CIVIL ACTION No. 10-cv-271-JAP-TJB |

Plaintiffs,

v.

CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey; PAULA T. DOW, Attorney General of the State of New Jersey; COLONEL RICK FUENTES, Superintendent, Division of New Jersey State Police; WASHINGTON TOWNSHIP (Morris County); CITY OF HACKENSACK; LITTLE EGG HARBOR TOWNSHIP and XYZ MUNICIPALITIES 1-563;

Defendants.

: On Motion for Dismissal of the Complaint and the Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6)

Return Date: April 19, 2010

_____

**REPLY BRIEF ON BEHALF OF THE GOVERNOR OF THE STATE OF NEW JERSEY, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND THE SUPERINTENDENT OF THE NEW JERSEY DIVISION OF STATE POLICE, DEFENDANTS IN THIS ACTION, IN FURTHER SUPPORT OF THEIR MOTION SEEKING DISMISSAL OF THE ORIGINAL AND THE AMENDED COMPLAINT**

_____

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants-Movants (the Governor of the State of New Jersey, the Attorney General of the State of New Jersey, and the Superintendent of the New Jersey Division of State Police)
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

LARRY R. ETZWEILER
larry.etzweiler@law.dol.lps.state.nj.us
Senior Deputy Attorney General, Division of Law
(609) 633-7786
    On the Brief

**TABLE OF CONTENTS**

PAGE

REPLY STATEMENT OF THE MATTER INVOLVED . . . . . . . . . . . . 1

LEGAL ARGUMENT

    POINT I

    COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE 15 U.S.C. §
    5001(g)(ii) DOES NOT PREEMPT ANY PART OF THE ONE HANDGUN
    PER MONTH LAW . . . . . . . . . . . . . . . . . . . . . . . 2

    POINT II

    EVEN IF 15 U.S.C. § 5001(g)(ii) PARTIALLY PREEMPTS THE
    ONE HANDGUN PER MONTH LAW, THIS COURT SHOULD NOT ENJOIN
    THE ENTIRE LAW . . . . . . . . . . . . . . . . . . . . . . 7

    POINT III

    THE FAILURE OF THE DIVISION OF STATE POLICE TO PROMULGATE
    EXEMPTION FORMS WITH THE RAPIDITY THAT PLAINTIFFS DESIRE
    DOES NOT EFFECT A VIOLATION OF DUE PROCESS AND GIVES RISE
    TO NO CLAIM COGNIZABLE IN THIS FEDERAL COURT . . . . . . 10

    POINT IV

    COUNTS VII AND VIII SHOULD BE DISMISSED AS TO ALL
    DEFENDANTS BECAUSE BOTH THE STATE DEFENDANTS AND THE
    MUNICIPAL DEFENDANTS ARE ENTITLED TO THE PROTECTIONS OF
    PENNHURST . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

CASES CITED

Altria Group, Inc. v. Good, 129 S. Ct. 538 (2008). . . . . . . . 6

Bd. of Trs. of the Univ. of Ala. v. Garrett,
531 U.S. 356 (2001). . . . . . . . . . . . . . . . . . . . . 13

Cipollone v. Liggett Group, 505 U.S. 504 (1992). . . . . . . 5, 6

City of New York v. Job-Lot Pushcart,
88 N.Y.2d 163 (1996). . . . . . . . . . . . . . . . . . . . 5, 6

<u>**TABLE OF AUTHORITIES**</u> (continued)

PAGE

CASES CITED (continued)

<u>Coalition of New Jersey Sportsmen v. Florio</u>,
744 <u>F. Supp.</u> 602  (D.N.J. 1990). . . . . . . . . . . . . . 3, 9

<u>Dorchy v. Kansas</u>, 264 <u>U.S.</u> 286 (1924). . . . . . . . . . . 7, 9

<u>Everett v. Schramm</u>, 772 <u>F.</u>2d 1114 (3d Cir. 1985). . . . . . . . 8

<u>Greater N.Y. Metro. Food Council, Inc. v. Giuliani</u>,
195 <u>F.</u>3d 100 (2d Cir. 1999), <u>cert. denied</u>,
529 <u>U.S.</u> 1066 (2000). . . . . . . . . . . . . . . . . . . 6

