UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
_____

| | | |
|---|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A. JOHNSON; and BOB'S LITTLE SPORT SHOP, INC., a New Jersey Corporation, | : : : : : : | CIVIL ACTION No. 10-cv-271-JAP-TJB |
| Plaintiffs, | : : : | On Motion for Dismissal of Complaint Pursuant to |
| v. | : : : | Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) |
| CHRIS CHRISTIE Governor of the State of New Jersey; PAULA T. DOW, Attorney General of the State of New Jersey; COLONEL RICK FUENTES, Superintendent, Division of New Jersey State Police; WASHINGTON TOWNSHIP (Morris County); and XYZ MUNICIPALITIES 1-565; | : : : : : : : | Return Date: March 21, 2011 |
| Defendants. | : : | |

_____

**BRIEF ON BEHALF OF DEFENDANTS, THE GOVERNOR OF THE STATE OF NEW JERSEY, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND THE SUPERINTENDENT OF THE NEW JERSEY DIVISION OF STATE POLICE, IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**
_____

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants-Movants (the Governor of the State of New Jersey, the Attorney General of the State of New Jersey, and the Superintendent of the New Jersey Division of State Police)
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

GREGORY A. SPELLMEYER
gregory.spellmeyer@dol.lps.state.nj.us
Deputy Attorney General, Division of Law
(609) 984-9504
        On the Brief

## TABLE OF CONTENTS

PAGE

PROCEDURAL HISTORY AND STATEMENT OF THE MATTER INVOLVED   . . . 1

LEGAL ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . 6

    POINT I

    COUNTS ONE AND TWO WERE PREVIOUSLY DISMISSED BY THIS
    COURT ON CONSIDERATION OF THE STATE DEFENDANTS' MOTION TO
    DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND CANNOT BE
    RE-PLEAD IN A SECOND AMENDED COMPLAINT . . . . . . . . . . 8

    POINT II

    COUNTS THREE AND FOUR SHOULD BE DISMISSED AS MOOT AND
    BECAUSE NEITHER THE RAPIDITY IN WHICH THE DIVISION OF
    STATE POLICE PROMULGATED EXEMPTION FORMS NOR THE
    EXEMPTIONS THEMSELVES EFFECT A VIOLATION OF DUE PROCESS
    OR GIVE RISE TO A CLAIM COGNIZABLE IN THIS FEDERAL COURT
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.   Counts Three and Four Should Be Dismissed as
        Moot . . . . . . . . . . . . . . . . . . . . . . . 9

    B.   The Failure of the Division of State Police to
        Promulgate Exemption Forms with the Rapidity that
        Plaintiffs Desired Did Not Effect a Violation of
        Due Process and Does Not Give Rise to a Cognizable
        Federal Claim . . . . . . . . . . . . . . . . . 11

        1.   New Jersey Law Afforded the Superintendent a
            Reasonable Quantum of Time in Which to
            Promulgate Forms Effecting the Exemptions . . 12

        2.   Even If the Division Failed to Comply with
            State-Law Requirements for Promptness in Form
            Promulgation, That Failure Does Not Violate
            Due Process . . . . . . . . . . . . . . . . . 15

    C.   The Exemption Process Does Not Effect a
        Violation of Due Process . . . . . . . . . . . . 17

## <u>TABLE OF CONTENTS</u> (continued)

PAGE

POINT III

COUNTS FIVE AND SIX SHOULD BE DISMISSED AS TO ALL
DEFENDANTS AS MOOT AND BECAUSE BOTH THE STATE DEFENDANTS
AND THE MUNICIPAL DEFENDANTS ARE ENTITLED TO THE
PROTECTIONS OF <u>PENNHURST</u> . . . . . . . . . . . . . . . . 21

A.    Counts Five And Six Should Be Dismissed as
      Moot . . . . . . . . . . . . . . . . . . . . . . . . 22

B.    Counts Five And Six Should Be Dismissed
      Because They Do Not State a Violation of Due
      Process or Give Rise to a Cognizable Federal
      Claim . . . . . . . . . . . . . . . . . . . . . . . 23

POINT IV

THIS COURT SHOULD DECLINE TO EXERCISE PENDENT
JURISDICTION OVER ALL STATE-LAW CLAIMS . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 28

- ii -

## <u>TABLE OF AUTHORITIES</u>

CASES CITED

<u>Alvin v. Suzuki</u>, 227 <u>F.</u>3d 107 (3d Cir. 2000) . . . . . . . . 17

<u>Application of Marvin</u>, 53 <u>N.J.</u> 147 (1969) . . . . . . . . . . . 1

<u>Ashcroft v. Iqbal</u>, __ <u>U.S.</u> __ , 129 <u>S. Ct.</u> 1937,
173 <u>L. Ed. 2</u>d 868 (2009) . . . . . . . . . . . . . . . . . . 7

<u>Bell Atlantic Corp. v. Twombly</u>, 550 <u>U.S.</u> 544 (2007) . . . . . . 7

<u>Bello v. Walker</u>, 840 <u>F.</u>2d 1124 (3d Cir. 1988) . . . . . . . . 17

<u>Borough of W. Mifflin v. Lancaster</u>,
45 <u>F.</u>3d 780 (3d Cir. 1995) . . . . . . . . . . . . . . . . . 25

<u>Chiropractic America v. LaVecchia</u>,
180 <u>F.</u>3d 99 (3d Cir. 1999) . . . . . . . . . . . . . . . . . 20

<u>Conley v. Gibson</u>, 355 <u>U.S.</u> 41 (1957) . . . . . . . . . . . . 7

<u>County of Morris v. Nationalist Movement</u>,
273 <u>F.</u>3d 527 (3d Cir. 2001) . . . . . . . . . . . . . . . . 10,23

