1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CIVIL NO. 10-271


ASSOCIATION OF NEW JERSEY       :
RIFLE AND PISTOL CLUBS,         :
INC., et al.,                   :
                                :
     Plaintiffs,                :
                                : TRANSCRIPT OF PROCEEDINGS
        -vs-                    :
                                :
JON S. CORZINE, et al.,         :
                                :
             Defendant.         :

- - - - - - - - - - - - - - - - - -


                        Trenton, New Jersey
                          May 25, 2010

     B E F O R E:


         THE HONORABLE JOEL A. PISANO
         UNITED STATES DISTRICT COURT JUDGE


     A P P E A R A N C E S:

     FARBER & FERSKO
     BY:  DANIEL L. SCHMUTTER, ESQ.,
     For the Plaintiffs.

     OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
     BY:  LARRY ROBERT ETZWEILER, Deputy Attorney
          General
     For Defendant Corzine.


     Pursuant to Section 753 Title 28 United States
     Code, the following transcript is certified to be
     an accurate record as taken stenographically in the
     above-entitled proceedings.


     _____
       S/Joanne M. Caruso, CSR, CRR
         Official Court Reporter
           (908)334-2472

APPEARANCES CONTINUED:

ZISA & HITSCHERICK
BY:  CRAIG M. POGOSKY, ESQ.,
For Defendant City of Hackensack.

1                    May 25, 2010

2          THE COURT:   Who is Mr. Schmutter?

3          MR. SCHMUTTER:  I am.

4          THE COURT:   Nice to see you.

5          Mr. Etzweiler?

6          MR. ETZWEILER:  I'm Mr. Etzweiler.

7          THE COURT:   And that makes you Mr. Pogosky?

8          MR. POGOSKY:  It does.

9          THE COURT:  This case has been pending for so long

10    and there have been so many procedural meanderings that I have

11    some basic questions about, I don't know how else to put it

12    other than what the lay of the land is.

13          There was a complaint.  The original complaint in the

14    case, which was filed in January, which asserted some claims,

15    generally an attack against the One Gun Law based upon this

16    federal preemption argument and then there is another set of

17    claims which is directed toward the process or the lack

18    thereof, depending on who you believe, for the application for

19    permits to purchase handguns and, in addition to that process,

20    the process by which people would exercise legitimate status

21    for exemptions from the one-gun law.

22          The case was originally brought against the Governor,

23    the Attorney General, Superintendent of the State Police,

24    Washington Township and X, Y, Z unidentified municipalities.

25          There was then an amended complaint, which changed

1  the scenario in that different plaintiffs were added to the

2  case.  I shouldn't say different plaintiffs so much as

3  additional plaintiffs were added to the case.  The name of the

4  Governor and Attorney General, the names of the Governor and

5  Attorney General were changed, Washington Township was still

6  named as a defendant municipality, the City of Hackensack was

7  named as a municipality, the Township of Little Egg Harbor was

8  named as a municipality and there were still unidentified

9  municipalities named as defendants.

10          This, of course, followed the dismissal of Washington

11  Township as a defendant.  Is it Washington Township?  Was it

12  Washington Township?

13          MR. SCHMUTTER:  We settled with Washington Township.

14          THE COURT:   They were omitted as a party because

15  they apparently recognized that they were not complying with

16  the statute in connection with the permitting process.

17          MR. SCHMUTTER:  Yes, Judge.

18          THE COURT:   In any event, I then began getting

19  letters from the state alleging that part of the case was moot

20  and this, I take it, comes from the, what appears to be the

21  reorganization or codification of the statute, along with the

22  development of some procedures for applying for permits, a

23  clarification of the fact that people were not limited in the

24  numbers of permits they could file to obtain and that there

25  had been procedures put in place for those to exercise

1   legitimate status as exemptions, correct?

2           MR. ETZWEILER:  Almost, your Honor.

3           THE COURT:   I don't have to be perfect here, I'm

4   just trying to get the lay of the land.

5           MR. ETZWEILER:  Okay.

6           THE COURT:   So my question to you, because Mr.

7   Schmutter then wrote a letter complaining about this mootness

8   concept.  Then I got a notice of motion, and by the way, the

9   complaint asserts a right to injunctive relief on all of this.

10          In response, the defendants move not only against the

11  injunction, but file a separate motion to dismiss the

12  complaint, so what we have pending here is an application for

13  an injunction, a motion to dismiss the complaint.  There are

14  opposition papers filed as against everything and then we get

15  a motion from the City of Hackensack to dismiss and the

16  plaintiffs complain about whether or not we should even

17  entertain that.

18          What I need you to do at the outset is to tell me

19  what claims are in the case, which claims -- which parties are

20  in the case and which parties are out, which claims do you

21  assert are moot and which are not moot and then where do we

22  go?

23          Who are these gentlemen, you have colleagues?

24          MR. SCHMUTTER:  I have with me Mr. Scott Bach, one of

25  the plaintiffs, and also the president of the Association of

1    New Jersey Rifle And Pistol Clubs.

2              THE COURT:   Nice to see you.

3              MR. SCHMUTTER:  Mr. Carmel, executive vice-president.

4              THE COURT:   Mr. Carmel.

5              Okay.  Where are we, Mr. Schmutter?  What claims are

6    in the case, which parties remain in the case, what are the

7    claims against each defendant remaining in the case and then

8    I'd like to know what the status of the Act is, what exactly

9    is the status of the Act, has it been codified, has it been

10   actually entered on the books, what is the status of the

11   permitting process and the exercise of exemptions process?

12             MR. SCHMUTTER:  Your Honor, we believe that as

13   procedurally postured today, you have before you counts one

14   and two, which are the preemption counts.

15             You have before you counts seven and eight, which are

16   the municipal counts for unlawfully restricting the number of

17   permits, and I'll explain which defendants we have and which

18   defendants we don't have, but I think you do have properly

19   before you today is counts three through six, because those

20   are the counts dealing with the exemptions.

21             Mr. Etzweiler advised the Court that the State Police

22   had issued a form designed to provide a process for obtaining

23   the exemptions.  Interestingly, they couched it as a letter

24   advising the Court of facts suggesting mootness.  They didn't

25   move to dismiss on the count of mootness, but as a result we

1  didn't cross move to amend because, in our view, those facts

2  don't moot counts three through six because the forms don't

3  work.  The forms give rise to the same due process concerns as

4  not having the forms.

5          However, because counts one and two -- if the Court

6  issues relief on counts one and two, it would be dispositive

7  of the case as a whole.  We thought it made sense not to take

8  up the Court's time to deal with those other issues which may

9  not be necessary to deal with.  Therefore, we declined to move

10  to amend at this time.

11          If the Court does not afford relief on counts one and

12  two, then we will seek leave to amend because at that point it

13  will be necessary for the Court to hear the issues relating to

14  due process as to the exemptions.  If the Court strikes down

15  the law in its entirety, the rest of the claims don't matter.

16          THE COURT:  One of the arguments that's made in the

17  motion to dismiss as to counts -- I suppose it's the balance

18  of the complaint, other than counts one and two, that the

19  argument is that the balance of the complaint, counts three

20  through eight, do not raise federal claims and I ought to

21  decline supplemental jurisdiction, but when I look at the

22  complaint, you have what appears to be federal court language.

23  It is, to me, very confusing as to what is before me and what

24  isn't.

25          MR. SCHMUTTER:  Well, Judge, counts three and four

1  raise federal constitutional claims.  Those certainly give

2  federal jurisdiction.

3            Counts five and six are claims under New Jersey

4  Constitution.

5            Count seven and eight are claims under New Jersey

6  regulatory law.

7            THE COURT:   How are counts five and six different

8  from counts three and four?

9            MR. SCHMUTTER:  They're the same, but for the source

10  of law.  They're both due process claims.  Three and four are

11  under the 14th amendment, five and six are under the New

12  Jersey Constitution, Article I Section 1.

13            THE COURT:   All right.

14            MR. SCHMUTTER:  Now, I'm aware, of course, of the

15  State's argument with respect to those claims and with respect

16  to their motion to dismiss.  I think the problem today,

17  though, is that because of this letter suggesting mootness and

18  our response, I think the Court doesn't really have a full

19  record before it as to counts three through six.

20            THE COURT:   I'd like to know what the State's

21  position is.  What is moot, what's in the case and what's not,

22  from the State's point of view?

23            MR. ETZWEILER:  Shall I respond?

24            THE COURT:   Yes, please.

25            MR. ETZWEILER:  The promulgation of the forms which I

1   think is the tardy promulgation of the forms, alleged tardy
2   promulgation of the forms we view as moot because the forms
3   have been promulgated.  The counter contention to our argument
4   about mootness is that the form is so miserable that they
5   don't do the job and they're so miserable, they continue to
6   raise a due process issue.  That is a federal claim in the
7   minimal sense that your Honor has jurisdiction to adjudicate
8   that claim.

9         Our contention is that that claim is so weak, that
10  it's really tantamount to a state law claim, that the
11  plaintiffs are asking this Court to micromanage the format of
12  the forms and if there were ever an issue that should be
13  lumped exclusively in the state court, that is certainly it;
14  but, yes, at the moment there is federal claims.  Are those
15  forms so miserable that they somehow violate, I think it's
16  procedural due process, because they haven't raised
17  substantive due process, but I think what we're talking about
18  is procedural due process at this point.

19        THE COURT:  Well, do we understand that the statute,
20  the One-Gun Act, does not restrict people from obtaining more
21  than one permit in a 30-day period?

22        MR. ETZWEILER:  That is the position of the Division
23  of State Police.  It's the position that has been sent out to
24  all the municipalities.  It's the guidance position that the
25  Division of State Police has asked the municipalities to

1   follow and it is the position that the division will continue

2   to take unless and until some state court says that we have

3   misconstrued state law.

4        THE COURT:  I ask the question because when the case

5   was commenced, we had affidavits and declarations from a

6   number of individuals asserting that their efforts to obtain

7   permits to purchase handguns were being thwarted by local

8   police departments and that is why we had these municipalities

9   in the case.  They were being sent away after receiving one

10  application for a permit and apparently the police

11  departments, the police chiefs were saying that's all we can

12  give you, that's what the statute says; when, in fact, they

13  said the statute doesn't say that and now we know, indeed, it

14  does not.

15       MR. ETZWEILER:  Right.

16       THE COURT:  So if we all understand that the statute

17  does not preclude more than one permit to purchase a handgun

18  from being obtained, what is the dispute over that issue?

19       MR. SCHMUTTER:  The dispute, Judge, over that issue

20  is a couple of things.  We don't know -- first of all, Little

21  Egg Harbor has not changed their practice as far as we know.

22  We don't know -- the fact that the State Police have issued

23  their guidance, which we appreciate, we think it's a good

24  idea, directing or really advising chiefs of police that they

25  cannot restrict the number of permits.  We don't know that

1  they're, in fact, all complying with that and we have reason
2  to believe that at least one major city in New Jersey that
3  isn't complying with that.  We may have to amend again.  The
4  problem is we can't amend over and over.
5          THE COURT:  Is that Hackensack or somebody else?
6          MR. SCHMUTTER:  It's somebody else.
7          THE COURT:  Who is it?
8          MR. SCHMUTTER:  Jersey City.
9          Your Honor may or may not know, Jersey City began the
10  one-gun-a-month process with its own ordinance which there was
11  an entire litigation, Judge Gallipoli in the Superior Court
12  struck down that law, that was upheld to the Appellate
13  Division, went to the New Jersey Supreme Court and as a result
14  of the passage of this statute, the New Jersey Supreme Court
15  mooted out that case.
16          THE COURT:  Why doesn't that decision direct the
17  outcome in this case, at least insofar as the permitting
18  process goes?
19          MR. SCHMUTTER:  They're on different grounds.  The
20  state law case on the Jersey City ordinance was based on state
21  preemption of a local regulation.  It's really an entirely
22  different set of issues.
23          THE COURT:  What happens if I were to determine that
24  I'm not convinced by your argument that the Federal Section
25  5001 preempts this statute?

1          MR. SCHMUTTER:  What happens to the case you mean?

2          THE COURT:  Yes.  What happens with this permitting

3   argument?

4          MR. SCHMUTTER:  The permitting argument is an

5   entirely separate argument because regardless of the

6   preemption, it's still the case that New Jersey law is very

7   explicit that an applicant may apply for and obtain multiple

8   permits in an application and nobody is really disputing that.

9          THE COURT:  We appear to be in agreement with that,

10  so why do we have this claim remaining in the case?  We all

11  appear to be in agreement.

12         MR. SCHMUTTER:  Well, we're -- nobody has taken a

13  position in the case to dispute that.  However, we have at

14  least one defendant that has not done what, for example,

15  Washington has done and changed their position and said, we're

16  going to issue permits.

17         THE COURT:  Who is that?

18         MR. SCHMUTTER:  Little Egg Harbor.

19         THE COURT:  Well, you've sued Little Egg Harbor here.

20  Why don't you sue them in state court and enforce the state

21  regulation?

22         MR. SCHMUTTER:  Because it's an appropriate

23  supplemental claim to the claims in this case.  It makes sense

24  to bring all the claims in one forum where you have an

25  appropriate federal jurisdiction rather than split them up.

1          THE COURT:  All right.

2          Now, we have the permitting issue and we have the

3     exemption issue.  Is that where you say the forms are not

4     appropriate?

5          MR. SCHMUTTER:  Let me just clarify.

6          The permitting issue is the municipal issue.  The

7     issue, the exemption issue is counts three through six.  The

8     original claim was that there was no process to obtain the

9     exemptions, that the State has indicated that it's changed,

10    they promulgated a form, we examined the form, the form is

11    worse than no form because it cements in place the idea that

12    you can't possibly get the exemptions.  The Court doesn't have

13    it before you, that's what I'm trying to say.

14         THE COURT:  I know.

15         My suggestion insofar as that's concerned is to set

16    up a meeting with the superintendent and the Attorney General

17    and work out the language in the form.  The statute says that

18    there should be the ability to exercise your exemptions, that

19    you have an exemption from the statutory regulation if you

20    qualify for these exemptions.  What's the big deal?

