UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., a New Jersey Not for Profit Corporation; SCOTT L. BACH; KAARE A. JOHNSON; VINCENT FURIO; STEVEN YAGIELLO and BOB'S LITTLE SPORT SHOP, INC., a New Jersey Corporation<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTOPHER J. CHRISTIE, Governor of the State of New Jersey; PAULA T. DOW, Attorney General of the State of New Jersey; COLONEL RICK FUENTES, Superintendent, Division of New Jersey State Police; WASHINGTON TOWNSHIP (Morris County); CITY OF HACKENSACK; LITTLE EGG HARBOR TOWNSHIP; and XYZ MUNICIPALITIES 1-563;<br><br>Defendants. | Civil Action No.: 10-cv-271 (JAP)(TJB)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**RETURN DATE: May 2, 2011** |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

FARER FERSKO,
a Professional Association
600 South Avenue
P.O. Box 580
Westfield, NJ  07091-0580
(908) 789-8550
Attorneys for Plaintiffs
Association of New Jersey Rifle and Pistol Clubs, Inc., Scott L. Bach, Kaare A. Johnson, Vincent Furio, Steven Yagiello, and Bob's Little Sport Shop

On the Brief:
Daniel L. Schmutter, Esq.

## TABLE OF CONTENTS

Table of Citations...........................................iii

Preliminary Statement.........................................1

Statement of Undisputed Material Facts........................5

Procedural History...........................................22

Legal Argument ..............................................23

Standard of Review on Summary Judgment.......................23

Standard of Review on Motion to Dismiss
    For Failure to State a Claim.............................24

        POINT ONE

        COUNTS ONE AND TWO HAVE BEEN REPLEADED
        ONLY TO PRESERVE PLAINTIFFS' RIGHT TO APPEAL ..........25

        POINT TWO

        COUNTS THREE AND FOUR SHOULD NOT BE DISMISSED
        AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
        SHOULD BE GRANTED BECAUSE THE STATE MAY NOT
        PROVIDE A RIGHT TO OBTAIN THE EXEMPTIONS
        WITHOUT PROVIDING A FAIR MEANS TO VINDICATE
        THAT RIGHT ...........................................25

        POINT THREE

        COUNTS FIVE AND SIX ARE NOT MOOT AND SUMMARY
        JUDGMENT SHOULD BE GRANTED TO ENSURE HACKENSACK'S
        COMPLIANCE WITH THE LAW ..............................32

        POINT FOUR

        THE MOTIONS TO DISMISS SHOULD BE DENIED BECAUSE
        PENNHURST DOES NOT APPLY TO CLAIMS AGAINST
        MUNICIPALITIES AND THERE ARE NO CLAIMS AGAINST THE
        STATE DEFENDANTS ARISING UNDER STATE LAW .............36

Conclusion...................................................37

## TABLE OF CITATIONS

<u>**CASES CITED**</u>

<u>Alexandre v. Cortes</u>, 140 F.3d 406 (2d Cir. 1998).............. 27

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).......... 24

<u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564,
    92 S. Ct. 2701 (1972)....................................... 27

<u>Board of Trustees of the University of Alabama v.
    Garrett</u>, 531 U.S. 356 (2001) ............................... 36

<u>Conley v. Gibson,</u> 355 U.S. 41, 78 S.Ct. 99,
    80 (1957).................................................. 25

<u>D.P. Enterprises , Inc v. Bucks County Community College</u>,
    725 F.2d 943 (3d Cir. 1984) ............................... 24

<u>Doe v. Poritz</u>, 142 N.J. 1 (1995)............................. 33

<u>Matsushita Electronic Indus. Co. v. Zenith Radio Corp.</u>,
    475 U.S. 574 (1986)....................................... 24

<u>Gomez v. Toledo</u>, 446 U.S. 635 (1980)......................... 24

<u>Humphries v. Country of Los Angeles</u>, 554 F.3d 1170
    (9th Cir. 2009)........................................... 27

<u>In re Kimber Petroleum Corporation</u>, 110 N.J. 69 (1988)....... 33

<u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>,
    20 F.3d 1250 (3d Cir. 1994)............................... 24

<u>K.J. ex rel. Lowry v. Division of Youth and Family
    Services</u>, 363 F. Supp. 2d 728 (D.N.J. 2005).............. 33

<u>Mills v.  Rogers</u>, 457 U.S. 291 (1982)........................ 27

<u>Patsy v. Board of Regents of the State of Florida</u>,
    457 U.S. 496 (1982)....................................... 28

<u>Paul v. Davis</u>, 424 U.S. 693 (1976).......................... 27

Pennhurst State School & Hospital v. Halderman,
    465 U.S. 89 (1983)................................... 4, 36

Quackenbush v. Allstate Insurance Co., 517 U.S. 706 (1996).... 28

Ryan v. Johnson, 115 F.3d 193 (3rd Cir. 1997)............. 28, 29

Sutera v. Schering Corp., 73 F.3d 13 (2d Cir. 1995).......... 24

Swarthout v. Cooke, 131 S. Ct. 859 (2011).................... 28

**STATUTES CITED**

15 U.S.C. §5001............................................. 1

42 U.S.C. §1983............................................ 28

N.J.S. 2C:58-2........................................... 1, 7

N.J.S. 2C:58-3........................................... 1, 7

**RULES CITED**

Fed. R. Civ. P. 8(e)...................................... 25

Fed. R. Civ. P. 56(c)..................................... 21

## <u>PRELIMINARY STATEMENT</u>

### <u>Plaintiffs' motion</u>

Plaintiffs' summary judgment motion comes before the Court after the filing of a Second Amended Complaint.  The Court has already heard and decide Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss counts I and II of the Second Amended Complaint which allege that New Jersey's amendments to N.J.S. 2C:58-2 and 2C:58-3 unlawfully restrict handgun sales to one every 30 days ("One Gun Law") in violation of an explicit federal preemption contained in 15 U.S.C. §5001(g)(ii).

