# FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Henry Farer
Jack Fersko
David B. Farer
Richard J. Ericsson
Ann M. Waeger
Jay A. Jaffe
John J. Reilly*
Daniel L. Schmutter
Susan C. Karp
Marcie R. Horowitz
John H. Hague
Regina E. Schneller

Counsel
Anthony Giountikos
Maura E. Blau

Marjan F. Disler
Jill B. Richardson

*Certified by the Supreme
Court of New Jersey
as a Civil Trial Attorney

July 5, 2011

<u>Via ECF</u>

Honorable Joel A. Pisano, U.S.D.J.
Clarkson S. Fisher Federal Building
 and U.S. Courthouse
402 East State Street
Trenton, NJ  08608

Re:  ANJRPC, et al. v. Christopher J. Christie, Governor of New Jersey et al.
     Docket No.: 3:10-cv-00271-JAP-TJB
     Our File No.: 011901

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Dear Judge Pisano:

We represent the Plaintiffs in the above-referenced matter.  Please accept this Letter Brief in lieu of a more formal brief in further support of Plaintiffs' Motion for Summary Judgment.

## State Defendants' Opposition

### Rule 56(d)

The State Defendants first argue that certain of the facts presented in Plaintiffs' motion cannot be disputed by them because there has been no discovery and therefore pursuant to Fed. R. Civ. P. 56(d) the Court should deny Plaintiffs' motion.

First, the State Defendants do not satisfy the requirements of Rule 56 (d), because they do not specify what information they lack and they do not indicate why they could not have obtained it in another manner.

FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 2

Fed. R. Civ. P. 56(d) applies to a situation in which "a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . ." In order to invoke Rule 56(d), a non-movant must do more than merely claim it needs discovery. As explained by the court in Lunderstadt v. Colafella, 885 F.2d 66 (3d Cir. 1989):

> Our case law makes clear that a Rule 56(f) [now 56(d)] motion must identify with specificity 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.' [Citation omitted.]

Id. at 71. See also Superior Offshore International, Inc. v. Bristow Group Inc., 2011 WL 2516522 (D. Del. 2011) (summary judgment granted where non-movant failed to show particularity as to information needed to oppose motion and why it could not otherwise have been obtained.)

The Certification of Gregory Spellmeyer ("Spellmeyer Cert.") provides no specificity as to what facts the State Defendants could not obtain and why they could not obtain such facts sufficient to justify its opposition. The Spellmeyer Cert. states merely that there has been no discovery.

However, a great many of the undisputed facts set forth by Plaintiffs involve statements with respect to the actions of public officials. Thus, for example, there is no reason why the State Defendants could not have sought affidavits from various public

# FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 3

officials refuting Plaintiffs' Statement of Material Facts. Yet, the Spellmeyer Cert. is silent as to any attempts to obtain information sufficient to oppose this motion.

It is insufficient to rely on a generic Rule 56(d) statement. Rather, the non-movant is required to indicate with specificity what information is sought and why the information is unavailable. The State Defendants have not done this, and therefore they may not rely on Rule 56(d) in opposing Plaintiffs' motion for summary judgment.

Second, it is not necessary for the Court to find these particular facts to be undisputed in order for the Court to grant summary judgment in favor of Plaintiffs on Counts III and IV relating to the exemptions to the One Gun a Month Law. This is because the Due Process problems with the exemptions are inherent and they exist regardless of the specific facts presented in this motion.

The State Defendants misunderstand the nature of Counts III and IV. Counts III and IV allege that the Legislature intended that there be specific exemptions to the restrictions of the One Gun a Month Law for collectors, competitors and inheritance (the "Exemptions"). However, the manner in which the Exemptions have been implemented renders them inherently illusory and therefore they violate Due Process.

Because the Exemptions require the applicant to identify in advance, by serial number, which set of multiple handguns the applicant wishes to purchase, it requires the applicant to seek the cooperation of the vendor to hold the particular handguns off the market for an indeterminate period of time while the applicant seeks approval or

FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 4

disapproval of the Exemption application. Thus, the applicant must rely on the willingness of vendors to hold what, in many instances, may be very expensive collector pieces off the market without any indication of the duration of the application process and without any indication as to whether the applicant will obtain approval of the Exemption.

This scenario is patently unreasonable and unworkable, and therefore the Exemptions are illusory. While sometimes this process may work, it cannot be disputed that in many, if not most, instances, this will render it impossible for otherwise qualified applicants to take advantage of the Exemptions as the Legislature intended. This fictional Exemption process violates Due Process.