<u>Michael v. Shiley, Inc.</u>, 46 <u>F.</u>3d 1316 (3d Cir.),
<u>cert. denied</u>, 516 <u>U.S.</u> 815 (1995). . . . . . . . . . . . . . 6

<u>New York State Motor Truck Asso. v. City of New York</u>,
654 <u>F. Supp.</u> 1521 (S.D.N.Y. 1987), <u>aff'd</u>,
833 <u>F.</u>2d 436 (2d Cir. 1987) . . . . . . . . . . . . . . . . 6

<u>O'Neill v. City of Philadelphia</u>,
32 <u>F.</u>3d 785 (3d Cir. 1994), <u>cert. denied</u>,
514 U.S. 1015 (1995). . . . . . . . . . . . . . . . . 10, 11

<u>Pennhurst State School & Hospital v. Halderman</u>,
465 <u>U.S.</u> 89 (1983). . . . . . . . . . . . . . . . . . 8, 9, 13

<u>Railroad Comm. v. Pullman</u>, 312 <u>U.S.</u> 496 (1941). . . . . . . . 11

<u>Revell v. Port Auth.</u>, ___ F.3d ___,
2010 <u>U.S. App. LEXIS</u> 5803 (3d Cir. Mar. 22, 2010). . . . . 10, 11

<u>State v. Rackis</u>, 333 <u>N.J. Super.</u> 332 (App. Div. 2000). . . . . . 4

<u>United States v. Florida</u>, 585 <u>F. Supp.</u> 807 (N.D. Fla. 1984). . . 6

<u>Younger v. Harris</u>, 401 <u>U.S.</u> 37 (1971). . . . . . . . . . . . 11

STATUTES CITED

15 <u>U.S.C.</u> § 5001. . . . . . . . . . . . . . . . . . . . 5, 6

15 <u>U.S.C.</u> § 5001(g)(ii). . . . . . . . . . . . . . . . 2-5, 7-9

2009 <u>N.J. Laws</u> c. 104. . . . . . . . . . . . . . . . . . 12

- ii -

## TABLE OF AUTHORITIES (continued)

PAGE

STATUTES CITED (continued)

2009 N.J. Laws c. 168. . . . . . . . . . . . . . . . . . . . 12

2009 N.J. Laws c. 186. . . . . . . . . . . . . . . . . . . . 12

N.J.S.A. 2C:39-1(k). . . . . . . . . . . . . . . . . . . . . 8

N.J.S.A. 2C:58-3(d). . . . . . . . . . . . . . . . . . . . . 14

RULES CITED

Fed.R.Civ.P. 25(d) . . . . . . . . . . . . . . . . . . . . . 1

## REPLY STATEMENT OF THE MATTER INVOLVED

On March 10, 2010, plaintiffs filed an amended complaint (DDE # 14) which joins plaintiffs Vincent Furio and Steven Yagiello; which substituted the City of Hackensack and Little Egg Harbor Township for two of the 565 fictitious municipal defendants (the amended complaint now has 563 fictitious municipal defendants); and which effected a Fed.R.Civ.P. 25(d) substitution of newly-elected Governor Christie for former defendant Governor Corzine and newly-appointed Attorney General Dow for former defendant Attorney General Milgram. Substantively, the allegations against the State defendants (Christie, Dow, and Superintendent Fuentes, who was also a defendant in the original complaint) remain the same.

Without seeking leave of court, on March 11, 2010, plaintiffs filed supplemental papers and certifications supporting their pending motion for a preliminary injunction (DDE # 18,# 19, # 20) to which the State defendants had already filed a responsive brief on March 1, 2010. (DDE # 11). And on March 22, 2010, plaintiffs filed their brief responding to and opposing the State defendants' pending motion to dismiss the original complaint. (DDE # 22).