<u>Diaz-Fonseca v. Puerto Rico</u>, 451 <u>F.</u>3d 13 (1st Cir. 2006) . . 26

<u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>,
321 <u>F.</u>3d 411 (3d Cir. 2003) . . . . . . . . . . . . . . . . 15

<u>Eichenlaub v. Township of Indiana</u>,
385 <u>F.</u>3d 274 (3d Cir. 2004) . . . . . . . . . . . . . . . . 16

<u>Evanston Insurance Co. v. Merin</u>,
598 <u>F. Supp.</u> 1290 (D.N.J. 1984) . . . . . . . . . . . . . . 27

<u>Everett v. Schramm</u>, 587 <u>F. Supp.</u> 228 (D. Del. 1984),
 <u>aff'd</u>, 772 <u>F.</u>2d 1114 (3d Cir. 1985) . . . . . . . . . . . 27

<u>FCC v. Beach Communications, Inc.</u>, 508 <u>U.S.</u> 307 (1993) . . . 19

<u>Flemming v. Nestor</u>, 363 <u>U.S.</u> 603 (1960) . . . . . . . . . . 19

<u>Gun South, Inc. v. Brady</u>, 877 <u>F.</u>2d 858 (11th Cir. 1989) . . . 21

<u>Heller v. Doe</u>, 509 <u>U.S.</u> 312 (1993) . . . . . . . . . . . . . 19

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

CASES CITED

<u>Hospital Center at Orange v. Guhl</u>,
331 <u>N.J. Super.</u> 322 (App. Div. 2000) . . . . . . . . . . . . 16

<u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 <u>U.S.</u> 356 (1973)   19

<u>Levine v. County of Westchester</u>,
828 <u>F. Supp.</u> 238 (S.D.N.Y. 1993),
<u>aff'd</u>, 22 <u>F.</u>3d 1090 (2d Cir. 1994) . . . . . . . . . . . . 27

<u>Malmed v. Thornburgh</u>, 621 <u>F.</u>2d 565 (3d. Cir. 1980) . . . . . 19

<u>MSA Realty Corp. v. Illinois</u>, 990 <u>F.</u>2d 288 (7th Cir. 1993) . 27

<u>McCool v. City of Philadelphia</u>,
494 <u>F. Supp.</u> 2d 307 (E.D. Pa. 2007) . . . . . . . . . . . 18

<u>McTernan v. City of York</u>, 577 <u>F.</u>3d 521 (3d Cir. 2009) . . . . . 7

<u>Nicholas v. Pennsylvania State Univ.</u>,
227 <u>F.</u>3d 133 (3d Cir. 2000) . . . . . . . . . . . . . . . 15,18

<u>O'Neill v. City of Philadelphia</u>,
32 <u>F.</u>3d 785 (3d Cir. 1994) . . . . . . . . . . . . . . . 17

<u>Pennhurst State School & Hospital v. Halderman</u>,
465 <u>U.S.</u> 89 (1983) . . . . . . . . . . . . . . . 11,17,22-27

<u>Phillips v. County of Allegheny</u>,
515 <u>F.</u>3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . 7

<u>Public Interest Research Group, Inc. v. Magnesium Elektron, Inc.</u>,
123 <u>F.</u>3d 111 (3d Cir. 1997) . . . . . . . . . . . . . . . 8

<u>Reilly v. City of Atlantic City</u>, 532 <u>F.</u>3d 216
(3d Cir. 2008), <u>cert. denied</u>, 129 <u>S. Ct.</u> 1316 (2009) . . . . 16

<u>Revell v. Port Auth.</u>, 598 <u>F.</u>3d 128 (3d Cir. 2010) . . . 16,17,20

<u>Richmond Boro Gun Club v. City of New York</u>,
896 <u>F. Supp.</u> 276 (E.D.N.Y. 1995), <u>aff'd</u>, 97 <u>F.</u>3d 681 (1996) . 15

<u>Rosetti v. Shalala</u>, 12 <u>F.</u>3d 1216 (3d Cir. 1993) . . . . . . 11,23

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

CASES CITED

<u>Sammon v. New Jersey Bd. Of Med. Exam'rs</u>,
66 <u>F.</u>3d 639 (3d Cir. 1995) . . . . . . . . . . . . . . . 19

<u>Spoklie v. Montana</u>, 411 <u>F.</u>3d 1051 (9th Cir. 2005) . . . . . . 26

<u>S. Union Co. v. Lynch</u>, 321 <u>F. Supp.</u> 2d 328 (D.R.I. 2004) . . 27

<u>Taylor Inv. Ltd. v. Upper Darby Twp.</u>,
983 <u>F.</u>2d 1285 (3d Cir.) . . . . . . . . . . . . . . . . 20

<u>Unalachtigo Band of the Nanticoke Lenni Lenape Nation v. Corzine</u>,
606 <u>F.</u>3d 126 (3d Cir. 2010) . . . . . . . . . . . . . . . 10,23

<u>Younger v. Harris</u>, 401 <u>U.S.</u> 37 (1971) . . . . . . . . . . . 17


STATUTES CITED

15 <u>U.S.C.</u> § 5001(g)(ii) . . . . . . . . . . . . . . . . . 24

<u>N.J.S.A.</u> 2C:58-3(d) . . . . . . . . . . . . . . . . . 13,25

<u>N.J.S.A.</u> 2C:58-3.4 . . . . . . . . . . . . . . . . 5,9,10,14

RULES CITED

<u>Fed.R.Civ.P.</u> 12(b)(1) . . . . . . . . . . . . . . . . . 2

<u>Fed.R.Civ.P.</u> 12(b)(6) . . . . . . . . . . . . . . . . . 2,6

## PROCEDURAL HISTORY AND STATEMENT OF THE CASE

The One Handgun Per Month Law is an important part of the Gun Control Law that was designed to combat a particularly lethal way by which criminal and other unfit elements acquire weapons. It provides, with certain exemptions, that no person may purchase multiple handguns in any thirty (30) day period. In relevant part, the exemptions are provided for collectors and shooting competition participants. The law was intended to deter and does deter "straw purchases" of multiple handguns for the purpose of selling them to criminals and others unable lawfully to obtain them because of a criminal record or other disqualifying circumstances. Governor's Firearms Advisory Task Force, Initial Report, November 12, 2009, p. 6. Plaintiffs' second amended complaint seeks to deprive the public of the security that the One Handgun Per Month confers.