21         MR. SCHMUTTER:  The problem, Judge, is that during

22    the entire process of this statute and the implementation of

23    this statute, we have attempted to work with the State at many

24    levels, including the Governor's appointed task force, to try

25    to get sensible exemption language that works, language that

1   makes sense given the goals of the statute.

2           We have been largely rebuffed.  There have been many

3   attempts to sit down both within the task force and in other

4   context for us to give comments and say this particular

5   language doesn't really work, this works better.  We've pretty

6   much been rejected up and down the board.

7           So in a sense, we were forced into litigation through

8   the State's unwillingness to talk with us essentially.

9           THE COURT:  What about that, Mr. Etzweiler?

10          MR. ETZWEILER:  I can't speak to that issue.  I don't

11  know when plaintiffs have made the contact to my clients.  I

12  don't know what participation they made in the task force from

13  which these exemptions arose.

14          However, I've yet to hear any -- I've heard that the

15  forms are bad.  I've looked at the forms, they seem to do the

16  job to me.  I don't know what the elements of that are; what

17  ever they are, they're not a matter that belongs in federal

18  court.

19          THE COURT:  How long have the forms been in use?

20          MR. ETZWEILER:  I think they were promulgated on

21  April 14th.

22          THE COURT:  So it's over a month, has anyone applied

23  for exemption status?

24          MR. ETZWEILER:  I don't know, your Honor.

25          Do you know?

 1          MR. SCHMUTTER:  I don't know, Judge, I'm sorry.

 2          THE COURT:  What's your position with Hackensack?

 3   What's Hackensack doing wrong?

 4          MR. SCHMUTTER:  Here's what happened with Hackensack.

 5   I think the story of Washington Township is instructive in

 6   this regard.  When we first sued Washington Township, they

 7   pretty much immediately said whoops, we made a mistake, issued

 8   a letter to Mr. Johnson, my clients, and said I'm sorry, it

 9   turns out we can give you permits, please come back and we'll

10   give you the three, no harm, no foul.

11          As the record reflects, this was so ordered by the

12   Court.  We entered into a settlement agreement with them, they

13   acknowledged their error, they paid nominal counsel fees.  As

14   the Court's aware, we asserted under the fee-shifting statutes

15   and as I said, they paid $1,000 which is nothing in a case

16   like this.

17          It was an acknowledgement that you can't just violate

18   the law and then when you get sued, throw up your hands and

19   say oops, we made a mistake and get off scot-free.  The

20   problem is that's exactly what Hackensack is doing.

21          We served them with the amended complaint because we

22   learned from Mr. Furio Hackensack was doing the same thing,

23   that's why we amended the complaint.  Furio became a

24   plaintiff, Hackensack became a defendant.

25          I was contacted by Hackensack's counsel and they said

1   we looked at this, we agree with you, you're right, so we're

2   going to change our policy.

3          The problem is when you look at Mr. Furio's

4   affidavit, he spoke to two different people at the Hackensack

5   police department and said I think you're wrong.  Are you sure

6   about this?  They said, we don't know what to do, so we're

7   going to deny you the permits.

8          Now, that's just -- there's something fundamentally

9   wrong with a police department not taking responsibility for

10  knowing the law.

11         THE COURT:  Why don't we ask Mr. Pogosky what is

12  Hackensack's position on the application for permitting

13  process and where do you stand?

14         MR. POGOSKY:  Well, our position is really an issue

15  of issuing more than one permit in a 30-day period.  Our first

16  knowledge -- and currently we are taking the position to apply

17  for more than one permit in the 30 days, you would be issued

18  more than one permit, you can still only use one per 30, but

19  in any event, we got sued and I think within a day of us being

20  added, our city council was on the phone with Mr. Schmutter

21  and they were discussing this issue.

22         This was the first time anybody other than the police

23  sergeant at the desk who handles the taking in of applications

24  had any communication regarding there being an issue with the

25  way Hackensack was doing anything.  Immediately the city

1    council started dealing with the police, the state and came to

2    a resolution within, I think a day, essentially that

3    regardless of the correctness, we will make sure that this is

4    the way it goes.  You can apply for more than one permit.  So

5    at that point the relief in that sense was done.

6              THE COURT:  What is his name, Furio?

7              MR. SCHMUTTER:  Yes.

8              THE COURT:  If Mr. Furio were to go to the Hackensack

9    police headquarters today and request more than one permit to

10   purchase a handgun, would he be given it?

11             MR. POGOSKY:  Yes.

12             MR. SCHMUTTER:  The problem, Judge, is that when he

13   went there to speak to two people, including Sergeant Levis,

14   they abdicated their responsibilities to know how do this.

15   They're required to know what the law is.

16             THE COURT:  So this appears to me to be a very simple

17   fix.  If everybody is in agreement that the statute says what

18   it says, speaks for itself, and no one disputes that an

19   individual has the ability or should have the ability to or

20   right to obtain more than one permit to purchase a handgun at

21   the same time, why does not the Attorney General simply issue

22   a directive to all municipal police departments in the state

23   and set the record straight?

24             MR. ETZWEILER:  Two responses.

25             They've pretty much done that, that's what the State

1  Police did and the State's Division of State Police is part of

2  the Department of Law and Public Safety and headed by the

3  Attorney General in their March 30 letter to all

4  municipalities.

5          That said, this is not the easiest statute to

6  construe.  There are still potentially open questions about

7  it.  We want to be left open to state court guidance.  If the

8  state judge tomorrow says we're wrong with anything we're

9  doing, we don't want to be bound to a settlement agreement or

10 federal jurisdiction over that question.  Our view, this Court

11 under the *Pennhurst* doctrine lacks jurisdiction over State

12 Police on this issue and, furthermore, under the subset of the

13 *Pennhurst* doctrine pertaining to local officials against whom

14 the Court cannot grant full relief, this Court lacks

15 jurisdiction over the municipalities.

16         If there are corrections to be made, we want them to

17 be made by state court judges who are more familiar with the

18 law and who are going to have to administer this from time --

19 from now until the foreseeable future.  However, as a

20 practical matter, until a state judge comes along and says we

21 goofed, we've done what your Honor suggested, we promulgated

22 these forms and to the best of our knowledge, the

23 municipalities are complying with the forms.  I'm sorry, we've

24 promulgated the directive.  I'm not speaking very well, and

25 the municipalities are complying with the directives as they

1    should.

2         THE COURT:  All right.

3         MR. SCHMUTTER:  If I may?

4         I guess I'll speak to what Mr. Etzweiler is saying

5    and Hackensack.

6         On *Pennhurst*, as the Court has read in the papers,

7    generally speaking, *Pennhurst* and the 11th do not apply to

8    municipalities, only to the extent that the relief sought is

9    against the state and the municipality.  These are pure claims

10   against municipalities, therefore, the doctrine does not

11   apply.  There is no bar to federal jurisdiction over counts

12   seven and eight.

13        As to the State Police, we have not alleged that the

14   State Police as issuing authority are not issuing.  That's

15   really not even a claim in the case.  *Pennhurst* is irrelevant

16   as to that.

17        THE COURT:  What is the claim against the State

18   Police?

19        MR. SCHMUTTER:  It was that they had not issued a

20   procedure for obtaining exemptions under the statute.  The new

21   claim, if we need to amend, will be that the procedure that

22   they have promulgated violates due process.  It does not allow

23   someone to obtain the exemptions that the legislature allows

24   for.

25        THE COURT:  The fundamental trouble that I have with

 1   this case, please forgive the metaphor, is that it's a moving

 2   target.  We have a brand new statute, we have regulations that

 3   haven't even been promulgated as of the time of the filing of

 4   the complaint and a very rapid escalation into a

 5   constitutional debate over the scenario and the landscape has

 6   shifted factually and legally since the complaint was filed.

 7   I'm trying to get my arms around it and it's difficult because

 8   I don't know what the status is.

 9         At the end of the day, you know, if I have

10   jurisdiction, I have jurisdiction.  I can tell you, I do not

11   have an inclination to be in charge of the State Police and

12   the municipalities' management of this handgun regulation

13   regime.

14         Now, that puts aside for the moment the more

15   fundamental question on counts one and two, and we'll be

16   getting to that, but I'm struggling to find a way to help.

17   I'm not avoiding a responsibility to rule.  I'm trying to find

18   a way to help straighten out the ambiguities, procedural

19   wrinkles, whatever the problems are in the permitting and

20   exemption process, because you're right about the fact that I

21   don't have any of that.  I don't even know what the forms say.

22         MR. SCHMUTTER:  That's correct.

23         THE COURT:  Nor am I particularly interested.

24         MR. SCHMUTTER:  I think this could be of some

25   assistance.  Let's slice this up into pieces that are

1    manageable.

2           Look at counts seven and eight.  No one has submitted

3    anything to the Court as of today suggesting that we are wrong

4    about the number of permits that someone can obtain.  In fact,

5    now the State has essentially agreed with us, we know

6    Washington Township agrees with us, we know Hackensack agrees

7    with us, although their issue is separate and I will tell you

8    that Little Egg Harbor is not here today, they've not opposed

9    anything.  They agree with us as well, essentially.

10          Just as is simple, the Court can and ought to rule

11   today on counts seven and eight and issue permanent injunctive

12   and declaratory relief because nobody is now disagreeing with

13   that.  Little Egg Harbor essentially defaulted.  I've spoken

14   to their counsel and they've said they don't dispute that

15   aspect of the case.  That really would slice out one chunk of

16   this case immediately and simplify the case if the Court

17   simply rules and says, everybody agrees that this is the law,

18   here's declaratory judgment that says you cannot restrict the

19   number of permits that are issued.  I don't think anybody

20   really has a dispute about that.

21          The advantage of that is that it will enormously

22   clarify the field here because even though the State Police

23   have issued their guidance letter combined with declaratory

24   judgment by a federal judge, I would go so far as to say with

25   those two things, it would be extremely unlikely that any

1  municipality, including Jersey City, is going to try to do

2  something in the face of those two things.  I think that would

3  dramatically simplify that aspect of the case.  We can carve

4  that out right now today and say, we're done, declaratory

5  judgment, you cannot restrict the number of permits, next.  I

6  think that makes a big difference in the case.

7          THE COURT:  Now, is the impediment in that suggestion

8  your *Pennhurst* argument?

9          MR. ETZWEILER:  That, plus the practicalities, your

10  Honor.  This is a moving target.

11          What the plaintiffs want to do is freeze the case and

12  to bind the state officials for eternity, notwithstanding --

13          THE COURT:  I don't know about that.  As I get the

14  argument, what he is seeking is simply an order which says

15  that the number of permits to purchase handguns cannot be

16  restricted under this statute.  I don't need to exercise any

17  continuing jurisdiction beyond that.

18          MR. ETZWEILER:  No, but then that pretty much

19  forecloses the state judges from talking about it.  It also

20  raises practical questions if there is --

21          THE COURT:  What's to talk about?  The statute says

22  what it says.

23          MR. ETZWEILER:  Well, the statute is not a parodyne

24  of clarity and the order itself would have practical problems.

25          Would your Honor's injunction permit police

1    departments, if an applicant comes in and applies for 168

2    permits in one period, would the police department be

3    permitted to say, by the way, are you aware of the One Handgun

4    Per Month Law?  What do you intend to use with these?  You

5    want to buy 160 guns in this month, that's a no, no, I'm going

6    to give you the permits?

7         THE COURT:  Believe me, the one thing I find which

8    also confuses me, if the statute says you can only buy one gun

9    a month, I can understand, as I read these affidavits, why

10   somebody might want to apply for three or four permits, but

11   once you get beyond that, I don't get it.  You can explain

12   that to me if you can.

13        MR. SCHMUTTER:  Would you like me to address that

14   now?

15        THE COURT:  No.

16        MR. ETZWEILER:  Again, there are practical

17   limitations.

18        First of all, the Court does not have jurisdiction.

19   It doesn't have jurisdiction and I now understand that the

20   plaintiffs are not raising a federal, any federal cause of

21   action at all.  I mean, I wasn't entirely clear from the

22   complaint, but I think we've heard that from the plaintiffs'

23   attorney.  They're not claiming that there's a federal cause

24   of action with respect to the question how many permits can be

25   issued in a month.  They say that this rests upon state

1  regulatory law.

2          Insofar as the State defendants are concerned, that

3  is the State Police, yes, your Honor lacks jurisdiction under

4  the *Pennhurst* doctrine to adjudicate that question.

5          Insofar as the municipalities are concerned, I quote

6  from *Pennhurst* itself, which says -- I'm sorry.  *Pennhurst*

7  bars relief against the municipalities if, and quoting from

8  the *Pennhurst* opinion, it is clear that the injunction against

9  the state officials, in this case an order entered on state

10  law grounds can then, I put, insert against only both the

11  Government defendants and then continuing from the opinion,

12  necessarily would be limited.  That's page 123, 124 of the

13  *Pennhurst* opinion.  That's precisely the situation you have

14  here.

15          Your Honor cannot grant full relief on the permitting

16  question without relief against the state officials; that

17  relief is barred by *Pennhurst*.  It appears, as a practical

18  matter, the issue is moot, certainly moot for the time being.

19  We're not about to change advice.  We're making the

20  reservation that we want state judges to be able to control

21  this matter, which is our right under the *Pennhurst* doctrine,

22  so there's a substantial independence of the 11th Amendment

23  considerations which we argue deprives your Honor of

24  jurisdiction over counts seven and eight.

25          There's also the Article III considerations.  Is

1   there at the moment a concrete case of controversy?  It

2   appears as though there is not.  Our only reservation about

3   this is our *Pennhurst* reservation.  We want state judges to be

4   able to control this matter because we're going to do the bulk

5   of the litigation in the state court.  The state courts are

6   going to settle down this moving target.

7           There is no reason to freeze these issues at this

8   point with a premature preliminary injunction or permanent

9   injunction.

10          THE COURT:  I suppose my frustration is I don't

11  understand why the target is moving.

12          MR. ETZWEILER:  The target has been moving in a

13  number of ways.  First of all, we promulgated the forms.

14  Plaintiffs filed suit five days after Chapter 186 was filed,

15  approximately three months later we promulgated the form.

16  That's a part of the moving target.

17          A couple weeks ago, the statute finally received its

18  official codification.  That's part of the moving target.