Now before the Court is Plaintiffs' motion for summary judgment on Counts III through VI which seek declaratory and injunctive relief for two additional reasons.  First, the One Gun Law contains extremely limited exemptions for collectors, competitors and inheritance ("Collectors and Competitors") (the "Exemptions"), yet those Exemptions, and the interim forms promulgated by the State Police which purport to implement the Exemptions (the "Exemption Forms"), render it largely impossible for most Collectors and Competitors to qualify for the Exemptions, even though the One Gun Law explicitly purports to provide for Exemptions.  Accordingly, Collectors and Competitors are unable to engage in lawful transactions of more than one

1

handgun per month, even though the New Jersey legislature explicitly intended that they be permitted to do so. This violates their due process rights under the Fourteenth Amendment.

Second, certain New Jersey municipalities have been restricting the issuance of permits to purchase handguns to one per month even though New Jersey law provides that an applicant may apply for more than one at a time. Since the filing of the initial Complaint in the action, the State Defendants, and all of the municipalities that have been joined in this action, have admitted that such restriction is unlawful. The Superintendent, Division of New Jersey State Police ("Superintendent") has even issued a letter to all municipal police chiefs instructing them of this fact.

Yet, Defendant Hackensack is now playing fast and loose with the Court and the Plaintiffs on this issue. Hackensack was joined in this action for unlawfully restricting the issuance of permits. They came to Court last April and admitted that the practice was unlawful and claimed that they had stopped it. Yet, Hackensack refuses to officially bind itself to this alleged change of policy because it has not really complied with the law.

Hackensack has even gone so far as to move to dismiss the Second Amended Complaint for lack of a case or controversy on this issue. Yet, ironically, Hackensack will issue no official policy, sign no agreement, agree to the entry of no order or in any way bind itself in this regard.

Hackensack is still in violation of the law. As recently as three weeks ago the Hackensack Police Department still displayed a sign instructing applicants that they may apply for no more than one permit to purchase a handgun at a time, and the desk clerk who files such paperwork still informs applicants that they may not apply for more than one permit at a time.

Further, Plaintiffs have now discovered that other municipalities still do not take this law seriously. One year after the Superintendent issued its directive to municipal police departments on this issue, the Town of Harrison still unlawfully limits permits to one per month.

Accordingly, it is no longer sufficient to trust Hackensack's word on this issue or to assume municipalities are following the Superintendent's directive. If Hackensack is this intransigent and Harrison is still blatantly disregarding the Superintendent's directive a year later, this unlawful conduct will persist with other municipalities as well. Only an

3

enforceable judgment will ensure that municipalities like Hackensack and Harrison take the law, and this Court, seriously.

**<u>Defendants' Motions to Dismiss</u>**

The State Defendants and Hackensack once again have all moved to dismiss the Second Amended Complaint for failure to state a claim. They, again, attempt to apply <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1983) in a manner wholly inconsistent with its holding, ignoring, among other things, that the Eleventh Amendment does not protect municipalities.

They also entirely misunderstand the essential nature of Counts III and IV in that it is the very design of the Exemptions that causes them to fail. Bascially, the Legislature and the Superintendent have created illusory Exemptions. While the Legislature has made clear its intention to provide the Exemptions to qualified persons, the language and procedure employed by the Exemption Forms renders it impossible for most such qualified persons to obtain the Exemptions. For these reason Defendants' motions should be denied and Plaintffs' motion for summary judgment should be granted.

4

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

<u>**Background of New Jersey Handgun Permitting Law**</u>

This lawsuit concerns New Jersey's recently enacted One Gun Law. The relevant facts are more fully set forth in the accompanying certifications.

1. For many years, prior to enactment of the One Gun Law, New Jersey has had and still continues to have one of the most comprehensive and restrictive handgun permitting schemes in the nation. Before someone may purchase handguns in New Jersey, a purchaser must first obtain from his or her local police department a separate Permit to Purchase a Handgun ("Handgun Purchase Permit") for each handgun purchased, after undergoing extensive state and federal background checks, and after providing comprehensive personal information, employment information, fingerprints and two references. (Certification of Scott Bach ("Bach Cert.") ¶5.) [1]

2. This lengthy and complex process requires law enforcement to research the applicant's criminal background and mental health background, process fingerprints, interact with references, and perform other investigative functions to assure that the applicant is not disqualified. This process frequently

_____

[1] This motion relies upon both the original Certification of Scott Bach, filed on February 2, 2010("Bach Cert."), and the newly filed Supplemental Certification of Scott Bach. The

5

takes months (sometimes 6 months or longer), and applications can be and often are denied. Permits expire in 90 days, subject to one possible discretionary extension of another 90 days. (Bach Cert. ¶6)

3. After the months-long investigation period, the applicant must also undergo a separate federal electronic criminal background check ("NICS" or "Brady Check") at point of purchase, and the seller must collect and retain all details of the sale on state and federal forms and in an official logbook. Copies are sent to State and local police and retained by the seller. (Bach Cert. ¶7,8)

4. These requirements have been in effect for years and remain in effect after the passage of the One Gun Law. (Bach Cert. ¶9)

## The One Gun Law

5. On or about August 6, 2009, Governor Corzine signed into law the One Gun Law which prohibits the delivery or purchase of more than one handgun within a 30 day period, even though Handgun Purchase Permits have already been issued pursuant to New Jersey law following months-long background investigations. [2] (Bach Cert. ¶10)

---

latter will be referred to as the "Supplemental Bach Cert."
[2]  Though not directly relevant to this matter's disposition, advocates of the One Gun Law claimed that the legislation would

The One Gun Law amended N.J.S. 2C:58-2(a) to provide:

(7) A dealer shall not knowingly deliver more than one handgun to any person within any 30-day period.