The Certification of Scott Bach ("Bach Cert.") illustrates this problem. The Bach Cert. sets forth his attempts to secure the agreement of a vendor to hold inventory off the market so that he could apply for the collector Exemption. He was unsuccessful, which is not surprising. In most instances, a dealer will not wait an indeterminate period of time while a potential customer applies for an Exemption – especially when there is no guarantee that the customer will have his application approved. Thus, it does not matter whether the facts as set forth in the Bach Cert. are controverted, because the Bach Cert. is merely an example of the inherent problem in the design and implementation of the Exemptions. The Exemptions simply cannot, in most instances, provide what the Legislature promised because of the way they were designed.

# FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 5

Because the Exemptions are inherently unworkable, they violate Due Process whether or not the facts in the Bach Cert. are specifically true or not. Thus, summary judgment should be granted to Plaintiffs in Counts III and IV.

### Pennhurst

The State Defendants continue to misunderstand the application of Pennhurst State School and Hospital v. Halderman, 465 U.S. 890 (1983) to this matter, and as a result they continue to argue, mistakenly, that Pennhurst precludes the claims against the State Defendants and the municipalities.

First, this is not, as the State's Defendants suggest, an attempt to force state officials to comply with State law. Rather, Plaintiffs argue that the One Gun a Month Law itself is designed and implemented so as to create an illusory right. This violates federal Due Process guarantees. That is, a state may not provide for a right by law and then implement it in a way that makes that right illusory and unavailable.

Second, the State Defendants' seek to boot-strap the Pennhurst argument into Counts V and VI regarding the failure of certain municipalities, including Hackensack, to comply with State law relating to the issuance of permits to purchase a handgun ("Handgun Purchase Permits").

Yet, there is no dispute that Pennhurst does not apply to municipalities. Rather, the State Defendants' argue that even though Plaintiffs seek no relief against the State Police and even though Plaintiffs have made no allegations against the State Police

# FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 6

regarding the issuance of Handgun Purchase Permits, nevertheless, because a ruling against the municipalities will "affect" the State Police as an issuing authority (because they also issue Handgun Purchase Permits), somehow Pennhurst is being violated.

This is nonsensical. If no claim has been asserted against the State Police on this particular issue and no allegations have been made against the State Police on this particular issue, then the fact that the ruling sought against another party might also turn out to be binding on the State Police is irrelevant. If the State's Defendants' position were true, then a plaintiff could never assert a pendent state constitutional claim against a local police department because a ruling on that state constitutional claim would likely also be binding on the State Police if they were to engage in the same conduct. It would not matter, in the State Defendants' view, that no allegation had been made against the State Police for violating the state constitutional provision or that no claim were asserted against the State Police, merely that a ruling against the local police somehow would also be binding on State officials. This is not how Pennhurst works, and the State Defendants argument should be disregarded.

**State Court Remedies**

Finally, the State's Defendants' argument that the availability of State Court remedies renders Plaintiffs' due process claims unavailing is simply incorrect.

First, the existence of post deprivation state court remedies is meaningless when the Due Process problem is inherent in the design of the right. Plaintiffs do not complain

# FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 7

that in certain instances the right has been deprived, Plaintiffs complain that the law is designed so that the right is inherently illusory and that most applicants will be unable to avail themselves of the right regardless of whether or not post deprivation remedies exist under State law. The system inherently violates federal Due Process because it provides for illusory rights.

Second, as set forth in Plaintiffs' initial moving brief, the fact that the claims asserted in this court could also be asserted elsewhere in a state forum is beside the point. The federal Due Process violation arises because State law creates a right but the same State law simultaneously makes the right impossible for some or all applicants to obtain. It is this scheme that violates the Fourteenth Amendment.

For the foregoing reasons, Plaintiffs' motion for summary judgment should be granted.

## Hackensack's Opposition

Hackensack's opposition to summary judgment wholly ignores the main thrust of Plaintiffs' position. Hackensack's opposition boils down to the following: At various times since the commencement of this action, Plaintiff Furio applied for and obtained multiple Handgun Purchase Permits and therefore he has no standing to assert the claims set forth in the Second Amended Complaint. However, Hackensack's argument is entirely irrelevant to the thrust of Plaintiffs' motion. The fact that at times Furio <u>has</u> obtained multiple permits does nothing to contradict the following critical facts which

# FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 8

Hackensack does not and cannot deny.