Plaintiffs' March 22, 2010, brief responds to the State defendants' February 24, 2010, motion-to-dismiss brief as though plaintiffs' amended complaint were the same as the original complaint. Because the original and amended complaints are substantively the same insofar as the State defendants are concerned, the State defendants have no objection to this

procedure, so long as this Court does not object, and this reply brief assumes that the amended complaint is at issue.

Plaintiffs' March 22, 2010, brief purports to "incorporate herein by reference" (DDE # 22 at p. 8 (internal p. 3)) the supplemental certifications newly filed on March 11, 2010.  The State defendants object both to the March 11, 2010, supplemental filing and to this purported incorporation.  Absent leave of Court, no Rule permitted this filing to supplement a pending preliminary-injunction motion; and no Rule permits incorporation of the supplemental papers into the amended complaint.[1]

## LEGAL ARGUMENT

### POINT I

#### COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE 15 U.S.C. § 5001(g)(ii) DOES NOT PREEMPT ANY PART OF THE ONE HANDGUN PER MONTH LAW.

The State defendants reiterate that 15 U.S.C. § 5001(g)(ii) does not preempt the One Handgun Per Month Law because this Law does not prohibit the sale of any handgun (including any non-

---

[1]     As noted, the State defendants filed their brief in opposition to plaintiffs' motion for a preliminary injunction on March 1, 2010, and thus have no opportunity, absent leave of Court, to file an additional brief explaining why these supplemental papers, like the original papers, fail to warrant preliminary injunctive relief.  If, despite our objection, this Court permits the supplemental filing and the incorporation that plaintiffs seek, the State defendants rely upon their existing arguments, which serve to rebut both plaintiffs' application for a preliminary injunction and plaintiffs' arguments that the amended complaint, even as supplemented by the March 11, 2010, papers, states a claim upon which relief can be granted.

- 2 -

traditional handgun[2] that is among the devices protected by 15 U.S.C. § 5001(g)(ii)) to any of the plaintiffs, so long as the purchaser has a permit to purchase; because the One Handgun Per Month Law does not ban the sale of handguns (traditional or otherwise), or limit the absolute number of handguns that a person may purchase, but limits only how often a handgun may be purchased; and because the law contains a number of exemptions, some of them quite broad and all applicable to non-traditional handguns.

Plaintiffs argue at several points that 15 U.S.C. § 5001(g)(ii) preempts State laws that "prohibit the purchase and sale" of non-traditional handguns. (E.g., DDE # 22 at p. 6 (internal p. 1)(emphasis added)). Protecting "purchases" is, of course, related to protecting "sales," but in fact § 5001(g)(ii) protects only the latter, manifesting that Congress's concerns were more directed to protecting manufacturers and marketers than consumers. The court in Coalition of New Jersey Sportsmen v. Florio, 744 F. Supp. 602 (D.N.J. 1990), found preemption not merely because New Jersey's Assault-Weapons Law infringed on purchases, but because the infringement was so onerous as to constitute a prohibition on sales. Id. at 608 ("These restrictions

---

[2]     Plaintiffs object to the term "non-traditional handgun" in reference to B-B and pellet-firing guns classified as "handguns" under New Jersey law. Plaintiffs argue that New Jersey law does not recognize this term. (DDE # 22 at p. 11 (internal p. 6)). The State defendants continue to employ the term as a convenient and readily-understood method of classification.

[on the right to purchase] are so substantial that they create a de facto prohibition on the sale"). The restrictions on the frequency of purchases effected by the One Handgun Per Month Law are not nearly so onerous.

Plaintiffs argue that the purchaser who wishes for an indefinitely long period of time to purchase one handgun per day is barred from doing so "approximately 96% of the time." (DDE #22 at p. 15 (internal p. 10)). But common sense indicates that very few honest purchasers are inclined to purchase so often,[3] and the limitation upon these frequent purchases does not significantly impact upon sales, and impacts less than the requirements for obtaining permits to purchase, which plaintiffs do not challenge. Plaintiffs specifically eschew making the claim that "the entire field of firearms regulation is preempted by 15 U.S.C. § 5001(g)(ii) . . ." (DDE # 22 at p. 15 (internal p. 10)).