Plaintiffs, who wish to purchase or sell handguns, challenge New Jersey's so-called "One Handgun Per Month Law" that is now part of New Jersey's Gun Control Law. Their challenge is completely lacking in merit, and, if successful, would diminish public safety. A government's foremost function is to ensure the safety of its citizenry, and New Jersey's Gun Control Law fulfills this function by "seek[ing] to prevent criminal and other unfit elements from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences." Application of Marvin, 53 N.J. 147, 150 (1969).

The State defendants (the Governor of New Jersey, the Attorney General of New Jersey, and the Superintendent of the New Jersey Division of State Police) submit this brief in support of their motion to dismiss plaintiffs' second amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). The prior procedural and factual history of this matter is summarized in this Court's Opinion filed June 14, 2010. See Docket Entry #50, Opinion.

By Order filed June 14, 2010, this Court denied plaintiffs' motion for a preliminary injunction and granted the State's motion to dismiss plaintiffs' amended complaint as to Counts One and Two, which claimed that the One Handgun Per Month Law was preempted by 15 U.S.C. § 5001(g)(ii). See Docket Entry #51, Order. This Court directed supplemental briefing as to the remaining issues because of developments after the filing of the State's motion to dismiss and plaintiffs' motion for preliminary injunction. See Docket Entry #51, Order. However, this Court then concluded that those developments deprived it of a full record, and it dismissed all pending motions without prejudice to being re-filed following the filing of another amended complaint or being renewed upon the denial of a motion to amend. See Docket Entry #55, Order filed July 23, 2010. These developments included the superintendent's prescription in April 2010 of the procedures and forms for seeking exemptions. See Docket Entry #59, Second Amended Complaint, ¶ 49.

See also Docket Entry #50, Opinion Filed June 14, 2010, p.1 n.1, p.10.  See also Docket Entry #32.  They also included the State Police issuing guidance to municipalities that the One Handgun Per Month Law does not restrict individuals from obtaining more than one permit in a 30-day period.  See Opinion Filed June 14, 2010, Docket Entry #50, p.3 n.2, p.10.  See also Docket Entry #32.

Plaintiffs filed a second amended complaint on October 1, 2010.  See Docket Entry #59.  The six plaintiffs are a rifle-and-pistol club (the Association of New Jersey Rifle and Pistol Clubs, hereinafter Association); the president of the club, Scott L. Bach; a gun shop federally and State-licensed as a retail dealer of firearms (Bob's Little Sport Shop, hereinafter Bob's); and three other persons, Kaare A. Johnson, Vincent Furio, and Steven Yagiello.  See Docket Entry #59, Second Amended Complaint ¶¶ 5 to 10.  Members of the Association and the individual plaintiffs wish to purchase multiple handguns within a thirty (30) day period. See Docket Entry #59, Second Amended Complaint ¶¶ 59 to 63.  Bob's wishes to sell multiple handguns to individuals within a thirty (30) day period.  See Docket Entry #59, Second Amended Complaint ¶ 64. Named defendants are the State defendants (the Governor of New Jersey, the Attorney General of New Jersey, and the Superintendent of the New Jersey Division of State Police), Washington Township, the City of Hackensack, Little Egg Harbor Township, and fictitious

municipalities of the State of New Jersey.  See Docket Entry #59, Second Amended Complaint ¶¶ 11-17.

In counts one and two, plaintiffs continue to claim that the One Handgun Per Month Law deprives them of their rights in violation of 15 U.S.C. §5001(g)(ii).  See Docket Entry #59, Second Amended Complaint ¶¶ 55-68.  As noted above, this Court denied plaintiffs' earlier motion for a preliminary injunction and granted the State's motion to dismiss plaintiffs' amended complaint as to these claims.  See Docket Entry #51, Order filed June 14, 2010.

In counts three and four, plaintiffs allege that, prior to April 6, 2010, there was no procedure in place by which an individual could apply for one or more of the exemptions so that the Superintendent could grant any of the exemptions and he/she could purchase multiple handguns within a thirty (30) day period.  See Docket Entry #59, Second Amended Complaint ¶ 45.  See also Docket Entry #59, Second Amended Complaint ¶¶ 39,41,43,70,71,74.  Plaintiffs allege that, as to those plaintiffs who would qualify for one or more exemptions and therefore be entitled under the One Handgun Per Month Law to purchase multiple handguns within a thirty (30) day period, the lack of a procedure deprived them of liberty and/or property without due process of law in violation of the Fourteenth Amendment.  See Docket Entry #59, Second Amended Complaint ¶¶ 46,47.  However, on or about April 6, 2010, the State Police did promulgate the forms to be used to qualify for the

- 4 -

exemptions.  See Docket Entry #59, Second Amended Complaint ¶¶ 49, 75.  See also Docket Entry #50, Opinion Filed June 14, 2010, p.1 n.1, p.10.  See also Docket Entry #32.  The forms are consistent with amended N.J.S.A. 2C:58-3.4b which provides: "The applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased. . . . If the information concerning the particular handguns to be purchased is not available when the form is submitted, that information shall be provided to the superintendent as soon as practicable thereafter."  See also Docket Entry #32.