19          We don't have case law development on form

20  application, we don't have review in the Superior Court of the

21  denials of permits.  We don't have state court law informing

22  us what the permitting process is like or whether our permits

23  are adequate or whether we misconstrued the statute.  We're

24  still at a voracious stage of the development in the

25  administration and development of the statute.  This formal

1   codification only occurred a couple of weeks ago.

2           THE COURT:  This sounds like a ripeness argument that

3   you're making.

4           MR. ETZWEILER:  It may be, your Honor, but it's also

5   a classical mootness argument, as least as to counts seven and

6   eight, because as a practical matter, there is no case of

7   controversy at this point.  Until state courts tell us that

8   we're going to do otherwise, we're going to continue with the

9   directive.  That reservation is precisely the reservation that

10  *Pennhurst* guarantees to us.

11          THE COURT:  Okay.

12          MR. SCHMUTTER:  May I?

13          THE COURT:  Sure.

14          MR. SCHMUTTER:  The State is confusing two things.  I

15  think that's creating a problem.

16          There is no claim in counts seven and eight against

17  state officials.  The only claims in seven and eight are

18  against municipalities.  Trustees of *Alabama v. Garrett* is

19  very clear that *Pennhurst* does not apply where the claim is

20  purely against municipalities.

21          The exception that counsel was referring to was a

22  narrow exception where the relief against the municipality

23  necessarily involves relief against the State is really relief

24  against the State.  There is no allegation in counts seven or

25  eight that the State Police or state officials is doing

1    anything wrong, purely a municipal claim.

2            So this -- the problem is the State would like to

3    agree with us, as they do here today, but reserve the right

4    not to agree with us later.  The problem is we have a case

5    before the Court now.  *Ryan v. Johnson* instructs federal

6    courts to exercise the jurisdiction Congress gives it.

7            To clarify Hackensack, I want to make sure there is

8    no confusion about Hackensack.  What Hackensack has done is

9    they have abdicated their obligation to know what the law is

10   and comply with it.  They say we don't know what this means,

11   so we'll deny you the permits rather than get their advice

12   from counsel, read the statute.  And I disagree with Mr.

13   Etzweiler, I think at least as to the number of permits, it's

14   crystal clear that you can't restrict the number of permits.

15   I think when you read the State Police regulations, Title 13,

16   and you look at the fact that the One Gun a Month Law says

17   nothing about permits, it's crystal clear that you cannot

18   restrict permits.

19           The State agrees with us now, Hackensack agrees.

20   Their counsel said yeah, we agree with you, you're right, so

21   the idea that the State Police Sergeant Levis would say I

22   don't know what this means, and I'm not going to talk to my

23   attorney, I'm going to pretend that I don't have to comply

24   with the law and deny you permits until someone makes you,

25   that's the position of Hackensack.  We have to sue them.

1          We can't send Mr. Furio in there and say check this

2  out, I don't think you're right, I think I'm entitled to more

3  than one permit and they say, we're not going to bother with

4  it, it's too confusing.

5          We're forced to go to court and spend counsel fees

6  and when they get sued, oh, of course, you're right, yes, yes,

7  we're going to change our policy and we're not going to pay

8  you any counsel fees because we don't want to, even though

9  under the civil rights law we're entitled to.  We're clearly a

10  prevailing party under the case law.

11          The fact they changed their position so clearly is

12  exactly --

13          THE COURT:  That's for another day.

14          MR. SCHMUTTER:  Correct, but it's a basis to deny

15  their motion to dismiss because that is a live issue in the

16  case even though they changed their position.

17          MR. POGOSKY:  I think it's a little

18  oversimplification.  As your Honor pointed out, this is a new

19  statute, new developments are happening.  Why doesn't the

20  State get together with plaintiffs' counsel and discuss

21  resolving this first?  None of that never happened as to us.

22  They filed the case, they saw another spot.  The law seems a

23  little unsettled, we're going to do gotcha with Hackensack.

24          Whether or not the law reads as everybody is saying

25  it reads, our position was that we would -- this would get

1   resolved but we'll treat it this way.  There was no attempt to

2   work out anything, no letters sent to anybody saying, hey,

3   this is an issue.  We're only here because they're saying we

4   want counsel fees.

5           THE COURT:  Let's ask the direct question, Mr.

6   Pogosky:  Mr. Furio or anybody else walks into Hackensack

7   Police Headquarters this afternoon and asks for ten permits to

8   purchase handguns, does he get them?  Does he get ten

9   applications for permits?

10          MR. POGOSKY:  Yes, my understanding he does get them.

11  Whether that's the way it will ultimately stay, but yes, at

12  this point.  Yes, we contacted, as Mr. Furio says in the

13  certification.  We're issued a guidance document, why?  So I

14  assume all the towns --

15          THE COURT:  This is all fascinating, but let's get to

16  the real issue in the motion, let's get to counts one and two.

17          MR. SCHMUTTER:  As the Court is aware, the One Gun a

18  Month Law restricts, prohibits the purchase or sale of more

19  than one handgun within a 30-day period.  We've already talked

20  about some of the other issues in the case, but the main issue

21  is that it's preempted by 15 U.S.C. 5000(g)(ii).  The reason

22  is because it prohibits the sale of certain handguns that are

23  protected by federal law.

24          THE COURT:  Why?  How many?  Let's talk about

25  BB/pellet guns, that's what the federal statute talks about.

1          MR. SCHMUTTER:  Yes.

2          THE COURT:  How many pellet/BB guns can one purchase

3    under the terms of the One gun Act?

4          MR. SCHMUTTER:  Well, it's one per 30 days, but it's

5    not even just BB/pellet.  If you purchased a bullet-firing

6    handgun, then you can't purchase any BB/pellet.

7          THE COURT:  That's because the state legislature has

8    included those types of things --

9          MR. SCHMUTTER:  Correct.

10         THE COURT:  -- in the definition of handguns?

11         MR. SCHMUTTER:  That's correct.

12         THE COURT:  That is a legitimate exercise of

13   legislative authority, is it not?

14         MR. SCHMUTTER:  I don't know whether it is or not but

15   they've done it.

16         THE COURT:  There's case law that says it is.

17         My question to you is:  Is someone capable of

18   purchasing a gun, BB/pellet embraced by 5001 of the federal

19   statute?  Yes or no.  It's a yes or no answer.

20         MR. SCHMUTTER:  It is unlawful, they may not do that,

21   unless -- if they've already purchased one type of handgun

22   within a 30-day period.

23         THE COURT:  Well, they take their pick, don't they?

24         MR. SCHMUTTER:  They must choose.

25         THE COURT:  So they take their pick.  If they want to

1  buy a BB gun, they can buy one per month?

2           MR. SCHMUTTER:  Correct.

3           THE COURT:  If they want to buy -- next month they

4  want to get a pellet gun, they can get it?

5           MR. SCHMUTTER:  Correct.

6           THE COURT:  And the month after that, they want to

7  buy a revolver, some sort of other type handgun, they can do

8  that, can they not?

9           MR. SCHMUTTER:  Yes, they can.

10           THE COURT:  Then why is this an unconstitutional or

11  illegal restriction?

12           MR. SCHMUTTER:  Well, the best way to look at this is

13  the three cases that we cite in our brief.  First of all --

14           THE COURT:  Which are?

15           MR. SCHMUTTER:  *Coalition of New Jersey Sportsmen*.

16           THE COURT:  *Rackis*.

17           MR. SCHMUTTER:  *Rackis* is a very interesting case but

18  on your particular point, the two best cases are the highway

19  cases, *New York State Motor Truck* and *U.S. v. Florida*.  The

20  cases stand for a very clear principle that to be a

21  prohibition within the meaning of federal statute, it does not

22  have to be an outright 100 percent band.  All these cases

23  stand for that proposition.

24           We start from the proposition that we should stop

25  talking about can you buy a gun, because these cases say

1   that's not the standard.  It's not outright 100 percent

2   prohibited because that's not how you interpret prohibition

3   under federal law, at least under Section 5001 in the

4   *Coalition of New Jersey Sportsmen* case and under the Service

5   Transportation Act in the highway cases.  All those cases say

6   the same thing.

7          THE COURT:  Don't you have to read the *Coalition* case

8   up against *Rackis*?

9          MR. SCHMUTTER:  I think *Rackis* is actually very

10  instructive.  *Rackis* tells you there's a fundamental

11  difference between prohibition of sale and regulation of

12  possession.  *Rackis* was a possession case.

13         THE COURT:  That's one of the things it stands for,

14  but don't you have to look at it -- I mean, the *Coalition of*

15  *New Jersey Sportsmen* said that it constituted a prohibition

16  because the BB pellet guns were being put in the same

17  regulatory scheme as machine guns and assault weapons and the

18  process for obtaining permits to buy those things was so

19  onerous that it rendered the statute of prohibition against

20  the purchase of the BB guns.

21         MR. SCHMUTTER:  It called it a de facto prohibition.

22         THE COURT:  But that was the rational for that.

23         MR. SCHMUTTER:  The rational, correct.

24         THE COURT:  Now, in this case we have the legislature

25  which recognizes the decision in *Mieles* and *Rackis*, I assume,

1    but for whatever its rational, the New Jersey legislature has

2    determined that BB guns and pellet guns should be included in

3    the definition of handgun.

4              MR. SCHMUTTER:  Yes.

5              THE COURT:  And once you get to that legislative

6    expression, they enact a statute which restricts the frequency

7    with which people can purchase handguns of any description.

8              MR. SCHMUTTER:  Yes, and the quantity.

9              THE COURT:  That's what we're working under here.

10             MR. SCHMUTTER:  That's exactly what it does, correct.

And one of the things that Coalition of New Jersey Sportsmen

tells us is because you can get a permit to possess what's

known as an assault firearm in New Jersey, and so it's not the

case, Judge Brown did not require that the statute prohibit it

entirely.  Judge Brown recognized a prohibition even though

it's still possible to get them, and that's a critical fact

here and that's also true in the highway cases.  It doesn't

have to be 100 percent ban to be a prohibition, and that's a

critical thing that Judge Brown recognized in the *Coalition of

New Jersey Sportsmen* case.

In the highway cases and the New York State case I

think is the best one because it's the most instructive in

this regard.  They strike down the New York City regulation on

two grounds.  The first ground is the direct conflict with the

restriction on prohibition found in the federal law.  What

they say is the fact that you are allowing trucks to operate for certain times of day, necessarily means you are prohibiting it other times of day, which is exactly what's happening here.

The Court said since you're allowing it for these restricted times, you are necessarily prohibiting it for these other times.

Here, you're allowing it one day per 30 days, therefore, you're necessarily prohibiting it the other 29 days, which is actually even worse because that's 96 percent of the time you're prohibited from purchasing a handgun.  It's exactly on all fours with *New Jersey State Motor Truck* case. *U.S. v. Florida* basically says the same thing.  That says there's a direct explicit conflict between the restriction, the prohibition of operating these trucks during certain times of the day and the expressed disallowance of prohibition of operating on these highways.

Now, I know the State's position is, well, that was really just about making sure there was coordination between states, but that was an entirely separate ground that the court went through.  After they got through discussing the explicit conflict, then they said also, by the way, we think the intent of the law is to provide for coordination.

THE COURT:  If I were to agree -- follow your argument as to the restriction on the purchase of BB and

pellet guns, and I don't know that I do, by the way, but if I were to follow your argument, why is it that the entire statute needs to be stricken?

MR. SCHMUTTER:  It has to do with the way it's drafted and what remedies are available to a federal court in attempting to offer a safe construction of a statute.  The way we briefed it, as we indicate, there are two different ways courts will typically try to save a defective statute.  Either you can try to give it a saving construction, but the construction has to be reasonably susceptible to that construction.  The case law is pretty clear and the Supreme Court said you cannot take a statute and unconstrue it in an unnatural way to save it from constitutional infirmity.

The other way that courts try to do it is say, well, I'm going to sever the particular offending provision, most of the statute is fine, but I'm going to take this subsection B, B is the one that's unconstitutional, just slice B out of the statute and the rest is fine.

The problem here is the statute is not drafted that way.  There is no particular section of the statute that says BB and pellet firing air guns cannot be purchased more than one per month.  It doesn't say that.  It says it applies to all handguns, so to try to save this statute, you have to reach deep into New Jersey gun law and fundamentally change how New Jersey gun law is done because as the Court

recognizes, New Jersey legislature deliberately defined handguns and firearms in a very broad manner to bring everything within its scope.  This was a conscious effort on the New Jersey legislature's part.  The Court is not permitted to go in there and fundamentally change how the legislature wanted to construct the law.  The legislature can do that, but this Court can't do that.

Really -- assuming the legislature believes this law is very important, if the Court delegates the law, the legislature can go fix it and should.  That's really their responsibility.  Their responsibility is to do this the right way, in compliance with federal law and constitutional constraints.

To the extent they have not done that, we believe it's this Court's obligation to tell the legislature, you didn't do it the right way.  It conflicts with federal law, unconstitutional, which they may very well look at it, go back and do it again, which we're all creative lawyers, we can all think of ways that the legislature can rewrite the law and probably fix this.  The Court can't do that, it's not available to go and rewrite it.  You really have to go in and fundamentally change aspects of it and the Court's not allowed to do that.

THE COURT:  All right.

Mr. Etzweiler.

MR. ETZWEILER:  Yes, your Honor.

The statute does not prohibit the sale of the federal toy guns.  If you have a permit you can go and buy one today, restricts only the timing and limits you to purchasing one per month.  It has lots of exemptions, many of them applicable to the federal toy guns in issue of this case.  The case law shows that the Federal Toy Gun Act did not intend to preempt regulation of purchase.

The Act itself, by its terms, bans laws that prohibit the sale of these devices.  There's obviously a close relationship between sales and purchase.  The congressional language and preemption shows that category of individuals sought to be protected were manufacturers rather than purchasers.

The *Coalition* case recognized that fact.  It had to in striking down that portion of the New Jersey assault weapons statute, which covered these federal toy guns protected by the Federal Toy Gun Act.  It said that there was a de facto prohibition on sales.  Because of the limitation on purchases was so extensive, that it reached to the level of a de facto provision on sales.

Likewise, *Rackis*, in prescribing possession of these devices by persons who don't have permits or by persons who are felons, also somewhat restricted sales because, of course, these persons can't go and purchase -- can't go and buy these

things.  So there's an impact on sales, but there's not a substantial impact on sales.