The One Gun Law amended N.J.S. 2C:58-3(i) to provide:

Restriction on number of firearms person may purchase. Only one handgun shall be purchased or delivered on each permit and no more than one handgun shall be purchased within any 30-day period . . .

6.   This language puts the One Gun Law squarely in fatal conflict with federal law, which expressly preempts the prohibition of a certain class of firearms (B-B, pellet and air guns).  This is a conflict so deeply embedded in decades old New Jersey gun statutes, it can only be remedied by the legislature.

7.   On June 26, 2009, after passage of the One Gun Law by the legislature, but prior to signature by the Governor, the Governor issued Executive Order 145, creating a nine-member Firearms Advisory Task Force (the "Task Force") allegedly "to ensure that lawful firearms collectors and competitive and recreational firearms users are not adversely affected by the [One Gun Law]."  (See Executive Order 145, attached to the Bach Cert. as Exhibit A.; Bach Cert. ¶11)

---

address illegal gun trafficking by making it more difficult for criminals to buy handguns in bulk.  Opponents argued that traffickers already circumvent New Jersey's strict permitting process, and, therefore, the law would have no impact on illegal gun trafficking.  The first state to enact such a law in 1975, South Carolina, repealed the law after 29 years of experience.

8.   The membership of the Task Force included State Police Lieutenant Colonel Christopher Andreychak as designee for Defendant Superintendent of State Police Colonel Rick Fuentes. (<u>See</u> excerpt from Task Force Initial Report, Bach Cert., Ex. B.) (Bach Cert. ¶12)

9.   Pursuant to the recommendations of the Task Force, on or about January 12, 2010, Governor Corzine signed amendments creating limited exemptions to the One Gun Law (the "Exemptions").  The Exemptions, set forth in section 4 of Senate Bill S3104 (not yet codified), provide as follows: (Bach Cert. ¶13)

4.(New section)
a. The superintendent may grant an exemption from the restriction on the purchase of handguns set forth in subsection i. of N.J.S.2C:58-3 if the applicant demonstrates to the satisfaction of the superintendent that the applicant's request meets one of the following conditions:

(1) The application is to purchase multiple handguns from a person who obtained the handguns through inheritance or intestacy **[the "Inheritance Exemption"];**

(2) The applicant is a collector of handguns and has a need to purchase or otherwise receive multiple handguns in the same transaction or within a 30-day period in furtherance of the applicant's collecting activities. As used in this paragraph, "need" shall include, but not be limited to, situations where there is a reasonable likelihood that the additional handguns sought to be purchased would not be readily available after the 30-day period, that it would not be feasible or practical to purchase

8

the handguns separately, or that prohibiting the purchase of more than one handgun within a 30-day period would have a materially adverse impact on the applicant's ability to enhance his collection . . . **[the "Collector Exemption"]**; or

(3) The applicant participates in sanctioned handgun shooting competitions and needs to purchase or otherwise receive multiple handguns in a single transaction or within a 30-day period, and the need is related to the applicant's competitive shooting activities, including use in or training for sanctioned competitions **[the "Competitor Exemption"]**.

b. The applicant shall certify, on a form prescribed by the superintendent, the specific exemption sought and the particular handguns to be purchased . . . .

d. Notwithstanding the provisions of the "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), the superintendent may adopt, immediately upon filing with the Office of Administrative Law, such temporary regulations as the superintendent deems necessary to implement the provisions of P.L. , c. (C. ) (pending before the Legislature as this bill). . . .

Section 5 of Senate Bill S3104, provides as follows:

5. This act shall take effect immediately; provided however, the Superintendent of State Police may take any anticipatory administrative action prior to the effective date necessary for its timely implementation.

10. To obtain any of the Exemptions, a person must apply to the Superintendent of the State Police (the "Superintendent"). Although the Superintendent's designee sat on the Task Force for many months prior to the One Gun Law's effective date, and despite S3104's call for "timely implementation" of the Exemptions and authorization of

9

"anticipatory administrative action," there was not any established procedure for applicants to apply for and obtain any of the Exemptions until in or about April 2010. (Bach Cert. ¶14, 15)

11. Thus, qualified individuals could not take advantage of the Exemptions even though the Legislature intended that they do so.

### Plaintiffs' Attempts to Comply with the One Gun Law

12. Plaintiff Scott L. Bach ("Bach") is an attorney and President of Plaintiff Association of New Jersey Rifle and Pistol Clubs ("Association"). (Bach Cert. ¶1,2)

13. The Association represents the interests of hundreds of thousands of target shooters, hunters, competitors, and other law abiding firearms owners.  Among the Association's purposes is aiding such persons and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase and possess firearms.  (Bach Cert. ¶3)

14. Bach is an avid firearms collector.  Among other things, he would like to add to his collection a matched set of pistols. Typically, the value of a matched set is in owning the

pieces together, so they are unlikely to be sold individually. (Bach Cert. ¶16-18)

15.  Without the Exemptions, people like Bach, who have no involvement in the criminal activities that were the One Gun Law's target, cannot pursue many lawful collection activities. (Bach Cert. ¶19)

16.  In January, Bach applied for three Handgun Purchase Permits.  He then telephoned the State Police Firearms Unit to ask how to apply for the Exemptions and was directed to Lieutenant David Schlueter, who said there was no procedure in place and that he did not know when there would be a procedure. (Bach Cert. ¶20-22)

17.  The Lieutenant did not even know that the Exemptions were signed into law several days earlier.  He said he had received no information about the amendments or their content, could not take any action until he had that information, and suggested that Bach contact his legislator.  He also claimed that all this was done "without our knowledge," even though the Superintendent's designee sat on the Task Force for many months prior to the One Gun Law's effective date and participated in formulating the recommendations that resulted in the Exemptions. (Bach Cert. ¶23-26)

18.   The State Police were completely unprepared for the implementation of the Exemptions, despite the legislature's express call in S3104 for "timely implementation" and authorization of "anticipatory administrative action." The honest persons whom the legislature intended to exempt now have no procedure or prescribed method to invoke the Exemptions. (Bach Cert. ¶26)