1. Hackensack previously unlawfully restricted the number of Handgun Purchase Permits that could be obtained at one time. Mr. Furio was denied the right to apply for and obtain multiple permits in February 2010;

2. When the parties appeared before this Court in May 2010 (and in their filed papers), Hackensack assured and promised this Court that its policy had changed and that it was no longer restricting the number of Handgun Purchase Permits an applicant could obtain at any one time;

3. One year later, when Mr. Furio went back to the Hackensack Police Department to apply for Handgun Purchase Permits, not only was there a sign still hanging in the Police Department declaring that an applicant could obtain no more than one Handgun Purchase Permit at a time, but the desk clerk was orally advising applicants that they were restricted to one permit at a time. This is one year after Hackensack assured the Court that it was not doing this;

4. An individual applying for Handgun Purchase Permits at the same time as Mr. Furio did not even know about Hackensack's supposed change in policy and thought that he was restricted to one permit per month.

5. Other members of Plaintiff ANJRPC live in Hackensack and are subject to this practice of Hackensack playing fast and loose with the New Jersey State permit law.

The foregoing unequivocally establishes that, notwithstanding Hackensack's promises and representations to this Court, and notwithstanding Hackensack's position that no Court Order was necessary to ensure compliance with New Jersey law regarding the number of permits an applicant may seek and obtain, Hackensack cannot be trusted to comply with State regulations and cannot be taken at it word in this Court. It is significant that to this day Hackensack refuses to enact any official document, enter into

FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 9

any agreement, or agree to any order regarding this issue (as the other municipal defendants agreed to do).

Neither Mr. Furio nor any other member of Plaintiff ANJRPC living in Hackensack has any assurance that this unlawful practice will not continue, and therefore each of them has actual injury and therefore standing.

Further, this is a classic example of a claim which is capable of repetition yet evades review. See U.S. v. Scarfo, 263 F.3d 80, 90 (3d Cir. 2001); U.S. v. Antar, 38 F.3d 1348, 1356 (3d Cir. 1994). Hackensack can continue to deny applicants multiple permits until they sue. At such time, Hackensack can forever evade review of its actions in federal court by granting that particular plaintiff his permits while denying all others. Hackensack can then argue no case or controversy. Thus, if the Court finds no case of controversy here, Hackensack will have developed the perfect strategy to permanently prevent federal review of its unlawful actions.

The only way to guarantee that Hackensack is complying with and will continue to comply with State regulations regarding permitting is to enter an Order declaring and directing that Hackensack may not restrict the number of Handgun Purchase Permits that may be applied for and obtained.

Further, the Court should enter an order ensuring that Hackensack has no sign or other written instructions to applicants providing incorrect information regarding permit

FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 10

applications and should order Hackensack to instruct all of its employees as to the correct application of the law.

In view of the foregoing, summary judgment should be granted in favor of Plaintiffs on Counts V and VI.

### Other Municipalities Continue to Restrict Permits

Another critical fact which none of the Defendants have disputed is that notwithstanding the State Police letter issued in March 2010 ("State Police Letter") directing municipalities that they may not restrict the number of Handgun Purchase Permits that may be applied for and obtained, municipalities continue to violate the law in this regard, and only a judgment of this Court will end it.

The Certification of Alejandro Alonzo reveals that long after the State Police Letter was sent to all municipal police chiefs, the Town of Harrison continued to violate the law by restricting the number of Handgun Purchase Permits that could be applied for and obtained.

Further, it does not matter whether this violation by municipalities persists because of ignorance or because of willful misconduct. Either way, the State Police Letter was clearly insufficient to compel municipalities to comply with State regulations.

Without a judgment of this Court, it appears that municipalities within the State will continue to violate State regulations. There is no argument to suggest that Count V and VI are moot merely because each municipality that was joined in the action

FARER FERSKO

A PROFESSIONAL ASSOCIATION ATTORNEYS AT LAW

Honorable Joel A. Pisano, U.S.D.J.
July 5, 2011

Page 11

subsequently changed its policy (or claims to have changed its policy), when Plaintiffs continually learn of new municipalities that are violating the law. This is another example of a claim which is capable of repetition yet evades review, thereby rendering the claim not moot.

Only a judgment of this Court declaring that municipalities may not restrict the number of Handgun Purchase Permits that may be applied for and obtained will compel municipalities to comply with the State regulations regarding permitting.

In view of the foregoing, the Court should grant summary judgment in favor of Plaintiffs as to Counts V and VI.

## CONCLUSION

By virtue of the foregoing, Plaintiffs respectfully request that this Court deny Defendants' motions for summary judgment and grant Plaintiffs' motion for summary judgment in its entirety.

Respectfully submitted,

/s/ Daniel L. Schmutter

Daniel L. Schmutter
DLS:amh

cc: Gregory Spellmeyer, Esq. (Via ECF)
Craig Pogosky, Esq. (Via ECF)