Plaintiffs rely upon State v. Rackis, 333 N.J. Super. 332, 337 (App. Div. 2000)(construing the preemptive scope of 15 U.S.C. § 5001(g)(ii)) and argue that it "had nothing to do with purchase . . ." (DDE # 22 at p. 13 (internal p. 8)). But the reasoning of Rackis is equally applicable to purchases. So long as laws

---

[3]     Less unusual are frequent purchases by dishonest persons who make "straw purchases" of multiple handguns for the purpose of selling the handguns to others who would not lawfully be able to obtain them. Deterrence of these "straw purchases" was the primary purpose of the One Handgun Per Month Law. (DDE # 10-3 at p. 10 (internal p. 3)).

- 4 -

restricting possession or purchases are not so onerous as effectively to prohibit the sale of non-traditional handguns, the laws are not preempted by § 5001(g)(ii).

Plaintiffs fault the State defendants' reliance upon Cipollone v. Liggett Group, 505 U.S. 504, 517 (1992) and City of New York v. Job-Lot Pushcart, 88 N.Y.2d 163, 169 (1996). The State defendants relied upon Cipollone for the propositions (1) that when Congress has enacted a provision defining the pre-emptive reach of a statute, the enactment obviates the need to determine inferred preemption because the enactment implies that matters beyond that reach are not pre-empted (DDE #10-3 at p. 22 (internal p. 15)); and (2) that even express preemptive provisions (such as 15 U.S.C. § 5001(g)(ii)) must be construed in light of the presumption against the preemption of state police power regulations. (DDE # 10-3 at p. 23 (internal p. 16)). The State defendants relied upon Job-Lot Pushcart for the proposition that Congress did not intend the Federal Toy Gun Law, 15 U.S.C. § 5001, to effect a uniform system of national regulation. (DDE # 10-3 at p. 23 (internal p. 16)).

In plaintiffs' view, the facts and the context of this case are different from the facts and context of Cipollone and of Job-Lot Pushcart. But in each opinion, the State defendants' reliance was not upon dicta, but upon a rationale adopted by a

majority of the Judges or Justices[4] that directly informed the outcome.  Many courts in multiple factual settings and in multiple contexts have cited Cipollone for the propositions upon which the State defendants relied, e.g., Michael v. Shiley, Inc., 46 F.3d 1316, 1322 (3d Cir.)(citing Cipollone for the first proposition), cert. denied, 516 U.S. 815 (1995); Greater N.Y. Metro. Food Council, Inc. v. Giuliani, 195 F.3d 100, 110 (2d Cir. 1999)(citing Cipollone for the second proposition), cert. denied, 529 U.S. 1066 (2000).  See also Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008)(re-affirming both propositions).  While the Job-Lot Pushcart holding is not so often cited (because 15 U.S.C. § 5001 cases are rare), the principles informing Job-Lot Pushcart are the unassailable Cipollone principles that the State defendants advanced and that support dismissal of the amended complaint.

Plaintiffs argue that Surface Transportation Assistance Act caselaw[5] supports their preemption arguments by supporting "the proposition that timing regulations can easily constitute a prohibition." (DDE # 22 at p. 15 (internal p. 10)(emphasis added)).

_____

[4]    Other aspects of Justice Stevens' plurality opinion in Cipollone failed to muster a majority of the justices, see Cipollone, supra, 505 U.S. at 531, but the propositions upon which the State defendants relied commanded a majority of the Court.

[5]    The caselaw at issue was the caselaw upon which plaintiffs relied in their preliminary-injunction brief - namely New York State Motor Truck Asso. v. City of New York, 654 F. Supp. 1521 (S.D.N.Y. 1987), aff'd, 833 F.2d 436 (2d Cir. 1987), and United States v. Florida, 585 F. Supp. 807 (N.D. Fla. 1984).