Despite this, plaintiffs allege that the exemption forms enable only a sub-class of the entire class of individuals who would qualify for one or more exemptions to actually qualify and so deprives them of liberty and/or property without due process of law in violation of the Fourteenth Amendment.  See Docket Entry #59, Second Amended Complaint, Counts Three and Four ¶¶ 69-92.  In fact, the exemption process does not effect a deprivation of property without due process.  The requirement to identify the handgun(s) sought to be purchased pursuant to the exemption does not deprive an individual of the right to seek to qualify to purchase that handgun(s).  Further, any processing time concomitant with the request for an exemption does not deprive the requester of the right to seek the exemption.

Finally, in counts five and six, plaintiffs attack the earlier refusal of some municipalities to process, in any thirty (30) day period, more than one application for a permit to purchase a handgun or any application for more than one permit to purchase. <u>See</u> Docket Entry #59, Second Amended Complaint ¶¶ 93-116.  The State is not alleged to have refused to process, in any thirty (30) day period, more than one application for a permit to purchase a handgun or any application for more than one permit to purchase. Moreover, the State Police has issued guidance advising municipalities that the One Gun Per Month Law does not restrict individuals from obtaining more than one permit in a 30-day period. <u>See</u> Opinion Filed June 14, 2010, Docket Entry #50, p.3 n.2, p.10. <u>See</u> <u>also</u> Docket Entry #32.  These claims, seeking injunctive and declaratory relief, are moot.  Further, these alleged violations do not present viable federal claims but rather present, at most, State-law claims over which this Court does not have jurisdiction.

## **LEGAL ARGUMENT**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) may be granted when a plaintiff is not entitled to relief upon accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Nonetheless, a plaintiff's allegations must present a plausible claim for relief. McTernan v. City of York, 577 F.3d 521, 530 (3d Cir. 2009) (citing Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The allegations must present sufficient factual grounds supporting a right to relief which rise above the speculative level such that the claim to relief is plausible on its face. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (abrogating "no set of facts" standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A plaintiff must provide the grounds for his entitlement to relief, more than labels and conclusions, and a mere recitation of the elements of a cause of action will not suffice to withstand a motion to dismiss. Phillips, 515 F.3d at 231 (citing Bell Atlantic Corp., 550 U.S. at 555).

**POINT I**

**COUNTS ONE AND TWO WERE PREVIOUSLY DISMISSED BY THIS COURT ON CONSIDERATION OF THE STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND CANNOT BE RE-PLEAD IN A SECOND AMENDED COMPLAINT.**

Plaintiffs' primary attack upon the One Handgun Per Month Law -- that it is preempted by 15 U.S.C. § 5001(g)(ii) -- has already been dismissed by this Court. See Docket Entry #51, Order June 14, 2010. See also Docket Entry #50, Opinion, pp.1,9. Accordingly, the "law of the case doctrine" bars plaintiffs from re-presenting this claim to the court. Public Interest Research Group, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 1116 (3d Cir. 1997) ("doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation"). Counts one and two of plaintiffs' second amended complaint, seeking injunctive and declaratory relief respectively on the basis of this claim, should be dismissed. See Docket Entry #59, Second Amended Complaint ¶¶ 55-68.

## POINT II

**COUNTS THREE AND FOUR SHOULD BE DISMISSED AS MOOT AND BECAUSE NEITHER THE RAPIDITY IN WHICH THE DIVISION OF STATE POLICE PROMULGATED EXEMPTION FORMS NOR THE EXEMPTIONS THEMSELVES EFFECT A VIOLATION OF DUE PROCESS OR GIVE RISE TO A CLAIM COGNIZABLE IN THIS FEDERAL COURT.**

### A.   Counts Three and Four Should Be Dismissed as Moot.

This Court should dismiss as moot the Plaintiffs' attack on the alleged tardiness of the Division of State Police in promulgating the procedures and forms to implement the exemptions. Plaintiffs are able to apply for the exemptions. Consequently, there is no remaining live case or controversy as required by U.S. Const. art. III in order for this Court to maintain jurisdiction over this claim.

Amended N.J.S.A. 2C:58-3.4 enumerates several sets of circumstances under which a person may apply to the superintendent for and obtain an exemption from the restriction against being able to purchase multiple handguns in any thirty (30) day period. N.J.S.A. 2C:58-3.4a(1)(2)(3). See Docket Entry #44. They include exemptions for purchases by collectors needing multiple handguns in furtherance of collecting activities, N.J.S.A. 2C:58-3.4a(2), and purchases by competitors in handgun shooting competitions, N.J.S.A. 2C:58-3.4a(3). The superintendent has authority to prescribe the necessary procedures and forms for receiving and considering

requests for exemptions.  N.J.S.A. 2C:58-3.4a(1)(2)(3).  See Docket
Entry #44.

The superintendent prescribed the procedures and forms in
April 2010.  See Docket Entry #59, Second Amended Complaint, ¶ 49.
See also Docket Entry #50, Opinion Filed June 14, 2010, p.1 n.1,
p.10.  See also Docket Entry #32.  The forms are consistent with
amended N.J.S.A. 2C:58-3.4b, which provides: "The applicant shall
certify, on a form prescribed by the superintendent, the specific
exemption sought and the particular handguns to be purchased. . .
. If the information concerning the particular handguns to be
purchased is not available when the form is submitted, that
information shall be provided to the superintendent as soon as
practicable thereafter."  See also Docket Entry #32.

Plaintiffs are able to apply for the exemptions.
Consequently, there is no remaining live case or controversy as
required by U.S. Const. art. III in order for this Court to
maintain jurisdiction over this claim.  See Unalachtigo Band of the
Nanticoke Lenni Lenape Nation v. Corzine, 606 F.3d 126, 129 (3d
Cir. 2010) (Article III extends federal court jurisdiction only to
"cases" or "controversies," and federal court has no power to
proceed at all where it has no jurisdiction).  This claim, for
which plaintiffs seek injunctive and declaratory relief, is moot.
See County of Morris v. Nationalist Movement, 273 F.3d 527, 534 (3d
Cir. 2001) (declaratory judgment action to determine rights of

parties regarding upcoming event mooted by event occurring). Article III does not permit this Court to take any further action regarding it. See Rosetti v. Shalala, 12 F.3d 1216, 1223, 1225 (3d Cir. 1993) (Article III case or controversy requirement must be met to maintain declaratory judgment action in federal court and "case does not become any less moot" because plaintiff is asking court to declare that someone has acted unlawfully to plaintiff's detriment). Because the procedures to implement the exemptions have been issued and plaintiffs are able to apply for exemptions, Counts Three and Four should be dismissed as moot.