What *Rackis* held was that that limitation was within the scope of the permissible regulation of purchases that Congress left open to the states.  We submit that that's the same situation here.  There is not a substantial impact upon sales.  Most people don't go in and purchase these toy guns, don't purchase ten in the course of a month.  This is within the permissible regulatory scheme consistent with federal preemption law.

The preemption here is narrowed because we've got an expressed preemption and the case law says, case law of the United States Supreme Court, you don't go beyond the terms of the expressed preemption.  It's also narrow because New Jersey statute is an exercise of its police power designed to protect the public safety.  The U.S. Supreme Court case law says that in that realm, you don't -- Congress did not intend to preempt unless that intent is clear.  The preemption of the Federal Toy Gun Act does not go so far as to preempt New Jersey's regulation of the purchase of these devices under the One Handgun Per Month Law.

As to the second question which your Honor addressed, even if your Honor were to find that preemption did occur, there is no basis to strike down the entire law.  That's not what Judge Brown did in the *Coalition* court.  Judge Brown

struck down the assault weapon statute insofar -- only insofar as it pertained to the toys, to the traditional handguns that were protected by the federal act.  There was no federal interest in going beyond that injunction if your Honor were to find preemption.

My opponents can cite Supreme Court case law, but that is largely irrelevant, *Dorchy* makes clear, this is not a question of federal law, it's a question of state law.  When a statute is partially struck down, what happens under state law and our Supreme Court, the Supreme Court of New Jersey, which is the final arbitrator of state law, is what would the legislature have intended?  We submit it's perfectly obvious what they would have intended.  They would not have intended to have a wholesale enjoinment of the statute.  They would intend that it be enjoined in as far as the federal interest goes --

THE COURT:  What the legislature intended is stated in the name of the statute.

MR. ETZWEILER:  One Handgun Per Month Law.

THE COURT:  That's what the legislature's intent is.

MR. ETZWEILER:  I think that's right, your Honor, yes.

THE COURT:  Okay.

MR. ETZWEILER:  Then we have the backup argument, the state law question again raises a *Pennhurst* issue.  If your

Honor were to find preemption, then these plaintiffs' remedies is to go into state court on a prerogative writ action and say what the legislature would have intended, the rest of the statute to go down as well and that would be an issue that the State courts can resolve.  There is no federal interest in that question.

Does your Honor have any questions?

THE COURT:  No.

MR. SCHMUTTER:  Your Honor, may I?

As far as what the New Jersey legislature intended, they intended all handguns to be limited to one per month.

THE COURT:  That's exactly right.  That is exactly what they intended.  No question about that.

MR. SCHMUTTER:  In that they were wrong because they violated federal law.

THE COURT:  Let me just put that to rest.  I disagree with you, Mr. Schmutter.  I don't think this is a preemption issue.  I think the holding, the conclusion in the *Coalition* case is distinguishable.  I think the reasoning in *Rackis* embraces the situation that we have here.

This is not, in my view, a de facto prohibition on the purchase of BB guns, pellet guns, however they're defined in the Federal Toy Gun Act and I think thoroughly discusses those issues in the *Rackis* case.

I am satisfied that you do not demonstrate a

likelihood of success on the merits as to counts one and two.
I will deny your application for injunctive relief.

        This will, of course, all be developed in a more
detailed opinion, but I want you to come out of here knowing
where you stand.

        I'm more troubled with the balance of the complaint
because I have difficulty with the mootness argument, I have
difficulty with the ripeness of the claims, I'm having
difficulty with the jurisdictional arguments that are being
made, but at the end of the day, it appears to me that if the
parties simply met and conferred, there is a solution to this
on a going forward basis.  And to the extent further disputes
arise over the language in the applications for exemptions or
permitting process, they certainly can be worked out in a form
where they are more appropriately situated.

        I'm going to review all of those and take under
advisement the motion to dismiss.

        The application for injunctive relief is denied on
counts one and two and I'm reserving on the balance of the
case.

                MR. SCHMUTTER:  Thank you.

                May I ask one question?

                THE COURT:  Yes.

                MR. SCHMUTTER:  If it's necessary, since counsel is
here, can I ask if counsel object to us amending counts three

through six to assert claims or to update the claims to reflect the new forms if it turns out to be appropriate? Whether the Court would afford us the opportunity?

THE COURT:  I can't -- I don't know if they would consent to that or not.  I can't direct them to.  I would suggest that you have that conversation after we go off the record.

(Matter concluded.)

**$**

**$1,000** [1] - 15:15

**1**

**1** [1] - 8:12
**10-271** [1] - 1:2
**100** [3] - 31:22, 32:1, 33:18
**11th** [2] - 19:7, 24:22
**123** [1] - 24:12
**124** [1] - 24:12
**13** [1] - 27:15
**14th** [2] - 8:11, 14:21
**15** [1] - 29:21
**160** [1] - 23:5
**168** [1] - 23:1
**186** [1] - 25:14

**2**

**2010** [2] - 1:11, 3:1
**25** [2] - 1:11, 3:1
**28** [1] - 1:21
**29** [1] - 34:9

**3**

**30** [5] - 16:17, 16:18, 18:3, 30:4, 34:8
**30-day** [4] - 9:21, 16:15, 29:19, 30:22

**5**

**5000(g)(ii)** [1] - 29:21
**5001** [3] - 11:25, 30:18, 32:3

**7**

**753** [1] - 1:21

**9**

**908)334-2472** [1] - 1:25
**96** [1] - 34:10

**A**

**abdicated** [2] - 17:14, 27:9
**ability** [3] - 13:18, 17:19
**able** [2] - 24:20, 25:4
**above-entitled** [1] - 1:22
**accurate** [1] - 1:22
**acknowledged** [1] - 15:13
**acknowledgement** [1]

- 15:17
**act** [1] - 39:3
**Act** [10] - 6:8, 6:9, 9:20, 30:3, 32:5, 37:7, 37:9, 37:18, 38:19, 40:23
**action** [3] - 23:21, 23:24, 40:2
**added** [3] - 4:1, 4:3, 16:20
**addition** [1] - 3:19
**additional** [1] - 4:3
**address** [1] - 23:13
**addressed** [1] - 38:22
**adequate** [1] - 25:23
**adjudicate** [2] - 9:7, 24:4
**administer** [1] - 18:18
**administration** [1] - 25:25
**advantage** [1] - 21:21
**advice** [2] - 24:19, 27:11
**advised** [1] - 6:21
**advisement** [1] - 41:17
**advising** [2] - 6:24, 10:24
**affidavit** [1] - 16:4
**affidavits** [2] - 10:5, 23:9
**afford** [2] - 7:11, 42:3
**afternoon** [1] - 29:7
**ago** [2] - 25:17, 26:1
**agree** [6] - 16:1, 21:9, 27:3, 27:4, 27:20, 34:24
**agreed** [1] - 21:5
**agreement** [5] - 12:9, 12:11, 15:12, 17:17, 18:9
**agrees** [5] - 21:6, 21:17, 27:19
**air** [1] - 35:21
**al** [2] - 1:4, 1:7
**Alabama** [1] - 26:18
**allegation** [1] - 26:24
**alleged** [2] - 9:1, 19:13
**alleging** [1] - 4:19
**allow** [1] - 19:22
**allowed** [1] - 36:22
**allowing** [3] - 34:1, 34:5, 34:8
**allows** [1] - 19:23
**almost** [1] - 5:2
**ambiguities** [1] - 20:18
**amend** [6] - 7:1, 7:10, 7:12, 11:3, 11:4, 19:21

**amended** [3] - 3:25, 15:21, 15:23
**amending** [1] - 41:25
**Amendment** [1] - 24:22
**amendment** [1] - 8:11
**AND** [1] - 1:4
**answer** [1] - 30:19
**appear** [2] - 12:9, 12:11
**APPEARANCES** [1] - 2:1
**Appellate** [1] - 11:12
**applicable** [1] - 37:5
**applicant** [2] - 12:7, 23:1
**application** [8] - 3:18, 5:12, 10:10, 12:8, 16:12, 25:20, 41:2, 41:18
**applications** [3] - 16:23, 29:9, 41:13
**applied** [1] - 14:22
**applies** [2] - 23:1, 35:22
**apply** [7] - 12:7, 16:16, 17:4, 19:7, 19:11, 23:10, 26:19
**applying** [1] - 4:22
**appointed** [1] - 13:24
**appreciate** [1] - 10:23
**appropriate** [4] - 12:22, 12:25, 13:4, 42:2
**appropriately** [1] - 41:15
**April** [1] - 14:21
**arbitrator** [1] - 39:11
**argue** [1] - 24:23
**argument** [16] - 3:16, 7:19, 8:15, 9:3, 11:24, 12:3, 12:4, 12:5, 22:8, 22:14, 26:2, 26:5, 34:25, 35:2, 39:24, 41:7
**arguments** [2] - 7:16, 41:9
**arise** [1] - 41:13
**arms** [1] - 20:7
**arose** [1] - 14:13
**Article** [2] - 8:12, 24:25
**aside** [1] - 20:14
**aspect** [2] - 21:15, 22:3
**aspects** [1] - 36:22
**assault** [4] - 32:17, 33:13, 37:16, 39:1
**assert** [2] - 5:21, 42:1
**asserted** [2] - 3:14,

15:14
**asserting** [1] - 10:6
**asserts** [1] - 5:9
**assistance** [1] - 20:25
**ASSOCIATION** [1] - 1:3
**Association** [1] - 5:25
**assume** [2] - 29:14, 32:25
**assuming** [1] - 36:8
**attack** [1] - 3:15
**attempt** [1] - 29:1
**attempted** [1] - 13:23
**attempting** [1] - 35:6
**attempts** [1] - 14:3
**attorney** [2] - 23:23, 27:23
**ATTORNEY** [1] - 1:18
**Attorney** [7] - 1:18, 3:23, 4:4, 4:5, 13:16, 17:21, 18:3
**authority** [2] - 19:14, 30:13
**available** [2] - 35:5, 36:21
**avoiding** [1] - 20:17
**aware** [4] - 8:14, 15:14, 23:3, 29:17

**B**

**Bach** [1] - 5:24
**backup** [1] - 39:24
**bad** [1] - 14:15
**balance** [4] - 7:17, 7:19, 41:6, 41:19
**ban** [1] - 33:18
**band** [1] - 31:22
**bans** [1] - 37:9
**bar** [1] - 19:11
**barred** [1] - 24:17
**bars** [1] - 24:7
**based** [2] - 3:15, 11:20
**basic** [1] - 3:11
**basis** [3] - 28:14, 38:24, 41:12
**BB** [7] - 31:1, 32:16, 32:20, 33:2, 34:25, 35:21, 40:22
**BB/pellet** [4] - 29:25, 30:5, 30:6, 30:18
**became** [2] - 15:23, 15:24
**began** [2] - 4:18, 11:9
**believes** [1] - 36:8
**belongs** [1] - 14:17
**best** [4] - 18:22, 31:12, 31:18, 33:22
**better** [1] - 14:5
**between** [4] - 32:11,

34:14, 34:19, 37:11
**beyond** [4] - 22:17, 23:11, 38:13, 39:4
**big** [2] - 13:20, 22:6
**bind** [1] - 22:12
**board** [1] - 14:6
**books** [1] - 6:10
**bother** [1] - 28:3
**bound** [1] - 18:9
**brand** [1] - 20:2
**brief** [1] - 31:13
**briefed** [1] - 35:7
**bring** [2] - 12:24, 36:2
**broad** [1] - 36:2
**brought** [1] - 3:22
**Brown** [5] - 33:14, 33:15, 33:19, 38:25
**bulk** [1] - 25:4
**bullet** [1] - 30:5
**bullet-firing** [1] - 30:5
**buy** [10] - 23:5, 23:8, 31:1, 31:3, 31:7, 31:25, 32:18, 37:3, 37:25
**BY** [3] - 1:16, 1:18, 2:2

**C**

**cannot** [9] - 10:25, 18:14, 21:18, 22:5, 22:15, 24:15, 27:17, 35:12, 35:21
**capable** [1] - 30:17
**Carmel** [2] - 6:3, 6:4
**Caruso** [1] - 1:24
**carve** [1] - 22:3
**case** [62] - 3:9, 3:14, 3:22, 4:2, 4:3, 4:19, 5:19, 5:20, 6:6, 6:7, 7:7, 8:21, 10:4, 10:9, 11:15, 11:17, 11:20, 12:1, 12:6, 12:10, 12:13, 12:23, 15:15, 19:15, 20:1, 21:15, 21:16, 22:3, 22:6, 22:11, 24:9, 25:1, 25:19, 26:6, 27:4, 28:10, 28:16, 28:22, 29:20, 30:16, 31:17, 32:4, 32:7, 32:12, 32:24, 33:14, 33:20, 33:21, 34:12, 35:11, 37:6, 37:15, 38:12, 38:16, 39:6, 40:19, 40:24, 41:20
**cases** [10] - 31:13, 31:18, 31:19, 31:20, 31:22, 31:25, 32:5, 33:17, 33:21
**category** [1] - 37:12

cements [1] - 13:11

certain [3] - 29:22, 34:2, 34:15

certainly [4] - 8:1, 9:13, 24:18, 41:14

certification [1] - 29:13

certified [1] - 1:21

change [6] - 16:2, 24:19, 28:7, 35:24, 36:5, 36:22

changed [7] - 3:25, 4:5, 10:21, 12:15, 13:9, 28:11, 28:16

Chapter [1] - 25:14

charge [1] - 20:11

check [1] - 28:1

chiefs [2] - 10:11, 10:24

choose [1] - 30:24

chunk [1] - 21:15

cite [2] - 31:13, 39:6

City [8] - 2:3, 4:6, 5:15, 11:8, 11:9, 11:20, 22:1, 33:23

city [3] - 11:2, 16:20, 16:25

civil [1] - 28:9

CIVIL [1] - 1:2

claim [13] - 9:6, 9:8, 9:9, 9:10, 12:10, 12:23, 13:8, 19:15, 19:17, 19:21, 26:16, 26:19, 27:1