19.   Also, when Bach submitted his application for three Handgun Purchase Permits, his local Police Department initially advised that he could only obtain one <u>permit</u> per month (as opposed to one <u>handgun</u> per month), which could translate into one handgun every four or five months or longer due to permitting delays -- well beyond the intended statutory limitation. (Bach Cert. ¶27)

20.   In fact, pre-existing New Jersey law specifically allows application for multiple permits.[3]   However, the State Police had provided no advance guidance to local police agencies on this issue.   With 566 municipalities in New Jersey, this was a recipe for inconsistency and chaos.   Given their Task Force participation, the State Police should have been well prepared

---

[3] As a practical matter, a non-exempt individual can receive six permits at once and use all six lawfully under the One Gun Law; used at the rate of one per month, the first three can be used prior to their 90-day expiration date, and the second three can be extended for the one additional 90-day term.

for enactment of the One Gun Law and the Exemptions. (Bach Cert. ¶29-30)

21.  The Association has received multiple complaints from its members regarding rationing of permits to one per month and the lack of any procedure for invoking the statutory Exemptions. (Bach Cert. ¶31-33)

22.  New Jerseyans are entitled to the correct and prompt implementation of new laws.  This law was signed nearly five months before the effective date of January 1, 2010.

23.  Several accompanying witness certifications further illustrate the problems with the One Gun Law and the absence of implementation guidelines.

- Plaintiff Kaare A. Johnson ("Johnson") is a retired middle school teacher and World War II veteran residing in Washington Township, Morris County.  (Cert. of Kaare Johnson)

- Plaintiff Vincent Furio ("Furio") sells business credit insurance, is a competitive shooter and hunter, and resides in the City of Hackensack.  (Cert. of Vincent Furio)

- Plaintiff Steven Yagiello ("Yagiello") is a crew supervisor for the New Jersey Division of Fish and Wildlife and a resident of Little Egg Harbor Township.  (Cert. of Steven Yagiello)

- Jonathan Friedman, M.D. is an oral and maxillofacial surgeon and a former New York State Trooper living in Mendham.  (Cert. of Jonathan Friedman, M.D.)

- Richard Gajda ("Gajda") is a firearms collector, instructor and competitive shooter who lives in Clinton Township. (Cert. of Richard Gajda)

- Daniel Strachman is a financial consultant, author, former adjunct professor at New York University School of Continuing Education, a resident of Fanwood, and he volunteers with the Fanwood Rescue Squad. (Cert. of Daniel Strachman)

- Alejandro Alonso is a truck driver and a resident of Harrison. (Cert of Alejandro Alonso)

24.   Johnson is a collector of vintage Colt revolvers, but he cannot properly do so without the Collector Exemption because these valuable revolvers become available randomly and may show up more than one at a time. (Johnson Cert.)

25.   As avid collectors and competitors, Furio and Gajda are similarly impacted by the lack of any means to apply for the Exemptions, since they routinely apply for and uses multiple Handgun Purchase Permits. (Furio Cert., Gajda Cert.)

26.   Plaintiff Bob's Little Sport Shop, Inc. ("Bob's"), a federally and State licensed retail firearms dealer in Glassboro, New Jersey, has encountered the same issues. (Certification of Robert Viden.)

27.   Collectors often wish to purchase matched pistol sets or collections sold in lots and they now cannot do so, even if they qualify for one of the Exemptions.  Competitors often engage in multi-gun event categories which require the competitor to have a set of handguns in several specified calibers, which usually are purchased together.  They cannot do this because, even though the Superintendent eventually

14

established procedures to apply for the Exemptions, the manner in which the Exemptions have been implemented renders it nearly impossible for applicants to obtain the Exemptions. (Viden Cert. ¶5-9)

### The Exemptions are Illusory

28. In or about April of 2010, the Superintendent promulgated forms to be used in applying for the Exemptions ("Exemption Forms"). Attached to the Supplemental Bach Cert. as **Exhibit "A"** are forms S.P. 015 and S.P. 016 which are, respectively, the **Application for Multiple Handgun Purchase Exemption** (S.P. 015) and the **Seller/Transferor Certification** (S.P. 016). (Supplemental Bach Cert. ¶7)

29. As indicated on the forms, themselves, S.P. 015 must be completed by the applicant and S.P. 016 must be completed by the seller. Both forms must then be submitted to the Superintendent as part of the application for an Exemption. (Supplemental Bach Cert. ¶8)

30. Further, both forms require that the applicant and the seller identify in advance the multiple handguns sought to be purchased. (Supplemental Bach Cert. ¶9)

31. In other words, the only way to even apply for an Exemption an applicant must first identify in advance of the application which handguns he wishes to purchase and the seller

15

from which he wishes to purchase them.  He must then convince the seller to (1) not sell the handguns to anyone else, (2) fill out the S.P. 016 and (3) wait an indeterminate period of time until the applicant receives a disposition from the Superintendent.  Based on experience with other firearms permit applications in the State of New Jersey, this waiting period could be many months. (Supplemental Bach Cert. ¶10)

32.  Conceptually, the process appears designed to frustrate most legitimate attempts to qualify for the Exemptions.  This is because, except under unusual circumstances, a licensed dealer is unlikely to be willing to hold multiple handguns off the market while the applicant waits many months to obtain a disposition from the Superintendent. The process requires licensed dealers to agree not to sell the handguns to another purchaser for an extended period of time, something patently unreasonable. (Supplemental Bach Cert. ¶11)

33.  So, by way of example, if a decedent's estate in Pennsylvania included a rare collection of ten Colt single action revolvers, a New Jersey collector would be at a dramatic disadvantage in attempting to purchase that collection.  The seller would be extremely unlikely to wait for the New Jersey collector to wade through the months-long bureaucratic morass of the Exemption application, without any certainty about whether