Plaintiffs' use of the adverb "easily" understates the extended analysis by which the courts in those cases concluded that State-law timing restrictions unlawfully effected a "prohibit[ion]" of certain vehicles upon certain State highways in contravention of congressional mandates that these prohibitions be barred.  In any event, conflicting timing restrictions effected by adjoining States may indeed effect a "prohibition" of certain vehicles on certain highways within the intendment of the congressional acts.  But the timing restrictions imposed by the One Handgun Per Month Law do not effect a prohibition on "sales" and effect only a regulation of the timing of "purchases" that is not preempted by § 5001(g)(ii).

### POINT II

**EVEN IF 15 U.S.C. § 5001(g)(ii) PARTIALLY PREEMPTS THE ONE HANDGUN PER MONTH LAW, THIS COURT SHOULD NOT ENJOIN THE ENTIRE LAW.**

Plaintiffs do not dispute and almost admit (DDE #22 at p. 18 (internal p. 13) that the question whether partial preemption should result in the total or only partial enjoinment of the One Handgun Per Month Law (partial in that the Law would be enjoined only as to federally-protected non-traditional handguns) is a question of State, rather than federal law.  In any event Dorchy v. Kansas, 264 U.S. 286, 289-290 (1924) is dispositive that only State law is involved.  Plaintiffs clearly err (DDE # 22 at p. 18 (internal p. 13)) to argue that State law would require total

rather than only partial enjoinment. (DDE # 10-3 at p. 29 (internal p. 22)).

In any event, Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1983) deprives this Court of jurisdiction to resolve this claim. Plaintiffs claim that the State defendants are arguing that "any claim even remotely related to state law is somehow precluded by [Pennhurst]." (DDE # 22 at p. 10 (internal p. 5)). Plaintiffs argue that Everett v. Schramm, 772 F.2d 1114 (3d Cir. 1985), demonstrates that the State defendants misconstrue Pennhurst. The State defendants are not arguing what plaintiffs claim they argue; and the portions of Everett from which plaintiffs quote (DDE # 22 at p. 26 (internal p. 21)) do not support what they contend, nor does anything else in the Everett opinion.

The Everett opinion holds that Pennhurst does not bar a federal court from construing a state statute when the construction is a predicate to a federal claim. Everett, supra, 772 F.2d at 1119. In this case the State defendants acknowledge that N.J.S.A. 2C:39-1(k), defining "handgun," should be construed to encompass non-traditional handguns whose sale is protected by Congress in 15 U.S.C. § 5001(g)(ii); but even if the State defendants did not so acknowledge, the federal interest in protecting 15 U.S.C. § 5001(g)(ii) devices would have permitted this Court to make this State-law construction, and Everett makes clear that Pennhurst does not hold otherwise.

- 8 -

On the other hand, the claim that partial preemption by 15 U.S.C. § 5001(g)(ii) should result in the total rather than the partial enjoinment of the One Handgun Per Month Law is a State-law claim lacking federal interest. Dorchy, supra. Plaintiffs admit that this State-law claim is severable from, although pendent to, the federal preemption claim but submit that Dorchy's remand to the state courts to resolve the similar state-law claim in that case was merely a matter of convenience because the case was on appeal from a state court. But the Pennhurst opinion bars state-law claims even when (as was the situation in Pennhurst, see 465 U.S. at 121-23 & nn.32 & 33) they are pendent to federal claims advancing federal interests, and Pennhurst makes clear that convenience cannot overcome the Eleventh Amendment. Id.

Plaintiffs fault the State defendants' reliance upon Coalition of New Jersey Sportsmen, supra, in which the Court employed 15 U.S.C. § 5001(g)(ii) to effect only a partial, rather than a total enjoinment of New Jersey's Assault-Weapons Law. Plaintiffs argue that the Coalition "plaintiffs do not appear to have ever argued that the entire law should be stricken." (DDE # 22 at p. 19 (internal p. 14)). That the Coalition plaintiffs did not so argue does not advance these plaintiffs' position but rather may simply indicate that the Coalition plaintiffs did not deem the issue worthy of presenting to the Court.