**B.    The Failure of the Division of State Police to Promulgate Exemption Forms with the Rapidity that Plaintiffs Desired Did Not Effect a Violation of Due Process and Does Not Give Rise to a Cognizable Federal Claim.**

Plaintiffs attack the alleged tardiness of the Division of State Police in promulgating the procedures and forms to implement the exemptions. See Docket Entry #59, Second Amended Complaint ¶¶ 45-47. These alleged violations of State law do not present viable federal claims. At most, they present State-law claims. Also, plaintiffs' invitation to this Court to resolve the State-law claims is an invitation to violate the State's Eleventh Amendment sovereignty as construed in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1983), which deprives federal courts of jurisdiction over equitable and declaratory State-law claims brought against State officials.

- 11 -

The amendment effecting the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions was approved on January 12, 2010, to take effect immediately.   2009 <u>N.J. Laws</u> <u>c.</u> 186, § 5.   Five days later, on Sunday, January 17, 2010, plaintiffs filed their original complaint.   The superintendent prescribed the procedures and forms in April 2010.   <u>See</u> Docket Entry #59, Second Amended Complaint, ¶ 49.   <u>See</u> <u>also</u> Docket Entry #50, Opinion Filed June 14, 2010, p.1 n.1, p.10.   <u>See</u> <u>also</u> Docket Entry #32.   In counts three and four of their second amended complaint, plaintiffs continue to fault the Superintendent for having failed to have promulgated the forms effecting the exemptions even earlier.   However, New Jersey law did not require the Superintendent to respond as rapidly as plaintiffs demand.   And even if New Jersey law does require this rapid response, the Superintendent's failure to have acted with the necessary rapidity constitutes a violation at most of State and not federal law.

1.   **New Jersey Law Afforded the Superintendent a Reasonable Quantum of Time in Which to Promulgate Forms Effecting the Exemptions.**

New Jersey law afforded the Superintendent a reasonable amount of time in which to promulgate forms effecting the exemptions, and this amount of time must take into account the fact that the statutory language of <u>c.</u> 186, § 2, clashed in form (although not in substance) with the language of § 2 of <u>c.</u> 168, approved January 3, 2010 (nine days before the approval of c. 186).   Among other

- 12 -

problems, both <u>c.</u> 168, § 2, and <u>c.</u> 186, § 2, added new exemptions (in addition to and other than the <u>c.</u> 186, § 2, superintendent-conferred set of exemptions) in new sub-subsections of <u>N.J.S.A.</u> 2C:58-3(i) that each purported to codify as sub-subsection 4 (<u>i.e.,</u> as <u>N.J.S.A.</u> 2C:58-3(i)(4)).  The problem is that they are different exemptions.   Obviously,  <u>N.J.S.A.</u>  2C:58-3(i)  cannot  have  two differing sub-subsections 4.[1]

The clash between <u>c.</u> 168 and <u>c.</u> 186 was harmonized and now has an official statutory codification.  <u>See</u> Docket Entry #50, Opinion Filed June 14, 2010 p.10.   Prior to then, any forms that the Superintendent might create in order to implement those exemptions would either have had to omit reference to the codification or guess what it would be and hope that it had guessed correctly. Both  the  absence  of  "lead  time"  and  the  Legislature's  need  to resolve statutory clashes support the position that the Division had a reasonable quantum of time in which to promulgate the forms effecting the exemptions.   This result is supported as well by statutory language.

---

[1]    Additionally,  <u>c.</u>  168,  §  2,  added  a  new  rule  of construction  following  the  entire  list  of  <u>N.J.S.A.</u>  2C:58-3(i) exemptions that states:

> The provisions of this subsection shall not be construed  to  afford  or  authorize  any  other exemption  from  the  regulatory  provisions governing firearms set forth in chapter 39 and chapter  58  of  Title  2C  of  the  New  Jersey Statutes.

However, <u>c.</u> 186 neglected to add this rule of construction.

Although c. 186, § 5, uses the term "timely implementation" in reference to implementation of all of the exemptions provided by c. 186 (including the c. 186, § 2, superintendent-conferred set of exemptions), the term "timely" is not defined. Moreover, the language of § 5 is precatory rather than mandatory. Section 5 does not provide that the superintendent must take anticipatory administrative action, but provides instead that "the Superintendent of State Police may take . . . anticipatory administrative action" prior to the effective date so as to effect "timely implementation."

Likewise, N.J.S.A. 2C:58-3.4, serving to implement the c. 186, § 2, superintendent-conferred set of exemptions, also employs similar precatory language.   See N.J.S.A. 2C:58-3.4(a)(The superintendent may grant an exemption . . ." (emphasis added)); N.J.S.A. 2C:58-3.4(d)("the superintendent may adopt . . . such temporary regulations as the superintendent deems necessary to implement" the c. 186 exemptions including the c. 186, § 2, superintendent-conferred set of exemptions.).   While it may be unlikely that New Jersey courts would construe this precatory language to mean that the superintendent had discretion never to implement the c. 186, § 2, superintendent-conferred set of exemptions, nevertheless, plaintiffs would be hard-pressed, in view of this precatory language and in view as well of the absence of lead time and the Legislature's need for codifying the relevant

- 14 -

statutory provisions, to persuade a State court that the Division was tardy in its implementation.