claiming [1] - 23:23

claims [22] - 3:14, 3:17, 5:19, 5:20, 6:5, 6:7, 7:15, 7:20, 8:1, 8:3, 8:5, 8:10, 8:15, 9:14, 12:23, 12:24, 19:9, 26:17, 41:8, 42:1

clarification [1] - 4:23

clarify [3] - 13:5, 21:22, 27:7

clarity [1] - 22:24

classical [1] - 26:5

clear [9] - 23:21, 24:8, 26:19, 27:14, 27:17, 31:20, 35:11, 38:18, 39:7

clearly [2] - 28:9, 28:11

clients [2] - 14:11, 15:8

close [1] - 37:10

Clubs [1] - 6:1

CLUBS [1] - 1:4

Coalition [8] - 32:4, 32:7, 32:14, 33:11,

33:19, 37:15, 38:25, 40:18

coalition [1] - 31:15

Code [1] - 1:21

codification [3] - 4:21, 25:18, 26:1

codified [1] - 6:9

colleagues [1] - 5:23

combined [1] - 21:23

commenced [1] - 10:5

comments [1] - 14:4

communication [1] - 16:24

complain [1] - 5:16

complaining [1] - 5:7

complaint [15] - 3:13, 3:25, 5:9, 5:12, 5:13, 7:18, 7:19, 7:22, 15:21, 15:23, 20:4, 20:6, 23:22, 41:6

compliance [1] - 36:12

comply [2] - 27:10, 27:23

complying [5] - 4:15, 11:1, 11:3, 18:23, 18:25

concept [1] - 5:8

concerned [3] - 13:15, 24:2, 24:5

concerns [1] - 7:3

concluded [1] - 42:8

conclusion [1] - 40:18

concrete [1] - 25:1

conferred [1] - 41:11

conflict [3] - 33:24, 34:14, 34:22

conflicts [1] - 36:16

confuses [1] - 23:8

confusing [3] - 7:23, 26:14, 28:4

confusion [1] - 27:8

Congress [3] - 27:6, 38:5, 38:17

congressional [1] - 37:11

connection [1] - 4:16

conscious [1] - 36:3

consent [1] - 42:5

considerations [2] - 24:23, 24:25

consistent [1] - 38:9

constituted [1] - 32:15

Constitution [2] - 8:4, 8:12

constitutional [4] - 8:1, 20:5, 35:13, 36:12

constraints [1] - 36:13

construct [1] - 36:6

construction [4] - 35:6, 35:9, 35:10, 35:11

construe [1] - 18:6

contact [1] - 14:11

contacted [2] - 15:25, 29:12

contention [2] - 9:3, 9:9

context [1] - 14:4

continue [2] - 9:5, 10:1, 26:8

CONTINUED [1] - 2:1

continuing [2] - 22:17, 24:11

control [2] - 24:20, 25:4

controversy [2] - 25:1, 26:7

conversation [1] - 42:6

convinced [1] - 11:24

coordination [2] - 34:19, 34:23

correct [9] - 5:1, 20:22, 28:14, 30:9, 30:11, 31:2, 31:5, 32:23, 33:10

corrections [1] - 18:16

correctness [1] - 17:3

CORZINE [1] - 1:7

Corzine [1] - 1:19

couched [1] - 6:23

council [2] - 16:20, 17:1

counsel [2] - 15:13, 15:25, 21:14, 26:21, 27:12, 27:20, 28:5, 28:8, 28:20, 29:4, 41:24, 41:25

count [2] - 6:25, 8:5

counter [1] - 9:3

counts [31] - 6:13, 6:14, 6:15, 6:16, 6:19, 6:20, 7:2, 7:5, 7:6, 7:11, 7:17, 7:18, 7:19, 7:25, 8:3, 8:7, 8:8, 8:19, 13:7, 19:11, 20:15, 21:2, 21:11, 24:24, 26:5, 26:16, 26:24, 29:16, 41:1, 41:19, 41:25

couple [3] - 10:20, 25:17, 26:1

course [6] - 4:10, 8:14, 28:6, 37:24, 38:8, 41:3

court [14] - 7:22, 9:13, 10:2, 12:20, 14:18, 18:7, 18:17, 25:5,

25:21, 28:5, 34:21, 35:5, 38:25, 40:2

Court [38] - 1:25, 6:21, 6:24, 7:5, 7:11, 7:13, 7:14, 8:18, 9:11, 11:11, 11:13, 11:14, 13:12, 15:12, 18:10, 18:14, 19:6, 21:3, 21:10, 21:16, 23:18, 25:20, 27:5, 29:17, 34:5, 35:12, 35:25, 36:4, 36:7, 36:9, 36:20, 38:13, 38:16, 39:6, 39:10, 42:3

COURT [83] - 1:1, 1:13, 3:2, 3:4, 3:7, 3:9, 4:14, 4:18, 5:3, 5:6, 6:2, 6:4, 7:16, 8:7, 8:13, 8:20, 8:24, 9:19, 10:4, 10:16, 11:5, 11:7, 11:16, 11:23, 12:2, 12:9, 12:17, 12:19, 13:1, 13:14, 14:9, 14:19, 14:22, 15:2, 16:11, 17:6, 17:8, 17:16, 19:2, 19:17, 19:25, 20:23, 22:7, 22:13, 22:21, 23:7, 23:15, 25:10, 26:2, 26:11, 26:13, 28:13, 29:5, 29:15, 29:24, 30:2, 30:7, 30:10, 30:12, 30:16, 30:23, 30:25, 31:3, 31:6, 31:10, 31:14, 31:16, 32:7, 32:13, 32:22, 32:24, 33:5, 33:9, 34:24, 36:24, 39:17, 39:20, 39:23, 40:8, 40:12, 40:16, 41:23, 42:4

Court's [4] - 7:8, 15:14, 36:15, 36:22

courts [6] - 25:5, 26:7, 27:6, 35:8, 35:14, 40:5

covered [1] - 37:17

CRAIG [1] - 2:2

creating [1] - 26:15

creative [1] - 36:18

critical [2] - 33:16, 33:19

cross [1] - 7:1

CRR [1] - 1:24

crystal [2] - 27:14, 27:17

CSR [1] - 1:24

days [5] - 16:17, 25:14, 30:4, 34:8, 34:10

de [4] - 32:21, 37:19, 37:21, 40:21

deal [3] - 7:8, 7:9, 13:20

dealing [2] - 6:20, 17:1

debate [1] - 20:5

decision [2] - 11:16, 32:25

declarations [1] - 10:5

declaratory [4] - 21:12, 21:18, 21:23, 22:4

decline [1] - 7:21

declined [1] - 7:9

deep [1] - 35:24

defaulted [1] - 21:13

defective [1] - 35:8

Defendant [3] - 1:8, 1:19, 2:3

defendant [5] - 4:6, 4:11, 6:7, 12:14, 15:24

defendants [6] - 4:9, 5:10, 6:17, 6:18, 24:2, 24:11

defined [2] - 36:1, 40:22

definition [2] - 30:10, 33:3

delegates [1] - 36:9

deliberately [1] - 36:1

demonstrate [1] - 40:25

denials [1] - 25:21

denied [1] - 41:18

deny [5] - 16:7, 27:11, 27:24, 28:14, 41:2

Department [1] - 18:2

department [3] - 16:5, 16:9, 23:2

departments [4] - 10:8, 10:11, 17:22, 23:1

deprives [1] - 24:23

Deputy [1] - 1:18

description [1] - 33:7

designed [2] - 6:22, 38:15

desk [1] - 16:23

detailed [1] - 41:4

determine [1] - 11:23

determined [1] - 33:2

developed [1] - 41:3

development [4] - 4:22, 25:19, 25:24, 25:25

**D**

DANIEL [1] - 1:16

**developments** [1] - 28:19
**devices** [3] - 37:10, 37:23, 38:20
**difference** [2] - 22:6, 32:11
**different** [7] - 4:1, 4:2, 8:7, 11:19, 11:22, 16:4, 35:7
**difficult** [1] - 20:7
**difficulty** [3] - 41:7, 41:8, 41:9
**direct** [5] - 11:16, 29:5, 33:24, 34:14, 42:5
**directed** [1] - 3:17
**directing** [1] - 10:24
**directive** [3] - 17:22, 18:24, 26:9
**directives** [1] - 18:25
**disagree** [2] - 27:12, 40:16
**disagreeing** [1] - 21:12
**disallowance** [1] - 34:16
**discuss** [1] - 28:20
**discusses** [1] - 40:23
**discussing** [2] - 16:21, 34:21
**dismiss** [8] - 5:11, 5:13, 5:15, 6:25, 7:17, 8:16, 28:15, 41:17
**dismissal** [1] - 4:10
**dispositive** [1] - 7:6
**dispute** [5] - 10:18, 10:19, 12:13, 21:14, 21:20
**disputes** [2] - 17:18, 41:12
**disputing** [1] - 12:8
**distinguishable** [1] - 40:19
**DISTRICT** [3] - 1:1, 1:1, 1:13
**Division** [4] - 9:22, 9:25, 11:13, 18:1
**division** [1] - 10:1
**doctrine** [5] - 18:11, 18:13, 19:10, 24:4, 24:21
**document** [1] - 29:13
**done** [10] - 12:14, 12:15, 17:5, 17:25, 18:21, 22:4, 27:8, 30:15, 35:25, 36:14
**Dorchy** [1] - 39:7
**down** [5] - 7:14, 11:12, 14:3, 14:6,

25:6, 33:23, 37:16, 38:24, 39:1, 39:9, 40:4
**drafted** [2] - 35:5, 35:19
**dramatically** [1] - 22:3
**due** [8] - 7:3, 7:14, 8:10, 9:6, 9:16, 9:17, 9:18, 19:22
**during** [2] - 13:21, 34:15

## E

**easiest** [1] - 18:5
**effort** [1] - 36:3
**efforts** [1] - 10:6
**Egg** [6] - 4:7, 10:21, 12:18, 12:19, 21:8, 21:13
**eight** [1] - 6:15, 7:20, 8:5, 19:12, 21:2, 21:11, 24:24, 26:6, 26:16, 26:17, 26:25
**either** [1] - 35:8
**elements** [1] - 14:16
**embraced** [1] - 30:18
**embraces** [1] - 40:20
**enact** [1] - 33:6
**end** [2] - 20:9, 41:10
**enforce** [1] - 12:20
**enjoined** [1] - 39:15
**enjoinment** [1] - 39:14
**enormously** [1] - 21:21
**entered** [3] - 6:10, 15:12, 24:9
**entertain** [1] - 5:17
**entire** [4] - 11:11, 13:22, 35:2, 38:24
**entirely** [1] - 11:21, 12:5, 23:21, 33:15, 34:20
**entirety** [1] - 7:15
**entitled** [3] - 1:22, 28:2, 28:9
**error** [1] - 15:13
**escalation** [1] - 20:4
**ESQ** [2] - 1:16, 2:2
**essentially** [5] - 14:8, 17:2, 21:5, 21:9, 21:13
**et** [2] - 1:4, 1:7
**eternity** [1] - 22:12
**ETZWEILER** [22] - 1:18, 3:6, 5:2, 5:5, 8:23, 8:25, 9:22, 10:15, 14:10, 14:20, 14:24, 17:24, 22:9, 22:18, 22:23, 23:16,

25:12, 26:4, 37:1, 39:19, 39:21, 39:24
**Etzweiler** [7] - 3:5, 3:6, 6:21, 14:9, 19:4, 27:13, 36:25
**event** [2] - 4:18, 16:19
**exactly** [8] - 6:8, 15:20, 28:12, 33:10, 34:3, 34:12, 40:12
**examined** [1] - 13:10
**example** [1] - 12:14
**exception** [2] - 26:21, 26:22
**exclusively** [1] - 9:13
**executive** [1] - 6:3
**exemption** [6] - 13:3, 13:7, 13:19, 13:25, 14:23, 20:20
**exemptions** [15] - 3:21, 5:1, 6:11, 6:20, 6:23, 7:14, 13:9, 13:12, 13:18, 13:20, 14:13, 19:20, 19:23, 37:5, 41:13
**exercise** [8] - 3:20, 4:25, 6:11, 13:18, 22:16, 27:6, 30:12, 33:8
**explain** [2] - 6:17, 23:11
**explicit** [3] - 12:7, 34:14, 34:22
**expressed** [2] - 34:16, 38:12, 38:14
**expression** [1] - 33:6
**extensive** [1] - 37:20
**extent** [3] - 19:8, 36:14, 41:12
**extremely** [1] - 21:25

## F

**face** [1] - 22:2
**fact** [11] - 4:23, 10:12, 10:22, 11:1, 20:20, 21:4, 27:16, 28:11, 33:16, 34:1, 37:15
**facto** [4] - 32:21, 37:19, 37:21, 40:21
**facts** [2] - 6:24, 7:1
**factually** [1] - 20:6
**familiar** [1] - 18:17
**far** [5] - 10:21, 21:24, 38:19, 39:15, 40:10
**FARBER** [1] - 1:16
**fascinating** [1] - 29:15
**federal** [35] - 3:16, 7:20, 7:22, 8:1, 8:2, 9:6, 9:14, 12:25, 14:17, 18:10, 19:11,

21:24, 23:20, 23:23, 27:5, 29:23, 29:25, 30:18, 31:21, 32:3, 33:25, 35:5, 36:12, 36:16, 37:2, 37:6, 37:17, 38:9, 39:3, 39:8, 39:15, 40:5, 40:15
**Federal** [5] - 11:24, 37:7, 37:18, 38:18, 40:23
**fee** [1] - 15:14
**fee-shifting** [1] - 15:14
**fees** [4] - 15:13, 28:5, 28:8, 29:4
**felons** [1] - 37:24
**FERSKO** [1] - 1:16
**field** [1] - 21:22
**file** [2] - 4:24, 5:11
**filed** [6] - 3:14, 5:14, 20:6, 25:14, 28:22
**filing** [1] - 20:3
**final** [1] - 39:11
**finally** [1] - 25:17
**fine** [2] - 35:16, 35:18
**firearm** [1] - 33:13
**firearms** [1] - 36:2
**firing** [2] - 30:5, 35:21
**first** [9] - 10:20, 15:6, 16:15, 16:22, 23:18, 25:13, 28:21, 31:13, 33:24
**five** [4] - 8:3, 8:7, 8:11, 25:14
**fix** [3] - 17:17, 36:10, 36:20
**Florida** [2] - 31:19, 34:13
**follow** [3] - 10:1, 34:24, 35:2
**followed** [1] - 4:10
**following** [1] - 1:21
**FOR** [1] - 1:1
**force** [3] - 13:24, 14:3, 14:12
**forced** [2] - 14:7, 28:5
**forecloses** [1] - 22:19
**foreseeable** [1] - 18:19
**forgive** [1] - 20:1
**form** [10] - 6:22, 9:4, 13:10, 13:11, 13:17, 25:15, 25:19, 41:14
**formal** [1] - 25:25
**format** [1] - 9:11
**forms** [18] - 7:2, 7:3, 7:4, 8:25, 9:1, 9:2, 9:12, 9:15, 13:3, 14:15, 14:19, 18:22, 18:23, 20:21, 25:13,