16

an Exemption will be granted at the end of the wait.  He would, instead, sell it to someone not from New Jersey. (Supplemental Bach Cert. ¶12)

34.  Prior to the One Gun Law, such a New Jersey collector could, and likely would, have multiple Handgun Purchase Permits already in hand waiting for such an opportunity.  This was a common practice and, in fact, the Certification of Kaare Johnson confirms that he regularly did that very thing so that he could immediately acquire collectable handguns as soon as he came across them. (Supplemental Bach Cert. ¶13)

35.  Thus, the Exemptions, as enacted, make it exceptionally difficult for a qualified purchaser to make legitimate multiple purchases as intended by the Legislature. (Supplemental Bach Cert. ¶14)

36.  And, in fact, this was exactly Plaintiff Bach's experience when he attempted to make use of the new forms. Since the forms were promulgated, Bach has made several attempts to convince sellers to hold multiple handguns for him so that he could apply for and obtain a Collector Exemption.  Such sellers either flat out refused (reacting as if the request to wait an indeterminate period of time while Bach applied for a Collector Exemption was unreasonable and unacceptable) or never bothered to respond at all. (Supplemental Bach Cert. ¶15)

37.   Accordingly,   although   the   Legislature   explicitly intended  that  collectors  and  competitors  be  able  engage  in  the same  multiple  handgun  purchases  they  could  prior  to  the  One  Gun Law,  the  manner  in  which  the  Exemptions  have  been  enacted  makes the  Exemptions  purely  illusory.   The  Exemptions  create  only  the appearance  of  exemptions  which  in  reality  do  not  exist  for  most collectors,   because   the   way   they   are   crafted   makes   their exercise  nearly  impossible. (Supplemental Bach Cert. ¶16)

### **Hackensack Still has not Complied with the Law**

38.   Johnson,   Furio,   Gajda   and   the   others   have   all experienced  first  hand  the  chaos  surrounding  implementation  of the  One  Gun  Law.   Each  of  them  was  told  by  his  local  police department  when  applying  for  multiple  Handgun  Purchase  Permits that  he  could  only  receive  one.   Several  were  told  that  they could  not  even  <u>apply</u>  for  a  second  permit  until  after  the  first permit  was  used.   Because  the  application  process  takes  months, that  could  mean  <u>two  or  three  guns  per  year</u>  rather  than  one  gun per  30  days. (<u>See</u> generally Accompanying Certifications)

39.   In  some  instances,  the  local  police  called  the  State Police  and  learned  they  were  mistaken.   However,  Johnson,  Furio and  Yagiello  were  actually  refused  the  additional  permits.  <u>Id</u>.

40.   Washington  and  Little  Egg  Harbor  have,  since  shortly after   the   commencement   of   this   action,   settled   with   the

Plaintiffs and have agreed to the entry of a consent order acknowledging their obligation to accept applications for and to issue multiple Handgun Purchase Permits.  They have also agreed to pay Plaintiffs a nominal amount of counsel fees in the amount of $1,000. (See Docket Entries 31,71.)

41.  Hackensack also claims to have reversed its unlawful policy of refusing the issuance of multiple permits.  However, unlike Washington and Little Egg harbor, Hackensack has steadfastly refused to memorialize this acknowledgement in any official act of the City, in any agreement or in any Court document.

42.  Plaintiffs now understand why Hackensack has been reluctant to do so.  Notwithstanding the City's representations to this Court in filed papers on March 16, 2010 that the City was no longer restricting permits to one per month, it turns out that for the last year, Hackensack has been playing fast and loose with this Court and with the law.

43.  In its previous motion to dismiss the Amended Complaint, Hackensack argued as follows in its papers:

> . . . after receiving the Amended Complaint, the City Attorney reviewed its application process with the appropriate police officers forthwith and insured that applications for multiple permits are accepted. Accordingly, there is no basis for the Court to Order injunctive relief in this situation. The relief sought is moot.

19

(Hackensack's April 16, 2010 Letter Brief in Support of Motion to Dismiss at 6; Docket Entry #33.)

44. However, on February 15, 2011, Furio went back to the Hackensack Police Department to apply for four Handgun Purchase Permits. (Supplemental Certification of Vincent Furio ("Supplemental Furio Cert.") ¶6)

45. When he arrived, he approached the clerk's desk and told her that he was applying for four permits. The clerk turned around, pointed to a sign hanging on the wall and said that he could only apply for one per month. The sign on the wall read as follows: (Supplemental Furio Cert. ¶7)

---

**ATTENTION:**

**FIREARM RULE:**

**APPLICANT CAN ONLY APPLY FOR *ONE* PISTOL PERMIT PER MONTH**

---

(See photograph of the aforesaid sign, taken on February 15, 2011, attached to Supplemental Furio Cert. as Exhibit A.)

46. Furio then took the paperwork upstairs to be approved for filing by the Captain. He told the Captain he wanted to apply for four Handgun Purchase Permits. The Captain reviewed the paperwork and handed Furio a slip of paper to give to the

clerk downstairs authorizing her to file the paperwork for four permits. (Supplemental Furio Cert. ¶8)

47. A man standing behind Furio overheard the conversation and announced that he did not know that a person could apply for more than one permit per month.  He said he was going to change his application from one to two Handgun Purchase Permits. (Supplemental Furio Cert. ¶9)

48. Thus, notwithstanding the representations of Hackensack to Plaintiffs and to this Court nearly a year ago, Hackensack still has a sign up and the clerk is still instructing applicants that they may only apply for one Handgun Purchase Permit per month.

49. Hackensack has demonstrated that it cannot be trusted to comply with the law and cannot be taken at its word on this issue.

### Other Municipalities Disregard the Superintendent's Directive and the Law

50. For the past several years, the Harrison, New Jersey Police Department has had a policy of restricting the number of Handgun Purchase Permits to two at a time.  (Certification of Alejandro Alonso ("Alonso Cert.") ¶2.)