## POINT III

### THE FAILURE OF THE DIVISION OF STATE POLICE TO PROMULGATE EXEMPTION FORMS WITH THE RAPIDITY THAT PLAINTIFFS DESIRE DOES NOT EFFECT A VIOLATION OF DUE PROCESS AND GIVES RISE TO NO CLAIM COGNIZABLE IN THIS FEDERAL COURT.

Plaintiffs' brief does not challenge the State defendants' argument (DDE # 10-3 at pp. 37 to 38 (internal pp. 30 to 31) that this issue is not a matter of substantive due process. The brief does challenge our argument that the availability of State-court remedies eliminates plaintiffs' procedural due-process claim. As plaintiff Association should be aware (because it is a party to the suit), the United States Court of Appeals for the Third Circuit recently re-affirmed the principle that adequate state-court post-deprivation remedies generally satisfy the requirements of procedural due process. Revell v. Port Auth., ___ F.3d ___, 2010 U.S. App. LEXIS 5803, *26-*29 (3d Cir. Mar. 22, 2010); see also id. at *7-*8 n.5 (noting the involvement of plaintiff Association in this litigation).

Plaintiffs argue that this holding is tantamount to requiring exhaustion of state-court remedies, contrary to well-established jurisprudence. (DDE # 22 at p. 24 (internal p. 19)). But exhaustion is a separate doctrine that should not be confused with due process. Cf. O'Neill v. City of Philadelphia, 32 F.3d 785, 790

- 10 -

(3d Cir. 1994)("necessary concomitant of <u>Younger</u>[6] is that a party wishing to contest in federal court the judgment of a state judicial tribunal must exhaust his state appellate remedies before seeking relief in the District Court")(brackets and quotations omitted), <u>cert. denied</u>, 514 U.S. 1015 (1995).[7]  Plaintiffs have no obligation to employ state-court remedies to correct due-process violations, but before mounting a claim that state actors violated procedural due process they must be prepared to "explain[] why those remedies would be futile or constitutionally inadequate." <u>Revell</u>, <u>supra</u> at *10.

Plaintiffs argue that the State defendants' alleged tardiness is "egregious" (DDE # 22 at p. 7 (internal p. 2)) and "blatant," <u>id.</u> at p. 8 (internal p. 3), and they make several arguments disparaging the State defendants' construction of State law that would afford the State defendants more implementation time than plaintiffs find tolerable.  <u>Id.</u> at pp. 20 to 24 (internal pp. 15 to 18).  The State's initial brief in this matter rebuts these

---

[6]   <u>Younger v. Harris</u>, 401 <u>U.S.</u> 37 (1971)(effecting the so-called "<u>Younger</u> abstention doctrine").

[7]   Plaintiffs also contend that the State defendants' arguments about the adequacy of State-court remedies is tantamount to invocation of abstention.  The State defendants have not invoked abstention under <u>Railroad Comm. v. Pullman</u>, 312 <u>U.S.</u> 496 (1941), but reserve the right to do so should this Court deny their motion to dismiss.  Application of <u>Pullman</u> would result in a stay rather than dismissal of the federal suit.  <u>Id.</u> at 501-02.

arguments.[8]   In any event those arguments cannot transmogrify State-law timeliness issues into a federal claim.   And Pennhurst deprives this Court of jurisdiction to resolve the State-law claim.

### POINT IV

**COUNTS VII AND VIII SHOULD BE DISMISSED AS TO ALL DEFENDANTS BECAUSE BOTH THE STATE DEFENDANTS AND THE MUNICIPAL DEFENDANTS ARE ENTITLED TO THE PROTECTIONS OF PENNHURST.**

Plaintiffs' response to Point III of the State's initial motion brief is two-fold: (1) Counts VII and VIII were directed only to the municipal defendants and not to these State defendants; and (2) Pennhurst sovereign immunity protects only State defendants and not municipal defendants.   (DDE # 22 at p. 28 (internal p. 23)).   Neither response has merit.