Further, State court is the appropriate forum to resolve whether the Division is tardy. As argued <u>infra</u>, plaintiffs' efforts to transmogrify the State-law timeliness issue into a federal claim are unavailing. Even if counts three and four raise valid State-law claims, they do not raise a federal claim upon which relief can be granted and afford no basis for federal-court intervention.

> **2.   Even If the Division Failed to Comply with State-Law Requirements for Promptness in Form Promulgation, That Failure Does Not Violate Due Process.**

Plaintiffs' second amended complaint raises the promptness claims as due-process claims, but it does not specify whether procedural or substantive due process is at issue. Clearly substantive due process is not at issue. "[V]iolations of state law generally do not give rise to substantive due process claims," <u>Richmond Boro Gun Club v. City of New York</u>, 896 <u>F. Supp.</u> 276 (E.D.N.Y. 1995), <u>aff'd</u>, 97 <u>F.</u>3d 681 (1996), and in any event do so only when the government's behavior is so egregious and so outrageous that it may fairly be said to "shock the contemporary conscience," <u>and</u> the behavior deprives the plaintiff of an interest that is so significant that the Fourteenth Amendment's substantive due process protection apply. <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 <u>F.</u>3d 411, 426-27 (3d Cir. 2003); <u>Nicholas v.</u>

Pennsylvania State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000) (opinion by Alito, then C.J.). Plaintiffs' entitlement - if they have it - to the very prompt promulgation of exemption forms is not the type of significant interest protected by substantive due process, and in any event the allegations of tardiness, even if true, cannot fairly be said to shock the contemporary conscience. See Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004) (mere delays in approvals and permits does not shock conscience).

As to procedural due process, the availability of State-court remedies defeats plaintiffs' claim. Adequate state-court post-deprivation remedies generally satisfy the requirements of procedural due process. Revell v. Port Auth., 598 F.3d 128, 138-39 (3d Cir. 2010). New Jersey courts are open and able to correct the alleged tardiness of administrative agencies. Indeed "the Appellate Division [of the Superior Court] has exclusive jurisdiction to consider a claim of state administrative agency inaction." Hospital Center at Orange v. Guhl, 331 N.J. Super. 322, 329 (App. Div. 2000) (emphasis added). Because plaintiffs may obtain relief in the State courts, their procedural due process claims lack merit and do not state federal claims upon which relief can be granted. Reilly v. City of Atlantic City, 532 F.3d 216, 235-36 (3d Cir. 2008), cert. denied sub nom. Flipping v. Reilly,

129 <u>S. Ct.</u> 1316 (2009); <u>Alvin v. Suzuki</u>, 227 <u>F.</u>3d 107, 116 (3d Cir. 2000); <u>Bello v. Walker</u>, 840 <u>F.</u>2d 1124, 1127-28 (3d Cir. 1998).

It is worth noting that exhaustion is a separate doctrine that should not be confused with due process.  <u>Cf.</u> <u>O'Neill v. City of Philadelphia</u>, 32 <u>F.</u>3d 785, 790 (3d Cir. 1994) ("necessary concomitant of <u>Younger</u>[2] is that a party wishing to contest in federal court the judgment of a state judicial tribunal must exhaust his state appellate remedies before seeking relief in the District Court")(brackets and quotations omitted).  Plaintiffs have no obligation to employ state-court remedies to correct due-process violations, but before mounting a claim that state actors violated procedural due process they must be prepared to "explain[] why those remedies would be futile or constitutionally inadequate." <u>Revell</u>, 598 <u>F.</u>3d at 133.

Hence counts three and four must be dismissed insofar as they purport to state a federal claim.  And as argued above, the <u>Pennhurst</u> doctrine deprives this Court of jurisdiction to resolve the State-law claim.

### C.   The Exemption Process Does Not Effect a Violation of Due Process.

Plaintiffs complain that the procedure for seeking an exemption requires information from the applicant regarding the handgun to be purchased and time to process the exemption request.

---

[2]      <u>Younger v. Harris</u>, 401 <u>U.S.</u> 37 (1971)(effecting the so-called "<u>Younger</u> abstention doctrine").

<u>See</u> Docket Entry #59, Second Amended Complaint ¶ 85. Consequently, the applicant may, during the time period in which his or her exemption request is being processed, lose the opportunity to purchase the specifically identified handguns. <u>See</u> Docket Entry #59, Second Amended Complaint ¶¶ 81-83, 85. This claim should be rejected and dismissed because the procedure for seeking an exemption neither violates substantive due process nor deprives an applicant of any (state created but Constitutionally) protected property or liberty interest without due process of law.

The exemption procedure comports with substantive due process because it is rationally related to a legitimate state interest, enacting the "One Handgun Per Month Law," which in turn furthers the safety and general welfare of New Jersey residents by deterring "straw purchases" of multiple handguns for the purpose of selling them to criminals and others unable lawfully to obtain them. The prescription of the procedure is most analogous to a legislative act because it is a broad executive regulation which applies to more than a limited number of persons. <u>See</u> <u>Nicholas</u>, 227 <u>F.</u>3d at 139 n.1, 140; <u>see also</u> <u>McCool v. City of Philadelphia</u>, 494 <u>F. Supp.</u> 2d 307, 316 (E.D. Pa. 2007) (citing <u>Nicholas</u>, 227 <u>F.</u>3d at 139). Rational basis is the standard of review that applies to a legislative act, and it requires only that the government identify a legitimate state interest that could be said to be served by the act. <u>See</u> <u>Nicholas</u>, 227 <u>F.</u>3d at 139.