42:2
**forum** [1] - 12:24
**forward** [1] - 41:12
**foul** [1] - 15:10
**four** [4] - 7:25, 8:8, 8:10, 23:10
**fours** [1] - 34:12
**free** [1] - 15:19
**freeze** [2] - 22:11, 25:7
**frequency** [1] - 33:6
**frustration** [1] - 25:10
**full** [3] - 8:18, 18:14, 24:15
**fundamental** [3] - 19:25, 20:15, 32:10
**fundamentally** [4] - 16:8, 35:24, 36:5, 36:22
**Furio** [7] - 15:22, 15:23, 17:6, 17:8, 28:1, 29:6, 29:12
**Furio's** [1] - 16:3
**furthermore** [1] - 18:12
**future** [1] - 18:19

## G

**Gallipoli** [1] - 11:11
**Garrett** [2] - 26:18
**GENERAL** [1] - 1:18
**General** [7] - 1:19, 3:23, 4:4, 4:5, 13:16, 17:21, 18:3
**generally** [2] - 3:15, 19:7
**gentlemen** [1] - 5:23
**given** [2] - 14:1, 17:10
**goals** [1] - 14:1
**goofed** [1] - 18:21
**gotcha** [1] - 28:23
**Government** [1] - 24:11
**Governor** [3] - 3:22, 4:4
**Governor's** [1] - 13:24
**grant** [2] - 18:14, 24:15
**ground** [2] - 33:24, 34:20
**grounds** [3] - 11:19, 24:10, 33:24
**guarantees** [1] - 26:10
**guess** [1] - 19:4
**guidance** [9] - 9:24, 10:23, 18:7, 21:23, 29:13
**Gun** [8] - 3:15, 9:20, 27:16, 29:17, 37:7, 37:18, 38:19, 40:23

**gun** [10] - 3:21, 11:10, 23:8, 30:3, 30:18, 31:1, 31:4, 31:25, 35:24, 35:25
**guns** [16] - 23:5, 29:25, 30:2, 32:16, 32:17, 32:20, 33:2, 35:1, 35:21, 37:3, 37:6, 37:17, 38:7, 40:22

**H**

**Hackensack** [22] - 2:3, 4:6, 5:15, 11:5, 15:2, 15:3, 15:4, 15:20, 15:22, 15:24, 16:4, 16:25, 17:8, 19:5, 21:6, 27:7, 27:8, 27:19, 27:25, 28:23, 29:6
**Hackensack's** [2] - 15:25, 16:12
**handgun** [10] - 10:17, 17:10, 17:20, 20:12, 29:19, 30:6, 30:21, 31:7, 33:3, 34:11
**Handgun** [3] - 23:3, 38:21, 39:19
**handguns** [11] - 3:19, 10:7, 22:15, 29:8, 29:22, 30:10, 33:7, 35:23, 36:2, 39:2, 40:11
**handles** [1] - 16:23
**hands** [1] - 15:18
**Harbor** [6] - 4:7, 10:21, 12:18, 12:19, 21:8, 21:13
**harm** [1] - 15:10
**headed** [1] - 18:2
**headquarters** [1] - 17:9
**Headquarters** [1] - 29:7
**hear** [2] - 7:13, 14:14
**heard** [2] - 14:14, 23:22
**held** [1] - 38:3
**help** [2] - 20:16, 20:18
**highway** [4] - 31:18, 32:5, 33:17, 33:21
**highways** [1] - 34:17
**HITSCHERICK** [1] - 2:2
**holding** [1] - 40:18
**Honor** [20] - 5:2, 6:12, 9:7, 11:9, 14:24, 18:21, 22:10, 24:3, 24:15, 24:23, 26:4,

28:18, 37:1, 38:22, 38:23, 39:4, 39:21, 40:1, 40:7, 40:9
**Honor's** [1] - 22:25
**HONORABLE** [1] - 1:13

**I**

**idea** [3] - 10:24, 13:11, 27:21
**III** [1] - 24:25
**illegal** [1] - 31:11
**immediately** [3] - 15:7, 16:25, 21:16
**impact** [3] - 38:1, 38:2, 38:6
**impediment** [1] - 22:7
**implementation** [1] - 13:22
**important** [1] - 36:9
**IN** [1] - 1:1
**INC** [1] - 1:4
**inclination** [1] - 20:11
**included** [2] - 30:8, 33:2
**including** [3] - 13:24, 17:13, 22:1
**indeed** [1] - 10:13
**independence** [1] - 24:22
**indicate** [1] - 35:7
**indicated** [1] - 13:9
**individual** [1] - 17:19
**individuals** [2] - 10:6, 37:12
**infirmity** [1] - 35:13
**informing** [1] - 25:21
**injunction** [7] - 5:11, 5:13, 22:25, 24:8, 25:8, 25:9, 39:4
**injunctive** [4] - 5:9, 21:11, 41:2, 41:18
**insert** [1] - 24:10
**insofar** [6] - 11:17, 13:15, 24:2, 24:5, 39:1
**instructive** [3] - 15:5, 32:10, 33:22
**instructs** [1] - 27:5
**intend** [4] - 23:4, 37:7, 38:17, 39:15
**intended** [8] - 39:12, 39:13, 39:17, 40:3, 40:10, 40:11, 40:13
**intent** [3] - 34:23, 38:18, 39:20
**interest** [3] - 39:4, 39:15, 40:5
**interested** [1] - 20:23

**interesting** [1] - 31:17
**interestingly** [1] - 6:23
**interpret** [1] - 32:2
**involves** [1] - 26:23
**irrelevant** [2] - 19:15, 39:7
**issue** [28] - 9:6, 9:12, 10:18, 10:19, 12:16, 13:2, 13:3, 13:6, 13:7, 14:10, 16:14, 16:21, 16:24, 17:21, 18:12, 21:7, 21:11, 24:18, 28:15, 29:3, 29:16, 29:20, 37:6, 39:25, 40:4, 40:18
**issued** [6] - 6:22, 10:22, 15:7, 16:17, 19:19, 21:19, 21:23, 23:25, 29:13
**issues** [7] - 7:6, 7:8, 7:13, 11:22, 25:7, 29:20, 40:24
**issuing** [3] - 16:15, 19:14
**itself** [4] - 17:18, 22:24, 24:6, 37:9

**J**

**January** [1] - 3:14
**JERSEY** [3] - 1:1, 1:3, 1:18
**Jersey** [29] - 1:10, 6:1, 8:3, 8:5, 8:12, 11:2, 11:8, 11:9, 11:13, 11:14, 11:20, 12:6, 22:1, 31:15, 32:4, 32:15, 33:1, 33:11, 33:13, 33:20, 34:12, 35:24, 35:25, 36:1, 36:4, 37:16, 38:14, 39:10, 40:10
**Jersey's** [1] - 38:19
**Joanne** [1] - 1:24
**job** [2] - 9:5, 14:16
**JOEL** [1] - 1:13
**Johnson** [2] - 15:8, 27:5
**JON** [1] - 1:7
**Judge** [12] - 4:17, 7:25, 10:19, 11:11, 13:21, 15:1, 17:12, 33:14, 33:15, 33:19, 38:25
**judge** [3] - 18:8, 18:20, 21:24
**JUDGE** [1] - 1:13
**judges** [4] - 18:17, 22:19, 24:20, 25:3
**judgment** [3] - 21:18,

21:24, 22:5
**jurisdiction** [16] - 7:21, 8:2, 9:7, 12:25, 18:10, 18:11, 18:15, 19:11, 20:10, 22:17, 23:18, 23:19, 24:3, 24:24, 27:6
**jurisdictional** [1] - 41:9

**K**

**knowing** [2] - 16:10, 41:4
**knowledge** [2] - 16:16, 18:22
**known** [1] - 33:13

**L**

**lack** [1] - 3:17
**lacks** [3] - 18:11, 18:14, 24:3
**land** [2] - 3:12, 5:4
**landscape** [1] - 20:5
**language** [7] - 7:22, 13:17, 13:25, 14:5, 37:12, 41:13
**largely** [2] - 14:2, 39:7
**LARRY** [1] - 1:18
**law** [51] - 3:21, 7:15, 8:6, 8:10, 9:10, 10:3, 11:12, 11:20, 12:6, 15:18, 16:10, 17:15, 18:18, 21:17, 24:1, 24:10, 25:19, 25:21, 27:9, 27:24, 28:9, 28:10, 28:22, 28:24, 29:23, 30:16, 32:3, 33:25, 34:23, 35:11, 35:24, 35:25, 36:6, 36:8, 36:9, 36:12, 36:16, 36:19, 37:6, 38:10, 38:12, 38:16, 38:24, 39:6, 39:8, 39:9, 39:11, 39:25, 40:15
**Law** [7] - 3:15, 18:2, 23:4, 27:16, 29:18, 38:21, 39:19
**laws** [1] - 37:9
**lawyers** [1] - 36:18
**lay** [2] - 3:12, 5:4
**learned** [1] - 15:22
**least** [6] - 11:2, 11:17, 12:14, 26:5, 27:13, 32:3
**leave** [1] - 7:12
**left** [2] - 18:7, 38:5
**legally** [1] - 20:6
**legislative** [2] - 30:13,

33:5
**legislature** [15] - 19:23, 30:7, 32:24, 33:1, 36:1, 36:5, 36:6, 36:8, 36:10, 36:15, 36:19, 39:12, 39:17, 40:3, 40:10
**legislature's** [2] - 36:4, 39:20
**legitimate** [3] - 3:20, 5:1, 30:12
**letter** [6] - 5:7, 6:23, 8:17, 15:8, 18:3, 21:23
**letters** [2] - 4:19, 29:2
**level** [1] - 37:20
**levels** [1] - 13:24
**Levis** [2] - 17:13, 27:21
**likelihood** [1] - 41:1
**likewise** [1] - 37:22
**limitation** [2] - 37:19, 38:3
**limitations** [1] - 23:17
**limited** [3] - 4:23, 24:12, 40:11
**limits** [1] - 37:4
**litigation** [3] - 11:11, 14:7, 25:5
**live** [1] - 28:15
**local** [3] - 10:7, 11:21, 18:13
**look** [7] - 7:21, 16:3, 21:2, 27:16, 31:12, 32:14, 36:17
**looked** [2] - 14:15, 16:1
**lumped** [1] - 9:13

**M**

**machine** [1] - 32:17
**main** [1] - 29:20
**major** [1] - 11:2
**manageable** [1] - 21:1
**management** [1] - 20:12
**manner** [1] - 36:2
**manufacturers** [1] - 37:13
**March** [1] - 18:3
**Matter** [1] - 42:8
**matter** [7] - 7:15, 14:17, 18:20, 24:18, 24:21, 25:4, 25:4, 26:6
**mean** [3] - 12:1, 23:21, 32:14
**meanderings** [1] - 3:10
**meaning** [1] - 31:21

**means** [3] - 27:10, 27:22, 34:2
**meeting** [1] - 13:16
**merits** [1] - 41:1
**met** [1] - 41:11
**metaphor** [1] - 20:1
**micromanage** [1] - 9:11
**Mieles** [1] - 32:25
**might** [1] - 23:10
**minimal** [1] - 9:7
**misconstrued** [2] - 10:3, 25:23
**miserable** [3] - 9:4, 9:5, 9:15
**mistake** [2] - 15:7, 15:19
**moment** [3] - 9:14, 20:14, 25:1
**month** [12] - 11:10, 14:22, 23:5, 23:9, 23:25, 31:1, 31:3, 31:6, 35:22, 37:5, 38:8, 40:11
**Month** [5] - 23:4, 27:16, 29:18, 38:21, 39:19
**months** [1] - 25:15
**moot** [8] - 4:19, 5:21, 7:2, 8:21, 9:2, 24:18
**mooted** [1] - 11:15
**mootness** [7] - 5:7, 6:24, 6:25, 8:17, 9:4, 26:5, 41:7
**most** [3] - 33:22, 35:15, 38:7
**motion** [9] - 5:8, 5:11, 5:13, 5:15, 7:17, 8:16, 28:15, 29:16, 41:17
**Motor** [2] - 31:19, 34:12
**move** [4] - 5:10, 6:25, 7:1, 7:9
**moving** [7] - 20:1, 22:10, 25:6, 25:11, 25:12, 25:16, 25:18
**MR** [83] - 3:3, 3:6, 3:8, 4:13, 4:17, 5:2, 5:5, 5:24, 6:3, 6:12, 7:25, 8:9, 8:14, 8:23, 8:25, 9:22, 10:15, 10:19, 11:6, 11:8, 11:14, 12:1, 12:4, 12:12, 12:18, 12:22, 13:5, 13:21, 14:10, 14:20, 14:24, 15:1, 15:4, 16:14, 17:7, 17:11, 17:12, 17:24, 19:3, 19:19, 20:22, 20:24,