51. As of January 2010, when the One Gun a Month Law went into effect, Harrison started issuing only one Permit per month. Since January of 2010, Alejandro Alonso, a resident of Harrison,

has applied for multiple Permits on two occasions. On both occasions, although he applied for two Handgun Purchase Permits, the Police Department would only issue one. (Alonso Cert. ¶3.)

52. Most recently, on November 11, 2010, he applied for two permits. He received notification that his permits were ready on March 11, 2011. When he went to pick up his permits, he was notified that he would only receive one permit even though he applied for two. He spoke with Detective Rodriguez and asked him why he was only issued one Permit. Detective Rodriguez told Alonso that the State Police sent them a letter instructing them that they can only issue one Permit per application. (Alonso Cert. ¶4.)

In view of the foregoing, Plaintiffs' motion for summary judgment should be granted.

## PROCEDURAL HISTORY

For the sake of brevity, Plaintiffs shall rely on the several paragraphs setting forth the prior procedural history in this matter found at pages 2 and 3 of the State Defendants' January 20, 2011 brief in support of their motion to dismiss the Second Amended Complaint.

## **LEGAL ARGUMENT**

As an initial matter, it should be noted that the State Defendants take the liberty of arguing in their Statement of the Case that the One Gun Law "does deter 'straw purchases' of multiple handguns" and that this lawsuit if successful "would diminish public safety." (<u>See</u> SDB at 1.)[4] Of course, there is absolutely no record before the Court as to those statements, and the Court may not simply assume them to be true.

But more importantly, the efficacy of the One Gun Law is not before the Court.  The Court is being asked to decide whether the implementation of the One Gun Law violates Constitutional requirements.  The unsupported claim that the One Gun Law protects public safety hardly justifies enacting such a law in a manner that violates Due Process.  If the allegations of the Second Amended Complaint are true, then the Legislature has enacted a law that provides false Exemptions.  Certainly, requiring that the Legislature provide real exemptions for which applicants can actually qualify does nothing to jeopardize public safety.

## **STANDARD OF REVIEW ON SUMMARY JUDGMENT**

Summary Judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled

to a judgment as a matter of law.   Fed. R. Civ. P. 56(c).
Matsushita Electronic Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 585-87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 250 (1986).   In deciding a motion for summary judgment, the
Court's function is not to try issues of fact, but instead to
determine whether there remain any such issues to try. Sutera v.
Schering Corp., 73 F.3d 13, 15-16 (2d Cir. 1995).   If the
evidence presented by the non-moving party is "merely colorable
or is not significantly probative, summary judgment may be
granted" Liberty Lobby, 477 U.S. at 249-50.

**STANDARD OF REVIEW ON MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

In deciding a motion under Rule 12(b)(6), the factual
allegations in the complaint, and all inferences taken
therefrom, must be read in the light most favorable to the
plaintiff. Gomez v. Toledo, 446 U.S. 635, 636 (1980); Jordan v.
Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.
1994).

The complaint should be dismissed only if it appears to a
certainty that no relief could be granted under any set of facts
which could be proved. Reasonable factual inferences will be
drawn to aid the pleader.   D.P. Enterprises, Inc. v. Bucks
County Community College, 725 F.2d 943 (3d Cir. 1984).

---

[4] SBD shall refer to the State Defendants' Brief.

Likewise, all pleadings must be liberally construed so "as to do justice." Fed. R. Civ. P. 8(e). See also <u>Conley v. Gibson,</u> 355 U.S. 41, 48, 78 S.Ct. 99, 103 (1957).

## POINT ONE

### COUNTS ONE AND TWO HAVE BEEN REPLEADED ONLY TO PRESERVE PLAINTFFS' RIGHT TO APPEAL

Defendants move to dismiss Counts One and Two of the Second Amended Complaint, arguing that they were previously dismissed by motion and therefore may not be repleaded.   However, Plaintiffs do not seek to reinstate these counts by repleading them.  They have been included in the Second Amendment Complaint solely because they remain part of the record and the dismissal of those counts is subject to appeal once an appeal in this matter is ripe.

## POINT TWO

### COUNTS THREE AND FOUR SHOULD NOT BE DISMSSED AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE STATE MAY NOT PROVIDE A RIGHT TO OBTAIN THE EXEMPTIONS WITHOUT PROVIDING A FAIR MEANS TO VINDICATE THAT RIGHT

Counts Three and Four of the Second Amended Complaint allege that the Exemptions promulgated pursuant to the One Gun Law and implemented via the Exemption Forms violate Due Process because they result in illusory Exemptions contrary to the express intent of the Legislature.

In its brief, however, the State Defendants argue an entirely different point, one not argued by Plaintiffs, that the delay in promulgating forms is a due process violation.  It may very well be true that the Superintendent took an excessive amount of time promulgating the Exemption Forms, but that is not Plaintiff's position.  Therefore, Points I(A) and I(B) of the State Defendants' Brief are irrelevant and may be disregarded.

In Point I(C), the State Defendants argue that the Exemption Process does not effect a Due Process violation.  In that they are incorrect.  Here, they appear to misunderstand Plaintiffs' position as well.  Plaintiffs do not argue that the amount of time it takes to apply for the Exemptions violates Due Process.  Plaintiffs also do not argue that requiring an applicant to identify the multiple handguns being purchased pursuant to the Exemptions violated Due Process.

Plaintiffs argue that the Legislature and the Superintendent may not, consistent with Due Process, provide a statutory right without a means to obtain the right.  Yet, that is precisely what they have done.

It is well settled that the liberty and property interests implicated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution are broadly understood:

. . . the Court has fully and finally rejected the
wooden distinction between "rights" and "privileges"

26

> that once seemed to govern the applicability of
> procedural due process rights. The Court has also
> made clear that the property interests protected by
> procedural due process extend well beyond actual
> ownership of real estate, chattels, or money. By the
> same token, the Court has required due process
> protection for deprivations of liberty beyond the sort
> of formal constraints imposed by the criminal process.