---

[8]   Plaintiffs also assert that the "conflict in the codification of the January 2010 amendments to the One Gun Law which must be reconciled by the Office of Legislative Services" does not afford the State defendants greater implementation time because "[i]f lack of codification were enough to excuse the promulgation of required State Police forms and procedures then it should be enough to enjoin the law entirely.   [The State defendants] cannot have it both ways."   (DDE # 22 at p. 22 (internal p. 17)).   It suffices to respond that the One Handgun Per Month Law was enacted by 2009 N.J. Laws c. 104 (approved August 6, 2010), whereas the exemptions about whose allegedly tardy implementation plaintiffs complain were enacted later, in 2009 N.J. Laws c. 168 (approved January 3, 2010), and 2009 N.J. Laws c. 186 (approved January 12, 2010); and it is only these later enactments that have conflicting codifications whose resolution requires input from the Office of Legislative Services.   It is therefore entirely reasonable for the State defendants to enforce 2009 N.J. Laws c. 104, but to consider with some deliberation how to effect forms that do not erroneously adopt an as-yet non-existent codification of exemptions.

As part of the relief requested under Counts VII and VIII, plaintiffs concede that they demanded

> injunctive relief directing the Attorney General and/or the Superintendent of State Police to issue a guidance document to municipalities regarding the issuance of permits [and adopting the construction of State law advanced by plaintiffs].

> [DDE # 22 at p. 10 n.2 (internal p. 5 n.2).]

And plaintiffs further concede that "Pennhurst might impact [this] claim [for relief]." Id. Plaintiffs' concession is appropriate; this claim for relief arises exclusively under State law and is barred by Pennhurst.

Plaintiffs cite Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 369 (2001)("the Eleventh Amendment does not extend its immunity to units of local government") for the proposition that whatever the impact of Pennhurst upon the need to dismiss Counts VII and VIII as against these State defendants, Pennhurst can have no relevance to the municipal defendants; and Counts VII and VIII should fully proceed as to them. Although Garrett states the usual rule, Pennhurst itself recognized an exception that grants the protections of Eleventh Amendment sovereign immunity to local entities in certain circumstances:

> a suit against officials of a county or other [local] governmental entity is barred if the relief obtained runs against the State.

> [Pennhurst, supra, 465 U.S. at 124 n.34.]

And injunctive relief against local entities must be denied if

- 13 -

> it is clear that without the injunction
> against the state . . . officials in this
> case, an order entered on state-law grounds
> [against only local defendants] necessarily
> would be limited.

[Id. at 123-23.]

An injunction directing municipalities to process permits to purchase more than one handgun or to process more than one permit in a single month would be "limited" under New Jersey law without an injunction compelling the Superintendent of the Division of State Police to do likewise because, in many situations, the Superintendent is the issuer. N.J.S.A. 2C:58-3(d).[9] Eleventh Amendment jurisprudence does not tolerate this type of piecemeal relief, and the municipalities also enjoy Pennhurst protection. These plaintiffs should bring their State-law claims in State courts, which have jurisdiction to resolve these claims.

## CONCLUSION

For the foregoing reasons as well as the reasons set forth in the State defendants' initial motion brief, this Court must dismiss plaintiffs' complaint and amended complaint as against all

---

[9]     There are certain limited situations in which a handgun-transferee would legitimately need or could legitimately use more than one permit to purchase in a single month, and the current Superintendent may (pending State-court guidance on the issue) issue more than one permit to purchase within a single month. That fact, however, does not diminish municipal Eleventh Amendment protection under the Pennhurst standard, which asks only whether relief would be "limited" if granted against local but not State officials. And the Superintendent in his official capacity declines to waive sovereign immunity either for himself or for local entities enjoying the protections of Pennhurst.

defendants.  None of plaintiffs' federal claims has merit and all should be dismissed for failure to state a claim.  And this Court lacks jurisdiction, and in any event should decline to exercise jurisdiction, to resolve the complaint's and the amended complaint's State-law claims.

                              Respectfully submitted,

                              PAULA T. DOW
                              ATTORNEY GENERAL OF NEW JERSEY
                              ATTORNEY FOR THE STATE DEFENDANTS


                         BY:    /s/ Larry R. Etzweiler
                              Larry R. Etzweiler
                              Senior Deputy Attorney General

Dated: April 6, 2010

                              - 15 -