- 18 -

"A statute is presumed constitutional and 'the burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it.'" <u>Heller v. Doe</u>, 509 <u>U.S.</u> 312, 320 (1993) (quoting <u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 <u>U.S.</u> 356, 364 (1973)). "[A] court must determine if the provision rationally furthers any legitimate state objective." <u>Malmed v. Thornburgh</u>, 621 <u>F.</u>2d 565, 569 (3d. Cir. 1980). "[I]t is entirely irrelevant whether the is reasoning in fact underlay the legislative decision." <u>Id.</u> (quoting <u>Flemming v. Nestor</u>, 363 <u>U.S.</u> 603, 611 (1960)). Moreover, "[t]he legitimate purpose justifying the provision need not be the primary purpose of the provision." <u>Id.</u> "A court engaging in rational basis review is not entitled to second guess the legislature on the factual assumptions or policy considerations underlying the statute." <u>Sammon v. New Jersey Bd. Of Med. Exam'rs</u>, 66 <u>F.</u>3d 639, 645 (3d Cir. 1995). "In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." <u>FCC v. Beach Communications, Inc.</u>, 508 <u>U.S.</u> 307, 314 (1993).

Here, it could be rationally concluded that requiring information regarding the handgun sought to be purchased pursuant to an exemption serves the legitimate state interest of attempting to ensure that the applicant appropriately qualifies for the exemption. It is rational that information about the handgun

sought to be purchased may be relevant to determining whether the applicant qualifies for the exemption as to that purchase, which purchase would constitute more than one handgun purchase within 30 days.  For this reason, the exemption procedure comports with substantive due process.

As to procedural due process, as discussed above, the availability of State-court remedies defeats plaintiffs' claim. See Revell, 598 F.3d at 138-39.  Nevertheless, the requirement to provide information regarding the handgun(s) sought to be purchased pursuant to the exemption does not deprive an applicant of any property or any opportunity to seek to qualify to purchase a handgun(s).  See Chiropractic America v. LaVecchia, 180 F.3d 99, 113 (3d Cir. 1999)(procedural due process claim that provision in arbitration process denied any practical right to contest medical treatment judgments to be determined by whether process in fact provided fair opportunity to contest judgments).  The opportunity for a fair process and determination as to whether the exemption should be granted is not diminished.  See Taylor Inv. Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1290 (3d Cir. 1993)(to prevail on procedural due process claim, plaintiffs must have been deprived of property interest by denial of fair legal process).  Further, that a request necessarily takes some modicum of time to process is simply part of the process provided and does not in any way affect or have an effect on whether the request can be or will be granted.

It is not a barrier to receiving the requested exemption; it is simply a necessary reality of the exemption process.  See Gun South, Inc. v. Brady, 877 F.2d 858, 867-868 (11th Cir. 1989) (temporarily deprivation of certain firearms to determine whether they were legally imported does not violate due process and was justified by government's paramount interest in protection of public safety; deprivation did not affect license or permit, and post-deprivation hearing provided adequate process).  Therefore, the requirement to provide information about the handgun(s) sought to be purchased pursuant to the exemption does not deprive an applicant of any property without due process.

### POINT III

**COUNTS FIVE AND SIX SHOULD BE DISMISSED AS TO ALL DEFENDANTS AS MOOT AND BECAUSE BOTH THE STATE DEFENDANTS AND THE MUNICIPAL DEFENDANTS ARE ENTITLED TO THE PROTECTIONS OF PENNHURST.**

Plaintiffs attack the earlier refusal of some municipalities to process, in any thirty (30) day period, more than one application for a permit to purchase a handgun or any application for more than one permit to purchase.  See Docket Entry #59, Second Amended Complaint ¶¶ 93-116.  The State is not alleged to have refused to process, in any thirty (30) day period, more than one application for a permit to purchase a handgun or any application for more than one permit to purchase.  Moreover, the State Police has issued guidance advising municipalities that the One Handgun Per Month Law does not restrict individuals from obtaining more

- 21 -

than one permit in a 30-day period.  See Docket Entry #50, Opinion Filed June 14, 2010, p.3 n.2, p.10.  See also Docket Entry #32.  As this Court has already determined, "all parties appear to be in accord" regarding this issue.  See Docket Entry #50, Opinion Filed June 14, 2010, p.9.  Accordingly, these claims, seeking injunctive and declaratory relief, are moot.  There is no remaining case or controversy.  Further, these alleged violations do not present viable federal claims but rather present, at most, State-law claims.  Finally, plaintiffs' invitation to this Court to resolve the State-law claims is an invitation to violate the State's Eleventh Amendment sovereignty as construed in Pennhurst State School & Hospital v. Halderman, supra, 465 U.S. 89 (1983), depriving federal courts of jurisdiction over equitable and declaratory State-law claims brought against State officials.

## A.   Counts Five And Six Should Be Dismissed as Moot.

For the same reasons that counts three and four should be dismissed as moot, plaintiffs' claim that they were previously denied their right to apply for multiple handgun purchase permits simultaneously should be dismissed as moot.  The State Police has issued guidance advising municipalities that the One Handgun Per Month Law does not restrict individuals from obtaining more than one permit in a 30-day period.  See Opinion Filed June 14, 2010, Docket Entry #50, p.3 n.2, p.10.  See also Docket Entry #32.  There is no allegation that plaintiffs presently are unable, in any State

jurisdiction, to apply simultaneously for multiple handgun permits. Consequently, there is no remaining live case or controversy as required by U.S. Const. art. III in order for this Court to maintain jurisdiction over this claim. See Unalachtigo Band of the Nanticoke Lenni Lenape Nation, 606 F.3d at 129 (Article III extends federal court jurisdiction only to "cases" or "controversies," and federal court has no power to proceed at all where it has no jurisdiction). This claim, for which plaintiffs seek injunctive and declaratory relief, is moot. See County of Morris, 273 F.3d at 534 (declaratory judgment action to determine rights of parties regarding upcoming event mooted by event occurring). Article III does not permit this Court to take any further action regarding it. See Rosetti, 12 F.3d at 1223, 1225 (Article III case or controversy requirement must be met to maintain declaratory judgment action in federal court and "case does not become any less moot" because plaintiff is asking court to declare that someone has acted unlawfully to plaintiff's detriment).