22:9, 22:18, 22:23, 23:13, 23:16, 25:12, 26:4, 26:12, 26:14, 28:14, 28:17, 29:10, 29:17, 30:1, 30:4, 30:9, 30:11, 30:14, 30:20, 30:24, 31:2, 31:5, 31:9, 31:12, 31:15, 31:17, 32:9, 32:21, 32:23, 33:4, 33:8, 33:10, 35:4, 37:1, 39:19, 39:21, 39:24, 40:9, 40:14, 41:21, 41:24
**multiple** [1] - 12:7
**municipal** [4] - 6:16, 13:6, 17:22, 27:1
**municipalities** [15] - 3:24, 4:9, 9:24, 9:25, 10:8, 18:4, 18:15, 18:23, 18:25, 19:8, 19:10, 24:5, 24:7, 26:18, 26:20
**municipalities'** [1] - 20:12
**municipality** [6] - 4:6, 4:7, 4:8, 19:9, 22:1, 26:22
**must** [1] - 30:24

## N

**name** [3] - 4:3, 17:6, 39:18
**named** [4] - 4:6, 4:7, 4:8, 4:9
**names** [1] - 4:4
**narrow** [2] - 26:22, 38:14
**narrowed** [1] - 38:11
**necessarily** [5] - 24:12, 26:23, 34:2, 34:6, 34:9
**necessary** [3] - 7:9, 7:13, 41:24
**need** [3] - 5:18, 19:21, 22:16
**needs** [1] - 35:3
**never** [1] - 28:21
**NEW** [3] - 1:1, 1:3, 1:18
**new** [5] - 19:20, 20:2, 28:18, 28:19, 42:2
**New** [29] - 1:10, 6:1, 8:3, 8:5, 8:11, 11:2, 11:13, 11:14, 12:6, 31:15, 31:19, 32:4, 32:15, 33:1, 33:11, 33:13, 33:20, 33:21, 33:23, 34:12, 35:24,

35:25, 36:1, 36:4, 37:16, 38:14, 38:19, 39:10, 40:10
**next** [2] - 22:5, 31:3
**nice** [2] - 3:4, 6:2
**NO** [1] - 1:2
**nobody** [3] - 12:8, 12:12, 21:12
**nominal** [1] - 15:13
**none** [1] - 28:21
**nothing** [2] - 15:15, 27:17
**notice** [1] - 5:8
**notwithstanding** [1] - 22:12
**number** [10] - 6:16, 10:6, 10:25, 21:4, 21:19, 22:5, 25:13, 27:13, 27:14
**numbers** [1] - 4:24

## O

**object** [1] - 41:25
**obligation** [2] - 27:9, 36:15
**obtain** [7] - 4:24, 10:6, 12:7, 13:8, 17:20, 19:23, 21:4
**obtained** [1] - 10:18
**obtaining** [4] - 6:22, 9:20, 19:20, 32:18
**obvious** [1] - 39:12
**obviously** [1] - 37:10
**occur** [1] - 38:23
**occurred** [1] - 26:1
**OF** [4] - 1:1, 1:3, 1:6, 1:18
**offending** [1] - 35:15
**offer** [1] - 35:6
**OFFICE** [1] - 1:18
**Official** [1] - 1:25
**official** [1] - 25:18
**officials** [6] - 18:13, 22:12, 24:9, 24:16, 26:17, 26:25
**omitted** [1] - 4:14
**once** [2] - 23:11, 33:5
**one** [48] - 3:21, 5:24, 6:13, 7:5, 7:6, 7:11, 7:16, 7:18, 9:21, 10:9, 10:17, 11:2, 11:10, 12:14, 12:24, 16:15, 16:17, 16:18, 17:4, 17:9, 17:18, 17:20, 20:15, 21:2, 21:15, 23:2, 23:7, 23:8, 28:3, 29:16, 29:19, 30:2, 30:4, 30:21, 31:1, 32:13,

33:11, 33:22, 34:8, 35:17, 35:22, 37:3, 37:4, 40:11, 41:1, 41:19, 41:22
**One** [8] - 3:15, 9:20, 23:3, 27:16, 29:17, 30:3, 38:20, 39:19
**One-Gun** [1] - 9:20
**one-gun** [1] - 3:21
**one-gun-a-month** [1] - 11:10
**onerous** [1] - 32:19
**oops** [1] - 15:19
**open** [3] - 18:6, 18:7, 38:5
**operate** [1] - 34:1
**operating** [2] - 34:15, 34:17
**opinion** [4] - 24:8, 24:11, 24:13, 41:4
**opponents** [1] - 39:6
**opportunity** [1] - 42:3
**opposed** [1] - 21:8
**opposition** [1] - 5:14
**order** [3] - 22:14, 22:24, 24:9
**ordered** [1] - 15:11
**ordinance** [2] - 11:10, 11:20
**original** [2] - 3:13, 13:8
**originally** [1] - 3:22
**otherwise** [1] - 26:8
**ought** [2] - 7:20, 21:10
**outcome** [1] - 11:17
**outright** [2] - 31:22, 32:1
**outset** [1] - 5:18
**oversimplification** [1] - 28:18
**own** [1] - 11:10

## P

**page** [1] - 24:12
**paid** [2] - 15:13, 15:15
**papers** [2] - 5:14, 19:6
**parodyne** [2] - 3:9, 5:12
**part** [5] - 4:19, 18:1, 25:16, 25:18, 36:4
**partially** [1] - 39:9
**participation** [1] - 14:12
**particular** [4] - 14:4, 31:18, 35:15, 35:20
**particularly** [1] - 20:23
**parties** [4] - 5:19, 5:20, 6:6, 41:11
**party** [2] - 4:14, 28:10
**passage** [1] - 11:14

**pay** [1] - 28:7
**pellet** [6] - 31:4, 32:16, 33:2, 35:1, 35:21, 40:22
**pellet/BB** [1] - 30:2
**pending** [2] - 3:9, 5:12
**Pennhurst** [17] - 18:11, 18:13, 19:6, 19:7, 19:15, 22:8, 24:4, 24:6, 24:8, 24:13, 24:17, 24:21, 25:3, 26:10, 26:19, 39:25
**people** [7] - 3:20, 4:23, 9:20, 16:4, 17:13, 33:7, 38:7
**per** [7] - 16:18, 30:4, 31:1, 34:8, 35:22, 37:4, 40:11
**Per** [3] - 23:4, 38:21, 39:19
**percent** [4] - 31:22, 32:1, 33:18, 34:10
**perfect** [1] - 5:3
**perfectly** [1] - 39:12
**period** [5] - 9:21, 16:15, 23:2, 29:19, 30:22
**permanent** [2] - 21:11, 25:8
**permissible** [2] - 38:4, 38:9
**permit** [13] - 9:21, 10:10, 10:17, 16:15, 16:17, 16:18, 17:4, 17:9, 17:20, 22:25, 28:3, 33:12, 37:3
**permits** [30] - 3:19, 4:22, 4:24, 6:17, 10:7, 10:25, 12:8, 12:16, 15:9, 16:7, 21:4, 21:19, 22:5, 22:15, 23:2, 23:6, 23:10, 23:24, 25:21, 25:22, 27:11, 27:13, 27:14, 27:17, 27:18, 27:24, 29:7, 29:9, 32:18, 37:23
**permitted** [2] - 23:3, 36:4
**permitting** [12] - 4:16, 6:11, 11:17, 12:2, 12:4, 13:2, 13:6, 16:12, 20:19, 24:15, 25:22, 41:14
**persons** [3] - 37:23, 37:25
**pertained** [1] - 39:2
**pertaining** [1] - 18:13
**phone** [1] - 16:20

pick [2] - 30:23, 30:25
pieces [1] - 20:25
PISANO [1] - 1:13
Pistol [1] - 6:1
PISTOL [1] - 1:4
place [2] - 4:25, 13:11
plaintiff [1] - 15:24
plaintiffs [10] - 4:1, 4:2, 4:3, 5:16, 5:25, 9:11, 14:11, 22:11, 23:20, 25:14
Plaintiffs [2] - 1:5, 1:17
plaintiffs' [3] - 23:22, 28:20, 40:1
plus [1] - 22:9
POGOSKY [6] - 2:2, 3:8, 16:14, 17:11, 28:17, 29:10
Pogosky [3] - 3:7, 16:11, 29:6
point [8] - 7:12, 8:22, 9:18, 17:5, 25:8, 26:7, 29:12, 31:18
pointed [1] - 28:18
police [13] - 10:8, 10:10, 10:11, 10:24, 16:5, 16:9, 16:22, 17:1, 17:9, 17:22, 22:25, 23:2, 38:15
Police [18] - 3:23, 6:21, 9:23, 9:25, 10:22, 18:1, 18:12, 19:13, 19:14, 19:18, 20:11, 21:22, 24:3, 26:25, 27:15, 27:21, 29:7
policy [2] - 16:2, 28:7
portion [1] - 37:16
position [16] - 8:21, 9:22, 9:23, 9:24, 10:1, 12:13, 12:15, 15:2, 16:12, 16:14, 16:16, 27:25, 28:11, 28:16, 28:25, 34:18
possess [1] - 33:12
possession [3] - 32:12, 37:22
possible [1] - 33:16
possibly [1] - 13:12
postured [1] - 6:13
potentially [1] - 18:6
power [1] - 38:15
practical [6] - 18:20, 22:20, 22:24, 23:16, 24:17, 26:6
practicalities [1] - 22:9
practice [1] - 10:21
precisely [2] - 24:13,

26:9
preclude [1] - 10:17
preempt [3] - 37:7, 38:17, 38:19
preempted [1] - 29:21
preemption [14] - 3:16, 6:14, 11:21, 12:6, 37:12, 38:10, 38:11, 38:12, 38:14, 38:18, 38:23, 39:5, 40:1, 40:17
preempts [1] - 11:25
preliminary [1] - 25:8
premature [1] - 25:8
prerogative [1] - 40:2
prescribing [1] - 37:22
president [2] - 5:25, 6:3
pretend [1] - 27:23
pretty [5] - 14:5, 15:7, 17:25, 22:18, 35:11
prevailing [1] - 28:10
principle [1] - 31:20
problem [10] - 8:16, 11:4, 13:21, 15:20, 16:3, 17:12, 26:15, 27:2, 27:4, 35:19
problems [2] - 20:19, 22:24
procedural [4] - 3:10, 9:16, 9:18, 20:18
procedurally [1] - 6:13
procedure [1] - 19:20, 19:21
procedures [2] - 4:22, 4:25
proceedings [1] - 1:22
PROCEEDINGS [1] - 1:6
process [24] - 3:17, 3:19, 3:20, 4:16, 6:11, 6:22, 7:3, 7:14, 8:10, 9:6, 9:16, 9:17, 9:18, 11:10, 11:18, 13:8, 13:22, 16:13, 19:22, 20:20, 25:22, 32:18, 41:14
prohibit [3] - 33:14, 37:2, 37:9
prohibited [2] - 32:2, 34:11
prohibiting [3] - 34:3, 34:6, 34:9
prohibition [13] - 31:21, 32:2, 32:11, 32:15, 32:19, 32:21, 33:15, 33:18, 33:25, 34:15, 34:16, 37:19, 40:21

prohibits [1] - 29:18, 29:22
promulgated [9] - 9:3, 13:10, 14:20, 18:21, 18:24, 19:22, 20:3, 25:13, 25:15
promulgation [3] - 8:25, 9:1, 9:2
properly [1] - 6:18
proposition [2] - 31:23, 31:24
protect [1] - 38:15
protected [4] - 29:23, 37:13, 37:18, 39:3
provide [2] - 6:22, 34:23
provision [2] - 35:15, 37:21
Public [1] - 18:2
public [1] - 38:16
purchase [20] - 3:19, 10:7, 10:17, 17:10, 17:20, 22:15, 29:8, 29:18, 30:2, 30:6, 32:20, 33:7, 34:25, 37:8, 37:11, 37:25, 38:7, 38:8, 38:20, 40:22
purchased [3] - 30:5, 30:21, 35:21
purchasers [1] - 37:14
purchases [2] - 37:20, 38:4
purchasing [3] - 30:18, 34:11, 37:4
pure [1] - 19:9
purely [2] - 26:20, 27:1
Pursuant [1] - 1:21
put [5] - 3:11, 4:25, 24:10, 32:16, 40:16
puts [1] - 20:14

Q

qualify [1] - 13:20
quantity [1] - 33:8
questions [4] - 3:11, 18:6, 22:20, 40:7
quote [1] - 24:5
quoting [1] - 24:7

R

Rackis [11] - 31:16, 31:17, 32:8, 32:9, 32:10, 32:12, 32:25, 37:22, 38:3, 40:19, 40:24
raise [3] - 7:20, 8:1, 9:6

raised [1] - 9:16
raises [2] - 22:20, 39:25
raising [1] - 23:20
rapid [1] - 20:4
rather [3] - 12:25, 27:11, 37:13
rational [3] - 32:22, 32:23, 33:1
reach [1] - 35:24
reached [1] - 37:20
read [5] - 19:6, 23:9, 27:12, 27:15, 32:7
reads [2] - 28:24, 28:25
real [1] - 29:19
really [15] - 8:18, 9:10, 10:24, 11:21, 12:8, 14:5, 16:14, 19:15, 21:15, 21:20, 26:23, 34:19, 36:8, 36:10, 36:21
realm [1] - 38:17
reason [3] - 11:1, 25:7, 29:21
reasonably [1] - 35:10
reasoning [1] - 40:19
rebuffed [1] - 14:2
received [1] - 25:17
receiving [1] - 10:9
recognized [4] - 4:15, 33:15, 33:19, 37:15
recognizes [2] - 32:25, 36:1
record [5] - 1:22, 8:19, 15:11, 17:23, 42:7
referring [1] - 26:21
reflect [1] - 42:2
reflects [1] - 15:11
regard [2] - 15:6, 33:23
regarding [1] - 16:24
regardless [2] - 12:5, 17:3
regime [1] - 20:13
regulation [9] - 11:21, 12:21, 13:19, 20:12, 32:11, 33:23, 37:8, 38:4, 38:20
regulations [2] - 20:2, 27:15
regulatory [4] - 8:6, 24:1, 32:17, 38:9
rejected [1] - 14:6
relating [1] - 7:13
relationship [1] - 37:11
relief [16] - 5:9, 7:6, 7:11, 17:5, 18:14, 19:8, 21:12, 24:7,

raised [1] - 9:16
24:15, 24:16, 24:17, 26:22, 26:23, 41:2, 41:18
remain [1] - 6:6
remaining [2] - 6:7, 12:10
remedies [2] - 35:5, 40:1
rendered [1] - 32:19
reorganization [1] - 4:21
Reporter [1] - 1:25
request [1] - 17:9
require [1] - 33:14
required [1] - 17:15
reservation [5] - 24:20, 25:2, 25:3, 26:9
reserve [1] - 27:3
reserving [1] - 41:19
resolution [1] - 17:2
resolve [1] - 40:5
resolved [1] - 29:1
resolving [1] - 28:21
respect [3] - 8:15, 23:24
respond [1] - 8:23
response [2] - 5:10, 8:18
responses [1] - 17:24
responsibilities [1] - 17:14
responsibility [4] - 16:9, 20:17, 36:11
rest [4] - 7:15, 35:18, 40:3, 40:16
restrict [6] - 9:20, 10:25, 21:18, 22:5, 27:14, 27:18
restricted [3] - 22:16, 34:6, 37:24
restricting [1] - 6:16
restriction [4] - 31:11, 33:25, 34:14, 34:25
restricts [3] - 29:18, 33:6, 37:4
rests [1] - 23:25
result [2] - 6:25, 11:13
review [2] - 25:20, 41:16
revolver [1] - 31:7
rewrite [2] - 36:19, 36:21
RIFLE [1] - 1:4
Rifle [1] - 6:1
rights [1] - 28:9
ripeness [2] - 26:2, 41:8
rise [1] - 7:3
ROBERT [1] - 1:18