Board. of Regents v. Roth, 408 U.S. 564, 571-72 (1972).

Due process concerns are directly implicated where a person is deprived of a liberty or property interest without a procedure available to vindicate that interest. See, e.g., Humphries v Country of Los Angeles, 554 F.3d 1170, 1199-1201 (9th Cir. 2009)(child abuse registry violated due process where no procedure existed for expungement of erroneously included name from list); Alexandre v Cortes, 140 F.3d 406, 413 (2d Cir. 1998)(due process violated where there was no procedure for arrestee to contest city's handing over vehicle to lienholder).

This is equally true when the liberty interest is created by state law. Mills v. Rogers, 457 U.S. 291, 300 (1982) ("state-created liberty interests are entitled to the protection of the federal Due Process Clause"). As explained in Paul v. Davis, 424 U.S. 693, 710-11 (1976):

> It is apparent from our decisions that there
> exists a variety of interests which are
> difficult of definition but are nevertheless
> comprehended within the meaning of either
> "liberty" or "property" as meant in the Due
> Process Clause. These interests attain this
> constitutional status by virtue of the fact

27

> that they have been initially recognized and
> protected by state law . . . .

Most recently, the Supreme Court explained that:

> When, however, a State creates a liberty
> interest, the Due Process Clause requires
> fair procedures for its vindication – and
> federal courts will review the application
> of those constitutionally required
> procedures.

Swarthout v. Cooke, 131 S. Ct. 859,862 (2011)

Further, the State Defendants argue that the existence of state law procedures to challenge the inability to obtain the Exemption renders the Due Process claim a nullity. However, such an argument smacks of gross circularity, and it would render any alleged Due Process violation invalid since one could always sue in state court.

This action seeks relief under 42 U.S.C. §1983. "[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 516 (1982). Moreover, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716 (1996).

As a general rule, federal courts are bound to adjudicate cases within their jurisdiction. Ryan v. Johnson, 115 F.3d 193,

195 (3rd Cir. 1997) ("It is axiomatic that federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them' by Congress.").[1]

While a state court may have authority to adjudicate a federal constitutional claim, plaintiffs are not required to file their claims there. Ryan v. Johnson, 115 F.3d 193 (3rd Cir. 1997) ("the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction").

The manner in which the One Gun Law has been implemented violates Due Process. The New Jersey legislature has explicitly provided narrow Exemptions for Collectors and Competitors, yet the established procedure by which such individuals can apply for and receive such Exemptions is entirely illusory.

The Supplemental Bach Cert. sets forth the conundrum the applicant faces. Because the Exemption Forms require the applicant to identify in advance of the approval which specific

---

[1] "While the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." Ryan v. Johnson, 115 F.3d at 199. Further, "the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction." Id. at 200.

29

handguns the applicant wishes to purchase pursuant to the Exemption, the applicant faces a challenging task. He must first find a set of handguns he wishes to purchase. In the case of a collector, these will almost certainly be rare or unique – the very thing that makes them collectible in the first instance. He must then convince the seller to hold them and not sell them to anyone else during the months-long application process – just to see if the application is in fact granted. If the applicant provides a deposit, he risks losing that deposit if his application is denied. If he pays for them in full, he is likely criminally liable under the One Gun Law which prohibits "purchase" not merely delivery.

It is patently unreasonable to expect most sellers to undertake this substantial risk with their inventory – to hold it off the market while awaiting the completion of a lengthy process that will not even result in a sale if the application is ultimately denied months later.

The Supplemental Bach Cert. bears out this fear, because this is precisely what happened to him. Bach approached several sellers and none of them would accept this unreasonable risk.

The brief history of the One Gun Law bears out the utter lack of regard the State Defendants have shown for the Due Process rights of New Jersey gun owners. At first, the State

30

Police were wholly unprepared to implement the Exemptions, as evidenced from the January 14, 2010 conversation between Plaintiff Bach and State Police Lieutenant David Schlueter of the Firearms Unit. Lieutenant Schlueter did not know S3104 had been signed, did not even have a copy of the text of the law and had no idea when he would receive it or when a form might be prepared for an individual to apply for an Exemption – all this notwithstanding that State Police Lieutenant Colonel Christopher Andreychek was the Superintendent's designee on the Task Force and was directly involved in the development of the Exemptions over many months. (See Bach Cert. ¶¶ 22-26.)

Now, the forms promulgated by the Superintendent in April 2010 render it impossible for most qualified applicants to obtain the Exemptions even though the Legislature intended that they be able to do so.

Because of this, Collectors and Competitors are being denied a right that the legislature has expressly provided them in the One Gun Law. Since the absence of a fair procedure to vindicate a liberty or property interest is a core due process violation, enforcement of the One Gun Law in the absence of a procedure to apply for and obtain the Exemptions is a violation of the Fourteenth Amendment and should be enjoined. Summary judgment should be granted.

31

### POINT THREE

### COUNTS FIVE AND SIX ARE NOT MOOT AND SUMMARY JUDGMENT SHOULD BE GRANTED TO ENSURE HACKENSACK'S COMPLIANCE WITH THE LAW

N.J.A.C. 13:54-1.4(h) provides as follows:

> Applicants for a permit to purchase a handgun may apply for more than one permit per application. The number of permits requested, and each permit number shall be entered in the spaces provided on the application.

Thus, New Jersey law expressly provides that an applicant may apply for more than one Handgun Purchase Permit at a time. Yet, as illustrated in the certifications submitted herewith, since the enactment of the One Gun Law, there has been massive confusion and inconsistency among municipal police departments regarding the law's impact on the permitting process. Applicants are being told either that they may not receive more than one <u>permit</u> per month, or, worse, that they may not even begin the application process for a second permit until the first permit is not only issued, but actually used (potentially three to six months following issuance). The latter approach is especially egregious to Collectors and Competitors, because it could turn the one gun a month law into a two or three guns a year law due to the months-long delays frequently experienced in the permitting process.