**B.    Counts Five And Six Should Be Dismissed Because They Do Not State a Violation of Due Process or Give Rise to a Cognizable Federal Claim.**

The Point II due process and Pennhurst analysis, supra, is equally applicable to this Point III. The refusal of some municipalities, whether or not prompted by the Division of State Police, to allow some applicants to apply in a thirty (30) day period and in a single application for more than one permit to

- 23 -

purchase does not "shock the contemporary conscience," and for that reason alone (as well as for many other reasons) does not raise a substantive due process issue.  There is no violation of procedural due process because New Jersey courts are open and able to correct the alleged violations of State law.  Further, <u>Pennhurst</u> deprives this Court of jurisdiction to "instruct state officials on how to conform their conduct to state law." <u>Pennhurst</u>, 465 <u>U.S.</u> at 106.

As to this claim as it pertains to the municipal defendants, <u>Pennhurst</u> also applies.  <u>Pennhurst</u> recognized an exception that grants the protections of Eleventh Amendment sovereign immunity to local entities in certain circumstances:

> a suit against officials of a county or other [local] governmental entity is barred if the relief obtained runs against the State.

> [<u>Pennhurst</u>, 465 <u>U.S.</u> at 124 n.34.]

And injunctive relief against local entities must be denied if

> it is clear that without the injunction against the state . . . officials in this case, an order entered on state-law grounds [against only local defendants] necessarily would be limited.

> [<u>Id.</u> at 123-23.]

An injunction directing municipalities to process permits to purchase more than one handgun or to process more than one permit in a single month would be "limited" under New Jersey law without an injunction compelling the Superintendent of the Division of State Police to do likewise because, in many situations, the

Superintendent is the issuer.  <u>N.J.S.A.</u> 2C:58-3(d).[3]  Eleventh Amendment jurisprudence does not tolerate this type of piecemeal relief, and the municipalities also enjoy <u>Pennhurst</u> protection. These plaintiffs should bring their State-law claims in State courts, which have jurisdiction to resolve these claims.

Again, counts five and six raise claims that are moot and that only present claims under State law, not viable federal claims. The <u>Pennhurst</u> doctrine deprives this Court of jurisdiction to effect a resolution of these State-law claims that would be binding upon these State defendants.  This Court must dismiss these claims.

<b><u>POINT IV</u></b>

<b>THIS COURT SHOULD DECLINE TO EXERCISE PENDENT<br>JURISDICTION OVER ALL STATE-LAW CLAIMS.</b>

All of plaintiffs' federal claims lack merit and must be dismissed for failure to state a claim.  And the State-law claims should be dismissed as well.  "Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  <u>Borough of W. Mifflin v. Lancaster</u>, 45 <u>F.</u>3d 780, 788 (3d

---

[3]     There are certain limited situations in which a handgun-transferee would legitimately need or could legitimately use more than one permit to purchase in a single month, and the current Superintendent may (pending State-court guidance on the issue) issue more than one permit to purchase within a single month.  That fact, however, does not diminish municipal Eleventh Amendment protection under the <u>Pennhurst</u> standard, which asks only whether relief would be "limited" if granted against local but not State officials.   And the Superintendent in his official capacity declines to waive sovereign immunity either for himself or for local entities enjoying the protections of <u>Pennhurst</u>.

Cir. 1995).  This comity principle, deferring to State courts on State-law questions when the federal interest has subsided, takes on constitutional significance when, as in this case, the defendants are State officials.

Indeed, the State-law relief that plaintiffs seek violates the Eleventh Amendment to the United States Constitution.  In Pennhurst, the United States Supreme Court construed the jurisdictional limitations of the Eleventh Amendment so as to answer in the negative "the question whether a federal court may award injunctive relief against state officials on the basis of state law."  Id. at 91.  The Court reasoned that

> it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.

[Id. at 106.]

And although Pennhurst itself dealt only with a claim for equitable (injunctive) relief, lower courts are unanimous that the Pennhurst doctrine applies as well to declaratory relief and deprives a federal court of jurisdiction to award injunctive or declaratory judgments against state officials on the basis of state law.  See e.g., Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 42-43 (1st Cir. 2006)(declaration of state law "plainly runs afoul of Pennhurst"); Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005)(Pennhurst bars "declaratory and injunctive relief . . . to vindicate an asserted right under state rather than federal law");

MSA Realty Corp. v. Illinois, 990 F.2d 288, 295 (7th Cir. 1993)("declaratory relief should not be awarded where the eleventh amendment bars an award of . . . injunctive relief"); S. Union Co. v. Lynch, 321 F. Supp. 2d 328, 332-34 (D.R.I. 2004)(collecting and discussing authorities); Evanston Insurance Co. v. Merin, 598 F. Supp. 1290, 1311 (D.N.J. 1984); Levine v. County of Westchester, 828 F. Supp. 238, 243 (S.D.N.Y. 1993), aff'd, 22 F.3d 1090 (2d Cir. 1994); Everett v. Schramm, 587 F. Supp. 228, 235 & n.11 (D. Del. 1984), aff'd, 772 F.2d 1114 (3d Cir. 1985).  Because the relief that plaintiffs seek runs afoul of the jurisdictional limitations imposed by the Eleventh Amendment as construed in Pennhurst, their complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court must dismiss plaintiffs' second amended complaint as against all defendants.  None of plaintiffs' federal claims has merit, and all should be dismissed for failure to state a claim.  And this Court lacks jurisdiction, and in any event should decline to exercise jurisdiction, to resolve the second amended complaint's State-law claims.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
ATTORNEY FOR THE STATE DEFENDANTS


BY:   /s/ Gregory A. Spellmeyer
      Gregory A. Spellmeyer
      Deputy Attorney General

Dated: January 11, 2011

- 28 -