**rule** [2] - 20:17, 21:10
**rules** [1] - 21:17
**Ryan** [1] - 27:5

## S

**safe** [1] - 35:6
**safety** [1] - 38:16
**Safety** [1] - 18:2
**sale** [5] - 29:18, 29:22, 32:11, 37:2, 37:10
**sales** [7] - 37:11, 37:19, 37:21, 37:24, 38:1, 38:2, 38:7
**satisfied** [1] - 40:25
**save** [3] - 35:8, 35:13, 35:23
**saving** [1] - 35:9
**saw** [1] - 28:22
**scenario** [2] - 4:1, 20:5
**scheme** [2] - 32:17, 38:9
**Schmutter** [5] - 3:2, 5:7, 6:5, 16:20, 40:17
**SCHMUTTER** [58] - 1:16, 3:3, 4:13, 4:17, 5:24, 6:3, 6:12, 7:25, 8:9, 8:14, 10:19, 11:6, 11:8, 11:19, 12:1, 12:4, 12:12, 12:18, 12:22, 13:5, 13:21, 15:1, 15:4, 17:7, 17:12, 19:3, 19:19, 20:22, 20:24, 23:13, 26:12, 26:14, 28:14, 29:17, 30:1, 30:4, 30:9, 30:11, 30:14, 30:20, 30:24, 31:2, 31:5, 31:9, 31:12, 31:15, 31:17, 32:9, 32:21, 32:23, 33:4, 33:8, 33:10, 35:4, 40:9, 40:14, 41:21, 41:24
**scope** [2] - 36:3, 38:4
**scot** [1] - 15:19
**scot-free** [1] - 15:19
**Scott** [1] - 5:24
**second** [1] - 38:22
**Section** [4] - 1:21, 8:12, 11:24, 32:3
**section** [1] - 35:20
**see** [2] - 3:4, 6:22
**seek** [1] - 7:12
**seeking** [1] - 22:14
**seem** [1] - 14:15
**send** [1] - 28:1
**sense** [6] - 7:7, 9:7,

12:23, 14:1, 14:7, 17:5
**sensible** [1] - 13:25
**sent** [3] - 9:23, 10:9, 29:2
**separate** [4] - 5:11, 12:5, 21:7, 34:20
**sergeant** [1] - 16:23
**Sergeant** [2] - 17:13, 27:21
**served** [1] - 15:21
**Service** [1] - 32:4
**set** [4] - 3:16, 11:22, 13:15, 17:23
**settle** [1] - 25:6
**settled** [1] - 4:13
**settlement** [2] - 15:12, 18:9
**seven** [10] - 6:15, 8:5, 19:12, 21:2, 21:11, 24:24, 26:5, 26:16, 26:17, 26:24
**sever** [1] - 35:15
**shall** [1] - 8:23
**shifted** [1] - 20:6
**shifting** [1] - 15:14
**shows** [2] - 37:7, 37:12
**simple** [2] - 17:16, 21:10
**simplify** [2] - 21:16, 22:3
**simply** [4] - 17:21, 21:17, 22:14, 41:11
**sit** [1] - 14:3
**situated** [1] - 41:15
**situation** [3] - 24:13, 38:6, 40:20
**six** [8] - 6:19, 7:2, 8:3, 8:7, 8:11, 8:19, 13:7, 42:1
**slice** [3] - 20:25, 21:15, 35:17
**solution** [1] - 41:11
**someone** [4] - 19:23, 21:4, 27:24, 30:17
**somewhat** [1] - 37:24
**sorry** [4] - 15:1, 15:8, 18:23, 24:6
**sort** [1] - 31:7
**sought** [2] - 19:8, 37:13
**sounds** [1] - 26:2
**source** [1] - 8:9
**speaking** [2] - 18:24, 19:7
**speaks** [1] - 17:18
**spend** [1] - 28:5
**split** [1] - 12:25
**spoken** [1] - 21:13

**Sportsmen** [5] - 31:15, 32:4, 32:15, 33:11, 33:20
**spot** [1] - 28:22
**stage** [1] - 25:24
**stand** [4] - 16:13, 31:20, 31:23, 41:5
**standard** [1] - 32:1
**stands** [1] - 32:13
**start** [1] - 31:24
**started** [1] - 17:1
**State** [31] - 3:23, 6:21, 9:23, 9:25, 10:22, 13:9, 13:23, 17:25, 18:1, 18:11, 19:13, 19:14, 19:17, 20:11, 21:5, 21:22, 24:2, 24:3, 26:14, 26:23, 26:24, 26:25, 27:2, 27:15, 27:19, 27:21, 28:20, 31:19, 33:21, 34:12, 40:5
**state** [36] - 4:19, 9:10, 9:13, 10:2, 10:3, 11:20, 12:20, 17:1, 17:22, 18:7, 18:8, 18:17, 18:20, 19:9, 22:12, 22:19, 23:25, 24:9, 24:16, 24:20, 25:3, 25:5, 25:21, 26:7, 26:17, 26:25, 30:7, 39:8, 39:9, 39:11, 39:25, 40:2
**State's** [6] - 8:15, 8:20, 8:22, 14:8, 18:1, 34:18
**states** [2] - 34:20, 38:5
**STATES** [2] - 1:1, 1:13
**States** [2] - 1:21, 38:13
**status** [7] - 3:20, 5:1, 6:8, 6:9, 6:10, 14:23, 20:8
**statute** [48] - 4:16, 4:21, 9:19, 10:12, 10:13, 10:16, 11:14, 11:25, 13:17, 13:22, 13:23, 14:1, 17:17, 18:5, 19:20, 20:2, 22:16, 22:21, 22:23, 23:8, 25:17, 25:23, 25:25, 27:12, 28:19, 29:25, 30:19, 31:21, 32:19, 33:6, 33:14, 35:3, 35:6, 35:8, 35:12, 35:16, 35:18, 35:19, 35:20, 35:23, 37:2, 37:17, 38:15, 39:1, 39:9, 39:14, 39:18, 40:4

**statutes** [1] - 15:14
**statutory** [1] - 13:19
**stay** [1] - 29:11
**stenographically** [1] - 1:22
**still** [7] - 4:5, 4:8, 12:6, 16:18, 18:6, 25:24, 33:16
**stop** [1] - 31:24
**story** [1] - 15:5
**straight** [1] - 17:23
**straighten** [1] - 20:18
**stricken** [1] - 35:3
**strike** [2] - 33:23, 38:24
**strikes** [1] - 7:14
**striking** [1] - 37:16
**struck** [3] - 11:12, 39:1, 39:9
**struggling** [1] - 20:16
**submit** [2] - 38:5, 39:12
**submitted** [1] - 21:2
**subsection** [1] - 35:16
**subset** [1] - 18:12
**substantial** [3] - 24:22, 38:2, 38:6
**substantive** [1] - 9:17
**success** [1] - 41:1
**sue** [2] - 12:20, 27:25
**sued** [5] - 12:19, 15:6, 15:18, 16:19, 28:6
**suggest** [1] - 42:6
**suggested** [1] - 18:21
**suggesting** [3] - 6:24, 8:17, 21:3
**suggestion** [2] - 13:15, 22:7
**suit** [1] - 25:14
**superintendent** [1] - 13:16
**Superintendent** [1] - 3:23
**Superior** [2] - 11:11, 25:20
**supplemental** [2] - 7:21, 12:23
**suppose** [2] - 7:17, 25:10
**Supreme** [8] - 11:13, 11:14, 35:11, 38:13, 38:16, 39:6, 39:10
**susceptible** [1] - 35:10

## T

**talks** [1] - 29:25
**tantamount** [1] - 9:10
**tardy** [2] - 9:1

**target** [7] - 20:2, 22:10, 25:6, 25:11, 25:12, 25:16, 25:18
**task** [3] - 13:24, 14:3, 14:12
**ten** [3] - 29:7, 29:8, 38:8
**terms** [3] - 30:3, 37:9, 38:13
**THE** [85] - 1:1, 1:1, 1:13, 1:18, 3:2, 3:4, 3:7, 3:9, 4:14, 4:18, 5:3, 5:6, 6:2, 6:4, 7:16, 8:7, 8:13, 8:20, 8:24, 9:19, 10:4, 10:16, 11:5, 11:7, 11:16, 11:23, 12:2, 12:9, 12:17, 12:19, 13:1, 13:14, 14:9, 14:19, 14:22, 15:2, 16:11, 17:6, 17:8, 17:16, 19:2, 19:17, 19:25, 20:23, 22:7, 22:13, 22:21, 23:7, 23:15, 25:10, 26:2, 26:11, 26:13, 28:13, 29:5, 29:15, 29:24, 30:2, 30:7, 30:10, 30:12, 30:16, 30:23, 30:25, 31:3, 31:6, 31:10, 31:14, 31:16, 32:7, 32:13, 32:22, 32:24, 33:5, 33:9, 34:24, 36:24, 39:17, 39:20, 39:23, 40:8, 40:12, 40:16, 41:23, 42:4
**therefore** [3] - 7:9, 19:10, 34:9
**thereof** [1] - 3:18
**they've** [5] - 17:25, 21:8, 21:14, 30:15, 30:21
**thoroughly** [1] - 40:23
**three** [13] - 6:19, 7:2, 7:19, 7:25, 8:8, 8:10, 8:19, 13:7, 15:10, 23:10, 25:15, 31:13, 41:25
**throw** [1] - 15:18
**thwarted** [1] - 10:7
**timing** [1] - 37:4
**Title** [2] - 1:21, 27:15
**today** [10] - 6:13, 6:19, 8:16, 17:9, 21:3, 21:8, 21:11, 22:4, 27:3, 37:3
**together** [1] - 28:20
**tomorrow** [1] - 18:8
**toward** [1] - 3:17

towns [1] - 29:14
Township [10] - 3:24, 4:5, 4:7, 4:11, 4:12, 4:13, 15:5, 15:6, 21:6
Toy [4] - 37:7, 37:18, 38:19, 40:23
toy [4] - 37:3, 37:6, 37:17, 38:7
toys [1] - 39:2
traditional [1] - 39:2
TRANSCRIPT [1] - 1:6
transcript [1] - 1:21
Transportation [1] - 32:5
treat [1] - 29:1
Trenton [1] - 1:10
trouble [1] - 19:25
troubled [1] - 41:6
Truck [2] - 31:19, 34:12
trucks [2] - 34:1, 34:15
true [1] - 33:17
trustees [1] - 26:18
try [6] - 13:24, 22:1, 35:8, 35:9, 35:14, 35:23
trying [4] - 5:4, 13:13, 20:7, 20:17
turns [2] - 15:9, 42:2
two [18] - 6:14, 7:5, 7:6, 7:12, 7:18, 16:4, 17:13, 17:24, 20:15, 21:25, 22:2, 26:14, 29:16, 31:18, 33:24, 35:7, 41:1, 41:19
type [2] - 30:21, 31:7
types [1] - 30:8
typically [1] - 35:8

## U

U.S [3] - 31:19, 34:13, 38:16
U.S.C [1] - 29:21
ultimately [1] - 29:11
unconstitutional [3] - 31:10, 35:17, 36:17
unconstrue [1] - 35:12
under [21] - 8:3, 8:5, 8:11, 15:14, 18:11, 18:12, 19:20, 22:16, 24:3, 24:21, 28:9, 28:10, 30:3, 32:3, 32:4, 33:9, 38:20, 39:9, 41:16
unidentified [2] - 3:24, 4:8

UNITED [2] - 1:1, 1:13
United [2] - 1:21, 38:13
unlawful [1] - 30:20
unlawfully [1] - 6:16
unless [3] - 10:2, 30:21, 38:18
unlikely [1] - 21:25
unnatural [1] - 35:13
unsettled [1] - 28:23
unwillingness [1] - 14:8
up [7] - 7:8, 12:25, 13:16, 14:6, 15:18, 20:25, 32:8
update [1] - 42:1
upheld [1] - 11:12

## V

vice [1] - 6:3
vice-president [1] - 6:3
view [5] - 7:1, 8:22, 9:2, 18:10, 40:21
violate [2] - 9:15, 15:17
violated [1] - 40:15
violates [1] - 19:22
voracious [1] - 25:24
vs [1] - 1:6

## W

walks [1] - 29:6
Washington [10] - 3:24, 4:5, 4:10, 4:11, 4:12, 4:13, 12:15, 15:5, 15:6, 21:6
ways [3] - 25:13, 35:7, 36:19
weak [1] - 9:9
weapon [1] - 39:1
weapons [2] - 32:17, 37:17
weeks [2] - 25:17, 26:1
whole [1] - 7:7
wholesale [1] - 39:14
whoops [1] - 15:7
works [2] - 13:25, 14:5
worse [2] - 13:11, 34:10
wrinkles [1] - 20:19
writ [1] - 40:2
wrote [1] - 5:7

## Y

York [3] - 31:19, 33:21, 33:23

## Z

ZISA [1] - 2:2