New Jersey courts apply the same due process analysis under Article 1, Section 1 of the New Jersey Constitution as federal

courts under the United States Constitution.  K.J. ex rel. Lowry v. Division of Youth and Family Services, 363 F. Supp. 2d 728 (D.N.J. 2005).[5]

However, the New Jersey Constitution provides extra protection from arbitrary state action by virtue of the Fundamental Fairness Doctrine:

> . . . the doctrine of fundamental fairness, which has roots in the New Jersey Constitution and in New Jersey common law, has been applied to grant persons procedural protections that may exceed those offered by the due process clause of the federal constitution.

In re Kimber Petroleum Corporation, 110 N.J. 69 (1988).

> The New Jersey Supreme Court has explained it as follows:

> New Jersey's doctrine of fundamental fairness "serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily. [It] serves, depending on the context, as an augmentation of existing constitutional protections or as an independent source of protection against state action." [Emphasis in original.]

Doe v Poritz, 142 N.J. 1 (1995).

All parties in the case now agree that a municipality may not restrict the number of permits for which a person may apply. Hackensack acknowledges and accepts the March 2010 directive

---

[5] In its brief, Hackensack mistakenly argues that Plaintiffs are asserting federal claims against it pursuant to 42 U.S.C. §1983. In fact the claims against Hackensack are purely state law claims joined in this action by virtue of 28 U.S.C. §1367.

from the Superintendent that informed all municipal police chiefs of this basic point of law.

Accordingly, Defendants argue that these counts are, as a result, moot. However, a directive from the Superintendent does not equate with compliance with the law. Hackensack is the perfect illustration of this basic point.

Hackensack argues that it is in full compliance with N.J.A.C. 13:54-1.4(h) and thus Counts V and VI of the Second Amended Complaint are moot. However, although Hackensack claims that it has changed its procedures to allow the application for multiple Handgun Purchase Permits in one month, Hackensack fails to provide any evidence to prove that these procedures actually exist, although it could have easily provided documents to illustrate the existence of such procedures as an exhibit to the Certification of Joseph Zisa, Jr. Instead of providing the Court with a specific description of its corrective procedures, Hackensack makes a general statement that it has changed its application process to "insure that applications for multiple permits are accepted." This is hardly a clear showing of new procedures sufficient to sustain Hackensack's burden in these motions.

Further, Hackensack has refused to enter into any binding resolution of these claims, by way of consent order or

34

otherwise.[6]   This reluctance raises the question if the claims were truly moot, why would Hackensack refuse to proceed with a consent judgment and instead file a motion to dismiss?

Indeed, Hackensack could have followed the actions taken by Washington Township, another named defendant who changed its procedures after Plaintiffs filed suit.  Washington Township and Little Egg Harbor acknowledged their corrective action through a Stipulation and Order.  It is suspicious that Hackensack refuses to submit to a similar stipulation when, by its own suggestion in its papers, it claims to have acquiesced to Plaintiffs' position.

And that suspicion turns out to be justified.  The Supplemental Furio Cert. reveals that an order of this Court is indeed needed to ensure Hackensack fully complies with the law. Notwithstanding Hackensack's representations to this Court nearly a year ago, there is still a sign in the Police Station indicating that only one permit may be applied for per month, and the desk clerk is advising applicants of the same restriction.

It is no longer sufficient merely to take Hackensack's word

---

[6]  This stands in stark contrast to the other two municipal defendants, Washington Township and Little Egg Harbor, which entered into Stipulations of Settlement which were "So Ordered" by the Court.  (See Docket Entries 31 and 71 (awaiting signature of Court.)

that they are in compliance with the law.  An order or this Court is necessary.  Because there is no dispute that Hackensack is not in full compliance with the law regarding permits, there is a live case or controversy, and Plaintiffs' summary judgment motion should be granted.

### POINT FOUR

**THE MOTIONS TO DISMISS SHOULD BE DENIED BECAUSE <u>PENNHURST</u> DOES NOT APPLY TO CLAIMS AGAINST MUNICIPALITIES AND THERE ARE NO CLAIMS AGAINST THE STATE DEFENDANTS ARISING UNDER STATE LAW**

All Defendants, again, raise <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89 (1983) to argue that the Eleventh Amendment bars the claims agasint them.  None of these arguments are valid.

First, there are <u>no</u> state law claims directed against the State Defendants.  The State Defendants are mistaken in this regard.  As indicated above, Plaintiffs do not assert a claim against the State Defendants for being untimely in issuing the Exemption Forms.  Thus, there is no Eleventh Amendment problem with Counts III and IV.

Second, it is well settled that municipalities do not enjoy Eleventh Amendment protection.  <u>Board of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356 (2001).  The State Defendants attempt to argue that Counts V and VI

36

nevertheless are barred by the Eleventh Amendment because the relief sought against the municipalities must also necessarily run against the State because sometimes the Superintenent is the issuer of permits.

That argument is nonsensical.  There is no allegation in the case that the Superintendent is refusing or has ever refused to issue multiple permits.  In fact, the Superintendent explicitly acknowledged that it must do so in its March 2010 directive.  The only such claim being asserted, or that needs to be asserted, is against the municipalities and, therefore, the Eleventh Amendment does not bar Counts V and VI.

<u>**CONCLUSION**</u>

Because of the severe constitutional infirmities in the One Gun Law and the clear deprivations of Plaintiffs constitutional and statutory rights, Plaintiffs respectfully request that the Court grant their motion for summary judgment and deny Defendants motions to dismiss.

FARER FERSKO,
A Professional Association
Attorneys for Plaintiffs

By: <u>/s/ Daniel L. Schmutter</u>
     Daniel L. Schmutter

Dated: March 11, 2011